# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ANTHONY GAY,<br><br>            Plaintiff,<br><br>v.<br><br>THE STATE OF ILLINOIS, et al.,<br><br>            Defendants. | Case Number  18-cv-7196<br><br>Judge Sara L. Ellis |

**DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 USCS § 1404**

NOW COME Defendants, WEXFORD HEALTH SOURCES, INC., WILLIAM PUGA, M.D., KELLY RENZI, PSY.D., by and through their attorneys, CASSIDAY SCHADE LLP; PIERRE NUNEZ, PhD, by and through his attorneys, DONOHUE BROWN MATHEWSON & SMYTH LLC; and the STATE OF ILLINOIS, JAMES R. BALDWIN, SYLVIA BUTLER and MELVIN HINTON, by and through their attorney,  KWAME RAOUL, Attorney General of Illinois, and move to transfer this matter from the Federal District Court for the Northern District of Illinois, Eastern Division ("Northern District, Eastern Division") to the Federal District Court for the Central District of Illinois ("Central District"), and in support thereof, state as follows:

## I.  Introduction

On October 28, 2018, Plaintiff, ANTHONY GAY ("Gay" or "Plaintiff"), through his retained counsel, filed the above-captioned matter. (ECF #1). In his Complaint, Plaintiff has brought claims against Defendants for purported violations of the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Fourteenth Amendment's due process clause. *Id.* at ¶¶ 1-5. Specifically, Plaintiff asserts that he was improperly committed to solitary confinement during his more than two-decades-long prison

sentence, and did not receive proper mental health treatment and reasonable accommodations for the mental health issues that allegedly resulted from the solitary confinement. *Id.* at pages 1-3.

In his Complaint, Plaintiff alleges that, from 1998 until he was released in 2018, he was placed in solitary confinement as a result of disciplinary infractions and staff assaults. *Id.* Plaintiff further alleges that during these twenty (20) years in Illinois Department of Corrections ("IDOC") custody, he was incarcerated at several correctional facilities, including Tamms Correctional Center ("Tamms"), Dixon Correctional Center ("Dixon"), Pontiac Correctional Center ("Pontiac"), Stateville Correctional Center ("Stateville"), and Menard Correctional Center ("Menard"). *Id.* at ¶ 9. According to Plaintiff's Living History obtained from the IDOC, he also spent time early in his nearly twenty-four (24) year incarceration at Shawnee Correctional Center ("Shawnee"), Centralia Correctional Center ("Centralia"), and Logan Correctional Center ("Logan"). (*See* "Exhibit 1" – Plaintiff's IDOC living assignment history).

Pontiac is located in the City of Pontiac, County of Livingston. Livingston County is within the geographical boundaries of the Central District ("Central District")[1]; Tamms is located in the City of Tamms, County of Alexandra. Alexandra County is located within the geographical boundaries of the Federal District Court for the Southern District of Illinois ("Southern District").[2] Menard is located in the City of Menard, County of Randolph. Randolph County is within the geographical boundaries of the Southern District.[3] Dixon is located in the City of Dixon, County of Lee. Lee County is located within the geographical boundaries of the United States District Court for the Northern District of Illinois, Western Division ("Northern District, Western Division")[4]. Shawnee is located in the City of Vienna, County of Johnson.

---

[1] https://www.ilcd.uscourts.gov/sites/ilcd/files/New_District_Map_June_2015.pdf
[2] https://www.ilsd.uscourts.gov/
[3] https://www.ilsd.uscourts.gov/
[4] https://www.usmarshals.gov/district/il-n/general/area.htm

Johnson County is located within the geographical boundaries of the Southern District.[5] Centralia is located in the City of Centralia, County of Marion. Marion County is within the geographical boundaries of the Southern District.[6] Logan is located in the City of Lincoln, County of Logan. Logan County is within the geographical boundaries of the Central District.[7]

Stateville is located in the City of Crest Hill, County of Will. Stateville is the sole prison in which Plaintiff was incarcerated that is located within the geographical boundaries of the Northern District, Eastern Division.[8]

While Plaintiff's Complaint is vague as to the time he spent at each facility, a review of Gay's Living History from the IDOC, the criminal cases that extended his incarceration at the IDOC, his prior civil suits, and a Chicago Tribune news article that quotes Gay and his attorney demonstrates that the material events set forth in Plaintiff's complaint did not occur within the Northern District, Eastern Division. In this regard, Plaintiff alleges that, from March of 1998 until his release from custody in 2018, he was placed in solitary confinement for disciplinary infractions. (ECF #1 at ¶¶ 25-26). Plaintiff's Living History from the IDOC shows that, over the course of his nearly 24-years in IDOC custody, he spent the vast majority in the Central and Southern Districts, and a total of only four(4) months in the Northern District, Eastern Division:

---

[5] https://www.ilsd.uscourts.gov/

[6] https://www.ilsd.uscourts.gov/

[7] https://www.ilcd.uscourts.gov/sites/ilcd/files/New_District_Map_June_2015.pdf

[8] https://www.usmarshals.gov/district/il-n/general/area.htm

| FACILITY | COURT DISTRICT | TIME[9] |
|---|---|---|
| Pontiac | Central District | 6 years, 6 months |
| Logan | Central District | 3 months |
| Tamms | Southern District | 10 years, 6 months |
| Menard | Southern District | 3 years, 6 months |
| Shawnee | Southern District | 11 months |
| Centralia | Southern District | 1 day |
| Dixon | Northern District, Western Division | 1 year, 7 months |
| Stateville | Northern District, Eastern Division | 4 months |

Over the last 22 years, Plaintiff has filed at least thirty-three (33) civil cases, other than the present one, some of which contain allegations similar to the present lawsuit. In this regard, Plaintiff filed thirteen (13) actions in the Central District[10], seventeen (17) suits in the Southern District[11], and three (3) cases in the Northern District, Western Division[12]. This is the first case Plaintiff has filed in the Northern District, Eastern Division.

Furthermore, on January 2, 2019, the Chicago Tribune published an article that was based upon information, documents, and quotes provided by Gay, as well as his attorneys in the present matter. (*See* Coen and St. Clair, *How Solitary Confinement Drove a Young Inmate to the Brink of Insanity,* Chicago Tribune, http://www.chicagotribune.com/news/ct-met-anthony-gay-solitary-confinement-suit-20181206-story.html#nt=oft12aH-1la1 (last visited on January 23, 2019)(attached hereto as "Exhibit 2")(the "Article")). The Article sets forth a detailed history of when and where the events giving rise to this lawsuit arose. To this end, the Article states that in his earliest days in IDOC custody, he served his time at Shawnee Correctional Center. ("Exhibit 2" at page 4). However, after a fight with an inmate at Menard, Plaintiff was placed in solitary

---

[9] The time spent at each facility is an approximation based on Plaintiff's Living History. (Exhibit 1.)

[10] Cases include Docket Nos. 01cv1070; 01cv1210; 01cv1209; 06cv4012; 08cv1332; 09cv1186; 09cv1364; 09cv1404; 10cv1111; 10cv1112; 12cv1426; 12cv1517; and 13cv1184.

[11] Cases include Docket Nos. 96cv962; 98cv772; 99cv365; 99cv366; 99cv367; 00cv29; 05cv150; 08cv59; 08cv523; 09cv769; 09cv925; 09cv1051; 10cv128; 10cv336; 11cv14; 11cv20; and 11cv27.

[12] Cases include Docket Nos. 01cv50448; 04cv50418; and 18cv50310.

confinement. *Id.* at pages 4-5. As a result of disciplinary imposed by the fight at Menard, Plaintiff was transferred to Pontiac. *Id.* at page 5. In 1998, he was transferred to Tamms. *Id.* From 2000 to 2004, Plaintiff underwent twenty-one indictments while being housed in Pontiac. *Id.* at page 8. According to his criminal history, Gay was convicted of aggravated battery of a correctional officer in 1998 in Alexandra County during his incarceration at Tamms, which is within the geographical boundaries of the Southern District. ("Exhibit 3" – Plaintiff's IDOC Criminal History). Subsequently, Plaintiff was convicted of aggravated battery of a correctional officer twenty (20) additional times in Livingston County from 2000 to 2004 during his incarceration at Pontiac, which is located within the geographical boundaries of the Central District. *Id.*

Plaintiff was transferred to Dixon only a few months prior to his August of 2018 release. ("Exhibit 2" at pages 7-8). The Article states:

> "With real hope of freedom for the first time in decades, Gay stopped harming himself as much in his final months of incarceration. Not coincidentally, he was transferred to Dixon Correctional Center, where he was allowed to interact with other inmates, taken off his medication and received intensive daily therapy. He was released this past August." *Id.* at page 8.

Since his release, Plaintiff has been living in the City of Rock Island, County of Rock Island, State of Illinois. (ECF #1 at ¶ 9). Rock Island County is within the geographical boundaries of the Central District.[13] The Article states that Plaintiff is now receiving therapy near his home. ("Exhibit 2" at page 11).

Here, Plaintiff has sued the State of Illinois, the IDOC, and Wexford Health Sources, Inc. Plaintiff also sued the following individual Defendants:

---

[13] [13] https://www.ilcd.uscourts.gov/sites/ilcd/files/New_District_Map_June_2015.pdf

- IDOC Central Region Psychology Supervisor, Jeff Sims ("Dr. Sims");

- IDOC Southern Region Psychology Supervisor, Shane Reister ("Dr. Reister");

- IDOC Statewide Mental Health Supervisor, Dr. Melvin Hinton ("Dr. Hinton");

- Mental Health Director of Pontiac, Kelly Renzi, Psy.D ("Dr. Renzi");

- Psychiatrist and physician at Dixon, William Puga, M.D. ("Dr. Puga");

- Mental Health Director of Dixon, Jamie Chess, Psy.D. ("Dr. Chess");

- Psychologist at Dixon, Pierre Nunez, PhD("Dr. Nunez"); and,

- Mental Health Director at Menard, Sylvia Butler, Psy.D. ("Dr. Butler").

## II.     *Analysis*

Congress enacted the federal change of venue statute, 28 U.S.C.S. § 1404, to "allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). Section 1404(a) of the statute states:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *28 U.S.C.S. § 1404(a)*.

The Supreme Court directs that 28 U.S.C.S. § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] '…case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), *quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). In deciding the instant motion, this Court may evaluate the particular circumstances of this case and may exercise discretion to consider "all factors relevant to convenience and/or the interests of justice." *Research Automation*, 626 F.3d at 978. The Seventh Circuit has recognized that 28 U.S.C.S. §

6

1404 allows for a "flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978, *quoting Stewart,* 487 U.S. at 29.

Defendants request that this Honorable Court exercise its discretion pursuant to 28 U.S.C.S. § 1404 and transfer this matter to the Central District for all further proceedings. Only about four (4) months of the twenty-four (24) years Plaintiff was incarcerated were spent at Stateville, the only prison within the boundaries of the Eastern Division of the Northern District. As such, the connection to this District is tenuous at best, and it is not in the interest of justice to litigate it here. Instead, it would be much more convenient for the non-party witnesses and parties to litigate this case in the Central District.

A. **Convenience (or Private) Factors**

In deciding whether transfer would promote convenience, courts consider such private interest factors as: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses." *Morton Grove Pharm.,* 525 F. Supp. 2d at 1044 (citing *Schwartz v. Nat'l Van Lines, Inc.,* 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004)); *see also Amoco Oil Co. v. Mobil Oil Corp.,* 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). In the case at bar, these convenience factors favor transfer to the Central District of Illinois.

*1. Plaintiff's Choice of Forum and the Situs of Material Events*

Courts in this District have held that if the "events giving rise to the cause of action did not take place in the plaintiff's selected forum, the 'plaintiff's preference has minimal value.'" *Dunn v. Soo Line R. Co.,* 864 F. Supp. 64, 65 (N.D. Ill. 1994) (quoting *Robinson v. Town of Madison,* 752 F. Supp. 842, 847 (N.D. Ill. 1990)); *see also F & G Scrolling Mouse, L.L.C. v.*

7

*Microsoft, Inc.*, 56 F. Supp. 2d 1005, 1007 (N.D. Ill. 1999)("It is well-established that a plaintiff's choice of forum is entitled to deference, but it is equally well-settled that this deference is of minimal value…"). Furthermore, "the convenience of an attorney is not a factor in considering a motion to transfer venue…" *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, 2007 U.S. Dist. LEXIS 38618, 2007 WL 1560212, at *5 n.3 (N.D. Ill. May 29, 2007)

Based upon the Plaintiff's own pleadings, as well as the additional information obtained to date, it is apparent that *none* of the material events giving rise to Plaintiff's claims occurred within the Northern District, Eastern Division. To this end, Plaintiff only named individual Defendants located at Pontiac, Menard, and Dixon, all of which are located outside of the geographical boundaries of the Northern District, Eastern Division. (ECF #1 at ¶¶ 13-20). The only facility Plaintiff alleges he was incarcerated at within the geographical boundaries of the Northern District, Eastern Division, is Stateville. *Id.* at ¶ 9. Plaintiff, however, was sporadically housed at Stateville for only four months, with the last stint having been for two weeks in January 2003. (Exhibit 1 at p. 34.) None of the individually named healthcare providers treated Plaintiff at Stateville. Furthermore, none of Plaintiff's criminal cases or civil suits were filed in the Northern District, Eastern Division, or involved his incarceration at Stateville. (*See* "Exhibit 1" and fn. 6-8).

As such, it appears that the only material connection Plaintiff's claims have to the Northern District, Eastern Division is the location of his attorneys. However, the location of a party's attorney is not a factor when considering a motion to transfer. *Flexicorps, Inc.* at *5 n. 3. In fact, Plaintiff himself lives within the geographical boundaries of the Central District. (ECF #1 at ¶ 9). Consequently, Plaintiff's filing of this suit in the Northern District, Eastern Division is a

clear example of forum-shopping. Thus, because the material events giving rise to this matter did not take place in the Northern District, Eastern Division, Plaintiff's choice of forum should not be given deference.

### *2. Convenience of Non-Party Witnesses*

The next of the private factors is the convenience of non-party witnesses, which "is often viewed as 'the most important factor in the transfer analysis.'" *Preussag Int'l Steel Corp. v. Ideal Steel & Builders' Supplies, Inc.,* No. 03 C 6643, 2004 WL 783102, at *5 (N.D. Ill. Jan. 21, 2004) (quoting *Tingstol Co. v. Rainbow Sales Inc.,* 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998)); *First Nat'l Bank,* 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). In weighing this factor, courts should "assess the location of potential witnesses, the nature of their expected testimony, and whether certain witnesses may be compelled to testify." *Eugene v. McDonald's Corp.,* No. 96 C 1469, 1996 WL 411444, at *2 (N.D. Ill. July 18, 1996) (citing *Canade v. Grumman Corp.*, No. 93 C 6628, 1994 WL 87307, at *2 (N.D. Ill. Mar. 16, 1994)).

In addition, "[t]he convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily." *Gueorguiev v. Max Rave, LLC,* 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007). The nature of the witnesses' testimony and whether they can be compelled to testify are overarching concerns. *F & G Scrolling Mouse, L.L.C. v. Microsoft, Inc.*, 56 F. Supp. 2d 1005, 1008-1009 (N.D. Ill. 1999)(ruling in favor of transfer where numerous non-party witnesses were subject to the 100 mile radius of subpoena power in the transferee District, but not in the Northern District). Additionally, "the convenience of expert witnesses is irrelevant in determining the propriety of transfer . . . since it may be presumed that witnesses who are paid to testify will appear at trial irrespective of the location of the forum." *Newton v. Thomason*, No. 91 C 6322, 1991 WL

281194, at *2 (N.D. Ill. Dec. 30, 1991) (quoting *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F. Supp. 1279, 1286 (N.D. Ill. 1980)). For these reasons, "[m]ore weight is afforded non-party witnesses." *First Nat'l Bank,* 447 F. Supp. 2d at 913.

In the case at bar, the non-party witnesses that possess the majority of relevant information are the correctional and medical staff that provided and/or witnessed the occurrences at issue, as well as the medical and mental health treatment and care that Gay was provided (or allegedly not provided) while imprisoned. Here, an overwhelming majority of the material events giving rise to this case took place at Pontiac, which is located within the geographical boundaries of the Central District. Specifically, Plaintiff alleges that he was placed in solitary confinement the entire time he was held at this facility, which is designated to house inmates that were assigned to segregation as a result of disciplinary infractions. (ECF #1 at ¶ 9-10). In addition, the twenty (20) convictions for assault to a correctional officer that lead to the extension of his sentence occurred while he was being housed at Pontiac. ("Exhibit 3"). Thus, based upon the broad scope of Plaintiff's allegations and the amount of time he spent at Pontiac, there are potentially dozens of non-party witnesses that work, and presumably reside, within the Central District. These witnesses live outside of this Court's subpoena power. Thus, litigating the case in Chicago, Illinois is clearly an onerous burden to these witnesses, as well as the parties that are compelling them to appear for a deposition or trial.

In addition, Plaintiff lives with his family and is receiving mental health treatment in Rock Island, Illinois, which is located within the geographic boundaries of the Central District. (ECF #1 at ¶ 9 and "Exhibit 2" at page 11). Gay's family members and mental health providers will be key witnesses in this case regarding both liability and damages. As such, most, if not all,

of the potential non-party witnesses work and presumably reside in the Central District, and in any event, outside of the Northern District, Eastern Division.

For those potential non-party witnesses that reside in the Southern District, the Federal District Court located in Springfield, Illinois is less than one-hundred fifty (150) miles from Menard, while the Federal District Court sitting in Chicago, Illinois is almost three-hundred fifty (350) miles away. Thus, the Central District is a more convenient location than the Northern District, Eastern Division for these non-party witnesses as well.

Based upon the information Gay and his attorneys provided in connection with the Article, Plaintiff's brief time at Dixon near the end of his incarceration was relatively uneventful. ("Exhibit 2 at pages 7-8). Notwithstanding, even if there are potential non-party witnesses that work at Dixon (which is within the geographical boundaries of the Northern District, Western Division), the Federal District Court in Springfield, Illinois is only one-hundred seventy (170) miles from that facility, while the Court sitting in Chicago, Illinois is almost one-hundred twenty (120) miles from Dixon.[14] Thus, this distance is negligible when comparing it to the distance between Chicago, Illinois and the potential witnesses residing in the Central and Southern Districts.

Based upon the foregoing, when balancing the interests of the non-party witnesses, it is evident that the Central District is the most convenient location to litigate this case; and in any event, Chicago, Illinois is the least convenient venue in Illinois for these individuals. Consequently, this case serves as a prototypical example of when a Court should exercise its discretion pursuant to § 1404, and this matter should be transferred to the Central District.

---

[14] There is also a federal District Court sitting in Rock Island, Illinois, which is less than eighty (80) miles from Dixon.

### *3. Convenience of the Parties*

The next private factor to consider is the convenience of the parties in this action. In doing so, the Court will consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L–3 Services, Inc.,* 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011); *Body Science LLC v. Boston Scientific Corp.,* 846 F. Supp. 2d 980, 996 (N.D. Ill. 2012) (citing *Hanley v. Omarc, Inc.,* 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998)).

Here, Plaintiff resides within the geographical boundaries of the Central District. (ECF #1 at ¶ 9). It is believed that Plaintiff has the least amount of means to bear the expenses in litigating a case almost two-hundred (200) miles away from his home. As such, in the interest of the convenience of the parties, including Gay himself, this case should be transferred to the Central District.[15]

### 4.     *The Access to Sources of Proof*

The last convenience factor concerns the relative ease of access to evidence. In the case at bar, the parties will need the records relative to Gay's post-incarceration mental health treatment, which are located within the geographical boundaries of the Central District. In addition, it is believed that Gay's grievance records are located at the IDOC office in Springfield, Illinois, which is also within the geographical boundaries of the Central District. As such, this convenience factor also favors transfer to the Central District.

**B. Interest of Justice (or Public) Factors**

Relevant interest of justice factors under the transfer statute include: "docket congestion and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative familiarity with the relevant law, . . . the respective desirability of resolving controversies in each

---

[15] There is a Federal District Court for the Central District located in Rock Island, Illinois.

locale, . . . and the relationship of each community to the controversy[.]" *Research Automation*, 626 F.3d at 978 (internal citations omitted). The interest of justice may be determinative, warranting transfer or its denial, even where the convenience of the parties and witnesses points toward the opposite result. *Id.* (citing *Coffey*, 796 F.2d at 220–221). With these principles in mind, the interest of justice strongly favors transfer to the Central District.

### 1. *Relationship of Communities to Litigation and Desirability of Resolving Case in Each Locale*

"Resolving litigated controversies in their locale is a desirable goal of federal locale, each court's relative familiarity with the relevant law, and potential speed to trial in the prospective forums. *Van Dusen*, 376 U.S. at 626-27; *Chicago, Rock Island & Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955); *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002); *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998); and *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986). The interest of justice consideration can be *determinative*, requiring transfer even in cases where the convenience of the parties and witnesses suggests the opposite result. *Research Automation, Inc.*, 626 F.3d at 978, citing *Coffey*, 796 F.2d at 220-21 [emphasis added]. The most compelling factor for this analysis is the community's interests. *Amoco Oil Co.*, 90 F. Supp. 2d at 962. In this case, both the community's interest and convenience heavily weigh in favor of transfer to the Central District.

To this end, the residents of the Northern District, Eastern Division have no interest in deciding this matter, as none of the material events giving rise to Plaintiff's claims took place there. To the contrary, a large majority of the events giving rise to this case took place in or near the Central District; and in any event, much closer to the Central District than Chicago, Illinois. Specifically, Plaintiff's placement in solitary confinement and the twenty (20) criminal

convictions that lead to the extension of his sentence occurred in the Central District. Plaintiff claims that the injustice committed by people and government of Livingston County was a key contributor to the constitutional violations in this case. Thus, the residents of the Central District certainly have an interest in resolution of this case. In addition, the Plaintiff and most of the individuals involved in this case live in or close to the Central District, and nowhere near the Northern District, Eastern Division. Accordingly, the Central District has the strongest relationship to this controversy and a far greater desirability of resolving this matter than the Northern District, Eastern Division.

### 2. Familiarity with Applicable Law

Here, both the Central and Northern District have equal familiarity with the applicable law to this case. Because judges in both districts are equally competent to preside over these questions, this factor has little bearing when determining a proper venue between two similarly situated districts.

### 3. Speedy Case Resolution

For purposes of evaluating the factor of the speed at which this case will be resolved, this Court should look to the reports from the Federal Court Management Statistics. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). The most relevant statistic is the median months from filing to disposition. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995).

Here, there is only a negligible difference in the speed of filing to disposition between the Central District and the Northern District.[16] Accordingly, based on the Central District's strong ties to this controversy and strong interest in resolving this matter, the interest of justice in this

---

[16] According to the Federal Court Management Statistics, in the twelve month period ending March 31, 2018, the median time period from filing to disposition of civil cases was 8.1 months in Northern District compared to 8.4 in Central District.

14

case weighs strongly in favor of transfer to the Central District. *Research Automation, Inc.*, 626 F.3d at 978.

**C. Summary of Balance**

After analyzing all of the factors for transfer under 28 U.S.C.S. § 1404(a), it is clear that the balance warrants transfer of this action to the Central District of Illinois. To this end, the convenience to all of the parties and non-party witnesses, as well as the interests of justice, weigh significantly in favor of transfer.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., WILLIAMS PUGA, M.D., KELLY RENZI, PSY.D., PIERRE NUNEZ, PhD., the STATE OF ILLINOIS, JAMES R. BALDWIN, SYLVIA BUTLER and MELVIN HINTON, respectfully request that this Honorable Court transfer this case, *instanter*, to the United States District Court for the Central District of Illinois for all further proceedings.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ *Joseph J. Lombardo*
One of the Attorneys for Defendants,
WEXFORD HEALTH SOURCES, INC.,
WILLIAM PUGA, M.D., KELLY RENZI, PSY.D.
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
jlombardo@cassiday.com

Kwame Raoul, Attorney General of Illinois

By: __/s/ *Nicholas S. Staley*_____
    One of the Attorneys for Defendants,
    the STATE OF ILLINOIS, JOHN R.
    BALDWIN, SYLVIA BUTLER and MELVIN
    HINTON
    Assistant Attorney General
    100 W. Randolph, 13th Floor
    Chicago, Illinois 60601
    nstaley@atg.state.il.us


Donohue Brown Mathewson & Smyth LLC

By: __/s/ *Laura C. Ieremia*_____
    One of the Attorneys for Defendant,
    PIERRE NUNEZ, PSY.D.
    140 S. Dearborn Street, Suite 800
    Chicago, IL 60603
    (312) 422-4905
    liermia@dbmslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Joseph J. Lombardo*

9048278 JLOMBARD;JLOMBARD