IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-07196 |
| v. | ) | Hon. Sara L. Ellis |
| THE STATE OF ILLINOIS, *et al.*, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

Plaintiff here responds in opposition to Defendants' motion to transfer venue (ECF 26).

**I.     Introduction**

Even though Plaintiff Anthony Gay was mentally ill, Defendants placed him in solitary confinement for years.  Defendants did not hold Plaintiff in a single cell, however.  Rather, over the course of his imprisonment they moved him among numerous solitary cells in a number of different prisons.  Those facilities are spread all over Illinois; indeed, Plaintiff's solitary confinement occurred in six of the state's eight federal divisions.[1]

By this action, Plaintiff sues for his injuries resulting from that wrongful solitary confinement.  He lives in Rock Island, Illinois, and thus happens to reside in one of the state's two federal forums where none of the incarceration giving rise to his claims occurred.  Instead he has brought suit in this forum, where he was subject to four months of the solitary confinement that gives rise to his claims, at Stateville Correctional Center ("CC").

Defendants evidently have decided that this is not an attractive forum for them, and have moved for a "convenience" transfer.  They face multiple problems, however.  One problem:

---

[1]  Attached as **Exhibit 1** is a map showing the relevant prisons and federal divisions in this case.

1

because part of the solitary confinement giving rise to Plaintiff's claims did in fact occur in his chosen forum, case law gives considerable weight to his decision to bring his suit here. Another problem: Defendants seem to be angling for a transfer to the Central District's Springfield Division (their brief repeatedly hints Springfield is a convenient locale), but the only prison in that division, Logan CC, housed Plaintiff for only three months—less than his time at Stateville CC. And another: the bulk of Plaintiff's solitary confinement did not occur in the Central District at all, but rather in the Southern District—yet Defendants do not seek transfer there.

To press their motion, therefore, Defendants are forced to resort to a variety of clumsy work-around arguments. Each of them fails:

- To get around the time Plaintiff was confined at Stateville CC, Defendants suggest that the material events in this case do not really concern solitary confinement at all, but rather the civil and criminal litigation in which Plaintiff was involved during the course of his incarceration. But Defendants never explain how those cases give rise to any of the claims in this one, and indeed this "argument" has no apparent purpose besides shifting attention away from the months of solitary confinement to which Plaintiff was subjected in his chosen forum.

- Because they cannot make a straightforward request for transfer to the Springfield Division, Defendants never actually say where in the Central District they are seeking a transfer. Instead, they treat the Central District as a single super-forum, going back and forth among its four divisions, whose courthouses sit nearly 200 miles apart, and citing one and then another as a convenient venue depending on the issue at hand. (Meanwhile Defendants fastidiously observe the distinction between the Northern District's two divisions, each of which contains a prison where Plaintiff was subject to solitary confinement.)

- To get around the fact that less than a third of Plaintiff's solitary confinement occurred in any part of the Central District, Defendants again assert that this case is really about

the criminal "assault" charges that Plaintiff was subject to while he was at Pontiac CC, in the Central District's Peoria Division. That is nonsense. Plaintiff does not claim that those convictions or the length of his prison sentence were unlawful, any more than he challenges the original charges that sent him to prison. What Plaintiff charges as unlawful, and what gives rise to his claims, is his placement in solitary confinement at various facilities around the state—including Stateville CC.

- Having asserted that the events at Pontiac CC are the lynchpin of this case, Defendants then claim witnesses at Pontiac CC are outside of this Court's subpoena power. This betrays a misreading of Rule 45, and a failure to consult a map. Pontiac CC is only 87 miles from the Dirksen Building, placing anyone who works there well within this Court's plenary subpoena power. Indeed, three of the prisons where Plaintiff was confined (Pontiac CC, Stateville CC, and Dixon CC) are all within a 100-mile radius of this Court. And as Plaintiff explains herein, witnesses at Dixon CC actually *are* likely to possess highly relevant evidence, making this Court a particularly convenient forum for this suit. Furthermore, under Rule 45, this Court's *trial* subpoena power—the critical point of analysis in venue motions—extends everywhere in the state, and thus encompasses every prison in Illinois.

- Defendants claim that the times to disposition in the Central and Northern Districts are comparable, so this "public" factor is neutral. But the statistics Defendants cite are six months out of date. The current statistical report shows the times to both disposition and trial have diverged, and are now materially shorter in the Northern District.

\* \* \*

A plaintiff's choice of forum is entitled to considerable deference, particularly if it is the site of material events that give rise to his claims. That is the case here. What is more, this Court is convenient not only for witnesses from Stateville CC, but also from both Pontiac CC (whom Defendants claim are critical to this case) and Dixon CC (who, as explained herein, are

actually likely to have important evidence in this case). In other words, this is an appropriate and convenient forum. Defendants have not carried their "heavy" burden to show that their preferred—yet, unidentified—forum is clearly more convenient. Their motion should be denied.

**II.     Argument**

Defendants concede that venue lies in this forum under 28 U.S.C. § 1391, but they nonetheless move to transfer venue for convenience, pursuant to 28 U.S.C. § 1404(a). As Defendants correctly recite, in making a Section 1404(a) determination, the Court looks to both the "private" and "public" interests at stake. (ECF 26 at 6.) This is not a neutral assessment, however. The party seeking a Section 1404(a) transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is *clearly* more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (emphasis added). That burden "is a heavy one." *Payne v. AHFI Neth., B.V.*, 482 F. Supp. 1158, 1164 (N.D. Ill. 1980). "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). It is not enough for the movant to show that the factors "slightly favor transfer." *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17-cv-7216, 2018 WL 1616957, at *5 (N.D. Ill. Apr. 4, 2018) (Ellis, J.). Rather,

> the purpose of § 1404(a) transfer is not to make incremental improvement: it is reserved for when the transferee venue is clearly more convenient. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum is rarely disturbed.

*Id.* (citations and internal quotation marks omitted). Defendants' motion actually shows that this is an amply convenient forum to litigate this case. Transfer is unwarranted.

   **A.     The "private" interest factors favor the current forum.**

Section 1404(a)'s "private" factors weigh (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the

witnesses, and (5) the convenience to the parties of litigating in the respective forums. *Id.* at *2. These factors all favor Plaintiff's chosen forum.

1. *Plaintiff's chosen forum and site of material events.*

Plaintiff lives in the Rock Island Division of the Central District. As noted above, none of Plaintiff's solitary confinement occurred in that forum. Rather, it occurred in six of the state's eight other federal court divisions—including in this forum, where he brings his suit.

"Courts traditionally show a strong preference for conducting litigation in the plaintiff's chosen forum." *Aramark Mgmt. Servs. Ltd. P'ship v. Martha's Vineyard Hosp., Inc.*, No. 03-cv-1642, 2003 WL 21476091, at *2 (N.D. Ill. June 23, 2003). That is particularly so where some of the material events giving rise to the plaintiff's claims occurred in the forum he chose. *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 955 (N.D. Ill. 2017).

The four months that Plaintiff was confined at Stateville CC are material events that give rise to Plaintiff's claims. As Plaintiff points out in his complaint, the American Correctional Association, the leading accrediting body for the corrections industry, has concluded that mentally ill prisoners should never be placed in solitary confinement for more than 30 days. (ECF 1 ¶ 34.) Plaintiff's confinement at Stateville CC alone lasted four times that long. Of course, Plaintiff was housed in solitary confinement elsewhere as well. But there is simply no center of gravity in this case. The bulk of the relevant incarceration occurred in the Benton Division of the Southern District (where Tamms CC, Menard CC, and Shawnee CC are all located). Less than a third occurred in the Central District (at Pontiac CC, in the Peoria Division, and Logan CC, in the Springfield Division), while nearly two years of it occurred in the two divisions of the Northern District (Stateville CC and Dixon CC). (*See* ECF 26 at 4.) Plaintiff selected this forum, and material events giving rise to his claims occurred in this forum. His choice of forum is therefore entitled to significant weight. *See, e.g.*, *Vines v. Ill. Mun. League*,

No. 09-cv-6978, 2010 WL 1050189, at *3 (N.D. Ill. Mar. 18, 2010) (even though "many important events" giving rise to Plaintiff's claim occurred in the Central District, this fact is "not sufficient to overcome" Plaintiff's choice to bring suit in the Northern District because some of the events giving rise to Plaintiff's claims occurred in the Northern District as well); *Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1256 (D.N.M. 2013) ("The fact that some of the infringing acts occurred in [plaintiff's chosen] forum . . . is a significant enough connection to give the preference to the plaintiff's chosen forum." (citing *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 549 (S.D.N.Y. 2008)).

  To overcome Plaintiff's choice, Defendants claim that "none" of the material events giving rise to Plaintiff's claims occurred in the Eastern Division. (ECF 26 at 8.) As an initial matter, this argument renders untenable Defendants' repeated suggestion that Springfield is an appropriate forum (*see* ECF 26 at 11, 12), since Plaintiff spent less time at Logan CC than he did at Stateville CC. And in all events, Defendants' support for this claim consists of red herrings. Defendants leading argument is that "none of [the] criminal cases or civil suits" in which Plaintiff was involved during his incarceration were brought at Stateville CC. (ECF 26 at 8.) Why does that matter? Plaintiff does not claim that he was wrongfully convicted in his criminal cases, or that he was denied access to the Courts in his civil ones. The litigation in which he was involved during his incarceration are not the events that give rise to Plaintiff's claims in this case, any more than the initial conviction and probation violation that sent him to prison. (*See* ECF 1 at 1.) It is Plaintiff's extended solitary confinement that gives rise to his claims, and part of that solitary confinement occurred in this forum.

  In the same vein, Defendants stress that Plaintiff has only named individual defendants at the Pontiac, Menard, and Dixon prisons. (ECF 26 at 8.) This ignores that Plaintiff has also named (as a "Doe" defendant) the IDOC's Northern Region Psychology Supervisor, whose

jurisdiction includes Stateville CC.  (*See* ECF 1 ¶ 15.)  But more importantly—why does this matter, either?  The solitary confinement giving rise to Plaintiff's claims did not occur only at facilities where Plaintiff named individual defendants.  Plaintiff did not name any individual defendants at Tamms CC, yet he spent 10½ years of solitary confinement there. (*See* ECF 26 at 4.)  Defendants cannot contend that his confinement at Tamms CC is not material to his claims.

The conduct giving rise to this case is Plaintiff's wrongful solitary confinement.  That confinement occurred throughout the state, including in this forum.  Thus material events giving rise to Plaintiff's claims occurred in this forum.  His choice of forum is entitled to substantial deference.  This factor weighs against transfer.

> **2.** *The convenience of witnesses favors the current forum*.

The second factor to be considered is the convenience of witnesses.  As Defendants explain, "[t]he nature of the witnesses' testimony and whether they can be compelled to testify are overarching concerns."  (*Id.* at 9 (citation omitted).)  Specifically, the court focuses on "the court's power to compel the appearance of unwilling witnesses at trial" in the forum in question.  *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995).

Defendants' arguments regarding this factor actually show that this forum is a preferable one for litigating this case.

**Pontiac CC witnesses**.  Defendants' leading argument is that transfer is necessary because "an overwhelming majority of the material events giving rise to this case took place at Pontiac," which lies in the Peoria Division of the Central District.  (ECF 26 at 10.)  There are multiple problems with this argument.  *First*, Defendants don't substantiate that the events at Pontiac CC are the "overwhelming" material events in this case.  They note that Plaintiff spent his time at Pontiac in solitary (*id.*), but he did so in a number of other facilities as well, and for longer periods.  Defendants emphasize that Plaintiff's convictions for "assaults" on guards

7

occurred at Pontiac CC, but as Plaintiff explains elsewhere (*supra* at 2-3, 6; *infra* at 13), it is Plaintiff's housing in solitary confinement that gives rise to his claims. **Second**, the witnesses Defendants identify are "correctional and medical staff" at Pontiac CC. (ECF 26 at 10.) Those witnesses are Defendants' employees, and "[t]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses." *Medline Indus.*, 2018 WL 1616957, at *3 (quotation omitted).

**Third**, contrary to what Defendants' claim (*see* ECF 26 at 10), **Pontiac CC lies within this Court's subpoena power**. Pontiac CC is only 87 miles from the Dirksen Federal Courthouse[2] and indeed all but a few uninhabited corners of Livingston County, where Pontiac CC is located, are within a 100-mile radius of the Court.[3] Under Rule 45(c), the Court has subpoena power to compel live testimony generally over any person who "resides, is employed, or regularly transacts business in person" within 100 miles of the courthouse Fed. R. Civ. P. 45(c)(1)(A), which includes anyone working at Pontiac CC or living almost anywhere in Livingston County. Thus assuming *arguendo* that Pontiac CC is particularly important in this case, this Court thus is a presumptively convenient forum for anyone employed at Pontiac CC.

Moreover, under Rule 45(c)(1)(B)(ii), this Court has **trial** subpoena power over any witness who lives or works anywhere in the state, even if the witness is more than 100 miles from the courthouse. *See Simes v. Jackson Nat'l. Life Ins. Co.*, No. 05-cv-3816, 2005 WL 2371969, at *4 (N.D. Ill. Sept. 22, 2005) ("[T]he ability to subpoena witnesses for live testimony extends to a one hundred mile radius of the federal courthouse where the witnesses will be asked

---

[2] Distance measured using Google Maps "measure a distance" tool.

[3] The 100-mile radius is measured as a straight line. *See, e.g., Hill-Jackson v. FAF, Inc.*, No. 10-cv-364, 2010 WL 3403882, at *3 (N.D. Ill. Aug. 25, 2010) (measuring "100 mile-radius" subpoena power as a "straight-line distance"); *Maine Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 6696042, at *3 (W.D. Wis. Dec. 20, 2018) (collecting cases and explaining that straight-line measurement, rather than driving distance, defines the Rule 45 100-mile radius subpoena power). The driving distance from Pontiac CC to the Dirksen Building is also less than 100 miles.

to testify and to all points within the state in which the trial is held."). The only qualification to this statewide subpoena power is that if the witness is more than 100 miles away, Rule 45(c)(1)(B)(ii) provides that "the party that served the subpoena may pay that expense [of travel] and the court can condition enforcement of the subpoena on such payment." Fed. R. Civ. P. 45(c) advisory committee's note to 2013 amendment. If for some reason a Pontiac CC witnesses—or any Illinois witness—is more than 100 miles from the Court and is needed for trial, both sides in this case have the resources to defray that witness's reasonable expenses.

**Dixon CC witnesses**. Defendants claim that Plaintiff's incarceration at Dixon CC, which lies in the Western Division of the Northern District, was "relatively uneventful," and that in any event Dixon CC lies outside of this Court's subpoena power. (ECF 26 at 11.) This is wrong on both counts. Plaintiff's incarceration at Dixon CC is important to this case, because it is stark evidence that that he should have, and could have, been removed from solitary confinement much earlier. At the beginning of his time in Dixon CC, as they had at other prisons, Defendants kept Plaintiff in solitary confinement, where he continued to suffer immensely. (*See* ECF 1 ¶ 29 (listing multiple events of self-harm occurring between February and May of 2018).) As the Complaint explains, however, toward the end of Plaintiff's time at Dixon in 2018, Defendants finally provided him with regular therapy and allowed him to leave his cell and interact with other people. (ECF 1 ¶ 37.) When they did this, Plaintiff's mental health improved dramatically. (*Id*.) Plaintiff's experience at the end of his time at Dixon CC thus places his years of solitary confinement in high contrast, and witnesses there—from prison employees to medical providers to other prisoners—will likely have ample, valuable evidence to offer in in this case.

The bulk of these witnesses will be employees or prisoners of Defendants, and as such their "convenience" is not accorded significant weight because they are under Defendants' control. *See Medline Indus*., *supra* at 8. And in all events, **Dixon CC lies within this Court's**

9

*subpoena power*.  Dixon CC is 95 miles from the Dirksen Federal Courthouse, and the entire City of Dixon lies well within this Court's 100-mile radius.[4]  And as with Pontiac CC, under Rule 45(c)(1)(B)(ii) this Court has trial subpoena power over any Dixon CC witness in the state.

**Rock Island witnesses**.  Noting that Plaintiff now lives in Rock Island, Defendants assert Plaintiff's family members and mental health providers are likely to be "key witnesses in this case regarding both liability and damages," (ECF 26 at 10), and because Rock Island lies within the Central District, Defendants go on, transfer is warranted.  (*Id.* at 10-11.)

There are several problems with this argument.  ***First***, Defendants have not substantiated the importance of the Rock Island witnesses.  As moving parties Defendants must identify the key witnesses in the case and explain the "nature and quality of the witnesses' testimony with respect to the issues in the case." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995).  But Defendants simply declare that Rock Island witnesses will be "key" witnesses regarding "liability and damages," with no explanation.  Indeed the "Rock Island" witnesses are less likely to be core witnesses in this case.  Plaintiff's mental decompensation occurred while he was in prison, and his recovery—when he was finally let out of solitary, at Dixon (*see* ECF 1 ¶ 37)—began there as well.  The evidence in this case is likely to center on those events.

***Second***, Defendants' "Rock Island" argument implicitly treats the Central District as a single forum with four courthouses.  Rock Island is less than 100 miles from the Northern District's Rockford courthouse, but it is more than 120 miles from Springfield and more than 150 miles from the Urbana Division.  On the other hand, if Defendants are proposing to transfer the case to the Rock Island Division, the Rock Island courthouse is more than 100 miles from Pontiac CC, on which Defendants place the central emphasis of this case.

---

[4]  Distances measured using Google Maps "measure a distance" tool.

And as noted above, this Court has trial subpoena power over any witness in the state, including any witness residing in Rock Island. If such a witness is needed for trial, the parties can reimburse their reasonable expenses.

**Southern District witnesses**. Finally, Defendants argue that the Central District is more convenient for witnesses who live in the Southern District. (ECF 26 at 11.) Such witnesses are likely to be Defendants' employees, though, so this consideration is entitled to little weight. (*See Medline Indus.*, *supra* at 8.) And Defendants have the burden to establish why testimony from witnesses in the Southern District will be important, yet they make no effort to do so.

What is more, the bulk of Plaintiff's solitary confinement in the Southern District was at Tamms CC, at the southern tip of the state. Tamms CC is more than 200 miles from Springfield, 272 miles from Peoria, 230 miles from Urbana, and 370 miles from Rock Island. It might well be more convenient for a witness facing such distances to fly instead, and travel-reservation websites show that a flight from nearby Barkley Regional Airport to any Central District courthouse would connect through O'Hare Airport in Chicago, would take longer, and would be significantly more expensive than a simple flight to Chicago.

*   *   *

In addition to Stateville CC, both Pontiac CC, on which Defendants place emphasis, and Dixon CC, where numerous important witnesses are actually likely to be found, are within 100 miles of the Dirksen Building, making this Court a presumptively convenient location for trial. The events in this case took place in prison, so any witnesses located more than 100 miles from the Court are likely to be employed or incarcerated by Defendants and thus under their control. And when it comes to trial this Court will have the same subpoena power as any putative transferee forum. The convenience of potential witnesses does not favor transfer.

3.  *This is a convenient forum for the parties*.

This factor assesses the Parties' residences and their ability to bear expenses in a particular forum.  Defendants make no claim that this forum is an inconvenient one for them. (*See* ECF 26 at 12.)  Instead they claim that Plaintiff, who lives approximately 168 miles' drive from Chicago, would be better served by litigating this case elsewhere.  This argument goes nowhere.  It is not for Defendants to instruct Plaintiff about what is convenient for him.  Plaintiff has chosen to litigate this case in Chicago, so the Court can presume it is a convenient forum for him.  And Defendants do not identify which division of the Central District they would propose to transfer this case, some of which lie farther from Rock Island than Chicago.  Defendants have not shown that the "Central District" is more convenient for the parties than Chicago.

4.  *Ease of access to evidence*.

Defendants claim that this factor favors litigation in the Central District, because Plaintiff's medical and prison records are stored there.  (ECF 26 at 12.)  But given the ease of scanning and transmitting documentary evidence, this factor is irrelevant and is entitled to no weight.  *See Cent. States, S.E. and S.W. Areas Pension Fund v. Bergquist*, No. 17-cv-2054, 2018 WL 1014511, *3 (N.D. Ill. Feb. 22, 2018) ("The relative ease and access to sources of proof is a neutral factor given the ease of transferring electronic documents.").  Prison records are routinely scanned and transmitted electronically, and they undoubtedly will be in this case.

B.  **The "public" interest factors are neutral or favor the current forum**.

The "public" interest factors assess the relation of the community to the occurrence at issue in the litigation and prospects for an earlier resolution.  *N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 792 (N.D. Ill. 1995).  Defendants claim these factors favor transfer, but again their arguments do not hold up.

1. *Relation of the community to the occurrence at issue.*

Defendants claim that "the residents of the Central District" have an "interest in the resolution of this case" because it was prosecutors in Livingston County who charged Plaintiff with multiple "assaults" on correctional officers, while he was housed in Pontiac CC. (ECF 26 at 14.) But none of Plaintiff's claims arise from his criminal charges at Pontiac CC, any more than they arise from the initial prosecution that caused him to be incarcerated in the first place. Neither Livingston County prosecutors, nor any of the guards who pressed charges, are parties to this case. This case is about the placement of Plaintiff in solitary confinement notwithstanding his mental illness, which was inflicted upon him all over the state, including in this forum.

The real issue in this case—Plaintiff's wrongful solitary confinement—should be of concern to any resident of the state. Plaintiff's mistreatment was carried out by a state agency, and done in the name of the people of Illinois, including the residents of the Eastern Division. This factor does not weigh in favor of transfer.

2. *Prospect of speedy resolution.*

Defendants argue that the difference in time to disposition is essentially the same in the Northern and Central Districts. (ECF 26 at 14.) Citing Federal Judiciary statistics, they say that the time from filing to disposition is 8.1 months in the Northern District and 8.4 months in the Central District. (*Id.* at 14 n. 16.) But Defendants cite statistics from a report for the year ending March 31, 2018. The Federal Judiciary has issued two reports since then, for the year ending on June 30 and on September 30, 2018. As of the most recent, September report, the times to resolution in the two districts have diverged: in the Northern District median times are 7.6 months to disposition 37.8 months to trial, while in the Central District they are 9.1 months to disposition and 44.0 months to trial.[5] Differences of this magnitude are material. *See Law*

---

[5] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2018.pdf

*Bulletin Pub., Co. v. LRP Pubs.*, Inc., 992 F. Supp. 1014, 1020 (N.D. Ill. 1998) (holding that a net difference of two months in the time from filing to disposition and trial weighed in favor of the faster district). This factor weighs against transfer.

### III. Conclusion

The balance of the convenience favors keeping the case in this forum. Indeed, Defendants have failed even to identify or propose an actual forum to which the case should be transferred, and in all events they have not carried their burden to show that any forum in the Central District is "clearly" more convenient than the current forum.

The Court should deny Defendants' motion.

Dated: February 15, 2019

Respectfully submitted,

/s/ *Stephen H. Weil*

Antonio Romanucci - aromanucci@rblaw.net
Nicolette Ward - nward@rblaw.net
Romanucci & Blandin, LLC
321 North Clark St., Suite 900
Chicago, IL 60654
(312) 458-1000

Stephen H. Weil – steve@weilchardon.com
Alexis G. Chardon – ali@weilchardon.com
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
312-585-7404

Maggie E. Filler*
Roderick & Solange MacArthur Justice Center
745 Atlantic Avenue, 8th Floor
Boston, MA 02111
(857) 284-1455
maggie.filler@macarthurjustice.org
* *pro hac vice*

Daniel M. Greenfield
Roderick & Solange MacArthur Justice Center
Northwestern University - Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-8538
daniel-greenfield@law.northwestern.edu

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Stephen H. Weil, a licensed attorney (ARDC No. 6291026) hereby certify that on February 15, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system.

                    /s/ Stephen H. Weil