# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ANTHONY GAY,

Plaintiff,

v.

THE STATE OF ILLINOIS, et al.

Defendants.

Case Number  18-cv-7196

Judge Sara L. Ellis

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COME Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., by and through their attorneys, Matthew H. Weller and Joseph J. Lombardo of CASSIDAY SCHADE LLP, and for their Answer to Plaintiff, ANTHONY GAY'S, Complaint, state as follows:

### INTRODUCTION

When Anthony Gay was a teenager, he got into a fight with another teen who had insulted his sister. The teen claimed that Anthony had stolen his hat and a $1 bill in the process, so Anthony was charged with robbery. Anthony pleaded guilty, received a suspended prison sentence, and was placed on probation. Then, in another youthful error, Anthony violated his probation by driving a car without a license. As a result of these two events, in 1994 Anthony – then only 20 years old – was imprisoned by the Illinois Department of Corrections ("IDOC"). With good behavior, he should have been released in 3½ years.

But Anthony suffers from borderline personality disorder. After he was imprisoned the symptoms of this mental illness manifested, and he began to act out. Instead of providing treatment for his mental illness, the IDOC cited him for a variety of violations. Eventually, in 1998, the IDOC placed Anthony in solitary confinement—and it kept him there for the next

twenty years. For twenty years, Anthony lived alone in a small, bare, stifling cell, where he was deprived of all human contact for close to 24 hours per day.

The impact of solitary confinement on Anthony was catastrophic. Deprived of any sustained human interaction, Anthony's mental condition deteriorated, and he began to engage in horrific acts of self-mutilation. He cut his forearm and his neck. He cut into his left inner thigh and wove the wound together with strips of a blanket. He cut into his scrotum and embedded a zipper there. He cut off a testicle and hung it on his cell door. He cut open his scrotum again and pierced it with paperclips. He mutilated his penis on multiple occasions, embedding a pen, plastics, and a zipper into the cuts. He stuck a pen into his eyelid and stabbed his thigh with a spoon, so deep that it had to be removed surgically. His documented acts of self-mutilation number in the dozens and continued for nearly the entirety of his solitary confinement.

It was plain for anyone to see that solitary confinement was ravaging Anthony's mind, and that he was in desperate need of appropriate mental healthcare. But instead of placing Anthony in a setting that would alleviate the impact on his mind, or providing him treatment to get better, the Defendants responded by prolonging Anthony's extreme isolation, depriving him of access to human contact, programming, mental health care, and activities—for decades.

As a result, Anthony's torture was both compounded and extended. Solitary confinement had triggered Anthony's mental illness, causing him to act erratically and irrationally. One manifestation was Anthony's self-mutilation. Another was irrational "assaults" on prison staff, in which Anthony would do things like throw his body fluids at prison guards through cracks in his cell door. Instead of recognizing these acts for the manifestations of mental illness that they were, the Defendants doubled down. Anthony was given "tickets" that punished him with consecutive sentences of solitary confinement until the year 2152 – or two lifetimes of solitude.

Anthony was also charged criminally for his "attacks" on prison staff, which ultimately extended his actual prison sentence by about fifteen years, with all but a few weeks of it to be served in solitary.

This extreme isolation continued even though in Rasho v. Baldwin, No. 07-cv-1298 (C.D. Ill.), an ongoing class action concerning the IDOC's treatment of mentally ill prisoners, the Defendants acknowledged that Anthony was among a handful of IDOC prisoners who were so mentally ill that they needed acute, inpatient psychiatric care. Defendants refused to provide this care. Instead, they continued to hold Anthony in extreme isolation, with the devastating impact that Anthony continued to mutilate himself.

All told, Anthony spent nearly two decades in solitary confinement in a state of acute mental decompensation. By the time he was finally released from prison in 2018, he had mutilated himself hundreds of times. Throughout his solitary confinement, it was obvious to the Defendants that Anthony was in desperate need help. And at any point during his confinement, they could have rescued him, either by providing adequate services within prison or by transferring him to inpatient psychiatric hospital. For the Defendants, however, it was simply more convenient to deal with a difficult inmate by keeping him locked away in an isolation cell. That "solution" inflicted decades of unthinkable pain on Anthony, and continues to harm him after his release.

Through their actions and inaction in the face of Anthony's obvious mental decompensation, the Defendants tortured Anthony. This lawsuit seeks to hold the Defendants accountable for the injuries that they inflicted on Anthony by holding him in solitary confinement for two decades.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the "Introduction" section of plaintiff's complaint, as the remarks contained therein do not constitute allegations requiring an answer. To the extent that the introduction section could be construed as containing allegations against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

## NATURE OF THE ACTION

1.      Anthony Gay asserts the following claims to redress the egregious abuse that the Defendants inflicted upon him:

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that plaintiff has brought forth claims, as asserted in Counts I-IV of his complaint. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the remaining allegations contained in paragraph 1 of plaintiff's complaint.**

2.      *Count One*—Eighth Amendment. By placing Anthony in extended solitary confinement notwithstanding its obvious, devastating impact on his mental health, the Defendants inflicted cruel and unusual punishment on Anthony, exhibited deliberate indifference to his serious medical needs, and inflicted punishment on him for no legitimate penological purpose. This caused extreme mental anguish, suffering, and multiple physical injuries, in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., only, deny the allegations contained in paragraph 2 of plaintiff's complaint.**

3.      *Counts Two and Three*—Americans with Disabilities Act and Rehabilitation Act. The Defendants also discriminated against Anthony because of his mental illness, in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Anthony's

severe mental illness was a disability covered by the ADA and the RA. While the Defendants have policies to ensure that that IDOC prisoners with conventional medical needs (such as physical injuries or illnesses) receive the medical treatment they need, the Defendants did not provide equivalent treatment for Anthony's mental condition. Instead, they followed a continuing discriminatory policy of forcing him to undergo extended torture in solitary confinement, without appropriate treatment, until his sentence was completed.

> **ANSWER**: **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 3 of plaintiff's complaint because Counts II and III of plaintiff's complaint are not directed to them. To the extent the allegations in paragraph 3 or Counts II and III of plaintiff's complaint are construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

4.      In further violation of the ADA and the RA, the Defendants failed to provide reasonable accommodations for Anthony's disability. The Defendants provide IDOC prisoners with a variety of programs and services, and they are obligated not to segregate disabled and non-disabled persons. Among these is furnishing the basic human need of interaction with other persons. With reasonable accommodations to his disability, the Defendants could have provided Anthony with these programs and services, but they chose not to. Instead they placed him in extended solitary confinement. Anthony served years in disciplinary solitary confinement because he exhibited behaviors that were a result of the fact that the Defendants had put a disabled person in solitary confinement. Defendants' continuing policy of failing to provide these accommodations to mentally ill prisoners like Anthony resulted in his entrapment in a cruel, endless cycle, and the devastating consequences described in this Complaint.

> **ANSWER:** Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D.,** make no answer to the allegations contained in paragraph 4 of plaintiff's complaint because Counts II and III of plaintiff's complaint are not directed to them. To the extent the allegations in paragraph 4 or Counts II and III of plaintiff's complaint are construed against Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D.,** said allegations are denied.

5.      ***Count Four***—Fourteenth Amendment. Under the Due Process Clause, Anthony had a right to meaningfully challenge his placement in solitary confinement and show that he should not have been there. Had the Defendants provided this right, Anthony could have shown that his placement in solitary was improper, since it flowed from irrational acts arising from his mental illness, which was triggered by his confinement in solitary. The Defendants never afforded Anthony this opportunity, however, causing him to suffer the injuries described in this Complaint.

> **ANSWER:** Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D.,** make no answer to the allegations contained in paragraph 5 of plaintiff's complaint because Count IV of plaintiff's complaint are not directed to them. To the extent the allegations in paragraph 5 or Count IV of plaintiff's complaint are construed against Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D.,** said allegations are denied.

\*      \*      \*

6.      Anthony had the right to be free from cruel and unusual punishment and he had the right not to be mistreated or discriminated against because of his disability. By this action, Anthony seeks to vindicate those rights and to have the Defendants answer for the way they treated a vulnerable man with a severe mental illness, first by inflicting horrific damage on him by throwing him in solitary, and then by failing to treat the devastating illness that they themselves had both caused and exacerbated.

> **ANSWER:** Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny that paragraph 6 of plaintiff's complaint accurately states plaintiff's constitutional rights, and further deny the remaining allegations contained in paragraph 6 of plaintiff's complaint.

## II.  JURISDICTION AND VENUE

7.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's causes of action are brought under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

> **ANSWER:** Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit the allegations contained in paragraph 7 of plaintiff's complaint.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendants resides in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

> **ANSWER:** Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit the allegations contained in paragraph 8 of plaintiff's complaint. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny that this Court is a convenient venue for the reasons stated in Defendants' Motion to Transfer Venue Pursuant to 28 USC § 1404 (ECF No. 26).

## III.  PARTIES

9.     Plaintiff Anthony Gay is a resident of Illinois. Between 1994 and 2018, he was imprisoned by the IDOC at multiple prisons, including the Tamms, Dixon, Pontiac, Statesville, and Menard prisons. He now lives with his family in Rock Island, Illinois.

>     **ANSWER:** **On information and belief, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit the allegations contained in paragraph 9 of plaintiff's complaint.**

10.    Defendant State of Illinois operates the IDOC, which imprisoned Anthony and subjected him to solitary confinement, pursuant to a continuous policy, described herein, under which difficult, mentally ill prisoners were placed in prolonged solitary confinement instead of being provided with appropriate mental health treatment. The State of Illinois, and the IDOC, receive federal funding.

>     **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 10 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 10 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

11.    Defendant John R. Baldwin is the acting director of the IDOC. Defendant Baldwin is sued in his official and individual capacities. Defendant Baldwin had actual knowledge that solitary confinement both causes and exacerbates mental illness. He also knew that multiple severely mentally ill prisoners, among them Anthony Gay, were in critical need of inpatient psychiatric care and appropriate treatment that the IDOC was failing to provide. At all relevant times Defendant Baldwin had the power to ensure this treatment was provided by the IDOC, or to secure the transfer of these prisoners to mental health facilities operated by the Illinois Department of Human Services ("IDHS"). Defendant Baldwin took neither course of action.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 11 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 11 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

12.    Defendant Wexford Health Sources, Inc. ("Wexford") is a private company that was under contract to provide medical care and mental healthcare to the prisoners of the IDOC, including Anthony, during a number of years of Anthony's imprisonment. This care included the obligation to provide comprehensive and specialized mental health services, including any specialty and emergency care that was not provided at IDOC facilities. Despite its contractual obligations, however, by policy and practice Wexford did not provide on-site mental health services necessary to meet the needs of persons with severe mental illnesses like Anthony, nor did it transfer prisoners who needed such care to appropriate outside mental health facilities.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit Wexford is a private company that was under contract to provide medical care and mental healthcare to the prisoners of the IDOC, including plaintiff, during some of years of plaintiff's imprisonment. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the remaining allegations contained within paragraph 12 of plaintiff's complaint.**

13.    Defendant Jeff Sims is the IDOC's Central Region Psychology Supervisor. He is sued in his individual capacity. While Anthony was confined in the prisons under Defendant Sims' supervision, Sims was personally aware of the harm Anthony was incurring from solitary confinement, and had actual knowledge that Anthony needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Sims had the power to seek appropriate treatment for Anthony, but did not do so.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 13 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 13 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

14.    Defendant Shane Reister is the IDOC's Southern Region Psychology Supervisor. He is sued in his individual capacity. While Anthony was confined in the prisons under Defendant Reister's supervision, Reister was personally aware of the harm Anthony was incurring from solitary confinement, and had actual knowledge that Anthony needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Reister had the power to seek appropriate treatment for Anthony, but did not do so.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 14 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 14 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

15.    Defendant Dr. Doe 1 is IDOC's Northern Region Psychology Supervisor. Dr. Doe 1 is sued in his or her individual capacity. While Anthony was confined in the prisons under Defendant Dr. Doe 1's supervision, he or she was personally aware of the harm Anthony was incurring from solitary confinement, and had actual knowledge that Anthony needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Doe 1 had the power to seek appropriate treatment for Anthony, but did not do so.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 15 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 15 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

16.     Defendant Dr. Melvin Hinton is the Acting Statewide Mental Health Supervisor for the IDOC. He is sued in his individual capacity. Dr. Hinton was personally aware of Anthony's confinement and its impact on his mental health condition. Dr. Hinton also knew that Anthony needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Hinton had the power to seek appropriate treatment for Anthony, but did not do so.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 16 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 16 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

17.     Defendant Dr. Sylvia Butler is the Mental Health Director of Menard Correctional Center.  She is sued in her individual capacity. At all relevant times she was employed by Defendant Wexford. Dr. Butler was responsible for Anthony's psychiatric care at Menard when he was incarcerated there in 2015-2016, and she was aware that he needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Butler had the power to seek appropriate treatment for Anthony, but did not do so.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny Dr. Sylvia Butler was employed by Wexford at any time relevant to this lawsuit. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D and WILLIAM PUGA, M.D., make no answer to the remaining allegations contained in paragraph 17 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 17 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

18.     Defendant Dr. Kelly Ann Renzi is the Mental Health Director of Pontiac Correctional Center. She is sued in her individual capacity. Dr. Renzi was responsible for Anthony's psychiatric care at Pontiac when he was incarcerated there in 2017-2018, and she was aware that he needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Renzi had the power to seek appropriate treatment for Anthony, but did not do so.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that Dr. Renzi was employed by Wexford as the Mental Health Director of Pontiac from January 8, 2017 to January 16, 2018. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the remaining allegations contained in paragraph 18 of plaintiff's complaint.**

19.     Defendant Dr. William Puga was a physician at Pontiac Correctional Center. At all relevant times, he was employed by Defendant Wexford. He is sued in his individual capacity. Dr. Puga personally provided psychiatric care to Anthony at Pontiac from 2016-2018. Along with Dr. Renzi, Dr. Puga was responsible for Anthony's psychiatric care and was aware that he needed to be removed from solitary confinement, and needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Puga had the power to seek appropriate treatment for Anthony, but did not do so.

**ANSWER:**     **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that Dr. Puga was employed by Wexford as a psychiatrist from March 8, 2017 to February 28, 2018. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the remaining allegations contained in paragraph 19 of plaintiff's complaint.**

20.      Defendant Dr. Chess is the Mental Health Director of Dixon Correctional Center. He is sued in his individual capacity. At all relevant times he was employed by Defendant Wexford. Dr. Chess was responsible for Anthony's psychiatric care at Dixon in 2018 and was aware that he needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Chess had the power to seek appropriate treatment for Anthony, but did not do so.

**ANSWER:**     **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny Dr. Jamie Chess was employed by Wexford at any time relevant to this lawsuit. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the remaining allegations contained in paragraph 20 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 20 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

21.      Defendant Dr. Nunez is a physician at Dixon Correctional Center. At all relevant times, Dr. Nunez was employed by Defendant Wexford. He is sued in his individual capacity. Dr. Nunez personally provided psychological care to Anthony at Dixon in 2018. Along with Dr. Chess, Dr. Nunez was responsible for Anthony's psychiatric care and was aware that he needed psychiatric care and appropriate treatment that he was not receiving. At all relevant times Dr. Nunez had the power to seek appropriate treatment for Anthony, but did not do so.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that Dr. Nunez was employed by Wexford in 2018. Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that he provided, or offered to provide, mental health care to plaintiff at Dixon Correctional Center between March and July 2018. Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., further admit that plaintiff needed mental health treatment between March and July 2018. Dr. Nunez denies the remaining allegations contained in paragraph 21 of plaintiff's complaint.**

22.     Defendant Does 2-5 are sued herein by fictitious names for the reason that their true names are unknown to Plaintiff. These Doe defendants are administrators overseeing facilities where Anthony was held in solitary confinement, and who had a duty to provide inmates with a meaningful opportunity to challenge their solitary confinement placement. Despite their obligation to do so, the Doe defendants failed to provide such an opportunity to Anthony, prolonging his solitary confinement.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in paragraph 22 of plaintiff's complaint because they are not directed to them. To the extent the allegations in paragraph 22 of plaintiff's complaint can be construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

## IV.    FACTS

23.     In 1994, while he was still a teenager, Anthony Gay was charged with robbery—the result of an incident in which he got in a fight with another teen who had insulted his sister, and the teen claimed Anthony had stolen the teen's hat and a $1 bill. He pleaded guilty, was given a suspended prison sentence, and was placed on probation.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the allegations contained within Paragraph 23 of plaintiff's complaint.**

24.     Later that year, while still on probation, Anthony was pulled over and found to be driving without a license. He was adjudicated as having violated his probation, and a few days before Christmas 1994, at the age of 20, Anthony checked himself into the IDOC to begin serving a seven-year sentence. With credit for good behavior, he was eligible for release in 3½ years.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the allegations contained within Paragraph 24 of plaintiff's complaint.**

25.     Anthony could not maintain good behavior, however. He suffers from mental illnesses, including borderline personality disorder. The illness manifested in prison, causing Anthony to act erratically and to break prison rules. As a result of these infractions he lost his time credit for good behavior.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the allegations contained within Paragraph 25 of plaintiff's complaint.**

***By holding Anthony in prolonged solitary confinement, the Defendants tortured him.***

26.     In March 1998, as a result of his infractions, Anthony was placed in solitary confinement. He was confined to a cell roughly half the size of a parking space. He typically was not allowed outside the cell, even for meals, and his cell doors were constructed in a manner that made it virtually impossible to see outside. Anthony was sometimes let out of his cell for short periods of "exercise" in a small, confined space. Otherwise, he was confined to his cell and could not see, talk with, or interact with any other human being, even a guard. Between 1998 and 2018

Anthony was transferred among a series of similar small, stifling solitary confinement cells in the IDOC's Tamms, Dixon, Pontiac, Statesville, and Menard prisons. During this time period, Defendants conspired to ensure that Anthony was transferred from one solitary confinement cell to another, even when he was moved among prisons. He did not have sustained contact with another human being for twenty years.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., only, deny that they conspired to transfer plaintiff from one solitary confinement cell to another, and that Plaintiff did not have sustained contact with another human being for twenty years. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained within Paragraph 26 of plaintiff's complaint.**

27.     It has long been recognized that the conditions of solitary confinement can both cause mental illness and be especially devastating to persons suffering from mental illness. Indeed several years before Anthony was placed in solitary confinement, one federal court observed that "placing [mentally ill prisoners in solitary confinement] is the mental equivalent of putting an asthmatic in a place with little air to breathe," *Madrid v. Gomez*, 889 F. Supp. 1146, 1265 (N.D. Cal. 1995), because such prisoners "are at a particularly high risk for suffering very serious or severe injury to their mental health, including overt paranoia, psychotic breaks with reality, or massive exacerbations of existing mental illness as a result of the conditions" in solitary confinement. Id. Federal courts around the country have recognized the same thing; the Court of Appeals for the Seventh Circuit has observed that the conditions of solitary confinement "aggravate[] the symptoms of [a prisoner's] mental illness and by doing so inflict[] severe physical and especially mental suffering," *Scarver v. Litscher*, 434 F.3d 972, 977 (7th Cir. 2006), and there is a "scientific consensus . . . that prisoners held in solitary confinement experience

serious, often debilitating—even irreparable—mental and physical harm[] . . . ." *Wallace v. Baldwin*, 895 F.3d 481, 484-85 (7th Cir. 2018) (citation omitted)). That was abundantly true for Anthony: in layman's terms, placing him in solitary confinement caused him to lose his mind.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that the Court of Appeals for the Seventh Circuit's opinions in *Wallace* and *Scarver* contain the quoted phrases, absent plaintiff's modifications, referenced in paragraph 27 of plaintiff's complaint at law. Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., further admit that the United States District Court for the Northern District of California's opinion in *Madrid* contain the quoted phrases, absent plaintiff's modifications, referenced in paragraph 27 of plaintiff's complaint. Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the remaining allegations contained in paragraph 27 of plaintiff's complaint.**

28.     The primary manifestation of Anthony's mental decompensation in solitary confinement was repeated, severe self-mutilation. He began to cut and re-cut wounds on his testicles, penis, neck, arms, legs, and groin. He cut open his scrotum, pierced it with paperclips, embedded it with cloth strips, a zipper, and staples. He castrated portions of his testicles. He cut his left inner thigh and tied it up with strips of blanket. He cut his penis repeatedly.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., admit that plaintiff performed acts of self-mutilation while incarcerated. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the remaining allegations in paragraph 28 of plaintiff's complaint.**

29.     This self-mutilation began shortly after Anthony was placed in solitary confinement in 1998. It lasted throughout Anthony's imprisonment in solitary confinement, and was sustained, continuous, and severe. This is a partial sampling of self-mutilation events between August 2016 and May 2018:

- August 2016: Anthony cuts his scrotum and bleeds severely on his cell floor, requiring evacuation to an outside hospital.

- October 28, 2016: Anthony cuts his arm, thigh, and scrotum and inserts five staples, two ink pen reservoirs, and a spoon into the wounds.

- November 4, 2016: Anthony cuts his arm, thigh, and scrotum. He puts a plastic fork, ink pen, piece of fingernail clippers, and three pieces of metal in his scrotum.

- November 10, 2016: Anthony cuts his arm and scrotum. He puts nails and mop thread in his scrotum.

- November 12, 2016: Anthony re-cuts his scrotum.

- November 15, 2016: Anthony cuts his scrotum and inserts foreign objects.

- March 1, 2017: Anthony cuts himself with two sharpened ink pens, and receives a disciplinary ticket for possessing contraband.

- June 8, 2017: Anthony cuts his leg and scrotum with pieces from a broken fan. He sews wire through his leg. He puts a fan motor through his leg. He puts foreign objects in his scrotum and stabs the fan guard through his scrotum.

- June 16, 2017: Anthony cuts his arm and inserts a spoon in the wound far enough to require surgical removal.

- February 3, 2018: Anthony cuts open his right thigh. Later, he reopens the cut and embeds the following inside: three spork handles, an ink pen, an ink pen tube, the top of a spork, metal, and staples. He also stabs an ink pen through his eyelids.

- February 20, 2018: Anthony cuts himself.

- March 2, 2018: Anthony cuts his thigh and stabs an ink pen through his eyelid.

- April 7, 2018: Anthony cuts himself again.

- April 15, 2018: Anthony cuts his scrotum and puts apple seeds in it.

- April 16, 2018: Anthony again cuts his scrotum and puts foreign objects inside.

- April 17, 2018: Anthony refuses medical treatment on his scrotum, and is put in restraints.

- April 19, 2018: Anthony cuts his scrotum again, and loses so much blood that he becomes unconscious

- May 27, 2018: Anthony puts a razor in his eye and cuts his scrotum.

The Defendants were well aware of the devastating impact solitary confinement has on persons suffering from mental illness, and they were well aware of its catastrophic impact on Anthony in particular. Indeed, the Defendants meticulously recorded Anthony's self-mutilation in his medical records.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D., and WILLIAM PUGA, M.D., admit plaintiff committed acts of self-harm while incarcerated. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D.,lack sufficient knowledge or information to form a belief as to the truth of the specific allegations contained within Paragraph 29 of plaintiff's complaint.**

30. Nonetheless, the Defendants did little to help Anthony. Anthony was given psychotropic drugs off and on during his incarceration, but they did not stop his self-harm. And at different prisons, a counselor would sometimes shout questions at Anthony through his cell door. This "treatment" was essentially performative. The Defendants were well aware that it was solitary confinement that was driving Anthony insane, but throughout nearly his entire incarceration they did almost nothing to ameliorate it. Instead, the Defendants conspired to simply move him from one solitary confinement cell to another, among the IDOC's sprawling system of prisons.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., only, deny the allegations contained in paragraph 30 of plaintiff's complaint.**

31. Indeed, far from conceding what they knew—i.e., that Anthony's solitary confinement had driven him insane—Anthony was prosecuted vigorously for manifestations of his mental illness. In addition to self-harming, Anthony's mental illness caused him to lash out at others by throwing his own body fluids through the heavy steel door of his isolation cell. This was a well-recognized symptom of mental illness, which was being compounded and worsened by Anthony's inability to withstand the conditions of isolated confinement. Instead of treating his mental illness, prison officials began referring each such act to the local prosecutor so that Anthony would be charged criminally for the outbursts. The resulting prosecutions were entirely unnecessary and had little purpose beyond ensuring that Anthony would continue to suffer in

solitary confinement well beyond his original release date. As a judge who presided over one of these prosecutions remarked, "I would think a $2.00 piece of plastic draping [in front of Anthony's cell] would have prevented all of" the incidents.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient information to admit or deny the allegations contained in paragraph 31 of plaintiff's complaint regarding the actions of prison officials, the criminal prosecutions, and comments of the judge. Further answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., only, deny the remaining allegations contained in paragraph 31 of plaintiff's complaint.**

32.     The criminal convictions Anthony received for actions caused by his mental illness added another 92 years to Anthony's original seven-year sentence. In addition, Anthony had racked up more than 150 years of "solitary time" meted out by IDOC as a result of his disciplinary infractions – meaning he could serve time until the year 2152 without ever leaving solitary. In short, Anthony was destined to serve the rest of his natural life in solitary confinement.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the allegations contained within Paragraph 32 of plaintiff's complaint.**

33.     Eventually, criminal attorneys who took up Anthony's cause were able to file a habeas petition and ultimately succeed in shortening Anthony's sentence. Even so, Anthony was not released from the IDOC until August 27, 2018. By that point, he had spent 24 years in prison, enduring the last 20 consecutive years in the isolating torture of solitary confinement.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the allegations contained within Paragraph 33 of plaintiff's complaint.**

### *The Defendants could have stopped Anthony's torture at any time*

34.     It is universally recognized that isolation and solitary confinement for any significant period of time is likely to make a person suffering from mental illness even worse, creating a substantial and increased risk of harm to the patient. It is also well known that the impact of solitary confinement is cumulative, in that it causes more damage to a person's mind over time—and that these cumulative impacts can themselves cause mental illness. For this reason, leading correctional standard-setting bodies provide specifically that such confinement should not occur. For example, the National Commission on Correctional Health Care Standards for Mental Health Services in Correctional Facilities states that "[i]nmates who are seriously mentally ill should not be confined under conditions of extreme isolation." The American Correctional Association has concluded that seriously mentally ill prisoners such as Anthony should not be placed in solitary confinement for more than 30 days. The Association of State Correctional Administrators "believe[s] that lengthy stays [in solitary confinement] manufacture or increase mental illness." And the American Bar Association Treatment of Prisoner Standards similarly advises that "[p]risoners diagnosed with serious mental illness should not be housed in settings that exacerbate their mental illness or suicide risk, particularly in settings involving sensory deprivation or isolation."

> **ANSWER:    To the extent that the allegations contained in paragraph 34 of plaintiff's complaint can be construed as pertaining to Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

35.     Early on in Anthony's confinement, prison medical staff examined him and confirmed that he suffered from an acute mental health crisis and was at severe risk of self-harm. And years before his eventual release, Anthony was identified by the State of Illinois in court

papers as one of only a few dozen prisoners within the entire IDOC whose mental illnesses were so acute and dangerous that they required full inpatient mental healthcare.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the allegations contained within Paragraph 35 of plaintiff's complaint.**

36.    There are no facilities or services within the IDOC for providing such care. But that should not have prevented Anthony from receiving the care he needed. The Defendants were capable of ensuring that Anthony received appropriate mental healthcare outside the IDOC. Nevertheless, they failed to do so:

> (a)    State law empowers the director of the IDOC to have a prisoner needing intensive psychiatric care to be transferred to the custody of the IDHS during the prisoner's sentence. See 730 ILCS 5/3-8-5. And the IDHS operates multiple mental health centers for treating such people. Defendants Baldwin, Sims, Reister, Dr. Doe 1, Hinton, Butler, Renzi, Puga, Nunez, and Chess were personally aware that there were a handful of IDOC prisoners, which included Anthony, who could not receive appropriate psychiatric care within the IDOC and therefore should have been transferred to the custody of the IDHS. Attorneys representing Defendant Baldwin and the IDOC admitted as much during a court hearing in *Rasho v. Baldwin*, 07-cv-1298 (C.D. Ill. (Mihm, J.)), an ongoing injunctive class action against Defendant Baldwin concerning the care of mentally ill prisoners within the IDOC. Despite this knowledge, however, no Defendant tried to have Anthony transferred to an IDHS facility before the completion of his sentence. As a result, Anthony unnecessarily endured years of solitary confinement without adequate mental health treatment, and continued to mutilate himself.

(b)      Defendants Butler, Renzi, Puga, Nunez, and Chess, who provided care for Anthony, knew about his acute mental health condition, and knew that he needed inpatient psychiatric care that was not offered by the IDOC. They could have sought Anthony's referral to an inpatient psychiatric facility through the "collegial review" process operated by Wexford, their employer. They did not do so, however.

(c)      Defendant Wexford was capable of providing Anthony with the treatment he needed, or having him transferred out of IDOC facilities for inpatient mental health treatment. Wexford was and is under contract with the State of Illinois to provide both medical and mental health care to all prisoners within the IDOC. This included the provision of "[c]omprehensive and specialized mental health services" for IDOC prisoners, including off-site and hospitalization services as necessary to treat the medical and mental health needs of the IDOC's prisoners. (Indeed, pursuant to this contract Wexford arranges every day for IDOC prisoners suffering from injuries and "physical" illnesses, like cancer, to be transported outside of IDOC prisons to medical facilities where they can receive the medical care they need.) Wexford also employed doctors and mental health professionals to assess the mental condition of IDOC prisoners. Its employees and agents examined Anthony and concluded that he was suffering from acute mental distress that required intensive care. By policy and practice, however, Wexford had never developed such a hospitalization capacity within the IDOC's facilities, so this meant that Anthony required off-site hospitalization. On information and belief, Wexford also had a policy and practice of ignoring its obligation to provide such off-site hospitalization for seriously mentally ill prisoners, and did not seek to transfer any prisoners—including Anthony—for the off-site mental healthcare that they needed. As a

result of this policy and practice, Anthony remained in solitary confinement in a crisis

cell, suffering the injuries described herein.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Paragraph 36 of plaintiff's complaint, including sub-paragraphs (a) through (c).**

37.     Even short of providing Anthony with the care he needed, the Defendants could

simply have let Anthony out of his solitary confinement cell to interact with other people. This

they finally did, but only in the last few weeks of Anthony's incarceration, in 2018 at Dixon

Correctional Center. Not surprisingly, during even that short time, Anthony's mental health

improved dramatically.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., only, deny they had any authority over the plaintiff's housing assignment, or that they had the ability to let him out of solitary confinement to interact with other people. Further, answering, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained within Paragraph 37 of plaintiff's complaint.**

38.     For two decades, the Defendants knew that solitary confinement both causes and

exacerbates mental illness. They knew that allowing Anthony to be placed in solitary

confinement for any meaningful length of time was toxic to his mental health and would cause

him to suffer both mental anguish and—when he harmed himself as a result of that anguish—

intense physical pain. They also had the ability to prevent him from further harm by removing

him from solitary and to secure appropriate treatment for his acute and devastating mental

condition. But even though they knew Anthony would be devastated by solitary confinement,

and even though they could have treated him appropriately, the Defendants allowed him to

remain in solitary confinement anyway.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Paragraph 38 of plaintiff's complaint.**

39.     In effect, confronted with a prisoner whose mental illness made him hard to deal with, the Defendants chose to address the problem by keeping Anthony in a penal tomb—even though they knew that to do so was to inflict torture on him, for years on end.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Paragraph 39 of plaintiff's complaint.**

## COUNT I:  Eighth Amendment

**Against: Baldwin (individual capacity), Sims (individual capacity), Reister (individual capacity); Dr. Doe 1 (individual capacity); Hinton (individual capacity), Butler (individual capacity), Renzi (individual capacity), Puga (individual capacity), Nunez (individual capacity), Chess (individual capacity), and Wexford**

40.     Each paragraph of this complaint is incorporated as if fully restated here.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., incorporate their answers, if any, to each paragraph of plaintiff's complaint as their answer to paragraph 40 of plaintiff's complaint.**

41.     Anthony suffered from severe mental illnesses that were serious medical conditions and placed him at serious risk of harm and in need of intense medical treatment.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 41 of plaintiff's complaint.**

42.     By holding Anthony in solitary confinement for years on end, Defendants caused or aggravated his mental illness.

> **ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 42 of plaintiff's complaint**

43. The Defendants knew that Anthony's serious medical needs were not being treated within IDOC's facilities, and that the isolation of solitary confinement would exacerbate his condition and cause him further damage over time.

> **ANSWER:** Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 43 of plaintiff's complaint.**

44. Despite what they knew, the Defendants failed to transfer Anthony out of IDOC to a facility where he could receive care for his serious mental health condition. Nor did they ameliorate the conditions of his confinement in prison, or provide him with effective treatment. Instead, they allowed him to remain isolated in solitary confinement.

> **ANSWER:** Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 44 of plaintiff's complaint.**

45. Defendants conspired to keep Anthony in solitary confinement in institutions throughout the IDOC.

> **ANSWER:** Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 45 of plaintiff's complaint**

46. In so doing, the Defendants were deliberately indifferent to Anthony's serious medical needs.

> **ANSWER:** Defendants, **WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 46 of plaintiff's complaint**

47. As a result of the Defendants' failure to secure proper treatment for Anthony and their decision that he instead be consigned to solitary confinement, Anthony suffered physical and psychological injuries, severe pain, and acute mental anguish.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 47 of plaintiff's complaint**

48.     Defendants' consignment of Anthony in solitary confinement constituted the infliction of cruel and unusual punishment in violation of the Eighth Amendment.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 48 of plaintiff's complaint**

49.     Defendants' deliberate indifference to Anthony's medical needs violated his rights to be free from cruel and unusual punishment under the Eighth Amendment.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 49 of plaintiff's complaint**

50.     As a direct and proximate result of Defendants' actions, Anthony suffered the mental and physical injuries described herein.

**ANSWER:** **Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., deny the allegations contained within Count I, Paragraph 50 of plaintiff's complaint**

**COUNT II: Americans with Disabilities Act**

**Against: The State of Illinois, Baldwin (official capacity)**

**Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in Count II of plaintiff's complaint because Count II does not pertain to them. To the extent that the allegations in Count II of plaintiff's complaint can construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D.,, said allegations are denied.**

**COUNT III: Rehabilitation Act of 1973**

**Against: The State of Illinois and Baldwin (official capacity)**

**Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in Count III of plaintiff's complaint because Count III does not pertain to them. To the extent that the allegations in Count III of plaintiff's complaint can construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

**COUNT IV: Fourteenth Amendment**
**(Defendant Does 2-5)**

**Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., make no answer to the allegations contained in Count IV of plaintiff's complaint because Count IV does not pertain to them. To the extent that the allegations in Count IV of plaintiff's complaint can construed against Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., said allegations are denied.**

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D and WILLIAM PUGA, M.D., deny Plaintiff, ANTHONY GAY, is entitled to any relief whatsoever, either in law or in equity, and pray for judgment in their favor and against Plaintiff, ANTHONY GAY, plus costs.

**AFFIRMATIVE DEFENSES**

NOW COME Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., by and through their attorneys, Matthew H. Weller and Joseph J. Lombardo of CASSIDAY SCHADE LLP, and for their Affirmative Defenses to Plaintiff's Complaint, hereby state as follows:

**FIRST AFFIRMATIVE DEFENSE**
**FAILURE TO EXERCISE REASONABLE CARE AND TO MITIGATE DAMAGES**

1.      The sole proximate cause of the injuries and damages alleged by the Plaintiff was the Plaintiff's failure to exercise reasonable care for his own well-being.  Specifically, by his own allegations, Plaintiff committed acts of self-mutilation. In addition, Plaintiff failed to take reasonable steps to procure mental health treatment.

2.      The duty to mitigate damages is applicable to a prisoner's medical claims made pursuant to Section 1983.  See *Mister v. Dart*, 2014 U.S. Dist. LEXIS 87576, *2, 2014 WL 2922830 (N.D. Ill. June 26, 2014).   A Section 1983 affirmative defense based on a failure to mitigate damages is sufficiently pled without additional facts at the outset of a case.  *Id.* at *7, 2014 U.S. Dist. LEXIS 87576.

**SECOND AFFIRMATIVE DEFENSE –**
**DEFENDANTS ACTED IN GOOD FAITH/QUALIFIED IMMUNITY**

1.      At all times relevant herein Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's statutory or constitutional rights of which a reasonable person would have known. Therefore, the doctrine of qualified immunity protects these Defendants from this lawsuit.  "Qualified immunity shields [officials] from civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Leaf v. Shelnutt,* 400 F.3d 1070, 1079-80 (7th Cir. 2005).  The

protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

2.      The United States Supreme Court regards as beneficial, the two-step sequence for resolving government officials' immunity claims articulated in *Saucier v. Katz*. 533 U.S. 194, 200 (2001); see also *Pearson*, 555 U.S. at 236 ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…"). First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right. *Id.* at 232. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* In order to show that the right was clearly established, the plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights." *Borello v. Allison,* 446 F.3d 742, 750 (7th Cir. 2006).

3.      The Plaintiff's Third Amended Complaint alleges that Defendants provided medical care and treatment to the Plaintiff while he was incarcerated at a state-run prison. At no time did any Defendant render medical care that was so clearly a violation of the Plaintiff's constitutional rights that the Defendants would realize he or she was providing medical care tantamount to cruel and unusual punishment. Thus, the doctrine of qualified immunity applies and shields these Defendants from this litigation.

4.      The Defendants further recognize that the Seventh Circuit has suggested, in dicta, that qualified immunity is not available to private medical personnel in state-run prisons. *See Petties v. Carter,* 836 F.3d 722, 733-34 (7th Cir. 2016). However, the United States Supreme

Court's decision in *Filarsky v. Delia* controls and establishes that immunity is available to a government's private contractors who are performing jobs that, otherwise, would be performed by state agents, who unquestionably could assert qualified immunity.

5.      In *Filarsky*, the Supreme Court, unanimously, held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity.  566 U.S. 377, 390 (2012) ("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates are not deterred by the threat of damages suits from entering public service'") (internal marks omitted).

6.      Other Circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons.  In a decision handed down after *Petties,* the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison.  *Estate of Lockett v. Fallin* 841 F.3d 1098, 1108-09 (10th Cir. 2016) (" Dr. Doe stands in the same position as the attorney in *Filarsky* - he was a private party hired to do a job for which a permanent government employee would have received qualified immunity.  Thus, we conclude that qualified immunity applies to Dr. Doe").

7.      The Supreme Court's *Filarsky* decision combined with the case law of other Courts of Appeal establish that qualified immunity applies to private medical providers performing medical services in a state-run prison.  Thus, Defendants have a non-frivolous argument for extending, modifying, or reversing existing law in this Circuit.

## THIRD AFFIRMATIVE DEFENSE –
## CLAIM PRECLUSION

1.      Plaintiff was the sole Plaintiff in the following cases: (Central District of Illinois) 12cv1517; as well as (Southern District of Illinois 11cv27, 11cv20, 11cv14, 10cv128, 09cv925, 08cv523, 09cv59, 05cv150)(collectively referred to as Plaintiff's "Prevouis Lawsuits.")

2.      In both the Previous Lawsuits and the above-captioned matter, Wexford and/or its employees were Defendants.

3.      As an employees of Wexford, Dr. Renzi, and Dr. Puga are in privity with the Defendants named in the Previous Lawsuits.

4.      Both Previous Lawsuits and the above-captioned lawsuit arose from the same set of transactions. Specifically, both claims arose from purportedly inadequate mental health treatment leading to self-inflicted harm.

5.      The Previous Lawsuits reached a final decision on the merits when they were dismissed.

6.      Based upon the foregoing, it is evident that the elements of claim preclusion are satisfied. As such, Defendants are entitled to dismissal of the above-captioned matter as a matter of law.

<u>**FOURTH AFFIRMATIVE DEFENSE –**</u>
<u>**ISSUE PRECLUSION**</u>

1.      The issue being litigated in this present matter is the same issue that was litigated in the Previous Lawsuits. Specifically, all of these claims arose from the issue of whether Plaintiff was provided with adequate mental health treatment causing self-inflicted harm.

2.      The Previous Lawsuits were actually litigated, and were dismissed. Thus, they reached a final judgment on merits.

3.      In both the Previous Lawsuits and the above-captioned matter, ANTHONY GAY, was the sole Plaintiff. As such, he was clearly represented in both actions.

4.      Based upon the foregoing, it is evident that the elements of issue preclusion are satisfied. As such, Defendants are entitled to dismissal of the above-captioned matter as a matter of law.

**FIFTH AFFIRMATIVE DEFENSE-**
**FAILURE TO ASSERT CLAIMS WITHIN THE STATUTE OF LIMITATIONS PERIOD**

1.      On October 28, 2018, Plaintiff filed his Complaint in the present matter. In Count I of his complaint, Plaintiff alleges constitutional violations that occurred between 1998 and 2018.  (ECF No. 1).

2.      Claims for deliberate indifference made pursuant to 42 U.S.C. § 1983 are considered personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred.  *Delgado-Brunet v. Clark*. 93 F.3d 339, 342 (7th Cir. 1996).  Illinois has a two-year statute of limitations for personal injury actions. *735 Ill. Comp. Stat. Ann. 5/13–202* (2008); *Anton v. Lehpamer,* 787 F.2d 1141, 1142 (7th Cir.1986).

3.      The Plaintiff's suit is based on personal injuries he allegedly suffered as an inmate at various correctional facilities located in Illinois.  As such, the Plaintiff's claims are subject to a two-year statute of limitations.

4.      Although state law determines the length of the statute of limitations, federal law determines when that statute of limitations begins to accrue. *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1991).  Federal law dictates that accrual begins when a "plaintiff knows or should know that his or her constitutional rights have been violated." *Id.*

5.      In the case at bar, all or most of Plaintiff's claims are barred by the two-year statute of limitations for 42 U.S.C. § 1983 claims made in Illinois.  In this regard, plaintiff new or should have known his constitutional rights had allegedly been violated prior to October 28, 2016.

WHEREFORE, Defendants, Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., pray that this Honorable Court grant judgment in their favor and against the Plaintiff, ANTHONY GAY, and for costs and deny the Plaintiff any requested relief, whatsoever.

## JURY DEMAND

Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, Psy.D, and WILLIAM PUGA, M.D., demand a trial by jury on all issues herein triable.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ *Joseph J. Lombardo*_____
One of the Attorneys for Defendants,
WEXFORD HEALTH SOURCES, INC.,
KELLY RENZI, Psy.D, and WILLIAM
PUGA, M.D.,

Matthew H. Weller/ARDC No. 6278685
Joseph J. Lombardo/ARDC No. 6306466
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – fax
mweller@cassiday.com
jlombardo@cassiday.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 5, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ Joseph J. Lombardo</u>