IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-cv-07196 |
| | ) | |
| v. | ) | Honorable Sara L. Ellis |
| | ) | Judge Presiding |
| STATE OF ILLINOIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants, State of Illinois, John Baldwin, Jeff Sims, Shane Reister, Melvin Hinton, Sylvia Butler, and Jamie Chess by and through their attorney, Kwame Raoul, Illinois Attorney General, hereby move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of this motion, Defendants state the following:

### INTRODUCTION

On October 28, 2018, Plaintiff, Anthony Gay ("Gay" or "Plaintiff"), through his retained counsel, filed the above-captioned matter. *See* Dkt. No. 1. In his Complaint, Plaintiff brought claims against Defendants for purported violations of the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Fourteenth Amendment's due process clause. *Id.* at ¶¶ 1-5. Specifically, Plaintiff asserts that he was improperly committed to solitary confinement during his more than two-decades-long prison sentence, and did not receive proper mental health treatment and reasonable accommodations for the mental health issues that allegedly resulted from the solitary confinement. *Id.* at pages 1-3.

Defendants now move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) as (1) Plaintiff's § 1983 claims fail to allege Defendants' personal involvement; (2)

Plaintiff was not a "qualified individual" as required by the ADA and RA; (3) Plaintiff was not denied services or discriminated against because of his disability; and (4) all of Plaintiff's claims arising before October 28, 2016 are time barred.

### STANDARD OF REVIEW

The Court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), to determine whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The well-pleaded allegations in the complaint are taken as true and all reasonable inferences from those allegations are construed in a light most favorable to the non-moving party. *Ray v. City of Chicago*, 629 F. 3d 660, 662 (7th Cir. 2011); *Bielanski v. County of Kane*, 550 F. 3d 632, 633 (7th Cir. 2008). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555. The question presented in a Rule 12(b)(6) motion to dismiss is whether the plaintiff has alleged facts sufficient to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp.*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court need not draw inferences which are not apparent on the face of the complaint. *See McCauley v. City of Chicago*, 671 F. 3d 611, 616 (7th Cir. 2011).

### ARGUMENT

I. PLAINTIFF'S § 1983 CLAIMS AGAINST DEFENDANTS BALDWIN, SIMS, REISTER, HINTON, BUTLER, AND CHESS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE THEIR PERSONAL INVOLVEMENT

Liability under 42 U.S.C. § 1983 requires a defendant's direct, personal involvement.

*Gentry v. Duckworth*, 65 F. 3d 555, 561 (7th Cir. 1995). An individual is only responsible for the harm that he or she personally inflicted on the prisoner. *Munson v. Gaetz*, 673 F. 3d 630, 637 (7th Cir. 2012); *Duncan v. Duckworth*, 644 F. 2d 653, 655 (7th Cir. 1981). A "plaintiff claiming a violation of Section 1983 must produce evidence that the defendant "caused or participated in [the] constitutional deprivation." *Delapaz v. Richardson*, 634 F. 3d 895, 899 (7th Cir. 2011) (*citing Vance v. Peters*, 97 F. 3d 987, 991 (7th Cir. 1996)). "There must be a causal connection or affirmative link between the action complained about and the official sued." *Arnett v. Webster*, 658 F. 3d 742, 759 (7th Cir. 2011).

Moreover, the doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *Pacelli v. Devito*, 972 F. 2d 871, 877 (7th Cir.1992). To recover damages under a § 1983 claim, a plaintiff must establish that the defendant was *personally* responsible for the deprivation of the constitutional right. *Kuhn v. Goodlow,* 678 F. 3d 552, 555–556 (7th Cir. 2012). Failure to take corrective action cannot, in and of itself, violate § 1983, otherwise the actions of a subordinate could be attributed to the government. *Soderback v. Burnett County, Wis.*, 752 F. 2d 285, 293 (7th Cir. 1985).

In this case, Plaintiff surely fails to allege any personal involvement by Defendant Baldwin. It is clear Plaintiff names Baldwin due to his supervisory position as Director of the Illinois Department of Corrections ("IDOC"), not because of his actual involvement in this matter or knowledge of Plaintiff's condition. Additionally, the Seventh Circuit has held:

> For the purposes of a motion to dismiss, a warden [or a Director] cannot be assumed to be directly involved in the prison's day-to-day operations. *See Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir.1981). This principle does not impose a substantive limitation on a warden's [or a Director's] liability beyond the established one against vicarious liability. Nor does it raise the bar for the pleadings of a class of civil rights plaintiffs. It is simply the uniform application of a rule of construction: **an inference that a warden [or a Director] is directly involved in a prison's daily operations is not reasonable**. [...] The prison might be very small, the title "warden" might be used in an unusual way, or a warden might have temporarily taken on direct

3

management of some aspects of the prison due to special circumstances. Nothing of that sort is alleged here.

*Steidl v. Gramley*, 151 F.3d 739, 741-42 (7th Cir. 1998) (emphasis added).

Moreover, "[p]rison directors and wardens are 'entitled to relegate to the prison's medical staff the provision of good medical care.'" *Gevas v. Mitchell*, 2012 WL 3554085, *5 (7th Cir. Aug. 20, 2012), *citing* Burks *v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007*); Greeno v. Daley*, 414 F.3d 645, 6456 (7th Cir. 2005).

Here, there are no specific allegations of personal involvement against Director Baldwin to maintain a cause of action under § 1983. In fact, the only references to Director Baldwin in Plaintiff's Complaint are Plaintiff's conclusory assertions that Defendant Baldwin,

> had actual knowledge that solitary confinement both causes and exacerbates mental illness. He also knew that multiple severely mentally ill prisoners, among them Anthony Gay, were in critical need of inpatient psychiatric care and appropriate treatment that the IDOC was failing to provide . . .

*See* Dkt. No. 1 at ¶ 11. However, Plaintiff offers no explanation as to how or why Director Baldwin obtained this knowledge.[1] These kinds of conclusory allegations are insufficient to meet the required pleading standard. "[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")." T*wombly*, 550 U.S. at 555. Plaintiff offers no

---

[1] In his Complaint, Plaintiff attempts to infer Defendants' knowledge by referencing *Rasho v. Baldwin*, No. 07-cv-1298. However, a simple review of the docket in *Rasho* reveals that Defendants Jeff Sims, Shane Reister, Melvin Hinton, Sylvia Butler, and Jamie Chess were not defendants in that litigation. Accordingly, there are no allegations as to how they are related to the *Rasho* litigation. Director Baldwin is a defendant in the *Rasho* litigation, but only in his official capacity. Nonetheless, without more there is no basis to suggest that because the Director Baldwin was sued in his official capacity in a different lawsuit, he had any knowledge of the Plaintiff in this case.

factual content to support the conclusory statement that Baldwin had knowledge. Therefore, Plaintiff's allegations are nothing more than the insufficient "unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft*, 556 U.S. at 678. In the same way, these conclusory statements are merely recitations of the elements of Plaintiff's cause of action. Indeed, Plaintiff's allegations are just an artful way of saying Baldwin knew of and disregarded an excessive risk to Plaintiff's health.

Equally, it is not plausible that Baldwin would be directly involved or have knowledge of the day-to-day medical care of Plaintiff. Baldwin is not a physician nor is it alleged that he has a medical background. Defendant Baldwin, as Director of IDOC, would not have participated in or had knowledge of the decisions that led to the alleged deficiencies in Plaintiff's medical care. *Brown v. Ghosh*, 2010 WL 3893939, *7 (N.D.Ill. Sept. 28, 2010), *citing Duncan*, 644 F. 2d at 655. Consequently, all claims against Director Baldwin in his individual capacity under Section 1983 should be dismissed for failure to state a claim upon which relief may be granted.

Likewise, the claims against Defendants Sims, Reister, and Hinton should also be dismissed for a lack of personal involvement. Similar to Defendant Baldwin, Defendants Sims, Reister, and Hinton were employed as supervisors. Plaintiff alleges that these Defendants were personally aware of Anthony's confinement, its impact on his mental health, and his need for or lack of psychiatric care, but once again these conclusory claims are do not meet the pleading standard. *See Twombly*, 550 U.S. at 555. Plaintiff offers no indication in his Complaint as to how or why these Defendants allegedly possessed this knowledge. Moreover, based on Defendants' positions as statewide or regional supervisors, the reasonable inference is that they were not involved in prisoner's day-to-day medical care.

As for Defendants Butler and Chess, Plaintiff alleges these Defendants were responsible for Plaintiff's psychiatric care during his incarceration at Menard Correctional Center and Dixon Correctional Center, respectively. However, in making his allegations against these Defendants, Plaintiff has pled himself out of court. *See Smart v. Local 702 Int'l Bhd. Of Elec. Workers*, 562 F.3d 798, 810 (7th Cir. 2009). A close review of Plaintiff's Complaint shows Plaintiff specifically alleged Defendants Puga, and Nunez **personally provided psychiatric care** to Plaintiff. Suspiciously, Plaintiff fails to make those same allegations against Defendants Butler and Chess – or Defendants Baldwin, Sims, Reister, or Hinton for that matter. In fact, Plaintiff only vaguely states that Defendants Butler and Chess were merely responsible for Plaintiff's psychiatric care. At the time of the allegations in the Complaint, both Butler and Chess were mental health **directors** at their respective facilities. The reasonable inference that can be drawn from this fact is that these individuals were in supervisory roles. Certainly, this would explain Plaintiff's vague reference to Defendants being responsible for his psychiatric care rather than personally providing any care. Consequently, Plaintiff claims are the exact type of *respondeat superior* theories that do not apply to actions filed under 42 U.S.C. § 1983. Outside of Defendants' positions at mental health directors, there are no allegations or facts directly connecting either Butler or Chess to Plaintiff's alleged deprivations. Accordingly, all claims against Defendants Sims, Reister, Hinton, Butler, and Chess should be dismissed for failure to state a claim upon which relief may be granted.

II. PLAINTIFF'S ADA AND RA CLAIMS AGAINST DEFENDANTS STATE OF ILLINOIS AND BALDWIN SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT A "QUALIFIED INDIVIDUAL"

The relief available to a prisoner under the ADA and the Rehab Act is coextensive. *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). The analysis of claims brought under the Title II of the ADA and Section 504 of the Rehab Act are the

same, except the Rehab Act requires an additional element—receipt of federal funds. *Id.* at 671-72; *see* also *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). There is no dispute that IDOC receives federal funds, therefore the analysis of both claims will be the same.[2]

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [a qualified] individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." *42 U.S.C. § 12102(2).*

To establish a violation under both Title II of the ADA and Section 504 of the RA ("the statutes"), a plaintiff must prove (1) he is a qualified individual; (2) with a disability; (3) was denied the "benefits of the services programs, or activities of a public entity" or was subjected to discrimination by the entity; and (4) denial or discrimination was because of his disability. *Jaros*, 684 F.3d at 72; *Wagoner*, 778 F.3d at 592. Failing to provide an accommodation is the equivalent of denying access. *Jaros*, 684 F.3d at 672.

Section 12131(2) of the ADA defines "qualified individual with a disability" as

an individual with a disability who, *with or without reasonable modifications* to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, *meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.*

(emphasis added). Likewise, in order to make a *prima facie* case for Plaintiff's RA claim he must satisfy four elements: (1) Plaintiff is a handicapped individual under the Act; (2) Plaintiff is 'otherwise qualified' for the benefit sought; (3) Plaintiff is discriminated against solely because of his handicap; and (4) that the program in question received federal

---

[2] Even if this Court should decide Plaintiff has stated a claim for violations of the ADA and RA, Plaintiff's ADA claim should still be dismissed because Plaintiff can only have but one recovery. "As applied to this lawsuit, the statutory analysis is the same under the ADA and the Rehabilitation Act... Because Plaintiff can have 'but one recovery,' the Court may dispense with the ADA claim and allow Plaintiff to proceed with the Rehabilitation Act claim instead." *Wilkerson v. Hammond*, No. 13-815, 2013 WL 5950820, at *5–6 (S.D. Ill. Nov. 7, 2013); *see also Lisle v. Baldwin*, 17-CV-1488-MMM, 2018 WL 3371040, at *2 (C.D. Ill. July 10, 2018).

financial assistance. *Grzan v. Charter Hosp. of Nw. Indiana*, 104 F.3d 116, 119 (7th Cir. 1997).

In this case, Plaintiff is claiming that by his placement "in solitary confinement and depriving him access to appropriate services, programs, and activities, including education, programming, recreation, exercise[3] and mental health services, the Defendants discriminated against him on the basis of his disability" Dkt. 1 at ¶ 70. However, Plaintiff does not meet the required "otherwise qualified" standard. "An otherwise qualified person is one who is able to meet all of a program's requirements *in spite of* his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, (1979) (emphasis added). Here, Plaintiff is not otherwise qualified because, absent his mental illnesses, he would not have been eligible for inpatient intensive psychiatric treatment or any other mental health services. *See Grzan*, 104 F.3d at 119.

Furthermore, the restriction of Plaintiff's access to any programs and benefits was due to his segregation status which resulted from disciplinary infractions he received, not his disability. *See* Dkt. 1 at ¶ 32; *see* also *Norfleet v. Walker*, 3:09-CV-00347-JPG, 2011 WL 5572834, at *3 (S.D. Ill. Nov. 16, 2011) (inmate was denied access to exercise equipment because he was in segregation); *Kogut v. Ashe*, 602 F. Supp. 2d 251 (D. Mass. 2009) (State prisoner's alleged disabilities were not the reason for his exclusion from work programs, as would violate the ADA; rather, prisoner was excluded from work programs because of disciplinary infractions, which required prisoner's segregation from general prison population). Indeed, Plaintiff admits that, "[i]n March 1998, as a result of his infractions, Anthony was placed in solitary confinement . . . [h]e typically was not allowed outside of [his] cell." Dkt. 1 at ¶ 26.

---

[3] Puzzlingly, Plaintiff alleges he was denied access to exercise, but also directly contradicts this proposition in his Complaint. "Anthony was sometimes let out of his cell for short periods of 'exercise'. Dkt. 1 at ¶ 26.

8

Accordingly, Plaintiff's ADA and RA claims should be dismissed as Plaintiff was not a "qualified individual" as required by statute.

III. ALTERNATIVELY, PLAINTIFF'S ADA AND RA CLAIMS AGAINST DEFENDANTS STATE OF ILLINOIS AND BALDWIN SHOULD BE DISMISSED AS PLAINTIFF WAS NOT DENIED SERVICES OR DISCRIMINATED AGAINST BECAUSE OF HIS DISABILITY[4]

There are three distinct ways of bringing claims under the ADA and RA: discrimination under both acts may be established by evidence that (1) disparate treatment – the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) disparate impact – the defendant's rule disproportionally impacts disabled people. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). Here, Defendants construe Plaintiff's complaint as alleging a disparate impact claim – Plaintiff's placement in solitary confinement was not directly because of his serious mental illness, but because of misconduct that was a result of a serious mental illness.

There is very little case law applying this theory generally in a prison context. However, caselaw on this question has arisen outside of the prison context – mostly in employment discrimination cases – and a majority of courts have rejected liability where the employee plaintiffs' disability caused conduct that was, in turn, the reason for the defendant's adverse action. Under the majority view, a finding that an employee engaged in misconduct, even misconduct related to his or her disability, is generally fatal to the employee's ADA claim. In *Newland v. Dalton*, 81 F.3d 904 (9th Cir.1996), the Ninth Circuit explicitly held that the Rehabilitation Act does not protect disabled employees from the consequences of their misconduct.

---

[4] Assuming *arguendo* that Plaintiff is alleging a disparate treatment theory, his claim still fails as Plaintiff admits in his complaint that his disciplinary infractions led to his placement in solitary confinement, not his disability. *See* Dkt. 1 at ¶ 26, 32.

9

> [T]he majority of courts have held that while the Rehabilitation Act ("Act") protects employees from being fired solely because of their disability, they are still responsible for conduct which would otherwise result in their termination.... These courts have concluded that firings precipitated by misconduct rather than any handicap do not violate the Act.

*Newland*, 81 F.3d at 906. *See* also, *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047 (5th Cir. 1998); *Little v. F.B.I.*, 1 F.3d 255 (4th Cir. 1993). These courts have reasoned that, "the ADA does not insulate emotional or violent outbursts blamed on an impairment." *Hamilton*, 136 F.3d 1052. Furthermore, they have stated that individuals cannot "hide behind the ADA and avoid accountability for [their] actions." *Id.*

The analysis made by the Fourth, Fifth, and Ninth Circuits should be followed here. Plaintiff admits that he cannot maintain good behavior, and his mental illness causes him to act out including throwing his own bodily fluids at people. *See* Dkt. 1 at ¶¶ 25, 31. Nevertheless, Plaintiff is contending that he should not have been placed in segregation because of the very disability that causes him to break the rules. Plaintiff should not be allowed to hide behind the protections of the ADA in order to excuse his behavior. Consequently, this Court should follow the guidelines set by the Fourth, Fifth, and Ninth Circuits and find that Plaintiff has failed to state a claim because Plaintiff's placement in segregation was due to his own misconduct and consequently did not violate either the ADA or RA.

IV. ALL CLAIMS ARISING FROM PLAINTIFF'S ALLEGED SOLITARY CONFINEMENT BEFORE OCTOBER 28, 2016 ARE BARRED BY THE STATUTE OF LIMITATIONS

The statute of limitations prevents Plaintiff from pursuing any claims arising out of his alleged solitary confinement from before October 28, 2016. The limitations period for Section 1983 claims brought in Illinois is two years. *Woods v. Illinois Dep't of Children and Family Services*, 710 F.3d 762, 766 (7th Cir. 2013); *see* also 735 ILCS 5/13-202. For purposes of the statute of limitations, a cause of action accrues when the plaintiff knows or

has reason to know of the injury giving rise to the cause of action. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). This is true even when the full extent of the injury is not then known or predictable. *Woods*, 710 F.3d at 766 citing *Wallace v. Kato*, 549 U.S. 384, 388-391 (2007). The fact that there may be continuing effects from a particular improper act does not extend the limitations period. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 625 (2007) ("the continuing effects of the precharging period discrimination did not make out a present violation.") citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977). "Difficulty in quantifying damages is cured not by waiving the statute of limitations but by granting equitable relief, which is of course available when the plaintiff's legal remedy (that is, damages) is inadequate." *Limestone Dev. v. Village of Lemont, Illinois*, 520 F.3d 797, 802 (7th Cir. 2008). Moreover, "[t]he idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013).

Given that Plaintiff filed suit on October 28, 2018, his claims must have accrued on or after October 28, 2016. As Plaintiff states in his response to the motion to transfer venue, "[w]hat Plaintiff charges as unlawful, and what gives rise to his claims, is his placement in solitary confinement at various facilities around the state…." Dkt. 31 at p. 3. According to Plaintiff, "[i]n March 1998, as a result of his infractions, Anthony was placed in solitary confinement." Dkt. 1 at ¶ 26. Although he admits attacking correctional employees with body fluids and committing other violations, Plaintiff argues that the resulting disciplinary segregation was a violation of his rights. *See* Dkt. 1 at ¶ 25-26 ("Anthony could not maintain good behavior…. He suffers from mental illness,…causing Anthony to act erratically and to break prison rules."). Assuming *arguendo* that the disciplinary segregation violated his constitutional rights, Plaintiff knew or should have known that his constitutional rights were violated well before October 28, 2016. *See Love v. Cook County*,

11

82 F.Supp.2d 911, 915 (N.D. Ill. 2000) (limiting the plaintiff's claims regarding administrative segregation to the two years prior to suit).

The Court in *Love v. Cook County* dealt with a similar issue. In that case, the plaintiff was a pre-trial detainee who was placed in administrative segregation based upon his alleged involvement in the murder of another inmate. *Id.* at 913. His administrative segregation commenced on May 29, 1995 and ended on February 20, 1998 when a court dismissed the charges. The plaintiff filed suit on February 22, 1999 and the defendants moved to dismiss the time period up to February 23, 1997 based upon the statute of limitations. The court agreed with the defendants and ruled: "The Plaintiff clearly knew or should have known of the alleged constitutional civil rights violation of which he claims well before the trigger date of February 22, 1997. Accordingly, Plaintiff's claim for the period from May 29, 1995 through February 22, 1997 is barred by the statute of limitations." *Id.* at 915. In this case, Plaintiff filed suit on October 28, 2018. Therefore, his claims are limited to the period from October 28, 2016 forward.

Plaintiff may try to argue for a "continuing violation" exception to the statute of limitations. However, "[i]t is not clear that federal law has such a doctrine—or that, if it once did, the doctrine survived. *Ledbetter v. Goodyear Tire & Rubber Co.*,… and *National Passenger Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)." *Heard v. Elyea*, 525 Fed.Appx. 510, 511 (2013). In *Ledbetter*, the Supreme Court rejected plaintiff's argument that the statute of limitations on her pay discrimination claim did not begin to run until her final paycheck.

> A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination. But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.

*Id.* at 628. According to the Court, "current effects alone cannot breathe life into prior, uncharged discrimination…, such effects in themselves have no present legal consequences." *Id.*[5] In other words, the continuing effects of the initial wrong did not allow the Plaintiff to reach back outside of the statute of limitations period.

In analyzing the application of the statute of limitations, the *Morgan* Court distinguished between discrete and cumulative acts. A discrete act occurs on the day that it happens. *Morgan*, 536 U.S. at 110. "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112.

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.

*Id.* at 113. A plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Id.* at 114. "[O]nly incidents that took place within the timely filing period are actionable." *Id.*

On the other hand, certain types of constitutional violations require cumulative acts, like hostile work environment claims. *Id.* at 115. These types of violations "cannot be said to occur on any particular day." *Id.* "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* "Such claims are based on the cumulative effect of individual acts." *Id.* A hostile work environment claim typically comprises a succession of harassing acts and cannot be

---

[5] The *Ledbetter* decision was subsequently superseded by the Lilly Ledbetter Fair Pay Act, 42 U.S.C. § 2000e-5(e):

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

*Id.* The fact that legislative action was necessary to create a "continuing violation" exception for compensation suggests that the Court's reasoning and application of law was correct and that no such exception existed prior to the implementation of the statute.

13

said to occur on any particular day. *Ledbetter*, 550 U.S. at 638. If each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plaint that the plaintiff had suffered actionable harassment. *Limestone Dev.*, 520 F.3d at 801.

Although the Seventh Circuit has not specifically addressed the issue, the Tenth Circuit has consistently held that the continuing violation exception does not apply to segregation or solitary confinement. In *Matthews v. Wiley*, 744 F.Supp.2d 1159 (10th Cir. 2010), the plaintiff sued based upon his transfer to the administrative maximum security facility. The Tenth Circuit held that the transfer to the maximum security facility "was clearly a single discrete event, [so] the continuing violation doctrine does not apply." *Id.* at 1169. "Even in the context of Title VII, from which the continuing violation doctrine is derived, discrete decisions are not treated as part of a continuing violation." *Id.* at 1170. Then, in *Fogle v. Slack*, 419 Fed.Appx. 860 (10th Cir. 2011), the Tenth Circuit rejected the notion that the decisions to *keep* the plaintiff in administrative segregation could be grouped together to constitute a continuing violation. *Id.* at 864. According to the Court, "each segregation decision was of a discrete nature and,…in many instances, segregation decisions were made by different decision makers across three different correctional facilities, thus making it inappropriate to aggregate all such decisions into one continuing violation for limitations purposes." *Id.* at 864-865. In similar circumstances to the allegations in the case at bar, the plaintiff in *Silverstein v. Federal Bureau of Prisons*, 559 Fed.Appx. 739 (10th Cir. 2014), brought claims based upon his thirty years in administrative segregation. The Tenth Circuit held that "the continuing wrong doctrine cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Id.* at 751 (citations omitted).

14

Plaintiff alleges that, "[b]etween 1994 and 2018, he was imprisoned by the IDOC at multiple prisons, including the Tamms, Dixon, Pontiac, Stateville, and Menard prisons." Applying these principles to the facts in this case, the statute of limitations would bar the following:

- Although Plaintiff references his incarceration at Tamms in his complaint, he does not identify anyone associated with that facility. In any event, any claim arising from his incarceration at Tamms is necessarily beyond the statute of limitations as that facility closed in 2013. *Castillo v. Johnson*, 592 Fed.Appx. 499, 500 (7th Cir. 2014).

- Although he may dispute it, the Plaintiff's living unit history attached to the Defendants' motion to transfer venue indicates that Plaintiff was not at Stateville since 2003, well beyond the statute of limitations. *See* Doc. # 26-1, pp. 1-34.

- As noted in the Plaintiff's complaint, his placement in segregation did not begin until March 1998. Doc. # 1 at p. 10. His incarceration at Joliet, Logan, Centralia, and Shawnee predates this and would not appear to be the subject of the complaint, but would nonetheless be barred by the statute of limitations.

- Any allegation that he was wrongfully placed or kept in segregation prior to October 28, 2016. Because he was already in segregation on that date, he should not be able to maintain a claim that he was wrongfully placed in segregation while at that facility.

- While not technically a statute of limitations issue, the Plaintiff cannot maintain any claim against John Baldwin accruing prior to him becoming Director of the Illinois Department of Corrections on or about August 14, 2015. [6]

## CONCLUSION

WHEREFORE, Defendants, State of Illinois, John Baldwin, Jeff Sims, Shane Reister, Melvin Hinton, Sylvia Butler, and Jamie Chess respectfully request their motion to dismiss be granted, and for such further relief as this Honorable Court deems appropriate and just.

Dated: February 22, 2019

---

[6] *See* https://www2.illinois.gov/idoc/aboutus/Pages/director.aspx.

Respectfully Submitted,

KWAME RAOUL  
Attorney General of Illinois

*/s/ Nicholas S. Staley*  
NICHOLAS S. STALEY  
Assistant Attorney General  
General Law Bureau  
Office of the Illinois Attorney General  
100 West Randolph Street, 13th Floor  
Chicago, Illinois 60601  
(312) 814-3711  
nstaley@atg.state.il.us

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 22, 2019, he electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

*/s/ Nicholas S. Staley*
NICHOLAS S. STALEY