UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ANTHONY GAY,<br><br>            Plaintiff,<br><br>v.<br><br>THE STATE OF ILLINOIS, et al.,<br><br>            Defendants. | Case Number  18-cv-7196<br><br>Judge Sara L. Ellis |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE PURSUANT TO 28 USCS § 1404**

NOW COME Defendants, WEXFORD HEALTH SOURCES, INC., WILLIAM PUGA, M.D., KELLY RENZI, PSY.D., by and through their attorneys, CASSIDAY SCHADE LLP; PIERRE NUNEZ, PhD, by and through his attorneys, DONOHUE BROWN MATHEWSON & SMYTH LLC; and the STATE OF ILLINOIS, JAMES R. BALDWIN, JEFF SIMS, SHANE REISTER, SYLVIA BUTLER, JAMIE CHESS, and MELVIN HINTON, by and through their attorney, KWAME RAOUL, Attorney General of Illinois, and for their reply in support of their motion to transfer this matter from the Federal District Court for the Northern District of Illinois, Eastern Division ("Northern District, Eastern Division") to the Federal District Court for the Central District of Illinois ("Central District"), state as follows:

**INTRODUCTION**

In his Response to Defendants' Motion to Transfer Venue (ECF #31)(Plaintiff's "Response"), Plaintiff, ANTHONY GAY ("Plaintiff" or "Gay"), attempts to argue that the Northern District, Eastern Division is a more appropriate and convenient venue to litigate the above-captioned matter as opposed to the Central District. However, Plaintiff's arguments are entirely absent legal or factual support. Following well-established case law from this Circuit,

the determinative factors when considering a § 1404 motion overwhelmingly favor transfer to the Central District.

## ARGUMENT

**A.     The Northern District Is Comprised of Two Separate and Distinct Divisions, while the Central and Southern District Are Considered One, Single Forum**

Congress set forth the organization of the federal district courts in Title 28, Chapter 5, of the United States Code. To this end, Chapter 93 of this act states: "The Northern District comprises two divisions." 28 U.S.C. § 93(a). Sub-Section (a) then goes on to list the counties which comprise the Eastern Division and the Western Division, followed by the locations of the courthouses for each Division. *Id.* To the contrary, neither the Central nor Southern Districts are divided into distinct divisions. 28 U.S.C. §93(b)-(c). Instead, these Sections of the Code simply lists the counties that are contained within these Districts, and the locations of the courthouses. *Id.*

In the present matter, Plaintiff asserts:

> Because they cannot make a straightforward request for transfer to the Springfield Division, Defendants never actually say where in the Central District they are seeking a transfer. Instead, they treat the *Central District as a single super-forum, going back and forth among its four divisions*, whose courthouses sit nearly 200 miles apart, and citing one and then another as a convenient venue depending on the issue at hand. (Meanwhile *Defendants fastidiously observe the distinction between the Northern District's two divisions*, each of which contains a prison where Plaintiff was subject to solitary confinement.) (ECF #31 at page 2). [emphasis added].

As such, Plaintiff is intimating that Defendants' distinction between the Northern District's two (2) divisions, but not recognizing any "divisions" in the Central and Southern Districts, was improper and solely done to further their position regarding transfer of the case. *Id.*

However, despite Plaintiff's contention to the contrary, Defendants were not "fastidiously" observing a distinction between the two divisions of the Northern Division, while not observing separate divisions in the Central and Southern Districts. Instead, they recognized the distinctions of two separate divisions in the Northern District because *they actually exist, while no such division is made in the other two federal districts of Illinois.*[1] Plaintiff is incorrect when he states there are four (4) separate divisions within the Central and Southern Districts. Instead, there are only four separate and distinct forums located within all of Illinois. As such, Defendants' arguments that are premised on the distinction between the Eastern and Western Divisions, but no such divisions located within the Central and Southern Districts, was proper.

Plaintiff also criticizes Defendants for not making a "straightforward request" to transfer this case to a specific "division" within the Central District; but rather, refer to the Central District as a "single super-forum". (ECF #31 at page 2). However, in the event this matter gets transferred, the Court will have sole discretion to assign the judge and courthouse within the Central District where this case will be heard. 28 U.S.C. § 1404(c). Defendants do not have the authority to assign a case to specific courthouse within the Central District. Thus, based upon their reliance on the aforementioned Congressional Acts, Defendants were appropriate when they distinguished between the two divisions of the Northern District, and only considered the Central and Southern Districts as single forums with no distinct divisions.

**B.     Plaintiff's Choice of Forum Should Not be Given Deference Because the Events Giving Rise to this Lawsuit Only Have a Weak Connection to the Northern District**

In his Response, Plaintiff admits that only four (4) months of the twenty (20) years that he claims he unlawfully spent in solitary confinement occurred within the Northern District,

---

[1] In fact, interdivision transfers from the Eastern to Western Division routinely occur, while no such transfers are recognized in the Central or Southern Districts. *See e.g., Carter v. Baldwin*, 2017 U.S. Dist. LEXIS 121999, 2017 WL 3310976 (N.D. Ill. 2018).

Eastern Division. (ECF #36 at page 5). Notwithstanding, Plaintiff asserts "case law gives considerable weight to his decision to bring his suit…" in his chosen forum of Chicago, Illinois. *Id.* at page 2. In support of this assertion, Plaintiff cites to *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 955 (N.D. Ill. 2017) for the proposition that Court give deference to a plaintiff's chosen forum "where *some* of the material events giving rise to the plaintiff's claims occurred in the forum he chose." (ECF #31 at page 5). However, in *Nicks*, the Court held that the deference to a plaintiff's chosen forum "is lessened…when the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Nicks* at 955. In that case, the Court found that the plaintiff's choice of forum "ha[d] a strong connection to the operative facts giving rise to this litigation." *Id.* Thus, while the four (4) months Plaintiff spent at Stateville, all which occurred prior to 2003 (and are likely barred by the statute of limitations) may serve as *some* connection to the Northern District, Eastern Division, this can only be considered a weak and immaterial connection when considering the approximately nineteen (19) years and eight (8) months Plaintiff spent in solitary confinement outside of this forum. This holds especially true when considering Plaintiff resides in the Central District. *Nicks* at 955. As such, *Nicks* actually supports the proposition that Plaintiff's choice of forum should not be given deference.

Next, Plaintiff tries to distract the Court from the weak connection between the Northern District, Eastern Division and the events giving rise to this case by pointing out that his solitary confinement not only took place within the geographical boundaries of the Central District; but also, within the boundaries of the Southern District and Northern District, Western Division. (ECF #31 at pages 5-6). Defendants acknowledge that the events giving rise to this lawsuit did not occur solely within the Central District. Notwithstanding, there is a strong connection

between the events giving rise to this lawsuit and the Central District. Specifically, Plaintiff resides in the Central District, Plaintiff's assaults against security staff that lead to his solitary confinement took place in Pontiac, he was initially placed in solitary confinement at Pontiac, he spent six (6) and a half years in solitary confinement at facilities located within the Central District; and his post-incarceration mental health treatment took place in the Central District. While it is true that the Southern District, and too a far lesser extent, the Northern District, Western Division, have some connection to this case, the neighboring Central District is clearly a more convenient choice when compared to a congested city like Chicago, Illinois.

Based upon the foregoing, it is evident that the Northern District, Eastern Division has a tenuous relationship with this case, at best. Instead, the overwhelming majority of events giving rise to this claim occurred outside of the Northern District, Eastern Division; and either within or closer to the Central District (as compared to Chicago, Illinois). Thus, Plaintiff's choice of forum should not be given deference.

C.   **The Convenience of the Witnesses Overwhelmingly Favors Transfer to the Central District**

Plaintiff's next argument in his Response is that the convenience of the witnesses favors the current forum. (ECF #31 at page 7). However, common sense dictates that when the overwhelming majority of events giving rise to this claim took place either in the Central or Southern District, a "central" location like the Central District is more convenient to witnesses living in these Districts compared to Chicago, Illinois.

To this end, it is undisputed that during approximately eighteen (18) of the twenty (20) years Plaintiff spent in solitary confinement, he was incarcerated in an IDOC correctional facility located within the geographical boundaries of the Central or Southern District; Plaintiff lives within the geographical boundaries of the Central District; and that the post-incarceration family

5

members and mental health professionals reside within the geographical boundaries of the Central District. As such, it is anticipated a large majority of the witnesses in this case reside in the Central and Southern Districts. Clearly, it is more convenient for witnesses living within the geographical boundaries of the Central or Southern District to travel to any courthouse within the Central District compared with traveling to the Dirksen Federal Building. Defendants acknowledge that Pontiac is within one hundred miles of the Dirksen Federal Building. But that does not explain how traveling to Chicago, Illinois is more convenient than any of the courthouses located within the Central District. This holds especially true when considering the congestion and added expense that traveling to a city like Chicago, Illinois brings. *See Thomas v. City of Woodstock*, 2011 WL 3841811, at *1 (N.D. Ill. Aug. 30, 2011).

Plaintiff attempts to argue that the location of the non-party witnesses is irrelevant, because they are medical and correctional employees of the Defendants; and thus, under their control. (ECF #31 at pages 9-10). However, the allegations in this matter stretch back to the 1990's. (*See* ECF #1). Thus, while this case is still in its infancy, and not all witnesses have yet to been specially identified, it is reasonable to expect that many, if not most, of the potential witnesses in this case no longer work for Wexford Health Sources, Inc., or the Illinois Department of Corrections ("IDOC"); and consequently, are not in control of the Defendants.

Next, Plaintiff argues that Plaintiff's post-incarceration mental health professionals and family member residing in or near Rock Island, Illinois, which is located within the geographical boundaries of the Central District, have no relevancy to this case. (ECF #31 at page 10). However, these individuals are expected to be key witnesses regarding damages. Specifically, Plaintiff's treating mental health professionals will be offering opinions as to the nature and extent of the purported psychological and emotional damage Gay incurred as a result of being

6

placed in solitary confinement. Since these witnesses reside within the Central District, it will be more convenient for them if the case is litigated within said District as opposed to Chicago, Illinois, which is almost two hundred (200) miles from Rock Island, Illinois.

Furthermore, Plaintiff makes a misguided argument that though the Central District is geographically closer to Southern District than the Northern District, Eastern Division, it is more convenient to fly to Chicago, Illinois than to the Central District. (ECF #31 at page 11). However, when considering the costs of plane tickets and baggage fees; as well as the time spent in security lines, flight delays, and traveling into the city; flying to Chicago, Illinois is the least convenient place to try this case for a resident of the Southern District. Instead, it would be far more convenient for witnesses located in Southern District to take a few hour car or train ride to the neighboring Central District.

Lastly, in regard to those potential witnesses residing in the Northern District, Western Division, the parties clearly are at odds regarding the weight of the information that these witnesses possess. Specifically, there is a difference of opinion as to whether Plaintiff's incarceration at Dixon prior to his release is germane to the claims in this case because he admitted in the Article he was released from solitary confinement at this facility. (*Compare* ECF #26 at page 11 to ECF #36 at pages 9-10). However, putting aside the value of information held by these potential witnesses to this case, Plaintiff has failed to address how traveling to an expensive and congested city like Chicago, Illinois is more convenient that traveling to the far less congested cities where courthouses of the Central District are located. Because Dixon is located closer to, or not much further than, all of the courthouses of the Central District when compared to the Dirksen Federal Building, transfer to the Central District is favorable to the witnesses residing in the Northern District, Western Division, as well.

### D.     The Central District Has the Greatest Interest in Resolution of This Case

Plaintiff states that the central issue in this case is "Plaintiff's wrongful solitary confinement." (ECF #31 at page 13). Notwithstanding, Gay argues that the criminal convictions based upon his inactions are inconsequential. *Id.* However, Plaintiff's argument again misses the mark, as it is not the actual convictions that are relevant to this case. Instead, what is relevant is that the actions leading up to those convictions are what caused the IDOC to place Plaintiff in solitary confinement. All of these actions took place at Dixon, which is located within the geographical boundaries of the Central District. It was Dixon employees, who are residents of the Central District, which allegedly started the events giving rise to this lawsuit – placing Gay in solitary confinement. Thus, the residents of the Central District have the greatest interest in resolving this lawsuit. This holds especially true here because the alleged constitutional violations were perpetrated on one of their own residents, as Plaintiff is a resident of the Central District. Plaintiff makes absolutely no attempt to argue how this case has any a relation to the Northern District, Eastern Division; or why its citizens have a desire in resolution of this matter. Thus, the public factors clearly favor transfer to the Central District.

### E.     Summary of Balance

After analyzing all of the factors for transfer under 28 U.S.C.S. § 1404(a), it is clear that the balance warrants transfer of this action to the Central District of Illinois. To this end, the convenience to all of the parties and non-party witnesses, as well as the interests of justice, weigh significantly in favor of transfer.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., WILLIAMS PUGA, M.D., KELLY RENZI, PSY.D., PIERRE NUNEZ, PhD., the STATE OF ILLINOIS, JAMES R. BALDWIN, JEFF SIMS, SHANE REISTER, JAMIE CHESS, SYLVIA BUTLER

and MELVIN HINTON, respectfully request that this Honorable Court transfer this case, *instanter*, to the United States District Court for the Central District of Illinois for all further proceedings.

    Respectfully submitted,

    CASSIDAY SCHADE LLP

    By: _/s/ *Joseph J. Lombardo*_____
        One of the Attorneys for Defendants,
        WEXFORD HEALTH SOURCES, INC.,
        WILLIAM PUGA, M.D., KELLY RENZI,
        PSY.D.
        222 West Adams Street, Suite 2900
        Chicago, IL 60606
        (312) 641-3100
        (312) 444-1669 – Fax
        jlombardo@cassiday.com


    Kwame Raoul, Attorney General of Illinois

    By: _/s/ *Nicholas S. Staley*_____
        One of the Attorneys for Defendants,
        the STATE OF ILLINOIS, JOHN R.
        BALDWIN, JEFF SIMS, SHANE REISTER,
        SYLVIA BUTLER, JAMIE CHESS, and
        MELVIN HINTON
        Assistant Attorney General
        100 W. Randolph, 13th Floor
        Chicago, Illinois 60601
        312-814-3711
        nstaley@atg.state.il.us


    Donohue Brown Mathewson & Smyth LLC

    By: _/s/ *Laura C. Ieremia*_____
        One of the Attorneys for Defendant,
        PIERRE NUNEZ, PSY.D.
        140 S. Dearborn Street, Suite 800
        Chicago, IL 60603
        (312) 422-4905
        liermia@dbmslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Nicholas S. Staley*