UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ANTHONY GAY, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01133-CSB |
| ) | |
| STATE OF ILLINOIS, et al., ) | |
|     Defendants. ) | |

**ORDER**

Plaintiff, Anthony Gay, filed a complaint [1] under 42 U.S.C. § 1983, alleging that Defendants State of Illinois, John Baldwin, Sylvia Butler, Jamie Chess, Melvin Hinton, Pierre Nunez, William Puga, Shane Reister, Kelly Ann Renzi, Jeff Sims, Wexford Health Sources, Incorporated ("Wexford"), and five individuals Plaintiff identified as John Doe 1 to 5 violated his constitutional rights during his incarceration in the Illinois Department of Corrections ("IDOC").[1]

---

[1] Plaintiff has since been released from IDOC custody.

1

Defendants State of Illinois, Baldwin, Butler, Chess, Hinton, Reister, and Sims move to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. STANDARD OF REVIEW

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must assert "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and interpreting all reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013)

(interpreting the plausibility standard to mean that the plaintiff "must give enough details about the subject-matter of the case to present a story that holds together") (internal quotation marks omitted).

## II. ANALYSIS

The Court limits its consideration to the following two claims: (1) Plaintiff's Eighth Amendment claim against Defendants Baldwin, Butler, Chess, Hinton, Reister, and Sims and (2) Plaintiff's discrimination claim against Defendants State of Illinois and Baldwin that Plaintiff alleges under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

### A. Plaintiff's Overarching Claim

The crux of Plaintiff's claims against Defendants concerns the lack of mental health care within IDOC and placement in solitary confinement, which he contends accelerated the deterioration of his mental wellbeing. Plaintiff elaborates that he suffers from a borderline personality disorder. After his imprisonment in 1994, he engaged in horrific acts of self-mutilation and acted out by throwing feces and urine at prison staff. Plaintiff claims that instead of recognizing Plaintiff's behavior as

3

manifestations of mental illness and providing him appropriate treatment, Defendants issued disciplinary tickets that resulted in his continued solitary confinement for approximately two decades. These circumstances deprived Plaintiff of human contact, programming, mental health care, and activities. Plaintiff was also criminally charged and convicted of assaulting prison staff, which extended his initial seven-year prison sentence an additional fifteen years. Plaintiff seeks compensatory, punitive, and nominal damages as well as costs and attorneys' fees.

## B. Eighth Amendment

As mentioned, Plaintiff's Eighth Amendment deliberate indifference claim proceeds against the following Defendants, who are either current or former IDOC employees: Baldwin, former IDOC director; Butler, mental health director of Menard Correctional Center; Chess, mental health director at Dixon Correctional Center; Hinton, acting statewide mental health supervisor; Reister, southern region psychology supervisor; and Sims, central region psychology supervisor.

4

Plaintiff claims that collectively, "Defendants knew that [Plaintiff's] serious medical needs were not being treated ... and that the isolation of solitary confinement would exacerbate his conditions and cause him further damage over time." (ECF 1: p. 18:43.) Plaintiff claims further that despite what they knew, Defendants neither transferred Plaintiff to a facility where he could receive effective treatment nor improved the conditions of his confinement. Plaintiff adds that attorneys representing Baldwin in the pending case of *Rasho v. Baldwin*, 07-cv-1298 (C.D. Ill. Nov. 7, 2007) (Mihm, J.), have essentially admitted that "a handful of IDOC prisoners, which included [Plaintiff], ... could not receive appropriate psychiatric care within IDOC ...." (*Id.* p. 15:36.)

In their motion to dismiss, Defendants contend that Plaintiff does not provide facts to establish their knowledge of Plaintiff's specific circumstances and *Rasho* offers no support because Defendants Butler, Chess, Hinton, Reister, and Sims were not parties in that case, and the plaintiff in *Rasho* sued Baldwin in his official capacity.

5

Despite Defendants' focus on Plaintiff's specific circumstances, the Court construes Plaintiff's allegations as asserting a constitutional claim regarding a fundamental deficiency within IDOC—namely, the lack of appropriate mental health care, which Plaintiff alleges Defendants knew was deficient. *See Mitchell v. Kallas*, 895 F.3d 492, 496 (7th Cir. 2018) ("Prison officials thus have a constitutional duty to provide inmates with the care they require for their serious medical needs."). According to Plaintiff, DOC's refusal to provide appropriate care or to make reasonable accommodations worsened his physical and psychological health, which in turn caused his erratic behavior toward prison staff.

Based on Plaintiff's alleged facts, a jury could reasonably find that Defendants Baldwin, Butler, Chess, Hinton, Reister, and Sims knew of this alleged systemic deficiency given their respective senior positions within IDOC. *See Antonelli v. Sheahan*, 81 F. 3d 1422, 1428-29 (7th Cir. 1996) (concluding that a sheriff and county director of corrections can be expected to know of or participate in creating a systemic situation); *see also Smith v. Dart*, 803 F.3d 304, 309 n.2 (7th Cir. 2015) ("[T]he personal

involvement of senior jail officials … can be inferred at the motion to dismiss stage, where, as here, the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations."). Therefore, the Court concludes that at this stage of the proceedings, Plaintiff states an Eighth Amendment deliberate indifference claim against Defendants Baldwin, Butler, Chess, Hinton, Reister, and Sims.

### C. The Americans with Disabilities Act and the Rehabilitation Act

Plaintiff also alleges that Defendants State of Illinois and Baldwin, in his official capacity, discriminated against Plaintiff based on his disability in violation of the ADA and the Rehabilitation Act.

"Title II of the [ADA], 42 U.S.C. § 12131 *et seq.*, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794, both . . . create federal remedies for disability discrimination by state and local government agencies …." *Reed v. Illinois*, 808 F.3d 1103, 1107 (7th Cir. 2015). However, the "relief available" to a plaintiff under the ADA and Rehabilitation Act "is coextensive." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

The Court confines its analysis to Plaintiff's Rehabilitation Act claim. Other than some minor differences that are not relevant in this case, "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Id*. *See Jaros*, 684 F.3d at 672 n.5. ("Illinois has waived its immunity from suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds.").

"As a practical matter, then, [courts] may dispense with the ADA and the thorny question of sovereign immunity, since [a plaintiff] can have but one recovery." *Id*. at 672 (citing *Duran v. Town of Cicero*, 653 F.3d 632, 639 (7th Cir. 2011) (plaintiffs may have but one recovery); *Wilson v. Sood*, 727 F. App'x 220, 221-22 (7th Cir. 2018) (dismissal of ADA claim had no effect on scope of remedy because Rehabilitation Act claim remained).

"To state a claim under the Rehabilitation Act, [a plaintiff] need only allege that (1) he is a qualified person (2) with a disability[,] and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Id*. at 672. To be a qualified person under the

Rehabilitation Act, Plaintiff "must meet 'the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Johnson v. Randle*, 451 F. App'x 597, 600 (7th Cir. 2011) (quoting 42 U.S.C. § 12131(2)).

Defendants contend that Plaintiff's complaint fails to allege enough facts to satisfy the first and third prongs of his burden. The Court disagrees.

In Plaintiff's complaint, he alleges that despite his known and visible mental health illness, Defendants discriminated against him by denying access to mental health services outside of the prison yet Defendants provided outside medical services to other inmates with physical injuries and illnesses. (1: p. 20:62.) Plaintiff alleges further that Defendants failed to reasonably accommodate his disability by providing inpatient psychiatric therapy, opting instead, to keep him isolated long term, which deprived him access to services, programs, activities, exercise, recreation, and human interaction. The Court concludes that Plaintiff's allegations are sufficient to state a claim under the Rehabilitation Act. *See Andrews v. Rauner*, 2018 WL

3748401, at *5 (C.D. Ill. August 6, 2018) (concluding that the plaintiff stated a claim under the Rehabilitation Act by alleging that State Defendants denied her access to outside hospitalization but allowed inmates with physical injuries or illnesses to receive private care and instead, placed her in solitary confinement due to her mental disability).

As mentioned, Plaintiff names Defendants State of Illinois and also Baldwin, in his official capacity. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." (citations omitted). *Id.* Accordingly, the Court *sua sponte* dismisses the State of Illinois as a party in this case.

### D. Statute of Limitations

Plaintiff filed his complaint on October 28, 2016 [1]. Defendants contend that the two-year statute of limitations applicable to § 1983 claims bars all of Plaintiff's claims arising before October 28, 2016. *See Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("To sum

up, we reiterate our holding that the limitations period applicable to *all* § 1983 claims brought in Illinois is two years …." (emphasis in original)). Plaintiff responds that the continuing violation doctrine tolls the two-year statute of limitations period typically imposed on § 1983 claims.

"The continuing violation doctrine is … applicable when the state actor has a policy or practice that brings with it a fresh violation each day." *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018) (quoting *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006)). The critical inquiry to determine whether the continuing violation doctrine applies is whether the constitutional deprivation "was a fresh act each day, or whether it was a discrete act that took place upon the first [instance] that merely had lingering consequences." *Savory*, 469 F.3d at 673.

In this regard, the Court finds the Seventh Circuit's opinion in *Heard v. Sheahan* instructive. 253 F.3d 316 (7th Cir. 2001). In *Heard*, a prisoner discovered a prominent bulge in his groin. *Id*. at 317. A doctor diagnosed him with a ruptured hernia and recommended surgery, but the jail refused to act on the recommendation. *Id*. The prisoner filed suit more than two

years after he discovered he needed medical attention. *Id*. In discussing

whether the continuing violation doctrine applied to the prisoner's claim,

the Seventh Circuit stated:

> [The jail's refusal to treat the prisoner's condition] continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims.

*Id*. at 318.

Here, Plaintiff alleges that for about twenty years, Defendants denied him mental-health care that caused him physical and psychological harm. Although further discovery may prove otherwise, at this stage of the proceedings, the Court is satisfied that the continuing violation doctrine tolls Plaintiff's claims against Defendants.

**IT IS THEREFORE ORDERED:**

1) **The Court DENIES Defendants' motion to dismiss Plaintiff's complaint [37].**

2) **The Court *sua sponte* dismisses the State of Illinois as a party in**

these proceedings. The Court directs the Clerk of the Court to terminate the State of Illinois as a party in this case.

3) The Court refers this case to Magistrate Judge Eric I. Long for further proceedings.

Entered September 16, 2019.

s/ Colin S. Bruce

_____

COLIN S. BRUCE
UNITED STATES DISTRICT JUDGE
