# Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-1133 |
| | ) | |
| v. | ) | Judge Harold A. Baker |
| | ) | |
| BALDWIN, et al., | ) | Magistrate Judge Eric I. Long |
| | ) | |
| Defendants. | ) | |

**[PROPOSED]**
**DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION**

**I.     PARTIES' AGREED-TO TERMS**

Pursuant to Federal Rule of Civil Procedure 26 and Principle 2.01 of the Seventh Circuit Electronic Discovery Pilot Program ("7th Cir. Pilot Program"), Plaintiff Anthony Gay and Defendants John Baldwin (in his individual capacity) and Rob Jeffreys (in his official capacity), Wexford Health Sources, Inc., Jeff Sim, Shane Reister, Melvin Hinton, Sylvia Butler, Kelly Renzi, William Puga, Jamie Chess, and Pierre Nunez (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "Discovery Plan").

**A.     SCOPE**

1.     This Discovery Plan shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Principles Relating

to the Discovery of Electronically Stored Information (the "Principles") of the 7th Cir. Pilot Program.

3. Nothing in this Discovery Plan shall supersede the provisions of any subsequent Stipulated Protective Order.

4. The Parties identify that (a) emails, (b) documents maintained on drives and servers that the custodians have or had access to, and (c) metadata associated with (a) and (b) are the categories of ESI most likely to contain information relevant to the Parties' claims or defenses in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a Party's right to request additional ESI, or any Party's right to object to production, the above represents the categories of ESI most likely to result in the production of information most relevant to the issues in the case to the best of the Parties' knowledge at this time.

5. E-discovery will be limited to ESI in the Parties' custody, possession, or control created during the time frames set forth in **Exhibit B**.

6. The Parties identify the following Third Parties likely to have ESI relevant to this matter: hospitals and medical care providers who provided medical services to Plaintiff during his incarceration within the IDOC, to be identified through discovery.

7. The collection of ESI by the Parties shall be a single collection. The collection of ESI housed on servers shall be done in a timely manner and on a rolling basis as responsive documents are discovered.

**B.**     **SEARCHING**

1.     The Parties agree that relevant ESI may be identified for production by the following means:

   a.     Manual keyword searches for the terms set forth in **Exhibit B** within the contents of IDOC servers or drives which the designated custodians identified in **Exhibit A(II)** have or had access to. Notwithstanding the use of search terms to identify responsive ESI housed on IDOC servers, the Parties have a responsibility to conduct a reasonably diligent investigation into the existence of responsive electronically stored documents housed on IDOC servers that do not contain the terms set forth in **Exhibit B**.

   b.     The use of the Boolean search functions performed by the Illinois Department of Innovation and Technology (DoIT) for custodian email ESI, using the terms set forth in **Exhibit B**. Notwithstanding the use of search terms to identify relevant and responsive email ESI, if a Party is aware of the existence of specific non-privileged relevant and responsive documents maintained in hard copy or as ESI, then that party shall produce such documents even if they do not include any of the search terms being applied generally to email ESI.

   c.     In addition to ESI identified pursuant to the preceding paragraphs, if a Party is aware of the existence of documents or data sources that contain responsive documents that are not reasonably searchable (e.g., images), the parties agree that applying search terms to these data sources will be insufficient to identify potentially responsive documents of this nature and review such documents manually for responsiveness, relevance, and production.

2.     A list of ESI Data Repositories and Custodians is attached to this Discovery Plan, and incorporated by reference, as **Exhibit A**. In the event that new Custodians or ESI Data Repositories are later identified, or the Parties discover that a custodian or data repository should be eliminated, the Parties will modify Exhibit A through agreement. If the Parties cannot come to an agreement within 10 business days of a proposed change to Exhibit A, they will notify the Court to schedule a hearing using the Court's procedures within 20 business days of the impasse.

3.     An agreed list of search terms and time frames to be used during email ESI searches is attached to this Discovery Plan, and incorporated by reference, as **Exhibit B**.

4.     Attorneys for the Parties will maintain a detailed log of all drives, servers, accounts, and devices searched for ESI according to this protocol, along with the particulars of the methods and/or search terms used for those searches, and will make that log available upon request.

   a.     For non-email ESI, the log must include (i) each of the drives, servers, accounts, and devices to which the custodians listed in Exhibit A(II) have or had access to as a result of their employment by the State of Illinois, whether that access is shared with others or exclusive to that person; (ii) the drives, servers, accounts and devices that were searched; and (iii) the date any given drive, server, account, or device was searched; and (iv) the method used for searching drives, servers, accounts and devices, including each search term used.

   b.     For email ESI, the log must include: (i) the date of the search; (ii) the repository or custodians searched (e.g., all IDOC email accounts, email accounts of certain custodians, etc.); (iii) the search terms used.

5.      The Parties will employ reasonable de-duplication methodologies and/or technology to suppress duplicate documents responsive to search terms during review. The methodology or software employed for de-duplication will be disclosed and agreed upon by the requesting and responding Parties.

6.      In order to facilitate the meet and confer process, the responding Party will identify which specialized software or programs, if any, it is using to search for, gather, index, and produce responsive ESI.

7.      In the event a responding Party's email ESI search using all search terms results in the identification of over 7,500 documents, after de-duplication, the responding Party's counsel will notify the requesting Party's counsel, and will provide to the requesting Party's counsel a hit-count identify the number of times each numbered search term and/or phrase from **Exhibit B** appears in the responsive documents. Within 5 business days after a hit-count is provided to the requesting Party, the parties will again meet and confer and agree to a methodology for review of a subset of 500 documents by sorting the documents by date (oldest to newest) and selecting an equal fraction of documents responsive to the ESI search to determine the percentage of relevant documents found by the search terms. The Parties will meet and confer within 5 business days of the time the percentage of relevant documents is determined to discuss reasonable and proportionate discovery in light of the percentage results. If the Parties cannot come to an agreement within 10 business days, the Parties will notify the Court to schedule a hearing using the Court's procedures within 20 business days of the impasse.

**C.     PRODUCTION FORMAT**

8.     <u>Document Format.</u> Electronically stored information derived from email and other electronically created files (*e.g.* Microsoft Office files, WordPerfect) will be produced as Bates-labeled pdf images.

9.     Each Party reserves the right to request native files for documents that are difficult to understand after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol:

    (a) The requesting Party shall make any such request as soon as reasonably practical after receiving a document production.

    (b) The requesting Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format.

    (c) Within fourteen (14) days of receiving this request, the producing Party will either (i) produce the requested native files to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

    (d) If the parties are unable to agree as to the production of the request documents in native format, the Parties may submit the matter to the Court.

10.     <u>Documents Without Standard Pagination.</u> Documents without standard pagination, such as spreadsheets or desktop databases (such as MicrosoftAccess) maintained electronically, will be produced in native format, unless redactions are required. Documents without standard pagination that require redactions will be produced in PDF format.

11. <u>Web Pages and Social Media Information.</u> Web pages, social media data and other information not otherwise covered in subpart 10 above shall be produced as "screen shots," "screen captures," "print screen," or printed as a Bates-labeled PDF.

**D.    THIRD-PARTY ESI**

1. A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

2. The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

3. If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other Parties.

4. However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

5. If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

E.   **E-DISCOVERY LIAISON**

1. The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.

2. The E-Discovery Liaison for Plaintiff shall be Stephen H. Weil. The E-Discovery Liaison for Defendants Rob Jeffreys, John Baldwin, Sylvia Butler, Melvin Hinton, Shane Reister, Jeff Sim, and Jaime Chess shall be Nicholas S. Staley. The E-Discovery Liaison for Defendants Wexford, Renzi, and Puga shall be Joseph Rupcich.

3. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

4. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

F.   **PRESERVATION OF ESI**

1. The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. With respect to preservation of ESI, the Parties agree as follows:

(a) Absent a showing of good cause by the requesting party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to backup and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

(b) All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or responsive is made.

2.  Absent a showing good cause by the requesting party, the following categories of ESI need not be preserved:

(a) Deleted, slack, fragmented, or other data only accessible by forensics.

(b) Random-access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(c) Online access data such as temporary internet files, history, cache, cookies, and the like.

(d) Data in metadata fields that are frequently updated automatically, such as last-opened dates.

(e) Back-up data that are substantially duplicative of data that are more accessible elsewhere.

(f) Server, system, or network logs.

(g) Data remaining from systems no longer in use that are unintelligible on the systems in use.

**G.  PRIVILEGE**

3.  Parties shall produce responsive ESI (e.g., ESI that is responsive to a Party's discovery requests). Any responsive ESI that a producing party deems is protected from disclosure by privilege shall be logged into a privilege log which identifies: (a) the Custodian of the ESI; (b) the date of its creation; (c) a description of the type of ESI; (d) all recipients; (e) sufficient information to assess the invocation of the privilege; and (f) the privilege(s) which the producing party contends protects the ESI from disclosure.

4.     Parties shall not be required to include in a privilege log of communications between a Party and his or her attorney regarding this litigation that do not include any other individuals or entities.

5.     Any Email ESI identified as relevant ESI from the email accounts of custodian Pierre Nunez (pierre.nunez@illinois.gov and pnunez@cookcountyhhs.org) shall first be provided to counsel for Nunez to permit a privilege review. Within seven (7) days of receipt, counsel will (1) produce a privilege log to all parties, if privilege is asserted; and (2) return all emails over which no privilege is asserted to the producing party for production to all parties.

6.     The inadvertent production of any material constituting or containing attorney-client privileged information or work product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Scheduling Order entered in this action, (ECF 52, as amended by Court's October 30, 2019 Text Order), and any subsequent Court orders.


PLAINTIFF COUNSEL                                           DEFENSE COUNSEL

_____                    _____

Dated: _____

# EXHIBIT A

I. **ESI DATA REPOSITORIES** – entities that house ESI

    **1) State of Illinois**
        a) Illinois Department of Corrections
        b) Illinois Department of Innovation and Technology
        c) Illinois Governor's Office
        d) Illinois Department of Human Services

    **2) Wexford Health Sources, Inc.**

II. **CUSTODIANS** – individuals that created, sent, or received ESI, or persons who have access to the drives that are necessary to be searched for a custodian who has since left state employment:

1) Jeff Sim, Defendant
2) Shane Reister, Defendant
3) John Baldwin, Defendant
4) Melvin Hinton, Defendant
5) Sylvia Butler, Defendant
6) Kelly Ann Renzi, Psychologist Admin. at Pontiac
7) State of Illinois (defendant)
    a) Bruce Rauner former Governor of Illinois
    b) Michael Dempsey, Chief of Psychiatry for IDOC
    c) Gladyse Taylor, Assistant Director for IDOC
    d) Edwin Bowen, Chief of Staff for IDOC
    e) Jared Brunk, CFO for IDOC
    f) Mike Atchison, Chief of Operation
    g) Marcus Hardy, Deputy Director for IDOC
    h) Sandra Funk, Chief of Operations for IDOC
    i) Jason Garnett, Chief of Parole
    j) Jodi Golden, Executive Director for Capital Development Board
    k) Rodger Heaton, Director of Public Safety to Governor Rauner
    l) Tim Nuding, Dir. for Governor's Office of Mgmt. and Budget
    m) Linda Lingle, Chief Operating Officer to Governor Rauner
    n) James Dimas, Secretary for Department of Human Services
    o) William Puga, IDOC Chief of Psychiatry
    p) Inna Mirsky, IDOC Psychiatric Administrator
    q) Michael Dempsey, Former Acting Chief of Mental Health Services
    r) Jamie Chess, Defendant
    s) Pierre Nunez, Defendant

8) *Wexford Health Sources, Inc. (defendant).*
    a) Jack Yen

-2-

    b)    Amy Mercer, Illinois Reg'l Mental Health QA Coordinator
    c)    Elaine Gedman, Executive VP and CAO
    d)    William Elliott, Reg'l Mental Health Director for Illinois
    e)    Cheri Laurent, VP of Special Projects
    f)    Michael Dempsey, Former Staff Psychiatrist at Pontiac

## EXHIBIT B[1]

I. Responsive Custodian Email ESI created between December 21, 1994 and the present using one or more of the following search terms will be produced (subject to properly logged redactions for assertions of privilege):

    1) "Anthony Gay"
    2) "Gay, Anthony"
    3) "Gay Anthony"
    4) B62251
    5) "B-62251"

II. Responsive Custodian Email ESI and ESI Servers created between November 7, 2007 and August 27, 2018 using one or more of the following search terms will be produced (subject to properly logged redactions for assertions of privilege):

    1) Inpatient AND "level of care" AND mental
    2) Inpatient AND "LOC" AND mental
    3) "inpatient list" AND mental
    4) Mihm AND inpatient AND mental
    5) "Hospital level" AND mental
    6) Intensive AND mental
    7) Elgin
    8) Hospital AND Alton AND mental
    9) Hospital AND Chester AND mental
    10) Hospital AND Thorek AND mental
    11) Hospital AND "Tinley Park" AND mental
    12) Hospital AND Joliet AND mental
    13) Wexford AND Mental
    14) Wexford AND Contract AND Reconciliation
    15) "solitary confinement"
    16) solitary
    17) segregation
    18) seg!
    19) "restricted housing"
    20) admin! AND detention
    21) disciplin! AND seg!
    22) "investigative status"
    23) "investigative confinement"
    24) "disciplinary status"
    25) Stewart AND Rasho
    26) "Dr. Stewart"
    27) Pablo AND Stewart
    28) Stewart AND monitor

---

[1] The symbol * used within quotations is understood as a placeholder for additional letters, *e.g.*, "backlog*" would accommodate "backlog," "backlogs," or "backlogged".

29) pab4emi@aol.com
30) Raymond AND Patterson
31) "Dr. Patterson"
32) Patterson AND monitor
33) Rasho
34) monitor AND Rasho
35) Fred AND Cohen
36) Professor AND Cohen
37) Cohen AND expert
38) Cohen AND report
39) Katherine AND Burns
40) "Dr. Burns"
41) Burns AND expert
42) "SMI"
43) serious! /s mental! /s ill!
44) "residential treatment unit"
45) "RTU"
46) "temporary confinement"
47) "MH caseload"
48) "crisis beds"
49) "crisis watch"
50) "quality improvement" AND "mental health"
51) "CQI" AND "mental health"
52) "treatment plan" AND "mental health"
53) "Individual Treatment Plan" AND "mental health"
54) "ITP" AND "mental health"
55) "review committee*" AND "mental health"
56) "out-of-cell"
57) "emergency mental health situation*"
58) telepsychiatry
59) "psychiatry backlog*" AND Menard
60) "psychiatry backlog*" AND Pontiac
61) "psychiatry backlog*" AND Tamms
62) "mental health unit" AND Menard
63) "mental health unit" AND Pontiac
64) "mental health unit" AND Tamms
65) "MHU" AND Menard
66) "MHU" AND Pontiac
67) "MHU" AND Tamms
68) "remedial plan*"
69) "Quality Improvement Manager"
70) "QI Manager"
71) isolation
72) Davis /p seg!
73) "Davis v. Baldwin"