IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| Anthony Gay, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:19-CV-01133 |
| ) | |
| v. ) | Judge Harold A. Baker |
| ) | Magistrate Judge Eric I. Long |
| John Baldwin *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM REGARDING ESI PROTOCOL**

Pursuant to the Court's December 6, 2019 Minute Entry and Federal Rule of Civil Procedure 16, Plaintiff, through his undersigned counsel, submits this memorandum regarding the protocol for discovery of electronically stored information (the "ESI Protocol") in this case.

1. **Background.**

This memorandum follows the Court's December 6 telephonic hearing to discuss the parties' disagreements about establishing an ESI Protocol, which were reflected in the parties' November 15, 2019 report. (*See* ECF 56.) The parties set out their disputes over the ESI protocol in ECF 56-2, which is a redlined ESI Protocol indicating areas of disagreement. The Court resolved some of those disputes during the December 6 hearing, and the parties were able to narrow their remaining disagreements, somewhat, through meet-and-confer efforts after the December 6 hearing. Nevertheless the parties remain at issue in several specific areas:

- **Search terms.** (ECF 56-2 Ex. B(II).)  Plaintiff has proposed a list of search terms designed to discover evidence regarding their claim that the defendants' policies caused his mistreatment. Defendants object to including any search terms in the ESI protocol except Plaintiff's name and prison number. The parties' positions regarding this dispute are unchanged.

- **Custodians.** (ECF 56-2 Ex. A(II).)  Plaintiff has proposed a list of custodians. The State has objected to numerous persons on that list. Wexford has now agreed to search the Wexford custodians Plaintiff has identified. The State's position remains unchanged.

1

- **Data repositories.** (ECF 56-2 Ex. A(I).) Plaintiff has proposed searching data repositories within the IDOC, the Governor's office, and the Illinois Department of Human Services ("IDHS").  The State agrees to search within the IDOC only.

## 2. Discussion.

Plaintiff respectfully suggests that, in assessing the parties' dispute over the terms of this ESI Protocol, the Court should bear in mind three basic considerations:

*First*, this is a case about systemic failure.  The gravamen of Plaintiff's claim is that the injuries he suffered were the result of a system-wide failure by the defendants to provide adequate accommodations and mental healthcare to an enormous number of mentally ill IDOC prisoners.  Plaintiff charges that he, along with hundreds of other mentally ill prisoners, was placed in extended solitary confinement because the IDOC had no facilities to provide mental healthcare, and instead dealt with these difficult inmates by locking them away in isolation cells.[1] [*See* ECF 1 ¶ 35]  Plaintiff thus alleges that he was injured by upper-level policy acts and omissions that impacted hundreds of other prisoners as well—not just him.  Indeed, the policymaker-defendants in this case sought dismissal on grounds that they would have no reason to know about Plaintiff's condition in particular [*see* ECF 37], but the Court denied that motion precisely because "Plaintiff's allegations . . . assert[] a . . . claim regarding a fundamental deficiency within the IDOC" that was "systemic" in nature.  [ECF 44 at 6]

For purposes of the ESI Protocol, the upshot of all this is that while document searches using Plaintiff's name are reasonably likely to lead to the discovery of information regarding his own injuries, such searches are not reasonably targeted at uncovering information about the systemic *causes* of the injuries that Plaintiff alleges.

---

[1]  *Cf. Rasho v. Walker*, 376 F. Supp. 3d 888, 891 (C.D. Ill. 2019) (permanent injunction order noting, "As of July 2018, 913 inmates on the IDOC mental health caseload were housed in segregation.").

*Second*, the State and Wexford have been engaged in litigation relating to Plaintiff's systemic allegations for years now, in the *Rasho* injunctive relief class action case.² The defendants and their counsel, therefore, are intimately familiar with the facts at issue in Plaintiff's systemic claims. Thus there is every reason to think that defendants and their counsel know precisely whom within their organizations is likely to possess information that is probative of Plaintiff's systemic claims, and what sorts of words and phrases those custodians use to discuss the issues alleged in Plaintiff's complaint.

*Third*, the ESI Protocol at issue here is not a discovery request. The defendants are not being called upon to review and produce the documents that are gathered pursuant to the Protocol. Rather, the ESI Protocol simply establishes the criteria that will be used to collect ESI.

Both the State and Wexford, in turn, employ modern document collection software that is designed to winnow down the documents that are collected pursuant to the ESI Protocol. The software can identify which documents are associated with which search terms and which custodians, and it can filter results further by a variety of criteria, such as date, custodian, sender, recipient, and the like. The defendants' document review software, in short, permits a user to engage in a "funnel" process, in which an initial, broad collection of ESI can be narrowed down to a much smaller universe of documents that must actually be reviewed and produced.

With these three considerations in mind, Plaintiff turns to the parties' disagreements.

**3. Discussion.**

    **a.    Search terms**.

Plaintiff proposed a numerous search terms, most of which are designed to capture information going to Plaintiff's systemic allegations. (*See* ECF 56-2 Ex. B.) The defendants object to nearly all

---

² Plaintiff's complaint invokes *Rasho* repeatedly, [ECF at 3 and ¶ 36(a)], and indeed Plaintiff himself testified as a witness in *Rasho* regarding his mistreatment while imprisoned. *See Rasho*, 376 F. Supp. 3d at 891 (noting Plaintiff's testimony as a former class member).

these terms, on grounds that they will return too many documents. Instead, the State and Wexford propose to search Plaintiff's name and IDOC number alone. (Wexford additionally invites Plaintiff to review copies of its mental health policies down the road, and come up with additional search terms.)

This is inappropriate, for two basic reasons. *First*, the objection that Plaintiff's proposed search terms will return too many documents simply misunderstands the purpose of Protocol's "searches." Plaintiff does not propose to have the defendants manually review and produce every document captured by the search terms. Rather, Plaintiff's proposed terms are merely the beginning of the funneling and filtering that defendants' e-discovery software makes possible.

Undoubtedly, some of Plaintiff's proposed terms will return an overlarge—and useless—number of documents. But the defendants' software allows such useless terms to be identified and then simply discarded. Additionally, the defendants' software allows filtering by sender, recipient, and other criteria. This can also cut down dramatically on the number of documents that must be reviewed. For example, some terms may appear in emails that are broadcast agency-wide, resulting in thousands of documents that are technically responsive but practically irrelevant. With simple filtering by sender or recipient, such mass emails can be identified and the numerous duplicates removed. The defendants' "burden" objection to Plaintiff's search terms simply ignores these capabilities, and takes the implicit position that defendants will have to engage in a brute-force, page-by-page review of every document that the Protocol's terms would capture. That is simply not so.

*Second*, the defendants have objected to Plaintiff's search terms, but they have never attempted to propose terms that should be used in the ESI Protocol. The federal rules require that development of an ESI protocol should be a collaborative process, not an adversarial one. *See Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10-cv-5711, 2012 WL 4498465, at *19 (N.D. Ill. Sept. 28, 2012) (endorsing a collaborative approach in ESI discovery and noting the importance of starting this approach

early in the case). In particular, the *responding* party must help develop the ESI keyword search terms. *See William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) (noting that "where counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords, with *input from the ESI's custodians* as to the words and abbreviations they use" (emphasis added)). To do otherwise forces counsel for the requesting party to "design[] keyword searches 'in the dark, by the seat of the pants,' without adequate discussion with each other to determine which words would yield the most responsive results." *United States v. New Mexico State Univ.*, No. 1:16-CV-00911, 2017 WL 4386358, at *2 (D.N.M. Sept. 29, 2017) (quoting *Wm. A Gross Const. Assocs.*, 256 F.R.D. at 135)).

The defendants have simply refused to comply with these obligations. The defendants have not proposed a single search term. (Nor have they proposed a single custodian.) Rather, they have objected to virtually all of Plaintiff's proposed terms on grounds that they are not accurately targeted at gathering responsive documents. Instead, the defendants' position seems to be that Plaintiff must guess at what terms would be effective. That is not the cooperative approach that the rules require.

In any litigation, the defendants' refusal to cooperate would be unacceptable. Corporate defendants like Wexford and the State are always in the best position to identify persons within their organizations likely to possess ESI, and they are in the best position to understand words and abbreviations those persons use to discuss the topics at issue in the case. And as the authorities outlined above explain, it is for this reason that responding parties are obligated to use that knowledge in identifying proper custodians and developing useful search terms. *Cf. In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*, No. MDL 2121, 2011 WL 6372826, at *3 (S.D. Cal. Dec. 19, 2011) ("Courts have held that effective search terms cannot be identified in an information vacuum and that a party's human knowledge should be utilized to craft keyword searches

that are responsive . . . ." (quotation omitted)).  That is doubly so here, where both Wexford and the State have been involved in the *Rasho* litigation for years now, which overlaps substantially with the systemic misconduct that Plaintiff alleges here.

Wexford and the State, in short, are in a position to identify with great accuracy search terms that are likely to lead to the efficient gathering of responsive documents in this case.  Their refusal to do so, and their simultaneous objection to Plaintiff's terms as overbroad, is simply an effort to have it both ways.  That is not how discovery should be conducted.  At a minimum, a responding party cannot both refuse to cooperate in the development of search terms, and then object that the search terms proposed by the requesting party will not efficiently capture responsive information.

*Plaintiff's proposal*.  Plaintiff does not propose that the Court pick and choose among the search terms that the parties dispute.  Such a task would be time-consuming, and likely ineffective.  *Cf. Saliga v. Chemtura Corp.*, No. 3:12CV832 RNC, 2013 WL 6182227, at *3 (D. Conn. Nov. 25, 2013) ("The court is loath[] to decide the search terms to be used because the parties are far better positioned to do so.").  Rather Plaintiff proposes that in refusing to cooperate in the development of search terms, the defendants have forfeited their right to object to the ones Plaintiff proposes.  Thus Plaintiff's proposed terms should be used.  If certain of these terms return an overlarge number of documents, the parties can simply discard them or narrow them through document review software.

    b.    **Custodians**.

Wexford has agreed to search the custodians Plaintiff has identified.  (*See* ECF 56-2 Ex. A(II) 19(a)-(f).)  The State, however, has objected to searching all Plaintiff's proposed custodians except for certain persons within the IDOC.  Neither defendant has affirmatively proposed custodians to search.

The State's narrowing of the custodian list simply does not acknowledge the scope of Plaintiff's claims.  This is a case against the State of Illinois, not just the IDOC.  Plaintiff charges that the State

failed to move Plaintiff out of the IDOC's custody into another setting, such as the IDHS. (*See* ECF 1 ¶ 36(a).) Such inter-agency transfers involve at least two agencies—the IDOC, and the IDHS. Additionally, the Rasho litigation makes clear that the Governor's office has been involved in the failure to secure adequate mental health care to mentally ill prisoners like Plaintiff. *See Rasho*, 376 F.Supp.3d at 916 ("High level officials in the Governor's office have written Wexford 'encouraging' them to fill the required [mental health] positions, yet the staff necessary to provide constitutional care has yet to be hired; nor have the Defendants generally sought to take a different approach."). Thus the State's flat refusal to identify any custodians outside the IDOC is inappropriate.

*Plaintiff's proposal*. In the absence of an adequate counter-proposal by the State, Plaintiff proposes to use the custodians he has identified. If certain custodians do not possess relevant information, they can be identified and culled through the parties' meet and confer efforts.

    c.    **Data repositories**.

The parties' dispute over data repositories dovetails with their dispute over custodians. Plaintiff has identified three relevant data repositories: the IDOC, the Governor's Office, and the IDHS. (*See* ECF 56-2.) The State objects, contending collection is appropriate only from the IDOC.[3]

Plaintiff believes data in the Governor's office and IDHS is relevant for the same reason he believes custodians from those agencies are likely to possess relevant information. The State's effort to permit collection only from the IDOC simply misunderstands the scope of Plaintiff's case and the nature of the policy failures that Plaintiff claims to have caused his injuries. The Governor's office and IDHS are likely to contain information that is relevant to Plaintiff's claims of systemic failure in this case, and they are thus appropriate targets of discovery.

---

[3] The State additionally lists the Illinois Department of Innovation and Technology ("DoIT"), but DoIT is merely an IT service-provider to other state agencies; Plaintiff understands that DoIT itself did not generate responsive information.

*Plaintiff's proposal*.  The IDOC, IDHS, and Governor's office should all be included as data repositories in the ESI Protocol.

December 20, 2019                              Respectfully submitted,

*/s/ Stephen H. Weil*

Stephen H. Weil -  weil@loevy.com
Sarah Grady – sarah@loevy.com
Loevy & Loevy
311 N. Aberdeen Street 3rd Floor
Chicago, IL 60607
312-243-5900

Antonio Romanucci - aromanucci@rblaw.net
Nicolette Ward - nward@rblaw.net
Romanucci & Blandin LLC
321 N Clark Street
Suite 900,
Chicago, IL 60654
312-458-1000

Maggie E Filler - maggie.filler@macarthurjustice.org
Roderick and Solange MacArthur Justice Center
375 E. Chicago Avenue,
Chicago, IL 60611
(312) 503-1271

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 20, 2019, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                     /s/ Stephen H. Weil