044653/19344/JNR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| ANTHONY GAY,<br><br>          Plaintiff,<br><br>v.<br><br>THE STATE OF ILLINOIS, JOHN BALDWIN, JEFF SIMS, SHANE REISTER, DR. DOE 1, MELVIN HINTON, SYLVIA BUTLER, KELLY ANN RENZI, WILLIAM PUGA, DR. CHESS, DR. NUNEZ, WEXFORD HEALTH SOURCES, INC., and DOES 2-5,<br><br>          Defendants. | Case Number  19-cv-01133<br><br>Judge Colin Stirling Bruce |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM REGARDING ESI PROTOCOL

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, PSY.D., and WILLIAM PUGA, M.D., by and through their attorney, Jessica N. Klaus of CASSIDAY SCHADE LLP, and for Defendants' Response to Plaintiff's Memorandum Regarding ESI Protocol, state as follows:

### I.  Background

Following the Court's December 6, 2019, telephonic hearing, the parties engaged in meet-and-confer efforts to resolve their discovery disputes. Minute Entry for December 6, 2019. Defendant Wexford was able to come to an agreement with Plaintiff regarding all ESI discovery disputes, save one – the overbroad list of search terms that Plaintiff seeks to use in his search for relevant documentary evidence. As to the list of query terms identified in Section II, Exhibit B, of Plaintiff's Proposed Discovery Plan for Electronically Stored Information, the parties have reached an impasse.

Defendants have offered to produce documents previously identified through a search of Wexford's servers using Plaintiff's name and inmate number, as well as all existing policies which are relevant to Plaintiff's claims. Further, Defendants offered to meet and confer after Plaintiff has had time to review the produced documents, and discuss potential new search terms, including newly identified policies which may be relevant to Plaintiff's claims. Plaintiff has declined this offer, insisting that Defendant Wexford search its servers (which includes all active employees' e-mail accounts) for all e-mails created between November 7, 2007, and August 27, 2018, with generic terms such as "solitary," "segregation," "remedial plan," or "disciplinary status." D/E 56, pg. 17-18, 32-34. In total, Plaintiff proposes a list of 73 search terms with no reasonable limitations on the scope or breadth of the request.

## II.  Legal Standard

Federal Rule of Civil Procedure 26(b)(1) defines the appropriate scope of discovery as, "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." A court may limit the extent of discovery if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C)(iii). "Discovery is limited to matters 'relevant to any party's claim or defense.'" *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). Discovery requests must be "reasonably calculated to lead to the discovery of admissible evidence." *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928 (7th Cir. 2004). When parties disagree

on the appropriateness of a discovery request, they are required to meet and confer in an attempt to resolve the dispute without court action. *See* FED. R. CIV. P. 37(a)(1).

District courts have broad discretion in discovery matters, and discovery rulings will be reviewed for abuse of discretion. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014). Even after showing an abuse of discretion, an appellate court will not grant relief "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice." *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995). This standard requires an appellate court to affirm a discovery ruling "unless the judge's ruling lacks a basis in law or fact or clearly appears to be arbitrary." *Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 644 (7th Cir. 2011). A court may limit discovery in order to preempt "fishing expeditions" and narrow focus on methods reasonably calculated to produce relevant evidence. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016).

**III.    Discussion**

    **a.    Plaintiff's Search Terms are Disproportionate to the Needs of the Case and Are Unlikely to Effectively Produce Relevant Information**

Plaintiff notes, in his Memorandum Regarding ESI Protocol, D/E 60, that "[u]ndoubtedly, some of Plaintiff's proposed terms will return an overlarge—and useless—number of documents." Plaintiff's honesty is appreciated, but this understates the problem with his overly broad and unnecessarily expansive list of search terms. To query Wexford's servers for every e-mail created between November 7, 2007, and August 27, 2018, that includes the term "isolation," for example, may return tens of thousands of documents. The possibility that ten e-mails, out of thirty thousand, may be relevant does not justify the effort it takes to identify them. This is especially true when those ten relevant e-mails can be discovered through much simpler and more direct query terms. In fact, Plaintiff all but admits that his search terms are *not*

3

"reasonably calculated" to produce discoverable information when he notes that this is merely the first step in the process of locating relevant e-mails. Tellingly, Plaintiff does not identify how many steps this process would entail. Plaintiff's list of search terms is merely a modern-day, electronic fishing expedition, not limited by any reasonable calculation to produce admissible evidence.

Plaintiff's request is even more mystifying in light of his assertion that "Plaintiff does not propose to have the defendants manually review and produce every document captured by the search terms." D/E 60, pg. 4. Perplexingly, Plaintiff contends that "defendants are not being called upon to review and produce the documents that are gathered pursuant to the Protocol." *Id.* at 3. Plaintiff intends the search terms to be "merely the beginning of funneling and filtering that defendants' e-discovery software makes possible." *Id.* at 4. Plaintiff does not adequately define how the results are to be narrowed without reviewing or producing them, outside of vague references to a "funnel" process. *Id.* Indeed, Plaintiff's own word choice hints at his intent to collect as much information as possible, and only after that to "narrow[] down to a much smaller *universe* of documents that must actually be reviewed and produced." *Id.* (emphasis added). Defendants contend that the collection, review and eventual production of any "universe of documents" is disproportionate to the needs of this case.

Further, several query terms are duplicative. For instance, Plaintiff requests that Defendants query "Rasho," and separately query "Stewart AND Rasho," and "monitor AND Rasho." By definition, the query "Rasho" will return all e-mails containing reference to the Rasho case, including those e-mails which also include reference to "Stewart" or "monitor." More duplicative search requests are found in numbers 15 and 16, which specify (respectively) that Defendants run searches for "solitary confinement" and "solitary." All e-mails which are

4

included in the first search will also, by necessity, be included in the second. Plaintiff offers no explanation for his request of these duplicative and wasteful series of searches.

Presumably, the initial search of each term will result in the return of thousands of e-mails that will be further refined by searching for a term specifically relevant to Plaintiff's claim. The results would necessarily need to be narrowed using, for example, Plaintiff's name or inmate number. There is no telling how many "funneling" attempts will need to be attempted before the results are winnowed down to a manageable number of reviewable documents. Defendants, however, have already offered to query Wexford servers for Plaintiff's name and inmate number, and will produce those results with their production responses. Unless Plaintiff has other personally identifying information that may narrow the search results to those documents specific to Plaintiff's care, the result will be the same. Plaintiff's proposed ESI protocol will produce tens of thousands, or perhaps hundreds of thousands, of irrelevant and unnecessary e-mails that will require additional, ill-defined "funneling" efforts to filter out the proverbial needle in the haystack. That is, of course, assuming that Plaintiff's search terms will return *any* relevant information, which (based on the queries tangential nature to this matter) is not guaranteed. This approach is overly broad and disproportionate to the needs of this case.

    b.    **Defendants' Offer to Query Wexford's Servers for Plaintiff's Name and Inmate Number, Along with Additional Production, are Proportionate the Needs of the Case**

Plaintiff unfairly characterizes Defendants' efforts to resolve this dispute as non-existent. In fact, Defendant has offered to (1) query Wexford servers for any e-mail, which references the Plaintiff (identified by name or inmate number), (2) produce any such e-mail, (3) produce copies of existing Wexford policies that guided, controlled, or impacted Plaintiff's care, and (4) meet

and confer, after Plaintiff has reviewed the produced information, to determine whether Plaintiff has identified additional search terms which may reveal relevant, discoverable information.

Plaintiff asserts that because Defendants have not offered additional search terms, Defendants have "refused to comply with" discovery obligations. D/E 60, pg. 5. This is a gross mischaracterization of Defendants' efforts. Defendant has met, conferred and offered to produce relevant documents. Defendants have also offered to help identify additional search terms following a review of produced documents. An objection, complete with a proposed, comprehensive counter-offer, to Plaintiff's exceptionally extensive list of search terms is not a refusal to cooperate, but a reasonable effort to compromise. Plaintiff's list of 73 search terms, however, is not seemingly targeted at producing any additional, relevant documents, and therefore, Defendants are at a loss for suggesting alternative query terms. For example, Plaintiff seeks e-mails referencing "*Davis v. Baldwin*." D/E 56, pg. 18, 34. Defendants cannot fathom an e-mail exchange which would reference that case, but not the Plaintiff by name or inmate number, and yet still somehow be relevant to Plaintiff's claims. An employee's opinion on a separate case does not bear on Plaintiff's claims. Consequently, Defendants are hard-pressed to suggest an alternative query term to ascertain *relevant* information related to that separate case.

Plaintiff has defended his extensively encompassing list of search terms by alleging that a "systemic failure" caused his injury. D/E 60, pg. 2. Plaintiff, however, is not entitled to any and all information that may evince some ephemeral institutional shortcoming, even those entirely unrelated to Plaintiff's claims. Plaintiff is only entitled to information relevant to his claim and a search term must be reasonably calculated to produce such admissible information. Evidence of a notional organizational inadequacy is not relevant to this case unless it relates, in some way, to how Plaintiff was allegedly mistreated. Any *relevant* "systemic failure," should it exist, would

necessarily be evident in e-mails related to Plaintiff individually, or the policies which guided his treatment. Defendants' proposed compromise is a reasonable attempt to identify and produce probative information, with the additional safeguard that parties will meet again to confer and discuss potential new search terms after Plaintiff has reviewed the produced information (those e-mails relating to Plaintiff individually and those existing policies concerning his care). Defendants' proposed ESI protocol is reasonable and proportionate to the needs of the case.

### IV. Conclusion

Plaintiff's proposed ESI protocol includes a list of 73 search terms that Plaintiff admits "will return an overlarge—and useless—number of documents." D/E 60, pg. 4. His admission that the list is *not* intended to specifically target relevant, discoverable information does nothing to support his argument. Plaintiff's plan to gather a "universe of documents" from which to slowly whittle down using additional, unidentified search terms is unduly burdensome, and almost-by-definition not "reasonably calculated to lead to the discovery of admissible evidence." *Northwestern Mem'l Hosp.*, 362 F.3d at 928 (7th Cir. 2004). Plaintiff seeks to conduct discovery by first gathering as much information as possible, then narrowing that information to data which might, arguably, be related to Plaintiff's claim. This is an inefficient, wasteful, and a disproportionate means to conduct discovery.

Defendants would rather begin by identifying relevant information, and broadening the search (as needed) based on the specific information and terms gleaned from that pertinent data. Defendants have agreed to query Wexford servers for e-mails referencing Plaintiff by name or by inmate number, and to produce copies of all existing policies that are relevant to Plaintiff's complaint. Additionally, Defendants have offered to meet and confer once Plaintiff has reviewed the produced material, in order to identify potential search terms that are "reasonably calculated

7

to lead to the discovery of admissible evidence." *Id.* Defendants respectfully request that this Court approve their offer, and deny Plaintiff's unreasonable demands.

              Respectfully submitted,

              CASSIDAY SCHADE LLP

              By: /s/ Jessica N. Klaus
                Attorneys for Defendant, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, PSY.D., and WILLIAM PUGA, M.D.

Jessica N. Klaus
ARDC No. 6315478
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
jklaus@cassiday.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2019, I electronically filed the foregoing Defendants' Response to Plaintiff's Memorandum Regarding ESI Protocol with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Nicholas S. Staley, Esq.
Thor Inouye, Esq.
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601

Stetson F. Atwood, Esq.
Laura Ieremia, Esq.
Donohue Brown Mathewson & Smyth, LLC
140 S. Dearborn Street, Suite 800
Chicago, IL 60603

Antonio M. Romanucci, Esq.
Nicolette A. Ward, Esq.
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654

Maggie E. Filler, Esq.
Roderick and Solange MacArthur Justice Center
745 Atlantic Avenue, 8th Floor
Boston, MA 02111

Daniel M. Greenfield, Esq.
MacArthur Justice Center Northwestern Pritzker School of Law
375 E. Chicago Avenue
Chicago, IL 60611

Stephen H. Weil, Esq.
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago IL 60607

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct:

/s/ Jessica N. Klaus

9364690 BJTAYLOR;BJTAYLOR