UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

ANTHONY GAY,

      Plaintiff,

v.

JOHN BALDWIN et al.,

      Defendants.

Case No. 19-1133

**ORDER**

      This matter is before the Court on the parties' dispute regarding their Electronically Stored Information ("ESI") protocol. On November 15, 2019, the parties filed a Status Report (#56) indicating that they were able to agree on numerous aspects of the ESI protocol, but were unable to agree on others. The Court held a Status Conference on December 6, 2019, during which the parties agreed to modify sections of the ESI protocol. The Court directed the parties to brief the remaining disputes. On December 20, 2019, Plaintiff filed a Memorandum Regarding ESI Protocol (#60). Defendants Wexford Health Sources, Inc., Kelly Renzi, and William Puga ("Medical Defendants") filed a Response (#61), as did Defendants John Baldwin, Jeff Sims, Shane Reister, Melvin Hinton, Sylvia Butler, and Jamie Chess ("IDOC Defendants"). Plaintiff then filed a Reply (#63). The Court will rule on the parties' positions and objections as set out below.

**I.  Background**

      Plaintiff filed his Complaint on October 28, 2018, alleging that while incarcerated, Plaintiff was wrongly placed in extended solitary confinement causing his mental condition to deteriorate. The parties have worked to negotiate an ESI protocol to govern discovery. While they successfully resolved some disagreements, three specific issues remain in dispute: (1) the search terms; (2) the list of custodians; and (3) the data

repositories to be searched. The Court will explain in more detail below, but in general Plaintiff seeks to encompass a broad range of search terms, custodians, and data repositories. Plaintiff maintains that his Complaint alleges a systemic deficiency within the Illinois Department of Corrections ("IDOC") leading to Plaintiff and hundreds of other prisoners being wrongly subjected to solitary confinement. Defendants, on the other hand, seek an ESI protocol that is narrowly tailored to generate responses relevant to Plaintiff's individual claims.

## II.     Legal Standard

A district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes. *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995). Rule 34 provides that a party may request, among other things, the production of documents that "constitute or contain matters within the scope of Rule 26(b)" and are in the custody or control of another party. Fed. R. Civ. P. 34(a).

Rule 26(b) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 26 also makes clear that the scope of discovery has limits, particularly as it relates to ESI.  Rule 26(b)(2) provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

The district court exercises significant discretion in ruling on a motion to compel. *Gile v. United Airlines*, 95 F.3d 492, 495-96 (7th Cir. 1996). It may grant or deny the motion in whole or in part. *Id.* In exercising its discretion, the district court may deny discovery to protect a party from undue burden. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998).

**III.    Analysis**

While the parties dispute three areas of the ESI protocol, their arguments are essentially the same for each issue. Accordingly, the Court will first consider the overreaching argument and then apply that reasoning to each issue.

Plaintiff argues that his Complaint is about Defendants' alleged systemic failure to treat prisoners with mental health conditions. Plaintiff's Memorandum states, "The gravemen of Plaintiff's claim is that the injuries he suffered were the result of a system-wide failure by the defendants to provide adequate accommodations and mental healthcare to an enormous number of mentally ill IDOC prisoners." Plaintiff's Memorandum, #60, p. 2. On the other hand, Defendants maintain that Plaintiff's Complaint concerns only a single plaintiff's claims.

This dispute is central to the parties' ESI protocol. Plaintiff seeks an expansive number of search terms, custodians, and data repositories, to obtain information relevant to a "systemic failure" in the IDOC. Defendants seek to narrow the search terms, custodians, and data repositories to only those that will provide documents responsive to Plaintiff's individual treatment within the IDOC.

While Plaintiff's Memorandum makes repeated arguments about systemic failures within the IDOC, Plaintiff's Complaint is noticeably silent as to any system-wide failure regarding solitary confinement policies that caused harm to a group of mentally ill prisoners. Instead, Plaintiff's Complaint focuses on an alleged deficiency within the IDOC that caused harm to Plaintiff. Plaintiff's Complaint does not allege that other individuals were similarly harmed. The closest Plaintiff comes to alleging a system-wide

3

failure is on page 5 of his Complaint: "Defendants' continuing policy of failing to provide these accommodations to *mentally ill prisoners like Anthony* resulted in his entrapment in a cruel, endless cycle, and the devastating consequences described in this Complaint. " Plaintiff's Complaint, #1, p. 5 (emphasis added). But even here, where Plaintiff raises the idea of similarly situated individuals, he only alleges harm to himself. This is not a class action lawsuit. Only Defendants' policies as they relate to Plaintiff's claims are relevant. Taking this into account, the Court turns now to the three issues areas.

First, the parties dispute the number of search terms used in the protocol. Plaintiff proposed 73 search terms.[1] Plaintiff's Proposed ESI Protocol, #56-2, Exhibit B. Many of these terms are very broad, such as "isolation," "solitary," and "segregation." Many others are unnecessarily duplicative. For example, Plaintiff includes both "Rasho" and "Stewart AND Rasho" as search terms. This will reveal numerous duplicative results as every result for "Stewart and Rasho" will also appear in a search for "Rasho." More importantly, given that this is a case involving Defendants' treatment of Plaintiff, the terms Plaintiff suggests are overly broad. Because the terms are so over broad, they are unlikely to produce information relevant to either party's claims or defenses.

Defendants proposed searching for the following terms: 1) "Anthony Gay," 2) "Gay, Anthony," 3) "Gay Anthony," 4) "B62251", and 5) "B-62251." These terms should encompass any documents relevant to Plaintiff's alleged harm. Defendants also agree to produce any policies relevant to his claims. The Court adopts Defendants' proposed search terms and directs Defendants to also produce any policies relevant to Plaintiff's care.

Second, the parties dispute the number of custodians to be searched. Plaintiff's proposed ESI Protocol lists twenty-five State employees and six Wexford employees as proposed custodians. The Wexford Defendants agreed to search the six Wexford custodians Plaintiff identified. The IDOC Defendants object to Plaintiff's proposed

---

[1] Neither party proposed a compromised list of terms.

custodians and instead propose to search fourteen custodians, including all Defendants and five other high ranking administrators with the IDOC.

Plaintiff justifies his request by arguing that this is a case against the State of Illinois. Plaintiff cites to his Complaint where he alleges that the State failed to move Plaintiff out of IDOC custody into another State setting, such as the Illinois Department of Human Services ("IDHS"). Plaintiff provides no rationale justifying the search of listed custodians such as the Governor of Illinois, Director of Public Safety, or Director for the Governor's Office of Management and Budget. As noted, Plaintiff's Complaint alleges that the IDOC's actions caused harm to Plaintiff. Discussions within other agencies are irrelevant. Furthermore, even if these employees of other agencies were having relevant discussions about Plaintiff's custody, these communications likely would be disclosed even under the more narrow custodian list as these discussions would have involved Defendants or the other listed IDOC custodians.[2]

Plaintiff's proposed custodian list amounts to a fishing expedition. The Court adopts Defendants' proposed list of custodians, including all Defendants and five other IDOC administrators.

Third and finally, Plaintiff and the IDOC Defendants dispute the data repositories to be searched. Plaintiff identifies three data repositories: the IDOC, the Governor's Office, and IDHS. The IDOC Defendants propose searching only the IDOC. For the reasons discussed above, IDOC is the only State repository relevant to Plaintiff's claims. The Court sustains Defendants' objections to the Governor's Office and IDHS being included as data repositories.

In sum, the Court finds that Plaintiff's proposed search terms, custodians, and repositories are overbroad, unlikely to produce information relevant to any party's claim or defense, and are disproportionate to the needs of this single plaintiff case. The Court

---

[2] If evidence develops that Plaintiff or Plaintiff's treatment was discussed by other agencies, the Court may reconsider this limitation. But, without more, it is unlikely that these remote custodians will have any relevant information and the burden of the search far outweighs its likely benefit.

directs the parties to submit a proposed ESI Protocol consistent with this order within fourteen days.

ENTERED this 24th day of January, 2020.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE
