E-FILED
Friday, 01 May, 2020 11:54:08 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| Anthony Gay, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-CV-01133 |
| | ) | |
| v. | ) | Judge Harold A. Baker |
| | ) | Magistrate Judge Eric I. Long |
| John Baldwin *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
WEXFORD AND PUGA MOTION TO DISMISS IN PART**

Plaintiff Anthony Gay, through counsel, submits this response to the motion to dismiss in part filed by defendants Wexford Health Sources, Inc. and William Puga (collectively "Wexford") (ECF 88) and memorandum in support (ECF 89).

## INTRODUCTION

Plaintiff alleges that while he was held in solitary confinement for two decades, the defendants in this case, including Wexford, refused to provide him with adequate mental healthcare. Last year, Judge Bruce denied the defendants' motion to dismiss this claim, holding that, among other things, Plaintiff has adequately alleged that the defendants' refusal to provide Plaintiff with appropriate mental healthcare over those decades subjected him to a continuing violation. Discovery into the entire period of the defendants' alleged misconduct is has been underway.

Now Wexford, seizing on Plaintiff's filing of an amended complaint to add several new defendants (the amendment did not otherwise change Plaintiff's allegations), asks the Court to enter an order contradictory to Judge Bruce's ruling. Specifically, Wexford argues that the continuing violation doctrine should not apply in this case because during his decades in solitary confinement, Plaintiff filed

several *pro se*[1] lawsuits that related to certain aspects of his confinement, and some of those lawsuits were directed at Wexford or its employees.

The Court should reject this argument, which invites it to issue a ruling that both contradicts Judge Bruce's and that would invent an entirely new continuing violation doctrine, from whole cloth. Wexford's purported "policy" rationales rely on quoting passages in the leading continuing violation decisions out of context to construct a rule that does not exist in any of them. Tellingly, Wexford has not identified any case, in any jurisdiction, actually adopting the rule it proposes.

That is for good reason, because Wexford's rule would work a manifest injustice: if someone subject to years of abuse even tries to challenge their mistreatment in court, the continuing violation doctrine is forever dissolved and the defendants can continue abusing them, knowing that they can only be held accountable for a fraction of their misconduct. That is certainly the outcome Wexford would have here: Wexford ironically *emphasizes* that Plaintiff's lawsuits were pointless; Wexford ignored them and continued mistreating Plaintiff for years, up until the eve of his release from prison.

Wexford cannot find a single decision applying the rule it proposes to graft onto the continuing violations doctrine because the doctrine concerns a different matter: the nature of the defendant's alleged misconduct, and the nature of the injury that misconduct causes to the victim. The application of the continuing violation doctrine simply does not turn on whatever legal attempts the victim made to stop the mistreatment while it was occurring, because such suits alter neither the nature of the misconduct nor the nature of the injury—the two determining criteria for continuing violation analysis.

The effect of such prior lawsuits, instead, is covered by an entirely different area of law: the doctrines of claim preclusion and issue preclusion. These doctrines provide protections for the problem Wexford claims it is being subjected to here—roughly speaking, multiple lawsuits about the same

#

[1] All Plaintiff's lawsuits were filed *pro se*. In some he was later appointed counsel, in others he was not.

subject. The doctrines of claim and issue preclusion are well-developed, and they precisely calibrate when and how a prior lawsuit limits a party's rights in a subsequent one. Wexford has asserted both claim and issue preclusion as affirmative defenses in its answer, so it is well aware of these doctrines. If Wexford believes that Plaintiff's prior lawsuits limit his rights to assert claims in this one, it is free to bring a motion to impose those limits pursuant to those doctrines. If Wexford brings such a motion, the Court can then rely the breadth of precedent applying the claim and issue preclusion doctrines to assess whether and how Plaintiff's prior lawsuits affect his rights in this case.

What the Court should not do, however, is accept Wexford's invitation to graft a penalty clause onto the continuing violation doctrine—one that no other court in any jurisdiction has adopted, and that indeed is entirely unsupported by the case law Wexford identifies. Wexford's motion should be denied.

## BACKGROUND

Plaintiff was put in solitary confinement continuously for more than 20 years. He is mentally ill, and the extended period of solitary confinement ravaged his mind. For many years Wexford has been under contract to provide "[c]omprehensive and specialized mental health services," including inpatient hospitalization, the IDOC's prisoners. (*See* Amended Compl., ECF 82 ¶ 42(c).) But for years Wexford shirked that expensive obligation. Instead, it refused to provide appropriate mental health treatment to seriously ill prisoners including Plaintiff, allowing them, and him, to languish for years in solitary confinement to the point that Plaintiff mutilated himself repeatedly. Plaintiff alleges that Wexford's mistreatment of him continued up to the eve of his release from prison in 2018.

Plaintiff brought this case in October 2018 against Wexford, the IDOC, and several individual defendants. Wexford elected to answer the complaint. (*See* ECF 33.) The IDOC, on the other hand, filed a motion to dismiss, making among other things the same contention that Wexford makes here: that Plaintiff's claims before October 2016 are time-barred. (ECF 37 at 10-15.) Judge Bruce denied the defendants' motion in its entirety. Noting that "Plaintiff alleges that for about twenty years, Defendants

denied him mental-health care that caused him physical and psychological harm" Judge Bruce held that that under binding Seventh Circuit precedent, that allegation stated a continuing violation. (ECF 44 at 12.) The case then proceeded to discovery, which Plaintiff has been pursuing actively for months now.

In early March 2020, Plaintiff amended his complaint to add several defendants. (*See* ECF 82.) No other substantive changes were made to Plaintiff's claims, and the allegations regarding Wexford were identical. Wexford seized on the amended complaint, however, to file this motion to dismiss in part. In it, Wexford effectively asks the Court to contradict Judge Bruce's holding that "den[ying] [a prisoner] mental-health care" for years constitutes a continuing violation. This is not because of any newly discovered evidence—in its answer, which was filed before the IDOC's motion to dismiss, Wexford already asserted that Plaintiff had filed multiple lawsuits against Wexford and its employees. (*See* ECF 33 at 32-34.) Indeed Wexford provides no explanation for seeking to abandon Judge Bruce's ruling so far out of time. Instead, Wexford's motion to dismiss is grounded in "policy" arguments it purports to identify in the language of several cases applying the continuing violation doctrine.

**ARGUMENT**

As an initial matter, Wexford's motion labors under a heavy burden, one that it fails to acknowledge: the law of the case doctrine. The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011). The law of the case doctrine provides that "[a]lthough a court may revisit a prior decision of its own or a coordinate court, it ordinarily should not do so 'in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *In re Mathias*, 867 F.3d 727, 730 (7th Cir. 2017) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). This rule applies with particular force to cases that are reassigned to a different member of the same court,

since there is a "rightful expectation of litigants that a change of judges . . . will not mean going back to square one." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005).

Wexford offers no argument that Judge Bruce's determination that Plaintiff's Complaint alleges a continuing violation of his federal rights was clearly erroneous or would work a manifest injustice. Nor could it: Judge Bruce's determination that Plaintiff allegation that he had been denied adequate mental healthcare for many years—the precise allegation he also makes against Wexford—was based on a straightforward application of Seventh Circuit precedent. (ECF 44 at 10-12.) Instead, aside from labelling Plaintiff and his counsel "harassing" and "vexatious," (*see* ECF 89 at 16), Wexford's bid to re-litigate Judge Bruce's holding relies on a "policy" argument that is without precedent, literally—Wexford's motion does not identify a single case, in any jurisdiction, adopting the rule it proposes.

There are no such precedents because the rule that Wexford proposes is irrelevant to the continuing violation doctrine. Judge Bruce's holding that Plaintiff had alleged a continuing violation relied on *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), a case that, for purposes of the continuing violation doctrine, is closely analogous to this one. (*See* ECF 44 at 11 (Judge Bruce noting that he found "the Seventh Circuit's opinion in *Heard v. Sheahan* [] instructive.").) In *Heard* an inmate needed hernia surgery, but for years the jail's medical staff refused to provide that treatment. The *Heard* court, Judge Bruce noted, held that this constituted a continuing violation:

> [The jail's refusal to treat the prisoner's condition] continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims.

(*Id.* at 12 (quoting *Heard*, 253 F.3d at 318 (brackets Judge Bruce's).) Judge Bruce held that under *Heard*, Plaintiff's claim that the defendants had "denied him mental-health care" for years stated a continuing violation. (*Id.*) Judge Bruce's holding was a straightforward application of *Heard*.

Indeed for purposes of analyzing the continuing violation doctrine, the situations in *Heard* and this case are essentially indistinguishable.

Wexford claims this is not so, and that despite the similarity of this case to *Heard*. Because Plaintiff filed several lawsuits relating to the conditions of confinement, Wexford argues, its years-long refusal to provide him with adequate mental health treatment was converted from a continuing violation into a series of discrete acts.

This argument is constructed from passages several separate decisions. Wexford notes that in *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013) the court discussed a cumulative approach to the continuing violation doctrine, in which "the cumulative impact of a series of actions becomes a violation of the law, where each violation viewed separately does not," (ECF 89 at 6), a rule that *Turley* draws from *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (*see Turley*, 729 F.3d at 651; ECF 89 at 6-7, discussing *Morgan*). Wexford also cites *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) for the proposition that discrete acts with continuing effects occur—and thus a plaintiff's claims accrue—on the day they happen. (ECF 89 at 6.) From these propositions, Wexford argues that Plaintiff's prior suits mean he has already concluded that "his past mental health treatment was *not* a continuing wrong but was instead a series of discrete wrongful acts that were separately actionable." (ECF 89 at 7.)

That simply does not follow. Wexford's argument seems to be that if any of the various predicate acts making up a continuing violation are actionable, then they must be discrete. But none of the decisions it relies upon say that. It is certainly *possible* for the continuing violation doctrine various predicate acts before it is actionable; *Morgan* gives a hostile work environment claim as an example. *Morgan*, 536 U.S. at 110. But as *Turley* notes, that is only an "[a]lternative[] . . . approach" to establishing a continuing violation. *Turley*, 729 F.3d at 651 (citing *Morgan*). None of the authorities Wexford cites suggest that if a defendant who engages in a continuing series of *serious*

abusive acts, each of which would actionable on its own, is thereby excluded from the continuing violation doctrine—yet that is the rule Wexford proposes.

Ultimately Wexford seems to ground this line of argument on a passage from *Heard* in which the court observed that the continuing violation should be employed where there numerous acts add up to a single, cumulative injury, because otherwise "it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them." *Heard*, 253 F.3d at 320. But that observation simply flows from the fact that in cases of deliberate indifference like this one, where "[i]t [is] *impractical* to allocate the plaintiff's pain day by day across the period during which medical treatment was delayed by the deliberate indifference of the defendants to his plight." *Id.* (emphasis added). The fact that allocating damages across a range of inflicted injuries may be impractical, however, does not mean that a suit covering this or that bad act converts a continuing violation into a series of bad acts. Such a suit does not convert the damage caused by a long, continuous violation into a series of injuries that are "readily calculable," for which the continuing violation doctrine would not apply and for which victim would then need to file multiple suits. *Id.*

In other words, nothing in *Heard*'s reasoning suggests that the victim's injuries ***become*** "readily calculable" or discrete if the victim tries to vindicate his rights over the course of the continuing violation. An interstitial lawsuit changes neither the nature of the tortfeasor's conduct nor the difficulty of allocating the victim's injury over the entire course of a period where "every day that the defendants ignored the plaintiff's request for treatment increased his pain." *Id.* at 319. As Plaintiff has pointed out, it is instead the doctrines of claim and issue preclusion that determine the impact of an earlier suit on the plaintiff's rights in a later one. So long as those doctrines otherwise permit a plaintiff to assert claims in a second suit that otherwise state a continuing violation, there is nothing in *Heard*—or any of the other continuing violation decisions Wexford discusses—to suggest

that the continuing violation doctrine is undone. And Wexford does not cite a single authority, from any time, in any jurisdiction, that holds otherwise.

Indeed, the thrust of Wexford's argument is that it should not be subjected to multiple suits on the same topic by the same litigant. (*See* ECF 89 at 15-16.) That is a perfectly permissible line of contention, but it is one that sounds a different doctrine, that of preclusion. The doctrines of claim and issue preclusion are well established. *See, e.g.*, *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 408 (5th Cir. 2008) ("The power to curtail duplicative litigation in this case exists . . . through the well-developed doctrines of res judicata and collateral estoppel.") If Plaintiff's present lawsuit is "merely a re-packaging of well-trodden ground into a different legal theory," as Wexford claims (ECF 89 at 15), the doctrines of claim and issue preclusion are available for Wexford to bar Plaintiff from pursuing all or part of his claims in this case. And Wexford is well aware of both doctrines, having asserted them as affirmative defenses in its answer. (ECF 33 at 31-32.)

For whatever reason, Wexford has not yet elected to pursue those well-established defenses. That is Wexford's choice. It does not mean, however, that Wexford may insist instead that the Court invent a penalty clause that converts ongoing violations into discrete acts.

## CONCLUSION

For the foregoing reasons the Court should adopt Judge Bruce's holding and deny Wexford's motion.

May 1, 2020

Respectfully submitted,

*/s/ Stephen H. Weil*
Stephen H. Weil – weil@loevy.com
Jon Loevy – jon@loevy.com
Sarah Grady – sarah@loevy.com
Loevy & Loevy
311 N. Aberdeen
Street 3rd Floor
Chicago, IL 60607
312-243-5900

Antonio Romanucci -
aromanucci@rblaw.net
Nicolette Ward - nward@rblaw.net
Romanucci & Blandin LLC
321 N Clark
Street Suite 900,
Chicago, IL 60654
312-458-1000

Maggie E Filler -
maggie.filler@macarthurjustice.org
Roderick and Solange MacArthur Justice Center
375 E. Chicago Avenue,
Chicago, IL 60611
(312) 503-1271

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2020, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Stephen H. Weil