IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 C 1133 |
| | ) | |
| JOHN BALDWIN, et al., | ) | Hon. Harold A. Baker, Judge |
| | ) | |
| Defendants. | ) | Hon. Eric I. Long, Mag. Judge |

**PLAINTIFF'S MOTION FOR ENTRY OF HIPAA QUALIFIED
PROTECTIVE ORDER COVERING THIRD-PARTY PHI**

Plaintiff Anthony Gay, by his undersigned attorneys, respectfully moves for entry of a HIPAA-qualified protective order that covers Protected Health Information ("PHI") of third parties, such as other prisoners, in addition to his own PHI. A proposed HIPAA qualified protective order is attached hereto as Exhibit 1.

Counsel for the defendants has objected to the entry of a qualified HIPAA protective order and it appears that they similarly object to the production of any such information regarding care to individuals other than Plaintiff. But as discussed below, this information is centrally relevant to Plaintiff's claims in this case. And the proposed order does not ask the Court to weigh in on the particular parameters of the scope of production of third-party information—only to recognize its relevance and protect the confidentiality of such third-party PHI, ensuring it is kept strictly confidential and used only for purposes of this litigation. The order is necessary for Plaintiff to be able to prove his claims in this case and the Court should accordingly grant Plaintiff's motion.

**BACKGROUND**

Plaintiff brings this motion after the parties were unable to reach an agreement on the terms of a proposed HIPAA protective order.  This is a § 1983 case in which Plaintiff has alleged that upper-level administrators within the IDOC pursued policies that caused numerous IDOC prisoners to receive inadequate mental healthcare.  Plaintiff does not allege that these policies were directed at him personally, but rather alleges that they were directed at a large group of mentally ill prisoners, of which he was a member.  Likewise, Plaintiff has asserted a *Monell* claim against Defendant Wexford, alleging that Wexford had widespread policies and practices of providing inadequate mental healthcare to IDOC prisoners who were severely mentally ill, and that Wexford was indifferent to the harmful effects its policies and practices had on individuals like Plaintiff.  Again, Plaintiff does not allege that these policies and practices were directed against him personally, but rather that the policies were directed at a large group of persons, of which he was a member.

These allegations make the care that was provided to other prisoners relevant to Plaintiff's case. The legal framework in which Plaintiff brings his claims also make that care centrally relevant. The Seventh Circuit has required plaintiffs who bring claims against corporations like Wexford to meet the demanding standards imposed by *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 786 (7th Cir. 2014) (acknowledging the extension of *Monell* to private corporations but urging fresh consideration of the issue). Pursuant to *Monell*, Plaintiff must prove that Wexford violated his constitutional rights in one of four ways: (1) the implementation or execution of an express policy; (2) a widespread practice that, although not expressly authorized by policy, is so permanent and well settled as to constitute a custom; (3) the actions of a person within the

corporation with final policymaking authority; or (4) an omission, like the failure to enact policies or train staff, that evinces deliberate indifference to Plaintiff and others like him. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015); *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

In cases like this one, where widespread practices are at the heart of the *Monell* claim, the Seventh Circuit has held that plaintiff must typically provide evidence that the alleged practice impacted a sufficient number of individuals other than Plaintiff. *See, e.g., Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020) ("Although this court has not adopted any 'bright-line rules' defining a widespread practice or custom, we have acknowledged that the frequency of conduct necessary to impose *Monell* liability must be more than three."); *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 734-35 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [the plaintiff] must show more than the deficiencies specific to his own experience, of course.").[1] Notably, in dissenting from the majority's opinion in *Hildreth*—which affirmed summary judgment in Wexford's favor based on the plaintiff's failure to provide evidence regarding other incarcerated individuals—Judge Hamilton noted that as a result of the majority's holding, "[p]laintiffs like Hildreth will need to pursue discovery into the medical care of other prisoners and even into Wexford's personnel records." 960 F.3d at 432 (Hamilton, J., dissenting); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) ("Despite the absence of bright-line rules, there can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways.").

---

[1] Plaintiff need *not*, however, prove that these other individuals against whom the widespread practice was applied suffered harm. *Daniel*, 833 F.3d at 735 ("[Plaintiff] need not present evidence that these systemic failings affected other specific inmates.").

3

Plaintiff expects that, at summary judgment and trial, Defendants will cite the above-referenced cases in arguing that the evidence is insufficient to permit a reasonable jury to find in Plaintiff's favor, as they are entitled to do under the Federal Rules of Civil Procedure. Plaintiff, of course, must be given an opportunity during discovery to seek the evidence and information necessary to prove his claims. *See Winfrey v. San Jacinto Cnty.*, 481 F. App'x 969, 982 (5th Cir. 2012); *Fields v. City of Chicago*, 2015 WL 13578989, at *5 (N.D. Ill. Apr. 7, 2015).

Recognizing the relevance of third-party PHI in cases alleging a § 1983 *Monell* claim regarding medical or mental health care, courts throughout this Circuit have routinely entered orders virtually identical to the one proposed by Plaintiff in this case. *See, e.g., Andrews v. Rauner*, 2019 WL 2514703, at *8 (C.D. Ill. June 18, 2019); *Ousterhout v. Zukowski*, 2014 WL 804079, at *3 (N.D. Ill. Feb. 28, 2014); *Awalt v. Marketti*, 2012 WL 6568242, at *6-7 (N.D. Ill. Dec. 17, 2012); *Green v. Meeks*, No. 20 C 0463, Dkt. 28 (S.D. Ill. Jan. 17, 2020); *Hoffmann v. DuPage Cnty.*, No. 16 C 9411, Dkt. 76 (N.D. Ill. June 15, 2017); *Scott v. Buncich*, No. 16 C 0114, Dkt. 52 (N.D. Ind. July 12, 2017).[2] In *Andrews*, for example, the district court recognized the relevance of mental health records relating to third parties in a case raising a *Monell* claim against Wexford for denial of medical care, and determined that a HIPAA qualified protective order was appropriate to protect the confidentiality of these relevant materials. *Andrews*, 2019 WL 2514703, at *8-9.

In short, evidence about the manner in which other mentally ill prisoners—*i.e.*, third parties to this litigation—were treated by the defendants is highly relevant to Plaintiff's claims in this case. The proposed protective order simply ensures that such discovery is kept appropriately confidential.

---

[2] Copies of the qualified protective orders cited above that are not available on Westlaw have been attached to this motion as Exhibit 3.

As set forth below, although HIPAA generally prohibits covered entities disclosing the PHI of any person, including Plaintiff, it recognizes that such information may need to be disclosed in the context of litigation. HIPAA accordingly also provides for disclosure of PHI in litigation, provided that an appropriate protective order is entered that affords certain protections to such PHI.

In light of the discovery necessary to prove Plaintiff's allegations, counsel for Plaintiff proposed entry of a qualifying protective order to counsel for the defendants, attaching substantively the same proposed HIPAA-qualified protective order that they have attached to this motion. *See* Ex. 2 at 1. Defense counsel objected to the entry of such an order, and instead insisted that they would redact all PHI appearing on documents responsive to this case. *Id*. at 1-2. This motion follows.

## ARGUMENT

Recognizing that the discovery of third-party PHI is often necessary in order to support claims or defenses in litigation, HIPAA's enabling regulations create an exception for restrictions on the disclosure of third-party PHI, if the disclosures are made pursuant to discovery that is governed by a protective order that meets certain criteria. *See* 45 C.F.R. § 164.512. Plaintiff's proposed HIPAA-qualified protective order is designed to meet the criteria set out in Section 164.152.

The defendants have also raised objections regarding mental health privileges in particular, but as Plaintiff explains below, the existence of those privileges does not counsel against entry of the HIPAA-qualified protective order here.

**1. The Health Insurance Portability and Accountability Act of 1996 (HIPAA).**

HIPAA, which is enforced through enabling regulations, provide for release of PHI provided that a patient is notified and consents. *See, e.g.,* 45 C.F.R. § 164.510, § 164.508. But HIPAA's enabling regulations also contain a mechanism for covered entities—the entities to whom HIPAA's regulations apply—to provide materials in the context of ongoing litigation, like in the case of subpoenas or discovery requests, so long as an appropriate protective order is entered by the court—like the one that Plaintiff has proposed in Ex. 1. Specifically, Section 164.512 provides,

> A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section.

45 C.F.R. § 164.512. Among the "situations" covered by Section 164.512 is disclosure of protected health information "[i]n response to a subpoena, discovery request, or other lawful process" § 164.512(e)(1)(ii). In such a situation, the covered entity may disclose protected information if it receives assurance *either* that the person in question has "been given notice of the request," "*or*" that the requesting party has secured "a qualified protective order." §§ 164.512(e)(1)(ii)(A) and (B). In turn, a "qualified protective order" is one that:

> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. §§ 164.512(e)(1)(v)(A) and (B).

The proposed HIPAA qualified protective order satisfies each of these criteria:

- the proposed qualified protective order defines "PHI" to include medical or mental health information (Ex. 1 ¶ 2 (d));

- the proposed protective order provides that PHI may not be used or disclosed for any purpose whatsoever other than this litigation (*Id.* ¶5); and

- the proposed protective order requires destruction or return of Confidential Information upon conclusion of the litigation. (*Id.* ¶¶ 7.)

In short, the proposed HIPAA qualified protective order is a "qualified protective order" under Section 164.512(e)(1)(v). And as such, Section 164.512 provides that HIPAA's notice and waiver requirements—the basis for the redactions that the defendants desire to impose—do not apply. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 936 n.4 (7th Cir. 2004) (explaining that "HIPPA does not require notice . . . where there is a protective order in place, 45 C.F.R. § 164.512(e)(1)(ii)(B).").

Defendants contend that they intend to redact the names of any other individual whose care is referenced in responsive documents. First of all, Plaintiff's proposed qualified protective order obviates the need for any such redaction because it provides for the appropriate level of confidentiality of these records, ensuring that they will not be disclosed or used outside of this litigation. Redaction of the names of third parties is further inappropriate because it prohibits Plaintiff from identifying records produced by both the IDOC Defendants and the Wexford Defendants that relate to the same individual. Take, for example, a list of individuals whom certain Wexford officials have identified require inpatient mental health care. Plaintiff would have no way of knowing whether or not an individual on that list was the same individual at issue in an email discussion regarding an unidentified person's treatment. In other words, identification of the individual's name is necessary in order to make use of the documents in their totality.

In short, with the entry of the proposed protective order, production of appropriate information governing Wexford's practices regarding treatment of individuals other than Plaintiff will be wholly compliant with HIPAA. And the confidentiality of that information will be appropriately protected, ensuring that the information may be used only for this case, and must be destroyed after the case's conclusion.

### 2. The Illinois Mental Health and Developmental Disabilities Act ("IMHDA").

Defendants may argue that they need to make redactions because HIPAA does not prohibit states from adopting more stringent regulations of healthcare information, and that the Illinois Mental Health and Disabilities Act, 740 ILCS 110/1 *et seq*. ("IMHDA") contains more stringent provisions that would not permit disclosure under the proposed qualified protective order. That position is incorrect.

Plaintiffs will assume *arguendo* that IMHDA's regulations are more stringent than HIPAA's. In this case, that is irrelevant. This case involves primarily federal claims, brought in federal court. As such, Federal Rule of Evidence 501 dictates that state-law privileges such as the IMHDA do not govern—only federal privileges do. Indeed, courts in this Circuit have repeatedly held that the IMHDA in particular does not control discovery in federal cases. *See Northwestern*, 362 F.3d at 925 ("Illinois is free to enforce its more stringent medical-records privilege (there is no comparable federal privilege) in suits in state court to enforce state law and, by virtue of an express provision in Fed. R. Evid. 501, in suits in federal court (mainly diversity suits) as well in which state law supplies the rule of decision. But the Illinois privilege does not govern in federal-question suits . . . ."); *Ligas v. Maram*, 2007 WL 2316940, at *6 (N.D. Ill. Aug. 10, 2007) ("The Court believes that the [IMHDA] does not apply to the present situation. Federal Rule of Evidence 501 and *Northwestern* govern this situation, and *Northwestern* clearly states

that, in a federal question suit such as this one, state privacy and privilege laws do not apply, regardless of whether the state law might be more restrictive than the applicable federal rule."); *Williams v. Blagojevich*, 2008 WL 68680, at *2 (N.D. Ill. Jan. 2, 2008) (citing *Northwestern* and *Ligas* to hold that the "[c]onsent requirements of the [IMHDA] are inapplicable to discovery in this case which is based on federal question jurisdiction."). The IMHDA is not a bar to disclosure in this case, and thus it does not counsel against entry of the HIPAA qualified protective order.

## CONCLUSION

The manner in which other severely mentally ill prisoners were treated is highly relevant to proving many of Plaintiff's claims in this case. And the privacy of records of that treatment can and should be protected from public disclosure or use outside of this litigation—things expressly provided for in Plaintiff's proposed HIPAA qualified protective order, which would treat the PHI as confidential, prohibit any party for using the disclosed PHI for any purpose outside of this litigation, and require the parties to destroy the PHI once the litigation has concluded. Numerous courts have entered the same order to permit the discovery of third-party PHI in cases similar to this one. The Court should do so here.

WHEREFORE, for the reasons set forth herein, the Court should enter the Proposed HIPAA-qualified protective order.

                                                  Respectfully submitted,

                                                  /s/ Sarah Grady
                                                  Sarah Grady
                                                  Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Stephen Weil
Sarah Grady

LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
sarah@loevy.com

Antonio Romanucci
Nicolette Ward
ROMANUCCI & BLANDIN LLC
321 North Clark St.
Chicago, IL 60654
(312) 458-10001

Maggie Filler
RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER
375 East Chicago Ave.
Chicago, IL 60611
(312) 503-1271

10

**CERTIFICATE OF SERVICE**

    I, Sarah Grady, an attorney, hereby certify that on May 28, 2021, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                                             /s/ Sarah Grady  
                                             Sarah Grady  
                                             Attorney for Plaintiff