IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 C 1133 |
| | ) | |
| JOHN BALDWIN, et al., | ) | Hon. Harold A. Baker, Judge |
| | ) | |
| Defendants. | ) | Hon. Eric I. Long, Mag. Judge |

**PLAINTIFF'S PARTIAL OBJECTIONS TO THE
MAGISTRATE JUDGE'S JULY 13, 2021 ORDER (ECF 134)**

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff Anthony Gay, by his undersigned attorneys, respectfully submits this objection to the portion of the Magistrate Judge's July 13, 2021 Order, ECF 134 (the "Magistrate Judge's Order"), concerning redactions of Private Health Information of third parties, ECF 134. Plaintiff respectfully requests that the Magistrate Judge's Order be set aside to the extent it concerns redactions, and that the Plaintiff's proposed HIPAA-qualified protective order, which does not contain the redaction provision, *see* ECF 128-1, should be entered instead. In support his objections Plaintiff states:

**BACKGROUND**

This is a case brought under the Americans with Disabilities Act and 42 U.S.C. § 1983 by Anthony Gay, a mentally ill man whom the defendants placed in solitary confinement for more than 20 years because of his mental illness. The defendants include Wexford Health Sources, Inc., the corporation contracted to provide mental health services to IDOC prisoners, and senior policymakers within the IDOC. Plaintiff alleges that these defendants oversaw and endorsed widespread practices across the IDOC in which thousands of mentally ill prisoners, including Plaintiff, were mistreated. These widespread practices, Plaintiff alleges, caused his injuries.

The immediate dispute that led to the Magistrate Judge's Order involves discovery that Plaintiff served in order to prove his allegations that the defendants did in fact engage in the widespread practices he alleges. In order to prove his widespread-practice claims, Plaintiff has served discovery that calls for documents reflecting not only his own mental healthcare but the mental healthcare of other prisoners as well.

Even though the mental health treatment of other prisoners is relevant to Plaintiff's claims that widespread practices—*i.e.*, the treatment of numerous mentally-ill prisoners—caused his own mistreatment, the Wexford defendants moved for entry of a protective order that would permit them to redact the names of all such third parties. *See* ECF 121. The Magistrate Judge granted the Wexford defendants' motion, and gave Plaintiff leave to submit arguments in opposition. *See* March 30, 2021 Text Order. Pursuant to the Magistrate Judge's instructions Plaintiff filed a response in opposition to the Wexford defendants' motion for protective order. *See* ECF 123. The Magistrate Judge then instructed the Wexford defendants to file a reply, *see* April 14, 2021 Text Order, which the Wexford defendants filed, *see* ECF 125. Plaintiff then filed a cross-motion for a protective order regarding third-party PHI, *see* ECF 128, and filed a motion for leave to file a sur-reply responding to arguments that the Wexford defendants made for the first time in their reply, *see* ECF 129, attaching the proposed sur-reply to the motion, *see* ECF 129-1. The Magistrate Judge granted Plaintiff's motion to file the sur-reply, and ECF 129-1 was docketed as ECF 130. The Wexford defendants then filed a response to Plaintiff's cross-motion for a protective order. ECF 133.

***In short***: the Wexford defendants' substantive arguments in favor of redaction are set out in ECF 121, 125, and 133. Plaintiff's substantive arguments against redaction are set out in ECF

123, 128, and 130. Plaintiff incorporates those arguments by reference, and summarizes them here.

Plaintiff first explained that courts have uniformly rejected parties' efforts to redact information that they unilaterally deem to be irrelevant, finding that redactions based on relevance are inappropriate, not authorized by the Federal Rules of Civil Procedure, and highly impractical because parties often disagree about what information is relevant—these decisions hold that plaintiffs should not have to "'take the defendants' word for it' that the redacted portions of the documents are not relevant to the plaintiff's claim." ECF 123 at 3 (collecting cases). Plaintiffs also explained that unnecessary redactions would do nothing but add unnecessary disputes and delay, as well as claims of burden, to the litigation, which would be entirely unnecessary with the redaction provision removed. *Id.* at 4. *See also* ECF 130 at 5 n.5 (explaining that parties are not permitted to make redactions based on relevance absent extraordinary circumstances that do not exist in this case, and collecting authorities).

Plaintiff explained that HIPAA specifically endorsed and provided for the protection of third-party private health information ("PHI") when it is relevant to litigation and an approved protective order has been entered. ECF 128 at 3-5. Plaintiff collected numerous cases endorsing this proposition, *see id.*, and noted that HIPAA "unequivocally permits health care providers and other covered entities to disclose protected health information . . . in judicial proceedings" when a HIPAA qualifying protective order has been entered. *Sanchez v. McCray*, No. 05-cv-22171, 2008 WL 11452601, at *3 (S.D. Fla. Feb. 25, 2008) (citing *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004)).

And Plaintiff explained at length that the PHI of other mentally ill prisoners *is* relevant in this case because "widespread practices are at the heart of the *Monell* claim," as a "plaintiff must

3

typically provide evidence that the alleged practice impacted a sufficient number of individuals other than Plaintiff." ECF 128 at 3. As Plaintiff explained, appellate decisions have noted that prisoners asserting *Monell* claims for medical care "'will need to pursue discovery into the medical care of other prisoners and even into Wexford's personnel records.'" *Id.* (quoting *Hildreth v. Butler*, 960 F.3d 420, 4332 (7th Cir. 2020) (Hamilton, J., dissenting)). Among other things, Plaintiff noted, redacting prisoner names would make it impossible to determine what care other prisoners received. Plaintiff provided the following example:

> Consider a list of individuals whom certain Wexford officials have identified require inpatient mental health care. Plaintiff would have no way of knowing whether or not an individual on that list was the same individual at issue in an email discussion regarding an unidentified person's treatment. In other words, identification of the individual's name is necessary in order to make use of the documents in their totality.

*Id.* at 8.

Plaintiff further explained that multiple courts had ordered the production and/or rejected redaction of third-party PHI in cases indistinguishable from this one. Plaintiff pointed in particular to *Andrews v. Sangamon County*, 2018 WL 6523186, at *1-2 (C.D. Ill. Dec. 11, 2018) in which this District Court rejected attempts to redact the names of other mentally ill inmates, ruling that those identities were relevant to the plaintiff's *Monell* claims and that they should not be redacted given that a HIPAA-qualified protective order was in place. ECF 130 at 3.

The Magistrate Judge's Order endorsed the redaction provision and rejected Plaintiff's proposal to enter a HIPAA-qualified protective order that did not contain the redaction provision. *See* ECF 134. The Magistrate Judge's Order did not dispute that the PHI of third parties was relevant to Plaintiff's claims. ECF 134 at 4. Nevertheless, it held that third-party privacy interests trumped Plaintiff's legitimate need for discovery information and permitted the redactions. *Id.* In doing so, it did not require the Wexford defendants to provide any

4

"identifiers" (*e.g.*, Prisoner #1, Prisoner #2, etc.) that would allow Plaintiff to track different prisoners across different records. Instead, while the Magistrate Judge's Order acknowledged that the lack of identifiers "may make it harder for Plaintiff to track individuals through the records," it concluded—without explanation—that "the redacted records should be sufficient to allow Plaintiff adequate discovery relating to his claims." *Id.* The Magistrate Judge's Order left it to Plaintiff to do this tracking on his own, without any explanation as to how Plaintiff could perform this tracking without any information, simply instructing Plaintiff to file motions with the Court going forward to un-redact specific records. *Id.*

## ARGUMENT

A district court may modify or set aside any portion of a magistrate judge's non-dispositive ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Rule 72(a)'s "clearly erroneous" provision permits a district court to overturn the magistrate judge's "findings of fact" if the district court is left with "the definite and firm conviction that a mistake has been made." *United States v. DISH Network, L.L.C.*, No. 09-3073, 2010 WL 5463101, at *2 (C.D. Ill. Dec. 29, 2010) (quotation omitted). In addition, and "[b]y contrast, the 'contrary to law' standard" of Rule 72(a) permits "plenary review as to matters of law," meaning that "[w]hen a discovery order is based upon the interpretation of law, review is plenary (a/k/a 'de novo')." *Id.* (citation omitted). *Accord Murray v. Nationwide Better Health*, No. 10-3262, 2011 WL 2516909, at *2 (C.D. Ill. June 24, 2011) ("[A] discovery order based upon the interpretation of law is reviewed *de novo*." (quotation omitted)). In turn, a magistrate judge's "order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Stueve Constr., LLC v. Weber Plumbing & Heating, Inc.*, No. 19-cv-2072, 2021 WL 3032665, at *2 (C.D. Ill. July 19, 2021)

(quoting *Henry v. Centeno*, 2011 WL 3796749 (N.D. Ill. Aug. 23, 2011)).  The Magistrate Judge's Order regarding redaction commits both forms of error, and the Court should set it aside.

*          *          *

The Magistrate Judge's Order acknowledges that the PHI of third-party prisoners is highly relevant for Plaintiff to prove his claims in this case.[1]  Indeed, as Plaintiff explained at length and in multiple briefs, the PHI relating to the treatment of other mentally ill prisoners is of central importance for Plaintiff to prove his *Monell* claims.  *See* ECF 128 at 2-5; ECF 130 at 3-4.  As Plaintiff explained, the Seventh Circuit recently held that "'there can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways.'"  ECF 128 at 3 (quoting *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021)).  Notably, Wexford—the party seeking the right to redact here—has argued elsewhere that a prisoner cannot prove *Monell* allegations *unless* they introduce evidence about impact on other prisoners.  For example, just five months ago, in *Dean v. Wexford Health Sources, Inc.*, Wexford argued to the Seventh Circuit that the jury verdict against Wexford for maintaining an unconstitutional collegial review policy should be overturned because the plaintiff provided evidence "only with respect to [p]laintiff's own treatment, offering no evidence that the process failed other inmates" and thus Mr. Dean "[fell] well short of establishing an unconstitutional policy, practice, or custom." Ex. 1 (Wexford's App. Br., *Dean v. Wexford Health Sources, Inc.*, No. 20-3058 (7th Cir. Jan. 15, 2021)) at 35.  It is difficult to

---

[1]   To the extent the Magistrate Order could be construed as contesting the relevance of third-party PHI—which it does not—Plaintiff has explained at length that redaction of information on grounds that it is irrelevant is irrelevant absent extraordinary circumstances, none of which exist here.  *See* ECF 123 at 2-4; ECF 130 at 4-5 & n2.

6

escape the conclusion that Wexford has fought, and will continue to fight, against discovery at this stage of the case so that at summary judgment, it can argue that the absence of this same evidence necessitates summary judgment in its favor. *Cf. Hildreth*, 960 F.3d at 432 (Hamilton, J., dissenting) ("Wexford should be careful what it asks for. Its lawyers have won this case, but on theories and arguments that invite—indeed, virtually require—much broader, more intrusive, and more expensive discovery in similar cases.").

There can be no credible argument that courts should prohibit discovery unless a plaintiff can establish that such discovery is necessary to prevail at trial; indeed, information and documents need not even be *admissible* to be discoverable under the Federal Rules of Civil Procedure. *Atchison v. Huffman*, 2019 WL 1957942, at *1 (C.D. Ill. May 2, 2019). What matters is whether the information at issue is relevant to the issues in dispute and is proportional to the needs of the case. *Coleman v. Illinois*, 2020 WL 5752149, at *3-4 (N.D. Ill. Sept. 25, 2020). And here, as the Magistrate Judge's Opinion acknowledges, third-party PHI that the Wexford defendants seek to redact is of central relevance to this litigation.

Congress anticipated that third-party information would indeed be relevant in multiple different litigation scenarios, and in enacting HIPAA, it created rules for protecting third-party PHI in the litigation context: it provided for entry of HIPAA-qualified protective orders that permit the disclosure of third-party PHI so long as it is kept in strict confidence, used only for the litigation, and destroyed when the litigation has concluded. *See* ECF 128 at 5 (explaining HIPAA scheme). This scheme is "intended" to permit the discovery of third-party PHI in a variety of different types of litigation, from cases involving SSDI, ERISA, Medicare and Medicaid fraud, FDA litigation, "and the numerous other classes of federal case in which medical records whether of the parties or of nonparties" were relevant to the dispute at issue and

7

presentable as evidence at trial. *Id.* (quoting *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004)). *See also id.* at 5-8 (explaining operation of HIPAA-qualified protective orders).

The Magistrate Judge's Order ignores this precedent, along with numerous examples Plaintiff cited of HIPAA-qualified protective orders across the Seventh Circuit which specifically cover third-party PHI. *See* ECF 128 at 4 (collecting cases). Instead, the Magistrate Judge's Order identifies an additional privacy interest in PHI and converts it into a rule that swallows the scheme that Congress created for protecting the PHI of third parties in litigation. The Magistrate Judge's Order appears to create this privacy interest from whole cloth. As Plaintiff has explained, this is a federal case, so state privileges do not apply and the only relevant privacy law is HIPAA. *See* ECF 130 at 4. But instead of recognizing that HIPAA already balances the rights of third-party privacy with the needs of litigation via HIPAA-qualified protective orders, the Magistrate Judge's Order purports to identify an additional "privacy interest" in PHI, over and above the privacy interest already protected by HIPAA, and proceeds to "[]weigh" that privacy interest against what it concedes is Plaintiff's legitimate need for third-party PHI in this case. ECF 134 at 3.[2]

The Magistrate Judge's Order does not explain where the privacy interest it identifies comes from, nor how much weight to give it, nor why the interest is not protected by HIPAA's

---

[2] This alone is legal error and an abuse of discretion. Wexford seeks an order that permits it to redact *irrelevant* third-party PHI. Plaintiff introduced extensive authorities explaining that the redaction of information on the grounds of relevance was improper, *see* ECF 123 at 2-4; ECF 130 at 4-5 & n.2, but the Magistrate Order fails to apply those authorities and indeed ignores them entirely. Instead, the Magistrate Order goes beyond what even Wexford requests, "[]weigh[ing]" what it effectively concedes is Plaintiff's legitimate interest in the third-party PHI. ECF 134 at 3. The Magistrate Order's "fail[ure] to apply" the "relevant . . . case law" concerning the propriety of redacting on grounds of relevance is itself reversible error. *See Stueve Construction*, 2021 WL 3032665, at *2.

own protection scheme. The Magistrate Judge's Order cites *Doe v. MacLeod*, No. 2019 WL 2601338, 2019 WL 2601338 (C.D. Ill. June 25, 2019), a case involving discovery into reports of sexual assault which required some redactions of private third-party information, *see* ECF 134 at 4, but those redacted records were grounded in the federally granted privacy conferred by the Prison Rape Elimination Act (PREA). *See MacLeod*, 2019 WL 2601338 **2-3 (providing for redactions of PREA information on grounds that the court had "previously found that inmates who have been sexually assaulted in prison have a privacy interest keeping that information confidential."). Plaintiff is not seeking PREA information, but rather PHI covered by HIPAA and HIPAA's regulatory scheme.

The Magistrate Judge's Order also cites *Methodist Health Services Corp. v. OSF Healthcare System*, 2014 WL 12733590 (C.D. Ill. Jan. 8, 2014) for the proposition that third parties have not been asked for "permission to release their documents," ECF 134 at 4, but like *MacLeod*, *Methodist Health Services* does not indicate that it concerns PHI at all—rather it concerns "employee records" of a company called Keystone. *See* 2014 WL 12733590 at *5. In all events the *Methodist Health Services* court does not address the propriety of third-party PHI disclosures pursuant to HIPAA-qualified protective orders. And those orders were "intended" *specifically* to permit the disclosure of third-party PHI without the "permission" of the third party. *See Northwestern*, 362 F.3d at 925 (construing 45 C.F.R. § 164.512(e) (permitting disclosure of third-party PHI without "notif[ing]" the third party, as long as a HIPAA-qualified protective order is entered).

The Magistrate Judge's Order additionally cites the extra protection that HIPAA affords to mental health records under 45 C.F.R. § 164.508(a)(2). *See* ECF 134 at 4. But Section 164.512 *specifically* permits disclosure of mental health records covered by Section

9

164.508(a)(2) when a HIPAA-qualified protective order is in place. *See* 45 C.F.R. § 164.512 (permitting covered entities to "disclose [PHI] without the written authorization of the individual, as described in § 164.508 . . . in the situations covered by this section," and listing HIPAA-qualified protective orders as one such "situation," *see* Section 512(e)). Section 164.508 and its protections for mental health information thus *contradict* the Magistrate Judge's Order's holding, and show instead that mental health information is *appropriately* disclosed when a HIPAA-qualified protective order is in place.

Finally, the Magistrate Judge's Order grounds the "privacy" interest it identifies in the fact the third-party prisoners in this case "[d]id not choose to file this lawsuit." ECF 134 at 4. But that is true of every case involving third-party PHI covered by HIPAA Section 164.512(e), which specifically *permits* the disclosure of such third-party PHI without the permission of those third parties, and instead protects third parties' privacy interests via a HIPAA-qualified protective order. The Magistrate Judge's Order signally fails to explain why those protections, which Congress enacted via HIPAA, are inadequate, and why it was appropriate for the Magistrate Judge's Order to override those protections by superimposing its own privacy scheme—thereby frustrating Congress's "intent[ion]" that third-party PHI relevant to litigation be made available to parties subject to Section 164-512(e)'s scheme for protecting privacy. In superimposing its own scheme and frustrating the scheme set out in HIPAA, the Magistrate Judge's Order "misapplies" both "relevant statutes" and relevant "case law." *Stueve Construction*, 2021 WL 3032665, at *2. Under Rule 72(a) it should be reversed for that legal error alone.[3]

---

[3] In briefing before the Magistrate Judge the Wexford Defendants relied on *Northwestern*. *See* ECF 133 at 3. The Magistrate Order does not mention that decision, but to the extent it drew it, *Northwestern* also does not support redaction either. Rather, *Northwestern* supports Plaintiff's

10

The Magistrate Judge's Order also misapplies two Central District decisions directly contrary to its holding, by drawing distinctions with those decisions that are irrelevant. Plaintiff pointed the Magistrate Judge to multiple decisions closely analogous to this case—including two cases that are virtually indistinguishable from this one. *See* ECF 128 at 4; ECF 130 at 4-5. In *Andrews v. Sangamon County*, No. 18-cv-1100, 2018 WL 6523186 (C.D. Ill. Dec. 11, 2018) a plaintiff asserting *Monell* claims on behalf of a mentally ill woman who was placed in solitary confinement in a jail sought records identifying other mentally ill jail inmates who had been similarly treated. The defendant redacted the names of those other inmates, but the court ordered that the names should not be redacted because they were relevant to the plaintiff's *Monell* claims, and because they would be covered by a HIPAA-qualified protective order. 2018 WL 6523186, at *1. The same outcome obtained in *Andrews v. Rauner*, No. 18-cv-1101, 2019 WL 2514703 (C.D. Ill. June 18, 2019), where the plaintiff, like Mr. Gay here, asserted *Monell* and supervisory liability claims against Wexford and IDOC officials for placing a mentally ill prisoner in solitary confinement instead of providing her with adequate medical care. In that case, too, the court ordered that the PHI of third parties be produced, as it would be relevant to the plaintiff's *Monell* claims and would be covered by a HIPAA-qualified protective order. 2019 WL 2514703, at *8.

*Sangamon County* and *Rauner* are indistinguishable from this case in their relevant holdings, and the Magistrate Judge's Order acknowledged as much. Yet the Magistrate Judge's

---

position in this case. *Northwestern* recognized that HIPAA expressly provides for the production of medical records if an order like the one Plaintiff proposed is entered. 362 F.3d at 925. *Northwestern* affirmed the quashing of a subpoena that sought records from a third party that were particularly sensitive—records of abortion procedures—but that was because the records had no relevance to the case. *Id.* at 927-28 ("At the oral argument we pressed the [subpoenaing party's] lawyer repeatedly and hard for indications of what he hoped to learn from the hospital records, and drew a blank."). That is a far different from this case, where the medical records of third parties are centrally relevant to Plaintiff's *Monell* and policy claims against the defendants, as Plaintiff has explained in detail, *supra*, and which the Magistrate Order does not dispute.

11

Order distinguished both *Sangamon County* and *Rauner* on the ground that in those cases, the HIPAA-qualified protective order had already been entered, whereas in this case it had not yet been entered at the time the dispute over redactions arose. ECF 134 at 3-4. With considerable respect, this reasoning is badly in error. The Magistrate Judge's Order asserts that the distinction is "important," ECF 134 at 4, but it never explains why. And indeed, the distinction is demonstrably irrelevant. Nowhere in Section 164.512(e) or elsewhere does HIPAA set out any timetable or deadline for the entry of such orders; to the contrary, HIPAA protective orders are routinely entered at the time that the issue of third-party PHI arises in the litigation. In *Bailey v. City of Chicago*, No. 08-cv-4441, 2010 WL 11595680 (N.D. Ill. Oct. 12, 2010), for example, the plaintiff sought to take a Rule 30(b)(6) deposition that would require the deponent to testify about the PHI of non-party inmates. 2010 WL 11595680, at *2. The district court denied the defense's motion to strike this part of the Rule 30(b)(6) notice on HIPAA grounds, holding that entry of a HIPAA-qualified protective order would permit the deponent to testify about "specific non-parties' PHI," and instructed the parties to *submit* a HIPAA-qualified protective order so that the deposition could go forward. *Id.* at *5. *Cf. Haywood v. Wexford Health Sources, Inc.*, No. 16 CV 3566, 2021 WL 2254968, at *6 (N.D. Ill. June 3, 2021) (summarizing *Bailey*; collecting cases). The Magistrate Judge's Order should have been guided by *Sangamon County* and *Rauner*. Instead, it drew a "distinction" between them that was legally unfounded. That constitutes a reversable misapplication of that case law, as well as an abuse of discretion. It cannot survive this Court's Rule 72(a) review.

Under HIPAA, Congress deemed to provide sufficient protection of third-party PHI balanced against the needs of parties in litigation like this to access relevant third-party PHI, and "intended" that this arrangement should both protect the privacy interests of third parties and

facilitate the resolution of cases in which third-party PHI is relevant to the issues in dispute. *Northwestern*, 362 F.3d at 925. Multiple decisions in this Court and elsewhere, including in *Sangamon County* and *Rauner*, *see* ECF 128 at 4, have recognized that intention and have ordered production of third-party PHI in situations functionally identical to this one. The Magistrate Judge was not at liberty to ignore or misapply those authorities and superimpose a proprietary privacy rule, but the Magistrate Judge's Order does just that. This was manifest error. Under Rule 72(a) that error is sufficient to set aside the Magistrate Judge's Order on redactions and instead order simply that third-party PHI be produced without redaction pursuant to a federally recognized HIPAA-qualified protective order.

Should the Court decide to uphold the holding of the Magistrate Judge's Order that redactions be permitted, however, the Court should at minimum order the Wexford defendants to identify the redacted prisoners by uniform title. *Cf. MacLeod*, 2019 WL 2601338, at *3 (ordering redacted inmates to be identified "with a title, such as 'Inmate 1,' and 'Inmate 2.'") Plaintiff reiterates that unlike the PREA information in *MacLeod*, such redactions are unnecessary under HIPAA here. But in order for Plaintiff to identify other prisoners across different documents and therefore understand the relevance of those documents, such identification is essential. The Magistrate Judge's Order does not provide for this identification, instead instructing Plaintiff to petition the Court if it "believes certain documents need to be unredacted." ECF 134 at 4. But without being able to connect the mental health information of prisoners in different records produced by different custodians—including by the IDOC and Wexford—Plaintiff's counsel will have no way to determine whether a person whose treatment is discussed in one document is the same as a person who appears in another document, or someone else entirely. That, in turn, will wholly prevent Plaintiff from obtaining the evidence

13

necessary to meet the burden imposed by the Magistrate Judge's Order to obtain the relevant discovery and secure evidence necessary to provide him a fair opportunity to prove his claims and prevail at trial. Simply put, without the names (or even uniform identifiers) Plaintiff's counsel will have no way of knowing whether they are looking documents of marginal relevance, or whether they have in their hands records that, when connected to each other, provide highly relevant evidence about the policies and policies at issue in this case. Plaintiff reiterates that such anonymized connections are not necessary, because under HIPAA redactions are not necessary. If redactions are to be made, however, the identities of prisoners across different sets of documents must be identified by title so that they can be connected with each other. The failure of the Magistrate Judge's Order to provide for such identification, even while the decision it relied on, *MacLeod*, had ordered them for PREA redactions, was another manifest error and an abuse of discretion.

Again, Plaintiff emphasizes that such a procedure is entirely unnecessary in these circumstances. Redaction itself is burdensome, and redaction with title-identification is even more so. In the experience of Plaintiff's counsel from other cases being litigated simultaneously with this one, *Green v. Meeks*, No. 20-cv-0463-SPM (S.D. Ill.), Wexford has sought simultaneously to advance an argument in favor of redaction and an argument that such redaction requires an extreme narrowing of the scope of discovery because of the burden of such redactions.[4] Aside from their illegitimacy, redactions are inappropriate for this practical reason as well. *See, e.g.*, *Ruggles v. WellPoint, Inc.*, No. 1;08-cv-201, 2010 WL 11570681, at *15

---

[4] It is also worth noting that the incarcerated individuals whose privacy interests Wexford purports to assert have sued the State of Illinois for the unconstitutionally inadequate medical and mental health care that they have received from Wexford. *See Lippert v. Baldwin*, No. 10-cv-4603 (N.D. Ill.) (medical care class action); *Rasho v. Walker*, No. 07-cv-1298 (C.D. Ill.) (mental health care class action).

(N.D.N.Y. Dec. 28, 2010) ("Where redaction would be unduly burdensome and yet either a party or a court would benefit from a review of the unredacted version of the documents, a sealing order, akin to a protective order, would be appropriate."). *Accord G. v. Hawai'i*, No. 08-cv-551, 2010 WL 2607483, at *2 (D. Haw. June 25, 2010) (same). That is the practical course here.

## CONCLUSION

The Magistrate Judge's Order concerning redaction of third-party PHI was wrongly decided and should be set aside under Rule 72(a). The Court instead should direct the entry of Plaintiff's proposed HIPAA-qualified protective order, *see* ECF 128-1, which is identical to the one proposed by Wexford, yet does not contain the redaction provision.

Respectfully submitted,

/s/ Stephen H. Weil
Stephen H. Weil
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Sarah Grady
Stephen Weil
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
sarah@loevy.com

Antonio Romanucci
Nicolette Ward
ROMANUCCI & BLANDIN LLC
321 North Clark St.
Chicago, IL 60654
(312) 458-10001

Maggie Filler
RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER
375 East Chicago Ave.
Chicago, IL 60611
(312) 503-1271

## **CERTIFICATE OF SERVICE**

      I, Stephen H. Weil, an attorney, hereby certify that on July 27, 2021, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                                                         /s/ Stephen H. Weil
                                                         Stephen H. Weil
                                                         Attorney for Plaintiff