IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VICTORIA GREEN,**<br>as Administrator of the Estate of<br>Craigory Green,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**STEVEN MEEKS,** *et al.***,**<br><br>　　　　　　　Defendants. | Case No. 20-cv-00463-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions to reconsider filed by Defendants (Docs. 127, 128) and a motion requesting a deadline for ESI production filed by Plaintiff. (Doc. 143). A hearing was held on the motions on July 6, 2021. For the following reasons, the motions to reconsidered are denied and the motion for a deadline regarding ESI production is granted.

## BACKGROUND

Plaintiff is proceeding with constitutional and state law claims against Defendants for failing to provide Craigory Green proper medical care or access to medical care for his liver condition, primary sclerosing cholangitis ("PSC"), which ultimately resulted in his death. (Doc. 90).

On August 5, 2020, a scheduling conference was conducted, and the parties were given two weeks to submit a joint proposed ESI protocol. On August 20, 2020, Plaintiff filed a motion for entry of an ESI protocol along with a proposed discovery plan for electronically stored information. (Doc. 96). Defendants Meeks, Walls, and Mears-Attig ("IDOC Defendants") and Defendants Wexford Health Sources, Inc., Siddiqui, Shah, Moldenhauer, and Zimmer ("Wexford

Defendants") filed objections. The Court granted the motion in part, finding that Defendants had not provided sufficient information to support the contention that the proposed terms were likely to yield numerous irrelevant documents. (Doc. 122). The Court also ruled that it was satisfied that the protected health information of non-parties was sufficiently protected from unauthorized disclosure by the Qualified Protective Order Pursuant to HIPAA. The proposed ESI protocol was adopted with modifications to the "safety valve" provision. Search terms used that resulted in the identification of over 5,000 documents, rather than 20,000 documents, triggered a review by the parties. The Court further noted that it would remain open to a motion for reconsideration of its Order. Defendants subsequently filed the pending motions to reconsider.

## MOTIONS TO RECONSIDER

### I. Wexford Defendants

In their motion, the Wexford Defendants inform the Court that since the adoption of the ESI Protocol, they have enlisted Wexford information technology staff to begin initial searches. (Doc. 127). Initial searches have demonstrated that the current ESI Protocol will require Wexford Health Sources, Inc. and counsel to spend vast amounts of time and human effort to sift through information on thousands of inmates with no connection to this litigation. The Wexford Defendants argue that the time spent on those irrelevant and non-responsive documents does not advance the interests of Plaintiff or justice and will amount to a crushing expense for Defendants. As an example of the volumes of documents that would be produced under the ESI Protocol, the Wexford Defendants provide that initial searches using the search terms GREEN and LIVER netted over 80,000 files, TRANSPLANT netted over 62,000 files, UTILIZATION MANAGEMENT and SCHEDUL netted over 26,000 files, LIVER and CARBONDALE netted over 26,000 files, and 7.6 and WEXFORD netted over 43,000 filed. While a search of emails and electronically stored documents containing the terms CRAIGORY, CRAIGORY GREEN, and

M31534 only resulted in 1700 emails and electronic documents. The Wexford Defendants argue that these numbers give an indication of the large results yielded when the search terms are not limited in scope to the decedent, Craigory Green. They ask the Court to order the parties to confer and propose amended search terms for the ESI Protocol that further narrow the scope of the searches. Specifically, they put forth as a proposed measure that the each of the searches (e.g. GREEN and LIVER being one search) that will yield over 5,000 files should be narrowed so that the documents that will be reviewed for the search term, as modified, will not exceed 5,000 files.

The Wexford Defendants further argue that the ESI Protocol requires the disclosure of a significant amount of non-party protected health information. (Doc. 132).[1] As an example, many of the documents that have already been produced to Plaintiff are spreadsheets that contain only one entry regarding the decedent and the information for hundreds, and in some cases thousands, of other inmates. They argue that Plaintiff's claims pertain to "a niche of medical care—the monitoring of and diagnosis of a liver condition that requires a transplant, at Menard Correctional Center." (*Id.* at p. 4). As such, a broad exposure of protected health information of other inmates with conditions that do not pertain to the treatment of maladies of the liver would not advance the resolution of this case. The Wexford Defendants ask the Court to limit the amount of non-party protected health information that would be exposed. They request that for documents containing non-party protected health information, they only be ordered to disclose information on inmates who were diagnosed with liver diseases at Menard Correctional Center from the date when Green arrived until his death.

## II. IDOC Defendants

Since filing the motion to reconsider, the IDOC Defendants have conferred with Plaintiff,

---

[1] The Wexford Defendants were granted leave to supplement the motion for reconsideration with additional arguments regarding the unnecessary disclosure of HIPAA protected health information. (*See* Doc. 144).

Page 3 of 9

and the parties agreed that Defense Counsel for the IDOC Defendants would review all of the emails containing Green's name and twelve search terms (*see* Doc. 128-1, lines 1-12), as well as a few other specific terms, including PRIMARY SCLEROSING CHOLINGITIS, PSC, and LIVER FAILURE. (Doc. 128). The parties also agreed that Defense Counsel would review a 10 percent subset or sample of any other searches that resulted in over 500 emails.

The IDOC Defendants argue that even with this agreement, the number of emails to review is voluminous. The searches using the search terms in the ESI Protocol have yielded approximately 21,676 emails,[2] and the parties are still in disagreement over the implementation of the "safety valve" provision.[3] Although none of the individual search terms have resulted in over 5,000 emails or documents on their own, it is the position of the IDOC Defendants that this "safety valve" provision applies to documents generated by all forty search terms collectively, rather than 5,000 documents per each search term. The searches are excessive and overbroad and are therefore unlikely to produce responsive results for this case. They ask the Court to limit the ESI searches by excluding some of the overly broad search terms from its review and determine the amount of sampling that needs to occur in this case.

The IDOC Defendants also reassert their previous arguments regarding the disclosure of personal identifying information of non-parties. They request the Court to limit disclosure of the individually identifiable health information from the protected health information of any current and former IDOC inmate, other than the Green, through redaction of certain personal information.

---

[2] According to the parties, this list of emails is not "de-duplicated—meaning that an email sent to tow custodians will be counted twice even though the two emails are identical—and does not contain unique hits—meaning that an email containing two search terms will be counted twice on the hit list." (Doc. 130, p. 3; Doc. 128, p. 5).

[3] As amended by the Court, the safety valve provision of the ESI Protocol provides, "In the event the ESI search using search terms results in the identification of over 5,000 documents, Defendants' counsel will notify Plaintiff's counsel and will conduct a review of a subset of documents to determine the percentage of relevant documents found by the search terms." (Doc. 122, p. 3).

*III. Plaintiff's Response in Opposition*

Plaintiff argues that reconsideration is not necessary because through meet-and-confer conferences Defendants have already obtained the relief they seek. (Doc. 130). As to the IDOC Defendants, the parties agreed to the following:

- Defense Counsel would review emails with search terms that yielded less than 500 emails, and emails that contained the search term "liver failure" in their entirety and produce responsive documents; and

- Emails collected through all other search terms would be sampled, with Defense Counsel reviewing a random 10 percent sample to determine a responsiveness rate.

The parties agreed that Defense Counsel would have sixty days to complete the review. Defense Counsel further agreed to inquire on whether the IDOC Defendants saved any documents onto their local hard drives that required a further search.

As to the Wexford Defendants, when the parties met and conferred, Plaintiff acknowledged that further discussions and attempts to narrow the search would be required. Defense Counsel expressed the desire to wait to discuss narrowing the search terms until a full report of the number of documents yielded by the search terms was generated (*i.e.* "hit list"). As of March 2, 2021, Plaintiff had not heard from the Wexford Defendants.

## MOTION FOR DEADLINE OF ESI PRODUCTION

In addition to disagreements over the scope of ESI production, there is also a dispute between Plaintiff and the IDOC Defendants over the deadline for production. After the Court adopted the ESI Protocol, Plaintiff and the IDOC Defendants agreed on the deadline of April 15, 2021, to complete an initial review and sampling of the emails. (Doc. 143). On April 12, 2021, Defense Counsel informed Plaintiff that the servers of the Illinois Attorney General's Office had been compromised and that the IDOC Defendants could not meet the April 15 deadline for production. (Doc. 147, p. 1). Plaintiff agreed to allow Defense Counsel an additional three weeks

to determine whether access to their servers could be restored relatively promptly or whether the Attorney General's Office could develop an alternative plan to litigate, notwithstanding their server issue. More extensions were agreed to, and on June 4, 2021, the parties conferred and Defense Counsel reported that the servers remained inaccessible and that there was no known timeline when access to the servers would be restored. Defense Counsel confirmed that the IDOC servers and the servers of the Department of Information and Technology, the agency who houses the ESI subject to the ESI Protocol, were not affected. Defense Counsel declined to consider or propose alternative plans for moving forward with ESI discovery. Plaintiff asks the Court to impose a deadline for the IDOC Defendants' production and sampling of ESI.

The IDOC Defendants argue that the cost of another ESI search would be unduly burdensome. (Doc. 147). Their network will be restored at some point in time and Defense Counsel will be able to resume review of the ESI production in this case. They ask for the Court to deny Plaintiff's motion and allow them to update the Court in thirty days regarding their ability to continue the review of ESI discovery.

## ANALYSIS

Under Rule 54(b) of the Federal Rules of Civil Procedure, the Court may revise any order adjudicating fewer than all the claims at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Motions to reconsider an order under Rule 54(b) are judged largely by the same standards as motions to alter or amend a judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). *See also*

*Ahmed v. Ashcroft,* 388 F. 3d 247, 249 (7th Cir. 2004).

For material to be discoverable, it must be both relevant and proportional to the needs of the case. Under Rule 26 of the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). The term "relevant" for the purposes of discovery is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Peppers v. Credit One Bank, N.A.,* No. 17-2190, 2018 WL 8244003, at *2 (C.D. Ill. Dec. 21, 2018) (citations omitted).

For the reasons stated on the record, the Court finds that there is no need to reconsider the Order adopting the ESI Protocol at this time. The parties continue to work together, and they have not reached an impasse in their discovery discussions requiring Court interference. Specifically, the IDOC Defendants and Plaintiff have already agreed to a workable arrangement of deciding which search term results would be reviewed in full and which search term results would require review of a random 10 percent sampling to determine a responsive rate. (*See* Exhibit A, Doc. 143-1, p. 2). Although the Court agrees that some terms such as TRANSPLANT very well may yield a number of irrelevant results, under the current arrangement between the IDOC Defendants and Plaintiff, Defense Counsel is required to review only a 10 percent sample of the results produced by this term and others that yield high results. This seems a very workable arrangement for the production of relevant ESI from the IDOC Defendants.

Likewise, as for to ESI in the possession of Wexford, Plaintiff expresses a willingness to continue working with the Wexford Defendants to reach a compromise on production of information so that the ESI discovery process will not be unduly burdensome or result in the production of voluminous irrelevant documents. The Court does not have enough information to make a determination as to the Wexford Defendants' arguments that the search terms are overly broad and would produce an unwieldly number of irrelevant documents that are disproportionate to the needs of this case, and as long as the parties continue to make headway, the Court sees no reason to intervene and reconsider the ESI Protocol.

As to the arguments raised by all Defendants regarding the disclosure of the protected health information of non-parties, the Qualified Protective Order entered pursuant to the Health Information Portability and Accountability Act ("HIPAA") (Doc. 28) adequately protects the health information of non-parties from unauthorized disclosure. *See Haywood v. Wexford Health Sources, Inc.,* No. 16 CV 3566, 2021 WL 2254968, at *5-6 (N.D. Ill. 2021) (allowing the disclosure of protected health information of non-parties pursuant to a protective order that met the requirements under HIPAA); *Nw. Mem'l Hosp. v. Ashcroft,* 362 F. 3d 923, 925 (7th Cir. 2004) (HIPAA does not create a privilege against production or admission of evidence; it merely creates a procedure for obtaining protected medical records in litigation). As the Court previously stated, because Plaintiff is alleging that Craigory Green died due to the widespread customs and practices of Wexford, she is entitled to a "broad and substantial amount of discovery." (Doc. 122, p. 3) (citations omitted). *See also Hildreth v. Butler,* 960 F. 3d 420 (7th Cir. 2020) (affirming summary judgment on a *Monell* claim against Wexford Health Sources, Inc. because the plaintiff did not offer evidence of medication delays for other incarcerated people). Plaintiff is required to show "systemic and gross deficiencies" that have impacted others in IDOC custody, and thus, the Court will not limit discovery to only information pertaining to inmates with liver disease at Menard

Correctional Center or limit the disclosure of information of non-party inmates through the redaction of all individual identifiers. *Hildreth,* 960 at 426.

### DISPOSITION

Accordingly, the Motions for Reconsideration are **DENIED**. (Docs. 127, 128). As Counsel for the parties appear to have experience in ESI discovery involving inmate medical claims and records, the Court is confident the parties will use that experience and continue working together to resolve any ongoing discovery disputes regarding the narrowing of search terms as necessary.

The Motion for Deadline of ESI Production is **GRANTED.** (Doc. 143). The IDOC Defendants shall begin producing ESI discovery within the next 30 days, on or before **August 13, 2021**. The IDOC Defendants shall file a notice with the Court by **August 11, 2021,** if they cannot comply with this production deadline because of ongoing computer problems.

In the meantime, the parties will be ordered to participate in a settlement conference with United States District Judge David Dugan.

**IT IS SO ORDERED.**

DATED: July 14, 2021

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**