# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

ANTHONY GAY,

        **Plaintiff,**

v.

JOHN BALDWIN, et al.,

        **Defendants.**

Case No. 19-1133

## ORDER

This case is before the Court on two Motions to Quash Subpoenas (#162, 163) filed by Plaintiff Anthony Gay and a Motion to Compel (#166) filed by Defendants William Puga, Kelly Ann Renzi, Wexford Health Sources Inc. For the reasons provided below, Plaintiff's Motion to Quash Wexford Defendants' Overbroad Subpoenas (#162) is granted in part and denied in part. Plaintiff's Motion to Quash Defendant Rob Jeffreys' Subpoena (#163) is denied. Defendants' Motion to Compel (#166) is granted in part and denied in part.

## I.    Background

Plaintiff filed his Complaint on October 28, 2018, alleging that while incarcerated, Plaintiff was wrongly placed in extended solitary confinement causing his mental condition to deteriorate. Plaintiff's Complaint alleges he suffers from borderline personality disorder and after he was imprisoned, "the symptoms of his mental illness manifested, and he began to act out." Plaintiff further alleges that the lack of mental health care within IDOC and his placement in solitary confinement accelerated the deterioration of his mental wellbeing.

Plaintiff filed his Motions to Quash in response to two sets of subpoenas issued by Defendants. First, Defendants Wexford Health Sources, Inc., Kelly Kenzi, and

William Pugu ("Wexford Defendants") issued subpoenas to Arrowhead Youth & Family Services, Unity Point Health – Trinity, and Mary Davis Detention Home. The Court will refer to these subpoenas as the "Wexford Subpoenas." The Wexford Subpoenas sought "All records, medical and non-medical, for Anthony Gay, DOB [Plaintiff's date of birth] (may be listed as [erroneous date of birth]), from [Plaintiff's date of birth] to December 21, 1994." (Exhibits 1, 2, and 3 to #162).

Second, Defendant Jeffreys issued a subpoena to the Illinois Department of Juvenile Justice ("IDJJ") seeking "All records pertaining to Anthony Gay (DOB [Plaintiff's date of birth])." (#158-1.) The Court will refer to Jeffreys' subpoena as the "IDJJ Subpoena."

Unrelated to Plaintiff's Motions to Quash Subpoenas, Defendants filed a Motion to Compel asking the Court to compel Plaintiff to respond to Defendants' discovery requests and sign authorizations allowing Defendants to obtain relevant medical and mental health records.

## II.    Plaintiff's Motions to Quash

### a.    Legal Standard

Pursuant to Rule 45, a party has a general right to subpoena any person to produce designated documents for inspection and copying. Fed. R. Civ. P. 45. This right is not limitless, however. Generally, a party is only permitted to obtain discovery regarding a nonprivileged matter "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A court may quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies, or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

When considering a motion to quash, the court balances the potential benefits of the information sought against the burden imposed. *See Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). The opposing party has the burden to show why each request is irrelevant or burdensome. *Shaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990); *see also Reed v. Illinois*, 318 F.R.D. 77, 79 (N.D. Ill. 2016)

("[I]t is up to the respondent to establish undue burden with a particularized showing.")[1]

### b. Wexford Subpoenas

The Wexford Subpoenas were issued to three hospitals and detention centers in which Plaintiff lived before his incarceration in 1994. Defendants sought records (medical and non-medical) dating back to Plaintiff's birth in 1978.

As an initial matter, Plaintiff put his own medical and behavioral history at issue in his Amended Complaint. Plaintiff's Amended Complaint starts by detailing his criminal actions that first led to his incarceration:

- "When Anthony Gay was a teenager, he got into a fight with another teen who had insulted his sister."

- "Then, in another youthful error, Anthony violated his probation by driving a car without a license."

Plaintiff's Complaint alleges that Plaintiff began to act out from his mental illness after he was imprisoned and that his mental condition "deteriorated" after Plaintiff was placed in solitary confinement. Plaintiff further alleges that his deteriorating mental health led him to engage in the acts of self-mutilation that led to this case.

Plaintiff's entire case relies on his claim that his mental health condition deteriorated while he was imprisoned due to lack of mental health treatment and his placement in solitary confinement. The only way to evaluate the deterioration of Plaintiff's mental health condition is to compare Plaintiff's condition in prison to his condition prior to his incarceration. And the only way for Defendants to establish Plaintiff's mental health condition prior to his incarceration is to review Plaintiff's medical and behavioral records from the time prior to his incarceration.

Plaintiff does not contest that his mental health is at issue in this case, but argues that this does not justify the broad range of discovery Defendants seek. The Wexford

---

[1] There is no dispute that Plaintiff has standing to dispute the subpoenas as they seek records detailing his disciplinary history and mental and medical health history. *U.S. v. Raineri*, 670 F.2d 702, 712 (1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.")

Subpoenas are broad both in time sought (1978-1994) and substance (all medical and non-medical).

Due to the nature of Plaintiff's allegations, the Court finds that both Plaintiff's medical and non-medical records prior to his incarceration are relevant. On its face, the Amended Complaint makes Plaintiff's mental health history the central issue to this case. Defendants must be able to compare Plaintiff's mental state during his incarceration to his mental state prior to his incarceration. Non-medical records are also relevant for Defendants to compare Plaintiff's behavioral problems while in custody to his behavioral problems prior to his incarceration. The Court recognizes the broad nature of these requests and has considered Plaintiff's interest in keeping these records private. However, the importance of these records to Plaintiff's case strongly overrides any privacy interest held by Plaintiff. The Court further notes that Plaintiff put these records at issue by filing his case and that Plaintiff's privacy interests are protected by the Confidentiality Order (#122).

However, the Wexford Subpoenas unreasonably seek documents spanning a time range of 16 years, dating back to Plaintiff's birth. Records from when Plaintiff was a baby or young child have no relevance to Plaintiff's claim. In *Coleman v. City of Chicago*, 2019 WL 7049918 (N.D. Ill Dec. 23, 2019), the Northern District of Illinois considered a similar case where the plaintiff alleged that his 23-year incarceration after a wrongful conviction led to psychological damages. The defendants sought records dating back five years prior to the plaintiff's arrest. The court found that only records dated two years prior to the plaintiff's arrest had a probative value that overrode the plaintiff's privacy interests. *Id.* at *5. *See also Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 511 (N.D. Ill. 2018) (allowing discovery of Plaintiff's mental health records for five years prior to the incident giving rise to the lawsuit).

Defendants distinguish *Coleman* from the instant case because *Coleman* involves a wrongful incarceration case where the plaintiff's prior medical records were relevant only to the issue of damages. The Court agrees that the present case is distinguishable from *Coleman* because Plaintiff's mental health history in this case is the central issue.

The entirety of Defendants' liability depends on the change in Plaintiff's condition prior to and during his incarceration. Considering the specific facts of this case, the Court finds that Defendants are permitted to seek records dating eight years prior to Plaintiff's incarceration. Eight years of records should give Defendants sufficient information to determine Plaintiff's mental health and behavioral status prior to his incarceration, while protecting Plaintiff's confidentiality from when he was very young.

Accordingly, Plaintiff's Motion seeking to quash the Wexford Subpoenas is granted in part in that the Court will permit Defendants to seek the following: "All records, medical and non-medical, for Anthony Gay, DOB [Plaintiff's date of birth] (may be listed as [erroneous date of birth]), from December 21, 1986 to December 21, 1994." (Exhibits 1, 2, and 3 to #162).

### c. IDJJ Subpoena[2]

Similarly, Plaintiff seeks to quash the subpoena Defendant Jeffreys issued to IDJJ seeking records from Plaintiff's time with the Illinois Department of Juvenile Justice. Like the subpoenas issued to the Arrowhead Youth & Family Services, Unity Point Health – Trinity, and Mary Davis Detention Home, the subpoena issued to the IDJJ seeks all records pertaining to Plaintiff and does not limit the time frame. Plaintiff's Motion states that Defendant Jeffreys indicated that IDJJ possessed records dating back to 1989. Additionally, after meeting and conferring, Defendant Jeffreys agreed to limit his request to the IDJJ to "medical and mental health records, master file records, and any records relating to discipline or self-harm."

As discussed above, Plaintiff's medical, mental, disciplinary, and self-harm records are relevant to Plaintiff's claim that his mental condition deteriorated after he was incarcerated in 1994. Plaintiff's time in the IDJJ dates back to 1989, five years prior to Plaintiff's incarceration with the Illinois Department of Corrections. Plaintiff's

---

[2] The Wexford Defendants filed a Response to Plaintiff's Motion to Quash Defendant Rob Jeffreys' Subpoena even though they did not issue the subpoena. Defendants noted that they "have an interest in obtaining the subpoenaed records, as they are highly probative of Plaintiff's theory of the case and the defense." Defendant Jeffreys and the remaining Defendants filed a Motion to Join and Adopt the Wexford Defendant's Responses to the Motions to Quash, which the Court granted on May 10, 2022.

behavior and medical history while in the IDJJ is directly relevant to whether Plaintiff's health condition and behavior changed while incarcerated. The parties do not specify the date Plaintiff entered the IDJJ, but the Court relies on Defendant Jeffrey's representation that the IDJJ possesses records dating back to 1989. The Court finds this five-year time-period to be reasonable for the reasons explained above. Accordingly, Plaintiff's Motion to Quash Defendant Jefferey's Subpoena is denied.

## III. Defendants' Motion to Compel

### a. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Peppers v. Credit One Bank, N.A.*, 2018 WL 8244003 (C.D. Ill. Dec. 21, 2018) (*quoting Openheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The district court exercises significant discretion in ruling on a motion to compel. *Gile v. United Airlines*, 95 F.3d 492, 495-496 (7th Cir. 1996). It may grant or deny the motion in whole or in part. *Id.* In exercising its discretion, the district court may deny discovery to protect a party from undue burden. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998).

Federal Rule of Civil Procedure 37(a)(1) provides that a party may move for an order compelling disclosure or discovery after the "movant has in good faith conferred or attempted to confer with the person failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

### b.  Discovery Requested

Defendants' Motion argues that Plaintiff has refused to answer interrogatories, respond to requests for production, or sign authorizations to allow Defendants to obtain medical and mental health records.

### i.  Interrogatories

Plaintiff argues that Defendant's Interrogatories include contention interrogatories to which Plaintiff may delay his response. "Contention interrogatories require the answering party to commit to a position and give factual specifics supporting its claim." *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995).

The Northern District of Indiana explained:

> The phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Contention interrogatories can be classified as questions asking a party to: 'indicate what it contends or whether the party makes some specified contention [;] ... state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention.' The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position. In the interest of judicial economy and fairness, the answers to contention interrogatories often are delayed until the end of discovery. However, in the event such answers will meaningfully contribute to issue clarification, narrow the scope of the dispute, or provide for early settlement, they may be proper.

*BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009) (internal citations omitted).

### 1.  Interrogatories 8, 10 and 13

Plaintiff argues that Interrogatories 8, 10, and 13 are contention interrogatories, that Plaintiff may delay answering until certain discovery is taken.

Interrogatory 8 states:

> In paragraph 12 of the First Amended Complaint, Plaintiff alleged "despite its contractual obligations *** by policy and practice Wexford did

7

not provide onsite mental health services necessary to meet the needs of persons with severe mental health illnesses like [Plaintiff], nor did it transfer prisoners who needed such care to appropriate outside mental health facilities."   To the extent Plaintiff refers to an official policy of Wexford Health Sources in paragraph 12, identify the official policy.  If Plaintiff refers to a widespread practice, identify the exact nature of the widespread practice.

#166, Exhibit B, Wexford Interrogatory 8.

Interrogatory 10 states:

In paragraph 42(c) of the First Amended Complaint, Plaintiff alleges Wexford had a contractual obligation to provide "off-site and hospitalization services as necessary to treat the *** mental health needs of the IDOC's prisoners."  Identify the basis of the allegation Wexford was contractually obligated to provide offsite and hospital mental health services.  If this obligation exists in a document, identify the specific provision of the document imposing such an obligation.

#166, Exhibit B, Wexford Interrogatory 10.

Interrogatory 13 states:

In paragraph 44(b) of the Amended Complaint, Plaintiff alleges Defendants Renzi and Puga "could have sought Anthony's referral to an inpatient psychiatric facility through the 'collegial review' process operated by Wexford, their employer."  Identify the factual basis for the allegation.

#166, Exhibit B, Wexford Interrogatory 13.

Plaintiff's answers to Interrogatories 8, 10, and 13 was the same:

Plaintiff objects that this is a premature contention interrogatory.  Plaintiff offers to meet and confer with Defendants regarding an appropriate time to respond to this interrogatory.  Subject to and without waiving this objection, Plaintiff refers Defendants to the operative complaint in this case and the document production by the parties.

#166, Exhibit E, Plaintiff's answer to Wexford Interrogatory 11.

Applying the standard from above, the Court must determine whether Interrogatories 8, 10, and 13 seek to (1) require Plaintiff to commit to a position and give

8

support for that position or (2) provide issue clarification, narrow the scope of the dispute, or provide for early settlement.

Interrogatories 8, 10 and 13 ask the Plaintiff to identify the basis of claims in his Complaint. Specifically, Interrogatory 8 asks Plaintiff to identify the policy or practice under which he alleges Defendants failed to provide mental health services. Interrogatory 10 asks Defendants to identify the basis of Wexford's alleged "contractual basis" to provide medical services. Last, Interrogatory 13 asks for the basis of Plaintiff's allegation that the Wexford doctors could have submitted a referral for Plaintiff to be sent to an inpatient psychiatric facility.

Plaintiff argues that these requests are contention interrogatories, and Plaintiff should be permitted to conduct limited discovery prior to responding. Plaintiff offered to answer these interrogatories two months before the close of fact discovery.

None of these three interrogatories require Plaintiff to commit to a position and provide support for that position. Instead, Interrogatories 8, 10, and 13 ask Plaintiff to identify the policies, documents, or practices under which his claims arise. Plaintiff's Complaint states that his claims arise under Defendants' policies and practices and Defendants simply ask Plaintiff to identify the referenced policies and practices to clarify the issues for discovery.

Because Defendants seek to clarify Plaintiff's allegations to limit the scope of discovery, Interrogatories 8, 10, and 13 are not contention interrogatories. Plaintiff must provide full responses within 21 days of this Order.

## 2. Interrogatories 9, 11, and 12

Defendants concede that Interrogatories 9, 11, and 12 are contention interrogatories. After meeting and conferring, the parties were unable to agree to the time which Plaintiff must answer these interrogatories. Defendants ask that Plaintiff be required to supply answers 30 days before the close of discovery. Plaintiff seeks to delay responding until he submits his expert disclosures.

There is no doubt that Interrogatories 9, 11, and 12 are contention interrogatories as they ask Plaintiff to identify all facts and evidence that support his claims. #166, Exhibit B, Wexford Interrogatories 9, 11, and 12.

Initially, the Court notes that the parties' inability to reach an agreement as to the timing of disclosures shows the contentious nature and unwillingness to compromise demonstrated by both parties throughout discovery. Not including the motions resolved by this Order, the Court has previously: ruled on two motions regarding ESI protocol, resolved a dispute between the parties' different Rule 26(f) plans, resolved a dispute over the language in the confidentiality order, ruled on a motion to compel supplemental discovery, ruled on a motion to set deadlines for ESI protocol, and resolved a dispute over whether Defendants could file an amended answer.

This is a level of motion practice not often seen before this Court, especially considering the parties have not even begun expert discovery. While the Court understands the importance of this case to both sides, the Court is confident that the parties can resolve a simple dispute over the timing of answers to three interrogatories. The parties shall meet and confer under Rule 37(a)(1) to resolve this minor dispute. The Court reminds the parties of their duty to confer <u>in good faith</u> to resolve the issue without further court action. Fed. R. Civ. P. 37(a)(1).

### ii. Requests for Production

Defendants ask the Court to compel Plaintiff to produce documents in response to Defendants' Requests for Production within 14 days. Defendants served their Requests for Production on Plaintiff on January 25, 2022. When Defendants filed their Motion to Compel on April 25, 2022, Plaintiff had submitted <u>zero</u> documents in response to the Request for Production (some based on objections and some after asking for additional time).

Plaintiff argues that Defendants' Motion to Compel is "premature" as to the Requests for Production. Plaintiff argues that his delay in producing documents was caused by Defendants' own delays in production and that the parties were continuing to meet and confer. In his response, Plaintiff agrees to produce his responses to the

Requests to Produce within 30 days. Plaintiff must provide <u>all</u> responsive documents within 30 days of this Order. Any requests for additional time will be denied absent a showing of good cause.

### iii.  Authorizations

Last, Defendants ask the Court to require Plaintiff to sign authorizations allowing Defendants access to Plaintiff's records from the Social Security Administration and records from Robert Young Center, a facility at which Plaintiff received medical and mental health treatment.[3]

As to the Social Security Administration records, Plaintiff refused to sign the authorization and instead offered to review the record and provide relevant documents. The Court directs Plaintiff to request Plaintiff's Social Security Administration records within 10 days of this Order. Plaintiff must review and provide Defendants with relevant documents within 30 days of receiving the records.

As to the Robert Young Center, the Court allowed Defendants' subpoena as detailed above, and the Robert Young Center must comply with this subpoena. The Court reminds Plaintiff that the speediest and most inexpensive way to complete discovery, as required by Rule 1, is for Plaintiff to sign the authorizations. But, if Plaintiff refuses to cooperate with this simple request, Defendants must seek the relevant documents through subpoena.

### IV.  Conclusion

To summarize, the Court orders as follows:

1. Plaintiff's Motion to Quash Wexford Defendants' Overbroad Subpoenas (#162) is granted in part and denied in part. The Wexford Defendants are directed to issue a new subpoena that limits the time period as discussed above: "All records, medical and non-medical, for Anthony Gay, DOB [Plaintiff's date of birth] (may be listed as [erroneous date of birth], from December 21, 1986 to December 21, 1994." (Exhibits 1, 2, and 3 to #162)."

---

[3] Defendants sought records from other facilities as detailed in Section II, only the Robert Young Center declined to provide records based on the Court's HIPAA Order and required a signed authorization by Plaintiff.

2. Plaintiff's Motion to Quash Defendant Rob Jeffreys' Subpoena (#163) is denied.

3. Defendants' Motion to Compel (#166) is granted in part and denied in part:

    a. Plaintiff must provide full responses to Interrogatories 8, 10, and 13 within 21 days of this Order;

    b. The parties shall meet and confer to reach an agreement as to the timing of Plaintiff's answers to Interrogatories 9, 11, and 12;

    c. Plaintiff must provide all responsive documents to Defendants' Requests to Produce within 30 days of this order; and

    d. The Court directs Plaintiff to request Plaintiff's Social Security Administration records within 10 days of this Order. Plaintiff must review and provide Defendants with relevant documents within 30 days of receiving the record.

4. Pursuant to Rule 37(a)(5)(A) and (C), Defendants may file a fee petition associated with these motions by no later than 14 days from this Order.

ENTERED this 24th day of May, 2022.

                      s/ERIC I. LONG
              UNITED STATES MAGISTRATE JUDGE