E-FILED
Thursday, 18 August, 2022  01:24:35 PM
Clerk, U.S. District Court, ILCD

044653/19344/JNR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| ANTHONY GAY, | |
| Plaintiff, | |
| v. | Case Number  19-cv-01133 |
| THE STATE OF ILLINOIS, JOHN BALDWIN, JEFF SIMS, SHANE REISTER, DR. DOE 1, MELVIN HINTON, SYLVIA BUTLER, KELLY ANN RENZI, WILLIAM PUGA, DR. CHESS, DR. NUNEZ, WEXFORD HEALTH SOURCES, INC., and DOES 2-5, | Judge Sue E. Myerscough |
| | Magistrate Judge Eric I. Long |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS

NOW COMES the Defendants, WEXFORD HEALTH SOURCES, INC., KELLY RENZI, PSY.D., and WILLIAM PUGA, M.D., by and through their attorneys, CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Motion for Sanctions, state as follows:

## INTRODUCTION

This lawsuit is the centerpiece of a crusade by Plaintiff against the Illinois Department of Corrections (IDOC) and its employees and contractors.  Since his release from IDOC in 2018 and his filing of this case, Plaintiff and his attorneys have pushed a narrative of Plaintiff as a victim of Defendants' unspeakable cruelty, wantonly torturing him for 22 years.  Plaintiff and his attorneys have done countless speaking engagements, interviews, including with national media outlets such as NPR and CBS, demonizing Defendants and accusing them of torturing Plaintiff

for 22 years of his incarceration.[1]  Plaintiff has even lent his name to proposed legislation that pertains to the issues in this case.  *See* 102nd General Assembly, House Bill 3564 (Anthony Gay Law).  In short, Plaintiff has made this case a matter of significant public interest and concern not just to supporters of his cause but also to Defendants, who have been repeatedly publicly sullied by Plaintiff and his lawyers.  Given the publicity and public scorn Plaintiff heaped on Defendants, his obdurate refusal to permit discovery, failure to comply with the Court's May 24, 2022, order to permit discovery, and willful destruction of 24 boxes consisting of approximately 72,000 pages of highly relevant discovery is outrageous and cannot be countenanced.

Specifically, on May 9, 2022, Plaintiff invited the Court to deny Defendants' Motion to Compel Discovery because Plaintiff would comply with outstanding discovery within 30 days. The Court accepted this representation and ordered Plaintiff to do as he promised.  Plaintiff had not told the Court that he had lost 24 boxes of highly relevant discovery consisting of approximately 72,000 pages of records covering Plaintiff's 22 years' incarceration.  Plaintiff failed to comply with the Court's order because he had allowed the destruction of approximately 72,000 pages of highly relevant discovery.  In addition, since June 23---when Plaintiff was to have complied with the order he invited the Court to enter---Plaintiff has not provided any of his ESI, which was covered by the May 24, 2022, order.  He also has not obtained records from the Social Security Administration (SSA), which he also invited the Court to order him to do. Significant sanctions are warranted, as detailed below.

## BACKGROUND

On October 28, 2018, Plaintiff filed the above-captioned matter. Doc. 1. Plaintiff alleged violations of the Eighth Amendment, the Americans with Disabilities Act (ADA), the

---

[1] A Google search shows a plethora of media coverage, articles, and interviews.  Defendants would provide a comprehensive list, but Plaintiff has not answered Defendants' May 16, 2022, interrogatories and requests for production asking for details of Plaintiff's and his lawyers' media involvement.

Rehabilitation Act (RA), and the Fourteenth Amendment's due process clause. *Id.* at ¶¶ 1-5. Plaintiff asserted that he was improperly committed to solitary confinement during his over two-decades-long prison sentence and did not receive proper mental health treatment and reasonable accommodations for the mental health issues that allegedly resulted from the solitary confinement. *Id.* at pages 1-3. The Court denied Motions to Dismiss based on the statute of limitations, agreeing with Plaintiff's argument the continuing violation doctrine tolled the statute of limitations going back to the beginning of Plaintiff's incarceration in the 1990s. Doc. 116.

In February 2019, Plaintiff's attorneys entrusted what they described in email communications as "22 years worth of documents from [Plaintiff's] incarceration" consisting of 24 boxes to a third-party vendor. [2] Exhibit A, Plaintiff Bates 22023, 22025, 22027. It appears the vendor, D4, was to store the documents in Chicago for Plaintiff's counsel to come and review them to identify materials for scanning. As of February 9, 2019, D4 confirmed they were in possession of the boxes of documents at their shop in downtown Chicago with plans for Plaintiff's counsel to come and review them. *Id.* at 22036-22039. The vendor estimated there were 72,000 pages of documents in the boxes. Plaintiff Bates 23454. The last communication before June 2021 Defendants have obtained was from 4 pm on February 12, 2019, in which Plaintiff's counsel confirmed they were going to D4 on Wednesday, February 13, 2019, at 10:30 am to review the boxes of documents. *Id.* at 23616.

The next communication concerning these documents appears to be on January 24, 2020, when a former employee of D4, Kohle Franzen, who had moved to a new business, reached out to Plaintiff's counsel stating:

---

[2] On July 21, 2022, the third-party vendor answered Defendants' subpoena, producing 1,272 pages of emails. On July 22, 2022, Plaintiff answered Defendants' June 3 requested for production concerning the lost/shredded documents. Defendants have pieced together the sequence of events leading to the documents being lost from the emails. On August 15, 2022, Plaintiff produced additional emails that concerned events in January 2020.

"I'm not sure if you remember, however we were storing 23 boxes for and/or a client of yours for a potential scanning project regarding someone spending time in prison. To my knowledge all those boxes are still residing in my former facility. My question is that would you like to transfer that project to my new facility? Please let me know." *Id.* at 23767.

On January 24, 2020, Plaintiff's counsel appears to have solicited a quote from Mr. Franzen for potential transfer and storage/scanning of the boxes. *Id.* at 23776. Mr. Franzen responded on January 27, 2020, stating:

"I'm following up in response to your call from Friday about the 23 boxes at Special Counsel to be scanned. We will be able to store these boxes for you through your teams review and future scanning.

Regarding the storage of the boxes, we will be able to store them at our location for **$150/month**. We have a conference room that can be available for your use to review these materials as well. Please let me know at your earliest convenience how you would like to proceed and we can coordinate with you. (Bold in original). *Id.* at 23782.

According to documents produced, there does not appear to have been any further communication and it does not seem Plaintiff's counsel had the records transferred to Mr. Franzen. Instead, as best as Defendants can tell none of Plaintiffs' multiple attorneys had any further communication regarding the boxes until June 2021---a year-and-a-half later. Exhibit B, AG-Consilio at 2. At that time, Plaintiff's counsel referred to the documents as "Missing Client Files." *Id.* at 2. By that time, D4's litigation support business had been acquired by Consilio, LLC and moved offices. *Id.* at 1265. In response to Plaintiff's counsel's inquiry, Consilio asked for details from the project, including dates, quantity of boxes, and copies of invoices to guide their search. *Id.* at 5. Consilio also asked "why did we have the boxes for well over a year." *Id.* Plaintiff's counsel responded that an estimated 20 banker's boxes were transferred in roughly 2019 and that D4 had "agreed to store them" while Plaintiff's counsel determined which of "the large set of documents would require digitizing." *Id.* Consilio reached out to

former D4 employees in an attempt to locate the boxes.   One prior staff member remembered D4 having these boxes, estimating there were close to 30 boxes that sat in D4's conference room for at least a year.   *Id.* at 33.

Despite Plaintiff's purported agreement with D4 to store 20 or more boxes, Plaintiff's counsel was never able to provide Consilio a copy of a contract, invoice, or any evidence of payment.   With the absence of any contract, in August 2021 Consilio requested copies of any correspondence to assist in identifying the project.   Exhibit B, AG-Consilio at 211.   It was not until February 24, 2022, that Plaintiff's counsel provided copies of the 2019 emails between Plaintiff's counsel and D4 discussing D4's transport of the boxes.   *Id.* at 225.   After extensive investigation, Consilio concluded Plaintiff's boxes were among the those moved from Chicago to Rochester, NY in January 2021, and shredded in March 2021. *Id.* at 1264.

On January 25, 2022, Defendants served their requests for production on Plaintiff.   Doc. 166-1.   On March 11, 2022, Plaintiff served his answers and objections to Defendants' interrogatories and requests for production.   Doc. 166-8.   In response to Defendants' 29 document production requests Plaintiff produced no documents.   Plaintiff stated in response to nearly all requests that he "will produce or make available for inspection and copying documents responsive to this request that are in his custody or control and that are located after a reasonable search."   *Id.*   In Plaintiff's answer to Defendants' Requests for Production, Plaintiff made no mention that a substantial volume of highly relevant discovery---approximately 24 boxes of documents and 72,000 pages from Plaintiff's 22 years of incarceration---was unaccounted for.

On March 16, 2022, Defendants sent a Rule 37 letter to Plaintiff's counsel about Plaintiff's responses to Defendants' interrogatories and requests for production.   Doc. 166-9. Defendants raised issue with Plaintiff's responses to Wexford interrogatories 4-5, 8-13,

Puga/Renzi 4, 6, and request for production 1-29. Defendants requested Plaintiff identify (1) the reasonable inquiry performed to locate responsive documents and (2) when Plaintiff proposed to produce responsive documents. *Id.* Defendants were unaware a substantial volume of highly relevant discovery---upwards of 30 boxes of documents and 72,000 pages from Plaintiff's 22 years of incarceration---was unaccounted for.

Plaintiff responded to Defendants' March 16, 2022, Rule 37 letter on April 3, 2022, standing on his position regarding the contention interrogatories but proposing to answer them contemporaneous with Plaintiff's expert disclosures. Doc. 166-10. Regarding the requests for production, Plaintiff maintained he had no obligation under the federal rules to have completed a search for responsive documents by the time he answered Defendants' discovery. *Id.* Plaintiff offered to confer with Defendants regarding a reasonable time for providing the requested records and said Plaintiff would produce a privilege log concerning privileged documents in a timely manner. *Id.*

On April 7, 2022, the parties conducted a meet and confer telephone call regarding outstanding issues pertaining to, among other things, Plaintiff's failure to answer Wexford's requests for production. It became clear despite the requests for production having been served nearly two months earlier, Plaintiff's counsel had neither checked with Plaintiff for responsive documents nor begun the collection and review of responsive documents. Plaintiff's counsel for the first time mentioned substantial boxes of Plaintiff's documents from prison that were in the possession of a third-party vendor. Plaintiff's counsel offered to make them available without mentioning they were missing. At the conclusion of the call, it was agreed Plaintiff's counsel would confirm, among other things, what other responsive information Plaintiff had in his possession and the process/timing for retrieval and production. Doc. 166-12.

On April 19, 2022, the parties resumed their Rule 37 conference.  Plaintiff's counsel advised that by April 22, 2022, Plaintiff would make a supplemental production of responsive documents in Plaintiff's possession, although counsel was unwilling to say what they were. Plaintiff's counsel again mentioned records in the possession of a third-party vendor would be made available but did not say the records were missing.  April 22, 2022, came and went with no supplemental production and no explanation from Plaintiff's counsel.

On April 25, 2022, Defendants filed a Motion to Compel on a number of outstanding discovery issues, including Plaintiff's failure to answer Defendants' request for production, and Plaintiff's refusal to sign an authorization for Defendants to obtain Plaintiff's records from the Social Security Administration (SSA).  Doc. 166.  Defendants stated they had been trying to get a clear picture of what documents Plaintiff has and when they will be produced or made available for months with little to no help from Plaintiff.  Defendants requested the Court set a date certain for production.  *Id*. at 8.

On May 9, in response to Defendants' Motion to Compel, Plaintiff stated Wexford's Motion was premature because Wexford had just proposed an ESI protocol on April 29.  Doc. 173 at 3.  Of course, this was because Defendants had just learned through Rule 37 communications Plaintiff had responsive ESI.  Plaintiff stated Plaintiff does not object to a process in which it completes its Rule 34 production within 30 days, and can provide rolling production in the meantime."  Doc. 173 at 3.  Plaintiff further stated, "Plaintiff respectfully submits that timetable is reasonable."  *Id.*  When seeking 30 days to complete his Rule 34 production, Plaintiff made no mention in his Response a substantial volume of highly relevant discovery---upwards of 30 boxes of documents and 72,000 pages from Plaintiff's 22 years of

incarceration---was unaccounted for.  At this time, Defendants did not know the records were missing.

On May 13, 2022, Plaintiff's counsel wrote to Defendants' counsel, and, for the first, time revealed that a substantial volume of highly relevant discovery—24 boxes---of documents responsive to Defendants' request for production and the subject of Defendants' Motion to Compel had been lost or destroyed.  This was the day after the final communication between Plaintiff's counsel and Consilio in which Consilio said it had no further avenues to pursue regarding the documents.  Exhibit B, AG-Consilio at 1264.  On May 13, Plaintiff's counsel stated:

> During Mr. Gay's incarceration the IDOC stored documents relating to his incarceration that were personal to Mr. Gay.  There were 23 such boxes.  We entrusted those boxes to a litigation document management business called D4.  Wexford served Rule 34 requests earlier this year that called for documents potentially contained in the boxes.  On March 10, 2022, we provided written responses to the Rule 34 requests offering to make production of those documents and/or make them available for inspection.
>
> When we contacted D4, however, their successor company, called Consilio, was unable to locate the boxes.  We have pressed the company aggressively to conduct a vigorous and thorough search for the boxes.  We were informed yesterday that the company has exhausted all available avenues for finding the boxes and cannot locate them.  Based on the company's investigation, it appears that the company may have shipped the boxes to Rochester, NY, and then shredded them in March 2021.
>
> We will be updating our March 10, 2022 Rule 34 responses accordingly, as well as ECF 173, our memorandum responding to Wexford's motion to compel, which touches partially on these documents.[3]

On May 13, the undersigned responded to Plaintiff's email concerning the lost discovery, requesting (1) all documentation of the entrustment/bailment or whatever the agreement was with D4 to take possession of the documents, (2) any itemization of what was in the boxes, (3)

---

[3] To comply with the Standards for Professional Conduct within the Seventh Federal Judicial Circuit No. 30 (Lawyers' Duties to Other Counsel), Defendants have not attached the emails between counsel.

any storage invoices generated since the transfer, and (4) any written communication with D4 or any successor concerning search for the lost material. The undersigned believed an informal request would expedite the process of developing an understanding of what had happened with this discovery.

Plaintiff did not update his pending Response to the Motion to Compel concerning the substantial volume of highly relevant discovery---approximately 24 boxes of documents from Plaintiff's 22 years of incarceration---that was missing. On May 24, 2022, the Court granted Defendants' Motion to Compel, noting that in his Response Plaintiff agreed to produce his responses to the Requests to Produce within 30 days, stating "Plaintiff must provide all responsive documents within 30 days of this Order." (Emphasis in original). Doc. 177 at 11. The Court also directed Plaintiff to request Plaintiff's SSA records within 10 days of May 24 and to provide Defendants with relevant documents within 30 days of receiving the records. *Id.* The Court invited Defendants to file a fee petition associated with the Motion to Compel and Motions to Quash. *Id.*

Defendants' counsel wrote to Plaintiff's counsel on May 26, 2022, offering to forgo seeking attorneys' fees for their Motion to Compel as invited by the Court if Plaintiff did not appeal Judge Long's order and responded to Defendants' discovery as outlined by Judge Long in the Order. On June 2, 2022, Plaintiff accepted Defendants' offer, stating they would produce documents "in counsel's control within the time ordered by Judge Long [June 23, 2020]." Plaintiff's counsel stated that due to Plaintiff recently being incarcerated again they anticipated logistical delays in gathering Plaintiff's emails responsive to discovery but expected to at most need one-two weeks to complete the outstanding written discovery.

Defendants' attorney responded on June 3, acknowledging per Plaintiff's counsel's acceptance of the agreement that Plaintiff's counsel would produce documents in "Plaintiff's counsel's control" by June 23. Defendants' counsel re-raised Defendants' May 13 request for documents about the boxes of documents that were lost, as Plaintiff's counsel had not acknowledged the request or provided any documents. Based on Plaintiff's counsel having neither acknowledged the request for information concerning lost documents nor voluntarily providing information, on June 3, Defendants served a request for production on Plaintiff seeking: (1) All documentation of the entrustment/bailment or other agreement pursuant to which an outside vendor possession of any documents related to Anthony Gay; (2) any itemization of the contents or quantity of documents related to Anthony Gay which were entrusted to the outside vendor; (3) any invoices from or documents reflecting payment made for storage, processing, transport, or destruction of any documents related to Anthony Gay; (4) any written communication with the outside vendor concerning storage or retention of or search for documents related to Anthony Gay that were or ever had been in their possession. Exhibit C, Wexford's Third Request for Production. Defendants also agreed to an extension up to July 7 for Plaintiff to answer Defendants' May 16 second interrogatories and requests for production discovery about statements Plaintiff made about this case or his incarceration since his release from prison, including on social media and in interviews.

On June 8, 2022, Plaintiff's counsel re-affirmed they would "make production of documents within counsel's control by 6/23" and would respond to the June 3, 2022, discovery concerning the lost discovery. Regarding the SSA records the Court ordered Plaintiff to obtain, Plaintiff's counsel stated they expected a two-week delay regarding the SSA materials due to

Plaintiff's property restrictions in Peoria County Jail but provided the caveat counsel did not yet have an assurance he would be able to get the SSA release signed.

On June 23, 2022, Plaintiff's counsel wrote to Defendants' counsel stating Plaintiff had "produced all documents in their possession that are responsive to the discovery subject to the motion to compel."  Notably, Plaintiff had produced no documents since entry of the Court's May 24 order.  Plaintiff's counsel also stated they had been unsuccessful in gathering documents from Plaintiff's email account but would keep Defendants apprised in the coming week. Regarding the May 16, 2022, request for production of Plaintiff's statements, Plaintiff's counsel stated on June 24, 2022, they would provide a response by July 1.  In short, Plaintiff purported to comply with the deal Defendants offered by promising to produce documents in his attorneys' control and when the day came to deliver on the promise stated his attorneys had no documents, as the documents were apparently elsewhere.

On July 1, Plaintiff's counsel requested an extension to respond to the May 16 discovery on Plaintiff's statements while they attempted to work with Mr. Gay in his incarcerated setting.  Counsel stated "[w]e (as his attorneys) do not have much in the way of documents responsive to this request beyond what is publicly available."  When Defendants' counsel asked for the specific length extension Plaintiff's counsel was proposing, Plaintiff's counsel could only commit to updating defense counsel on July 8. On July 8, Plaintiff's counsel said Plaintiff had been transferred to a Federal Bureau of Prisons facility in Butler, North Carolina, and that they were working to contact Plaintiff there.

On July 9, 2022, Defendants' counsel wrote to Plaintiff's counsel demanding answers to all outstanding discovery consisting of (1) answers to the May 16 interrogatories and requests for production on media and social media statements; (2) answers to the June 3 requests for

production on the lost/destroyed documents; (3) answers all outstanding requests for production, as ordered by Judge Long, including ESI; and (4) the signed SSA authorization. Defendants requested either all of the outstanding discovery by close of business on July 11 or a compelling explanation as to what was done to comply with discovery. Defendants further reminded Plaintiff the agreement on Judge Long's order was that if Plaintiff did not appeal it *and* complied with it, Defendants would not seek their fees.

On July 11, 2022, Plaintiff's counsel responded Plaintiff is now at Butler FCI in North Carolina and his situation appears to be stabilized such that a call was scheduled with him for July 14 to go over discovery. Counsel stated he expected "to be able to get you responses in the normal course soon thereafter." Counsel stated they had obtained Plaintiff's signature on the SSA authorization and have it sent off SSA. The undersigned responded on July 11, stating he accepted counsel's explanations as to difficulties encountered with Plaintiff. Defendants' counsel offered agreement to an extension up to and including July 22 for the balance of outstanding discovery, provided Plaintiff answered the June 3 request for production about the lost documents, which sought documents in counsel's possession, immediately. Plaintiff's counsel responded they would be getting a written response to the June 3 discovery on the lost documents by July 12. Plaintiff's counsel said they would get back to Defendants' counsel regarding the remaining discovery after a call with Plaintiff on July 14. Plaintiff did not respond to the June 3 discovery on the lost documents by July 12.

On July 18, 2022, Plaintiff's counsel stated he would make a production of documents responsive to Defendants' requests for production on the destroyed documents by Friday, July 22. Regarding other discovery, counsel said the only thing outstanding were emails Plaintiff sent and received since his 2018 release from prison. Counsel stated Plaintiff has two Gmail accounts

but does not remember the passwords. Counsel was attempting to acquire a laptop Plaintiff used to access the email account. Counsel said the Plaintiff accessed the other Gmail account on a smartphone confiscated by the police. Counsel said they would update Defendants' attorneys after a call with Plaintiff on Wednesday.

On July 19, 2022, Plaintiff's counsel wrote to Defendants' counsel regarding outstanding discovery:

> I'm writing quickly about the 7/22 deadline you propose. We are moving forward with locating and producing documents responsive to your requests that are in counsel's possession. As I indicated in my last email updating you on our conference with Mr. Gay, we don't think we will have much in our possession by way of discovery responses. But as my email indicates, we don't anticipate that it will be possible to produce Mr. Gay's emails by 7/22. I don't know that they are in Mr. Gay's possession for purposes of Rule 34 at this point given his incarceration and inability to give us access to his email passwords, but we're moving forward to locate and produce what we can, in order to keep this case moving forward.
>
> In all events, I hope my email was clear that we will not be able to produce responsive emails by 7/22. We will not receive the laptop before the end of this week; if we're able to gain access to the email on that laptop, we will need to run searches (Joy has provided us with proposed terms) and then locate and produce responsive documents. We will not have accomplished that by 7/22.
>
> We'll provide responses with what we have by 7/22, but we are limited as I noted in my previous email and this one.

On July 22, 2022, Plaintiff's counsel responded to an email from Defendants' counsel asking for the signed SSA authorization and the communication to SSA requesting records, stating:

> we provided the SSA document to his criminal counsel, who planned to work with jail staff to alter their safety protocols long enough to permit Mr. Gay to be given a writing utensil so that he could sign it. Mr. Gay signed the SSA document on June 17. I emailed the criminal counsel on June 20 to inquire about the SSA document, and was told it would be mailed to me. On June 23, I emailed again, and was told it was coming. I emailed again on June 27, and was again told it was coming. On July 10, having not yet received it, I checked with our office mail function to see whether it had been misplaced. After I was told they had not

received it, I emailed criminal counsel again.  I was told counsel still had it at her desk.  Instead of asking counsel again to mail it, I sent a messenger service to pick it up.  After picking it up, we mailed the document to SSA on July 11 via certified mail.  The tracking number is 7021 2720 0000 7047 5725.

Also on July 22, 2022, Plaintiff answered Defendants' June 3, 2022, request for production concerning the lost/shredded boxes of documents.  With the answers, Plaintiff produced 450 pages of documents: 449 pages of emails concerning the lost/shredded documents and 1 page consisting of the signed SSA release.  Exhibit D, Plaintiff's Responses to Wexford's Third Request for Production with SSA release attached.  It is unclear why the SSA release was embedded within the answers to this discovery and not referenced specifically anywhere that would specifically call Defendants' attention to it.  The release is also defective in that it is the release Defendants' counsel prepared for release of records to them.  Plaintiff's social security number is also blank.  If Plaintiff sent this to SSA, it seems highly likely it will be rejected.  But Plaintiff's counsel has declined to provide the communication with SSA so that this can be verified.  On July 26, 2022, in response to Defendants' inquiry about the defective SSA authorization, Plaintiff's counsel said they were sending Plaintiff another authorization to execute.  On August 9, 2022, Plaintiff's informed defense counsel they had sent a new authorization to SSA.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 37(b)(2) district courts have the power to impose appropriate sanctions for violations of discovery orders.  Specifically, Rule 37(b)(2)(A), (C) provide for the following sanctions for a party failing to obey a court order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vi) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

\*\*\*

(C)  Payment of Expenses.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

It is within this Court discretion to determine whether to sanction a party and the appropriate sanction. *Melendez v. Illinois Bell Tel. Co.*, 79 F. 3d 661, 671 (7th Cir. 1996).  Any sanction imposed must be "proportionate to the circumstance surrounding the party's failure to comply with discovery rules." *Melendez*, 79 F. 3d at 672; *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir.1993). When the sanction imposed is dismissal, the Court must find bad faith, willfulness, or fault.  *E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011); *United States v. Dish Network, LLC*, 2015 U.S. Dist. LEXIS 139281, \*17-18 (CDIL Oct. 13, 2015).

A court also has the inherent power to assess sanctions for the failure to preserve or produce documents. *Zang v. Alliance Fin. Servs. of Ill., Ltd*., 875 F. Supp. 2d 865, 884-85 n.19 (N.D. Ill. 2012) (also noting that the analysis under Rule 37 and the court's inherent power is essentially the same). Sanctions are appropriate where (1) the party had a duty to preserve the

evidence; (2) the duty was breached; and (3) the other party was harmed by the breach. *Zang*, 875 F. Supp. 2d at 885; *see also ChampionsWorld, LLC v. U.S. Soccer Federation*, 276 F.R.D. 577, 582 (N.D. Ill. 2011) (noting as a fourth factor that the breaching party's willfulness, fault, or bad faith caused the breach); *Secrease v. W. & S. Life Ins. Co.*, 800 F. 3d 397, 401 (7th Cir. 2015) (sanctions are warranted if a party "has willfully abused the judicial process, or otherwise conducted litigation in bad faith)"); *Greviskes v. Universities Research Ass'n*, 417 F.3d 752, 759 (7th Cir. 2005) (in deciding what measure of sanctions to impose, the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process).

## ARGUMENT

### A.  Plaintiff is in Violation of the Court's May 24, 2022, Order by (1) Not Producing 24 Boxes of Documents Entrusted to a Third-Party Vendor; (2) Not Producing Plaintiff's ESI; and (3) Not Acquiring Plaintiff's SSA Records

In response to Defendants' Motion to Compel, on May 9, 2022, Plaintiff stated Plaintiff does not object to a process in which it completes its Rule 34 production within 30 days, and can provide rolling production in the meantime."   Doc. 173 at 3.   Plaintiff stated, "Plaintiff respectfully submits that timetable is reasonable."   *Id.*   Plaintiff also stated his lawyers were willing to obtain his SSA records and produce what is relevant to Defendants.  Doc. 173 at 12. The Court accepted Plaintiff's representation on May 24, 2022, ordering that "Plaintiff must provide <u>all</u> responsive documents within 30 days of this Order."  (Emphasis in original).  Doc. 177 at 11.  Court accepted Plaintiff's position on the SSA authorization and directed Plaintiff to request Plaintiff's SSA records within 10 days of May 24 and to provide Defendants with relevant documents within 30 days of receiving the records.  Doc. 177 at 11.  Plaintiff has complied with none of these obligations.

Regarding the 24 boxes of discovery, although not mentioned in Rule 26(a) disclosures or Plaintiff's answers to Defendants' Requests for Production, Plaintiff's counsel first told Defendants' counsel on April 7 and April 19 in Rule 37 conferences about existence of the boxes of documents from Plaintiff's incarceration that were in the possession of a third-party vendor. Plaintiff's counsel did not mention the boxes were missing.  Plaintiff's counsel said on both calls these boxes would be made available to Defendants---therefore, these boxes of documents were understood to be covered by Defendants' Requests for Production.

On May 9, 2022, in response to Defendants' Motion to Compel, Plaintiff sought a 30-day deadline for production without mentioning discovery responsive to the Requests for Production were missing.  Plaintiff gave no indication in his Response Plaintiff would do anything other than make a full production according to the timeframe he requested.  Accordingly, on May 24 when the Court accepted Plaintiff's invitation to impose a 30-day deadline for production, Plaintiff became obligated to produce the boxes of documents by June 23.  That Plaintiff's counsel knew they could not comply with the order is immaterial.  While Plaintiff emailed Defendants' counsel on May 13, 2022, admitting for the first time the boxes were lost and likely shredded, Plaintiff never updated his Response to the Motion to Compel or got relief from the May 24 order.  Therefore, Plaintiff has been in violation of the May 24 Order he secured for over a month.

Second, regarding Plaintiff's ESI, Plaintiff's counsel acknowledged Plaintiff had ESI responsive to Defendants January discovery requests before the parties litigated Defendants' Motion to Compel.  This came up during Rule 37 conferences.  Plaintiff had not disclosed the existence of responsive ESI in Rule 26(a) disclosures or in response to Defendants' January 25 request for production.  As Plaintiff pointed out in his Response to the Motion to Compel,

Defendants provided Plaintiff a list of search terms in April *after* learning Plaintiff had responsive ESI through Rule 37 conferences.  Plaintiff was obligated to produce this ESI in compliance with the Court's May 24 Order.  He has not done so.

Third, as of this filing Defendants do not have records from the SSA Plaintiff was ordered to obtain.  On July 21, 2022, Defendants' counsel requested evidence Plaintiff had executed the SSA authorization and that it had been sent to the SSA. Plaintiff's counsel said Plaintiff's criminal lawyer was tasked with execution of the SSA authorization and was apparently dilatory, requiring numerous follow-ups until eventually Plaintiff's counsel acquired it on or about July 10 and mailed it to SSA the following day.  Whether Plaintiff's criminal counsel was less than helpful or not, the order was directed to Plaintiff, not his criminal lawyer.  It was incumbent on his lawyers in this case to comply with the order, not outsource it and throw up their hands. Documents subpoenaed from Peoria County Jail show Plaintiff was able to receive visitors during the relevant time.  Exhibit E, visitor log from Peoria County.

Moreover, the authorization Plaintiff finally signed is clearly and obviously defective and almost certainly will not result in release of records.  Plaintiff's counsel did not print a blank SSA release, fill it out, and have Plaintiff sign it as was obviously the intent of the Court's May 24 order.  Instead, Plaintiff signed the authorization Defendants' counsel prepared for release of records to them.  Defendants' attorneys had sent this authorization to Plaintiff's counsel multiple times in an effort to get them to have Plaintiff execute it so Defendants could obtain the records.  Defendants' attorneys repeatedly told Plaintiff's counsel in written communications Plaintiff's social security number needed to be filled in.  While Plaintiff's counsel state they are now attempting to obtain a corrected authorization, Plaintiff is in ongoing violation of the Court's May 24, 2022, order regarding the SSA records.

### B. Plaintiff's Violations of the Court's May 24, 2022, Order Displays Willfulness, Bad Faith, and Fault Warranting Sanctions

"Sanctions under Rule 37(b)(2) are appropriate when a district court finds that a party failed to comply with a discovery order because of willfulness, bad faith, or fault." *Willis v. Northern Illinois Gas Co.*, 2020 U.S. Dist. LEXIS 240694, at *4 (N.D. Ill. Dec. 22, 2020) (internal quotation marks omitted). Sanctions imposed under Rule 37(b) must be proportional to the severity of the litigant's misconduct. *Nelson v. Schultz*, 878 F.3d 236, 238-39 (7th Cir. 2017); *Newson v. Oakton Cmty. Coll.*, 2022 U.S. Dist. LEXIS 131776, *10 (N.D. Ill. March 9, 2022).

The mere fact that a party destroyed a document or is unable to produce a document does not, standing alone, warrant an inference that the document would have contained information adverse to that party's case. *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir.2002) (to obtain an adverse instruction, the movant must show the documents were destroyed in bad faith). Before this Court will draw the inference that the missing documents contained information adverse to the plaintiff, a defendant must demonstrate that the plaintiff "intentionally destroyed the documents in bad faith." *Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 428-29 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information").

First, Plaintiff's actions that led to the destruction of the 24 boxes of highly relevant discovery are outrageous. Plaintiff's counsel evidently arranged for this discovery to be put in the custody of a third party, D4, in February 2019. After transferring the discovery to D4's custody, contemporaneous emails show plans for Plaintiff's attorneys scheduled to go to the third-party's office on February 12, 2019, to review the boxes of documents. Exhibit A, Plaintiff

Bates 23616.   Plaintiff's counsel could produce no record of any agreement for storage or entrustment/bailment with D4 or any invoices for storage of the boxes arising out of this transaction.   Exhibit D, Plaintiff's Responses to Wexford's Third Request for Production. Plaintiff's counsel was unable to produce any inventory of what the boxes contained other than prison records.   *Id.*   Instead, it appears that after reviewing the documents at D4 on or about February 12, 2019, Plaintiff's counsel simply abandoned them in the possession of the third party for nearly a year---*until a former employee of D4 reached out to Plaintiff's counsel to solicit their business in taking possession of and safe-guarding the boxes of documents.*   Exhibit A, Plaintiff Bates at 23767.   It was bad enough that Plaintiff's counsel had abandoned the documents in February 2019 with no record, invoice, or bailment.   But Mr. Franzen's January 2020 overture to Plaintiff's counsel provided an opportunity to regain the documents and pay for their storage, digitizing, and safeguarding.   Yet Plaintiff's counsel again inexplicably seems to have abandoned the documents in January 2020 by doing nothing to secure them.   While Plaintiff's counsel began looking for them 1 ½ years later in June 2021, they had apparently been moved from Chicago to Rochester, NY in January 2021, and shredded in March 2021. Exhibit B, AG-Consilio at 1264.   Therefore, Mr. Franzen's reminder about the documents would have saved them if Plaintiff's counsel had taken any reasonable steps in response.   They did not and the documents are forever lost.

Second, Plaintiff was not forthcoming with Defendants' attorneys or the Court about boxes of discovery after losing it.   When Plaintiff did his Rule 26(a) initial disclosures in November 2019 after having apparently reviewed the boxes of documents, Plaintiff did not disclose the boxes of documents Plaintiff had entrusted to D4 in February of that year.   Exhibit F, Plaintiff's Rule 26(a) disclosures.   That Plaintiff did not identify the contents of the boxes

suggests they were not beneficial to Plaintiff such that he planned to use them to support his case. *See* Rule 26(a)(1)(A)(ii) (requiring disclosure of "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses).

Moreover, when Plaintiff answered Defendants' Rule 34 Requests for Production in March 2022, Plaintiff made no reference to these boxes of documents, repeatedly saying in boilerplate fashion he "will produce or make available for inspection and copying documents responsive to this request that are in his custody or control and that are located after a reasonable search." Doc. 166-8. Plaintiff did not disclose that the discovery was missing on May 9 when inviting the Court to deny Defendants' Motion to Compel and order him to comply with discovery in 30 days. It was not until after responding to Defendants' Motion to Compel, Plaintiff told Defendants the discovery had been shredded, despite email correspondence with D4 showing Plaintiff knew the material was missing nearly a year before. Plaintiff did not update his Response to inform the Court he could not comply with the order he had asked the Court to enter. Instead, Plaintiff's counsel's handling of the entire issue of the lost documents seems designed to game Defendants' attorneys and the Court.

Third, Plaintiff has played games with Defendants concerning compliance with the Court's May 24 order. On June 2, Plaintiff purported to accept Defendants' offer to not appeal Judge Long's report and recommendation and to comply with the order in exchange for Defendants waiving the opportunity to seek their attorneys' fees but tweaked the language in Defendants' offer to instead say Plaintiff would produce documents "in counsel's control within the time ordered by Judge Long." When the time came for compliance with Judge Long's order,

Plaintiff's counsel said counsel had no documents to produce, ignoring Plaintiff's obligation under the order to produce Plaintiff's ESI. Plaintiff's counsel obviously knew at the time he accepted Defendants' offer that counsel had no documents in his possession. Accepting Defendants' good-faith offer that was designed to move this case forward on an illusory basis deprived Defendants of the benefit of the bargain. Plaintiff's counsel apparently believed they could skirt their obligation by making an arbitrary distinction between what counsel possessed (nothing because they allowed it all to be destroyed) and what Plaintiff possesses (unclear because after six months nothing has been produced). Ultimately, Defendants waived their fees but got no documents from Plaintiff.

Plaintiff's counsel has also been less than forthright about the entire process of the SSA release, from refusing to have Plaintiff sign the authorization and insisting Plaintiff's counsel would obtain the records, to burying the authorization without reference in an unrelated production, to declining to provide the communication that went to the SSA, to sending an obviously defective authorization to SSA. Exhibit D, Plaintiff's Responses to Wexford's Third Request for Production with SSA release attached. In his Response to Defendants' Motion for Extension of Time to Complete Discovery, Plaintiff states on July 23 he was informed the release was defective---the undersigned informed them---and immediately sent a correct release to Plaintiff. Doc. 185 at 7. Plaintiff does not state the signed release has been returned or sent to the SSA. Plaintiff is represented by experienced counsel who presumably acquire records using releases frequently. Yet months have elapsed, and it appears Defendants are no closer to obtaining these documents than when the Court made its May 24 order.

Defendants note Plaintiff is also the plaintiff in *Gay v. Commissioner of Social Security,* CDIL 21-4220, which appears to be an appeal of the denial of social security benefits. The

records in the docket are sealed from the public.  But Plaintiff is represented by counsel, who could presumably have provided the relevant records to Plaintiff's counsel in this case. Moreover, Plaintiff's improperly executed SSA release would actually allow Defendants' attorneys to obtain the records if Plaintiff's counsel agreed.  No such offer has been made. Therefore, Defendants continue to wait.

Third, Plaintiff's attorneys' actions with respect to document production before and after the Court's May 24, 2022, order show a lack of diligence  To the extent it has become more difficult for Plaintiff's counsel to address discovery issues since Plaintiff caused himself to be incarcerated by committing felonies, this was entirely avoidable by (1) Plaintiff not committing felonies while on supervised release and (2) Plaintiff and his lawyers answering the discovery in the four months before Plaintiff went back to prison; or (3) Plaintiff and his lawyers exercising diligence in answering the discovery after Plaintiff was reincarcerated in mid-May.

The government indicted Plaintiff in July 2020.  On July 17, 2020, Judge Hawley ordered Plaintiff released from custody to 24-hour home detention.  Plaintiff obtained modification of his 24-hour home detention by representing that he was represented by "some of the most prestigious law firms in the country" in this case and needed modification of his bond "to meet with his private counsel on his pending civil rights actions."  *United States v. Gay*, CDIL No. 20-40026, doc. 22.   On April 12, 2022, Plaintiff's counsel in the instant case requested the federal court allow Plaintiff additional movement so he could attend an in-person meeting at the law office of his attorneys on April 15, 2022.  *Id.* at doc. 286.  The Court granted the Motion, allowing Plaintiff 9 ½ hours for the meeting.  July 14, 2022, text order.

At the time Plaintiff was approved for 9 ½ hours on April 15, 2022, to meet with his attorneys, the parties were engaged in ongoing Rule 37 conferences about Plaintiff's document

productions.  Plaintiff's counsel had obligated Plaintiff as of April 7, 2022, to find out what other responsive information Plaintiff has in his possession and the process/timing for retrieval and production of that information.  Doc. 166-12, email of April 8, 2022, from Joseph N. Rupcich. On April 19, 2022, the parties had a Rule 37 conference and Plaintiff's counsel said Plaintiff would be making a supplemental production of responsive documents in Plaintiff's possession, although counsel was unwilling to say what they were.  Yet, April 22, 2022, came and went with no supplemental production and no explanation from Plaintiff's counsel.  Indeed, Plaintiff has never made any supplemental production of records in Plaintiff's control.

Plaintiff and his attorneys clearly knew Plaintiff was facing felony charges in the Central District and there was at least a reasonable probability he was going to be convicted and sent back to prison.  Yet, they did not act with any urgency in completing discovery before Plaintiff went back to prison.  As of March 10, 2022, the criminal case was set for trial April 19. Accordingly, at the time Plaintiff had a 9 ½ hour window of time to work on discovery in this case with his lawyers, all involved knew there was a reasonable probability discovery could get much more difficult if Plaintiff was convicted.  But the jury deadlocked on Plaintiff's first trial on April 22, 2022, giving Plaintiff and his lawyers additional time to complete their discovery obligations in this case.  During the month between the first and second trials, nothing of any substance happened from Defendants' perspective, as they were provided no discovery.

Plaintiff and his lawyers' failure to secure Plaintiff's ESI before Plaintiff went to prison is inexcusable.  When Plaintiff invited the Court, on May 9, to deny Defendants' Motion to Compel because he would respond to the discovery within 30 days, Plaintiff and counsel obligated themselves to act swiftly to acquire Plaintiff's ESI, if they had not already done so.  Plaintiff and his attorneys knew as of May 9 when they told the Court they would comply within 30 days

Plaintiff was facing retrial in a felony case in the near future.  Plaintiff and his attorneys knew there was at least a reasonable, if not high, probability Plaintiff was going to be convicted and sent back to prison, substantially complicating acquiring ESI from his devices and computers. Yet, Plaintiff's ESI was not secured and produced while Plaintiff was free and able to assist.

On May 19, 2022, following a jury trial Plaintiff was convicted of being a felon in possession of a firearm and ammunition.  The Court immediately revoked Plaintiff's bond and remanded him to the custody of the United States Marshal's Office.  Since Plaintiff's re-incarceration there has been nothing but an endless torrent of reasons purportedly beyond Plaintiff's control but due to his incarceration that Plaintiff cannot comply with the Court's order and produce responsive ESI---something that should have been done before his entirely foreseeable incarceration commenced.  On July 22, 2022, Plaintiff's counsel appeared to preview Plaintiff's newest position when they suggested "since [Plaintiff] does not remember his email passwords, we do not believe that the emails are currently in his possession."  Plaintiff's counsel said they were attempting to acquire a laptop that may contain ESI.  Plaintiff's counsel committed to no timeframe.

Moreover, to the extent Plaintiff encountered difficulties with restrictions after being incarcerated, there is substantial evidence Plaintiff occasioned this himself to extort release from custody.  The United States believed that once taken into custody, Plaintiff began strategically engaging in acts of self-harm to obtain release from custody.  *United States v. Gay*, CDIL No. 20-40026, doc. 361 at 5.  The United States pointed to the fact that on May 19, 2022, the day he was found guilty and taken into custody, a jailer overheard Plaintiff talking to another inmate about which hospital the jail utilized for treating inmates. *See* Doc. 361-3, Govt. Ex. C, Peoria County Jail Incident Reports at p 9.  The United States pointed out that later on May 19, 2022,

Plaintiff stabbed himself in the arm with a pencil, and was taken to the hospital where the pencil was removed from his arm and upon returning to the jail and being returning to suicide watch, the defendant refused to go back into his cell unless he was placed in room with a "mattress, cover, and a sink," and that he was "going to have to start fighting and then they'll get the picture." *Id.* at 10. According to the United States' Response to Plaintiff's Motion to Release Detention, on May 21, Plaintiff was upset about not having a mat to lie on as a result of being on suicide watch, and told the officer "I will just cut myself, just so I can get a bed at the hospital," but "you are cool though, so I won't cut myself with you on watch." *Id.* at 2.  The Motion details additional facts supporting the United States' position Plaintiff was using self-harm to manipulate his conditions of confinement.  It seems he is also using it as an excuse for not fulfilling his discovery obligations in this case.

### C. Defendants are Harmed By Plaintiff's Rule 37(b)(2) Violations and Destruction of Documents

First, Plaintiff's failure to produce the 24 boxes of documents containing approximately 72,000 pages apparent destruction of them is highly prejudicial to Defendants, although the exact prejudice is difficult to quantify given the unknown nature of the documents.  Plaintiff alleges Defendants are "accountable for the injuries that they inflicted on [Plaintiff] by holding him in solitary confinement for two decades."  Doc. 82.  While Plaintiff's attorneys were unable to provide any information in response to a discovery request for an itemization of what was contained in the 24 boxes of shredded documents, Plaintiff's attorneys described them as "22 years worth of documents from [Plaintiff's] incarceration" they expected would be responsive to discovery.  Exhibit A, Plaintiff Bates 23452.  The vendor estimated there were 72,000 pages of documents in the boxes.  *Id.* at Bates 23454.

It is difficult to imagine a more relevant set documents for Defendants to obtain than 72,000 pages of Plaintiff's prison records in a case in which Plaintiff is suing over the entirety of his incarceration.  It is likely these records would provide a contemporaneous window into Plaintiff's prison experience, his level of functioning at various times, and be probative of both liability and damages.  There could have been material in the boxes that would have been impeaching to Plaintiff's testimony. There could have been material that would have been helpful to Defendants' experts.  There could have been material that would have been useful in challenging Plaintiff's experts.  In short, given the breadth of the loss and its highly probative nature on its face, prejudice to Defendants is manifest.

Second, Defendants have incurred substantial time and expense unsuccessfully pursuing discovery.  Defendants' counsel has engaged in countless emails, Rule 37 calls, and engaged in substantial motion practice all in an attempt to acquire documents essential to the defense.  Thus far, Defendants have been almost entirely unsuccessful in getting anything out of Plaintiff.  Yet, the costs keep mounting for Defendants to pay their attorneys to continue to attempt to acquire discovery, including motions to compel, fighting Plaintiff's motions to quash completely reasonable and relevant subpoenas, and preparing the instant Motion for Sanctions.

Third, Plaintiff's failure to comply with discovery has substantially delayed this case.  On January 25, 2022, the Court set the following deadlines to govern the remainder of the case:

-Plaintiff to Disclose Experts and Provide Expert Reports:     July 23, 2022
-Plaintiff to Make Experts Available for Deposition:     August 22, 2022
-Defendants to Disclose Experts and Provide Expert Reports:     September 21, 2022
-Defendants to Make Experts Available for Deposition:     October 18, 2022
-Discovery to Close:     November 16, 2022
-Case Dispositive Motions to be Filed:     December 20, 2022
-Final Pretrial Conference:     June 12, 2023
-Jury Trial:     June 27, 2023

As set out in Defendants' Motion for Extension of Time to Complete Discovery, Plaintiff's failure to provide discovery has required Defendants to seek a new scheduling order on July 22, 2022, further delaying this case.  Doc. 184.

Finally, as alluded to in the introduction, Plaintiff has made this case a matter of significant public concern, seeking media limelight based on his allegations against Defendants. Publicly, Plaintiff and his lawyers have viciously attacked Defendants, making statements at press conferences like "they held Anthony underwater for 20 years and then pushed him down again when he tried to come up for air to breathe."  https://youtu.be/WSuktSAw5w4 (statement of Plaintiff's attorney at 2:35).



Privately, they have allowed the destruction of tens of thousands of pages of highly relevant discovery and failed to comply with court order to permit discovery.  Put another way, because of Plaintiff and his lawyers' actions, not just the parties but the public has an interest in a full and complete accounting of the facts of this case.  But through his actions and inactions in discovery,

including but not limited to destruction of documents, Plaintiff has substantially prejudiced Defendants' ability to contest in Court Plaintiff's allegations and challenge the false narrative Plaintiff has steadfastly publicly presented.  Now, neither Defendants nor the public will ever get the full and complete accounting of the facts.

### D.  Appropriate Sanction

The Federal Rules of Civil Procedure permit the sanction of dismissal for failure to comply with court orders. Rule 37(b)(2) provides that the Court may issue a variety of sanctions for failure to "obey an order to provide or permit discovery," including "dismissing the action or proceeding in whole." Fed. R. Civ. P. 37(b)(2)(A)(v). Rule 41(b) explains that "a defendant may move to dismiss the action or any claim against it" where a "plaintiff fails to prosecute or comply with . . . a court order." Fed. R. Civ. P. 41(b).

Pursuant to Rule 37 a "district court may dismiss a case as a sanction for discovery abuse upon finding that the plaintiff, through its actions, displayed willfulness, bad faith, or fault." *In re Pansier*, 417 F. App'x 565, 569 (7th Cir. 2011), citing *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009)). Dismissal under Rule 41(b) is a "stricter standard" that "requires a pattern of contumacious conduct and a showing of prejudice to the opposing party in order to justify dismissal for failure to prosecute or for noncompliance with court orders." *Pansier*, 417 F. App'x at 569. Dismissal "is a harsh sanction," and the Seventh Circuit has held that "a district judge in considering dismissal must be guided by the norm of proportionality." *Oliva v. Trans Union, LLC*, 123 F. App'x 725, 727 (7th Cir. 2005). But "as soon as a pattern of noncompliance with the court's discovery orders emerges, the judge is entitled to act with a swift decision." *Id.*  While the Court should "consider less severe sanctions before dismissing for failure to prosecute," there is no requirement of "progressive discipline" or "'warning shot[s]' in

the form of less severe sanctions." *McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012) (collecting cases); *see also Johnson v. Kamminga*, 34 F.3d 466, 468 (7th Cir. 1994) ("Were district courts required to warn litigants before dismissing a case, we would in effect be granting each litigant one opportunity to disregard the court's schedule without fear of penalty regardless of the harm done to other litigants. Such a rule would impermissibly burden the district courts in their efforts to manage their dockets.").

Plaintiff has shown a pattern of evasiveness, obfuscation, and gamesmanship with discovery that warrants a significant sanction. There is simply no cure available for the destruction of the documents. Plaintiff's case must be dismissed. Alternatively, the Court should bar Plaintiff from testifying in support of his case, instruct the jury in accordance with 7th Cir. Pattern instruction 1.20 on spoliation/destruction of evidence, and impose appropriate monetary sanctions for requiring Defendants to bring this Motion. These sanctions should include the fees Defendants incurred securing the May 24 Order that Plaintiff evaded with his agreement to provide non-existent documents in his attorneys' possession.

<u>**CONCLUSION**</u>

Plaintiff has shown a pattern of evasiveness, obfuscation, and gamesmanship that warrants sanctions. Plaintiff's counsel's complete abandonment of the 72,000 pages of documents to a third party after seeing them is beyond reckless and reeks of bad faith. There is simply no cure for it. Plaintiff has raised the stakes by repeatedly dragging Defendants publicly in national and local interviews, online, and in print. He has made himself the hero in a narrative in which he is the victim of Defendants' barbarism. It would be profoundly unfair for Plaintiff and his lawyers to allow the destruction of 72,000 pages of highly relevant documents, impeding

Defendants' ability to defend themselves and correct the public record, and then continue on with his crusade.  The Federal Court must not tolerate this.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joseph N. Rupcich
One of the Attorneys for Defendant,
WEXFORD HEALTH SOURCES, INC.,
KELLY RENZI, PSY.D., and WILLIAM
PUGA, M.D.

Joseph N. Rupcich
ARDC No. 6283899
CASSIDAY SCHADE LLP
3100 Montvale Drive
Springfield, IL 62704
(217) 572-1714
(217) 572-1613 (Fax)
jrupcich@cassiday.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2022, I electronically filed the foregoing Memorandum of Law in Support of Motion for Sanctions with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to the following:

Nicholas S. Staley, Phillip Rehani
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601

Alan Remy Taborga
Assistant Attorney General
Office of the Illinois Attorney General
1776 E. Washington Street
Urbana IL 61802

Stetson F. Atwood, Laura Ieremia
Scott Kater, Monica L. Smit
Donohue Brown Mathewson & Smyth, LLC
131 South Dearborn Street, Suite 1600
Chicago, IL 60603

Antonio M. Romanucci, Stephan D. Blandin,
Bhavani Raveendran
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654

Stephen H. Weil, Jon Loevy
Arthur Loevy, Locke E. Bowman
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago IL 60607


                                                            /s/ Joseph N. Rupcich

11154368