EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| Anthony Gay, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>John Baldwin et al., )<br>)<br>Defendants. ) | Case No. 1:19-CV-01133<br><br>Judge Sue E. Myerscough<br><br>Magistrate Judge Eric I. Long |

## PLAINTIFF'S SUPPLEMENTAL DISCOVERY REQUESTS

Plaintiff Anthony Gay, through his undersigned counsel, submits to Defendants Jeffreys, Baldwin, and Wexford Health Sources the following Interrogatories, Requests for Production, and Requests for Admission pursuant to the Federal Rules of Civil Procedure 33, 34, and 36. They are to be answered separately by each defendant under oath and in writing within thirty days after service hereof.

## DEFINITIONS AND INSTRUCTIONS

1. Plaintiff incorporates by reference the Definitions and Instructions in his First Set of Requests for Production to All Defendants (November 22, 2019). In addition:

2. The relevant time period is Anthony Gay's incarceration in the Illinois Department of Corrections.

3. When a specific prison is identified (e.g., Tamms, Dixon), the relevant time period is Anthony Gay's incarceration at that prison. This definition does not apply to the Joliet Treatment Center or the Elgin Mental Health Center.

4. Where a specific prison is identified, the relevant period relating to that prison is the time period Anthony Gay was incarcerated at the facility.

5. "Pontiac" refers to the Illinois Department of Corrections prison, Pontiac Correctional Center, in Pontiac, Illinois.

6. "Menard" refers to the Illinois Department of Corrections prison, Menard Correctional Center, located in Menard, Illinois.

7. "Tamms" refers to the Illinois Department of Corrections prison, Tamms Correctional Center, located in Tamms, Illinois.

8. "Dixon" refers to the Illinois Department of Corrections prison, Dixon Correctional Center, located in Dixon, Illinois.

9. "Joliet Treatment Center" refers to the Illinois Department of Corrections multi-security level treatment facility for male inmates with serious mental illness.

10. "Elgin Mental Health Center" refers to the Illinois Department of Corrections facility which provides in-patient level mental health treatment inmates.

11. Any reference to Anthony Gay's incarceration specifically refers to the period of time during which Anthony Gay was in the custody of the Illinois Department of Corrections.

12. "ADA" refers to the Americans with Disabilities Act.

13. "Facility ADA Coordinators" refer to individuals designated to complete various duties as described, designated, defined, and identified in IDOC's Administrative Directive 04.01.111, ADA Accommodations.

14. The phrase "Inpatient Level of Care" refers to the level of mental health care described in the Illinois Department of Corrections' Mental Health Operating Procedural Manual

**PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS JEFFREYS, BALDWIN, WEXFORD**

18. Identify all and any times that the Illinois Department of Corrections was able to provide an "Inpatient Level of Care" to Anthony Gay or any other seriously mentally ill inmate as described, identified, designated, and defined by the Illinois Department of Corrections' Mental Health Operating Procedural Manual.

19. During the relevant time period, did the Illinois Department of Corrections transfer seriously mentally ill inmates in its custody to outside facilities for purposes of providing an "Inpatient Level of Care"? If your answer is anything other than an unqualified no, please identify the person, the outside facility, the dates of transfer, and any documents reflecting the transfer.

20. Identify the individual(s), if any, who were designated the "Facility ADA Coordinator" for Menard, Pontiac, Tamms, and Dixon at any point during Anthony Gay's incarceration as described, identified, designated, and defined by the Illinois Department of Corrections' Administrative Directive Number 04.11.111, which governs ADA Accommodations.

21. Identify which factors and circumstances, if any, precluded the Department of Corrections from transferring seriously mentally ill inmates to Psychiatric Hospital(s) for purposes of providing an "Inpatient Level of Care" is the level of mental health care described in the Illinois Department of Corrections' Mental Health Operating Procedural Manual.

22. During the relevant time period, why did the Department of Corrections not build, transition, designate, or otherwise implement a facility that would enable IDOC (or persons acting on its behalf) to provide an "Inpatient Level of Care"?

23. Identify all "Keeper of Records" referenced in Defendants' 26(a) disclosures.

24. Identify all and any times that the Illinois Department of Corrections was able to provide an "Special/Residential Treatment Unit" to Anthony Gay or any other seriously mentally ill inmate as described, identified, designated, and defined by the Illinois Department of Corrections' Mental Health Operating Procedural Manual.

**PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION TO DEFENDANTS JEFFREYS, BALDWIN, WEXFORD**

45. Produce any documents reflecting, noting, or otherwise recording the transfer of a seriously mentally ill inmate from an Illinois Department of Corrections facility to an external treatment facility for the purposes of having that external treatment facility provide mental health care to the seriously mentally ill patient being transferred.

46. Produce all versions of IDOC's Mental Health Operating Procedural Manual that were in effect at any time during Anthony Gay's incarceration.

47. Produce all requests for ADA accommodations written, submitted, filed, or otherwise provided by Anthony Gay to the Illinois Department of Corrections.

48. Produce all grievances written, submitted, filed, or otherwise provided by Anthony Gay to the Illinois Department of Corrections specifically relating to the ADA and reasonable accommodations for his serious mental illness.

49. Permit entry, inspection, photographing, and videotaping of Menard Correctional Center and all cells therein where Anthony Gay was housed, provided mental health services, and/or received recreational time.

50. Permit entry, inspection, photographing, and videotaping of Pontiac Correctional Center and all cells therein where Anthony Gay was housed, provided mental health services, and/or received recreational time.

51. Permit entry, inspection, photographing, and videotaping of Dixon Correctional Center and all cells therein where Anthony Gay was housed, provided mental health services, and/or received recreational time.

52. Permit entry, inspection, photographing, and videotaping of Joliet Treatment Center.

53. Permit entry, inspection, photographing, and videotaping of Elgin Mental Health Center.

**PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANTS JEFFREYS, BALDWIN, WEXFORD**

1. Admit that during his incarceration, Anthony Gay required an Inpatient Level of Care.

2. Admit that during his incarceration, Anthony Gay never required an Inpatient Level of Care.

3. Admit that during the relevant period, some inmates other than Anthony required an Inpatient Level of Care.

4. Admit that during the relevant period, no inmates required an Inpatient Level of Care.

5. Admit that an IDOC employee or agent has never transferred seriously mentally ill inmates to a Psychiatric Hospital(s) for purposes of providing an Inpatient Level of Care.

6. Admit that an IDOC employee or agent did transfer seriously mentally ill inmates to a Psychiatric Hospital(s) for purposes of providing an Inpatient Level of Care.

7. Admit that an IDOC employee never transferred Anthony Gay to a Psychiatric Hospital(s) for purposes of providing an Inpatient Level of Care.

8. Admit that an IDOC employee transferred Anthony Gay to a Psychiatric Hospital(s) for purposes of providing an Inpatient Level of Care.

9. Admit that at the time Anthony Gay was incarcerated at the Illinois Department of Corrections, the Department did not provide him with an Inpatient Level of Care.

10. Admit that at the time Anthony Gay was incarcerated at the Illinois Department of Corrections, the Department did provide him with an Inpatient Level of Care.

11. Admit that at the time Anthony Gay was incarcerated at the Illinois Department of Corrections, the Department could not provide him with an Inpatient Level of Care.

12. Admit that at the time Anthony Gay was incarcerated at the Illinois Department of Corrections, the Department could provide him with an Inpatient Level of Care.

13. Admit that during Anthony Gay's incarceration, IDOC had no written policy or procedures governing compliance with the Americans with Disabilities Act specifically describing, denoting, or identifying the extent to which the ADA covered inmates with mental disabilities.

14. Admit that during Anthony Gay's incarceration, IDOC had a written policy and/or procedure governing compliance with the Americans with Disabilities Act specifically describing, denoting, or identifying the extent to which the ADA covered inmates with mental disabilities.

15. Admit that the Illinois Department of Corrections opened the Elgin Mental Health Center and Joliet Treatment Center in response to the settlement in *Rasho v. Baldwin*.

16. Admit that Elgin Mental Health Center now provides an Inpatient Level of Care to Illinois inmates with serious mental illness.

17. Admit that Elgin Mental Health Center does not provide an Inpatient Level of Care to Illinois inmates with serious mental illness.

18. Admit that Joliet Treatment Center now provides an Inpatient Level of Care to Illinois inmates with serious mental illness.

19. Admit that Joliet Treatment Center does not provide an Inpatient Level of Care to Illinois inmates with serious mental illness.

20. Admit that Anthony Gay was never transferred to Elgin Mental Health Center or Joliet Treatment Center at any time during his incarceration.

21. Admit that no agent of the Illinois Department of Corrections trained "Facility ADA Coordinators" on the ADA's application to inmates with serious mental illness.

22. Admit that an agent of the Illinois Department of Corrections trained "Facility ADA Coordinators" on the ADA's application to inmates with serious mental illness.

Respectfully submitted,

Date: January 10, 2023

/s/ Sam Harton

Antonio Romanucci
Bhavani Raveendran
Sam Harton
Romanucci & Blandin, LLC
321 North Clark St., Suite 900
Chicago, IL 60654
(312) 458-1000
b.raveendran@rblaw.net

Jon Loevy
Stephen Weil
Loevy & Loevy
311 N. Aberdeen Street,
Floor 3
Chicago, IL 60607
312-243-5900
weil@loevy.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that on the 10th day of February, 2022, a true and correct copy of the above and foregoing instrument was sent electronically to:

Joseph N. Rupcich
Jessica Klaus
Rachael Hayes
CASSIDAY SCHADE LLP
3100 Montvale Drive
Springfield, IL 62704
jrupcich@cassiday.com
jsyrcle@cassiday.com

Nicholas S. Staley
OFFICE OF THE ATTORNEY GENERAL
100 W. Randolph, 13th Floor Chicago,
IL 60601
Ph: (312) 814-3711
nstaley@atg.state.il.us

Brian O'Kane
Stetson F. Atwood
Monica L. Smit
Donohue Brown Mathewson & Smyth, LLC
131 South Dearborn Street, Suite 1600
Chicago, IL 60603
okane@dnmslaw.com
smit@dnmslaw.com
atwood@dnmslaw.com