# Exhibit 1

### IN THE UNITED STATES DISTRICT COURT FOR THE
### CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 C 1133 |
| | ) | |
| v. | ) | Hon. Harold A. Baker, Judge |
| | ) | |
| JOHN BALDWIN, et al., | ) | Hon. Eric I. Long, Mag. Judge |
| | ) | |
| Defendants. | ) | |

### NOTICE OF RULE 30(b)(6) DEPOSITION
### TO STATE OF ILLINOIS

Please take notice that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff Anthony Gay ("Plaintiff") will take the deposition of the State of Illinois on a yet to be scheduled date and time, upon oral examinationbefore a Notary Public or some other officer authorized by law to administer oaths.

The deposition will be conducted remotely, and shall continue from day to day until completed (or upon a schedule agreed upon by the parties). The deposition will be recorded by stenographic means and may be videotaped and displayed via real-time. The deposition is being taken for the purpose of discovery, for use at trial, and/or for any other purpose permitted under the applicable Federal and Local Rules of Civil Procedure.

As used herein, the following terms shall have the following meanings:

1. "Mental health staff" or "mental health personnel" means any person employed by you to provide mental health services to an IDOC prisoner, including but not limited to psychiatrists, psychologists, behavior health technicians ("BHTs"), and qualifiedmental health professionals ("QMHPs").

2. "Relevant Period" means the period from March 1996 through August of 2018.

3. "Wexford Defendants" means and refers to Defendants WexfordHealth Sources, Inc., Kelly Renzi, Psy.D., William Puga, M.D., and Pierre Nunez.

4.    "IDOC Defendants" means and refers to Defendants Illinois Department of Corrections, Director John Baldwin, and Dr. Jeff Sim, Shane Reister, Melvin Hinton, Sylvia Butler, Dr. Jamie Chess, Michael Melvin, Terri Kennedy, Emily Ruskin, John Varga, Justin Wilks and Sonja Nicklaus.

5.    "IDHS" means and refers to the Illinois Department of HumanServices.

6.    "You" or "Your" or "Illinois" means Illinois and any of Your predecessors, successors, parents, and subsidiaries, and any ofYour local, regional, national, executive and foreign offices, affiliates, divisions or branches thereof, any present or former partners, officers, directors, employees or agents including attorneys, accountants, advisors and all other persons acting orpurporting to act on Your behalf.

7.    The term "solitary" refers to segregation, solitary confinement, restrictive housing, crisis watch and/or any other housing situationwhich results in a prisoner being kept isolated from other prisonersfor 20 hours a day.

8.    *Rasho* refers to the class action case *Rasho v. Jeffries*, Case No.2007-cv-1298, pending in the Central District of Illinois.

9.    The terms "serious mental illness" or "seriously mentally ill" meana patient who, as a result of a mental disorder as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") of the American Psychiatric Association, exhibits impaired emotional, cognitive, or behavioral functioning that interferes seriously with his or her ability to function adequately except with supportive treatment or services. These individuals also must either currently have, or have had within thepast year, a diagnosed mental disorder, or must currently exhibit significant signs and symptoms of a mental disorder.

10.   The term "hospital level care" means care equivalent to careprovided at an in-patient mental health treatment facility.

## SUBJECTS OF DEPOSITION

The State of Illinois is hereby directed to designate one or more officers, directors, managing agents, or other persons, either currently or formerly employed, to testify on its behalf about the below-listed matters known or reasonably available to the state.

1. The policies, procedures, and practices for obtaining hospital level care for the treatment of serious mental illness for inmates at Tamms, Dixon, Pontiac, Stateville and Menard Prisons during the relevant time period, and the location in the production of documents that could reasonably be expected to reflect such policies, procedures, and practices. If no such treatment was available, the policies, practices, or procedures that prevented such treatment.

2. The policies, practice, procedures, or agreements relating to the transfer of seriously mentally ill IDOC prisoners to outside facilities (including but not limited to facilities operated by the Illinois Department of Health and Human Services) to receive care, treatment, or evaluation for mental illness, including the mechanism by which such a transfer would take place, and the location in the production of documents that could reasonably be expected to reflect such policies, procedures, practices, or agreements.

3. The State's consideration given to the transfer of mentally ill persons who were still in the custody of the IDOC, to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, whether any mentally ill persons were so transferred, and if not, why not.

4. The State's consideration given to the transfer of Anthony Gay to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, and the reasons she was not so transferred.

5. Any attempts made to provide hospital level care to Mr. Gay while he remained in IDOC custody, including attempts to transfer to outside facilities, attempts to provide hospital level care within any IDOC facility, or any other action taken to

provide the recommended level of care, or if no such actions were taken, the persons involved in the decision not to provide such care and the reasons why such care was not provided.

6. The policies, procedures, and practices used during the Relevant Period for determining whether an IDOC prisoner with a mental illness should receive Outpatient Level of Care, Special/Residential Treatment Unit (RTU) Level of Care, Crisis Treatment Level of Care, or Hospital Level of Care, and the location in the production of documents that could reasonably be expected to reflect such determinations.

7. The policies, procedures, and practices applicable to providing and/or deciding whether to provide mental health treatment to prisoners on crisis watch at Tamms, Dixon, Pontiac, Stateville and Menard Prisons during the Relevant Period, and the location in the production of documents that could reasonably be expected to reflect whether, when, and to what extent mental health treatment was provided to a prisoner on crisis watch in IDOC facilities during that period.

8. The practices or efforts in place to provide access to human contact, rehabilitation opportunities, group therapy, and adequate mental health treatment for prisoners experiencing disabilities due to severe mental illness.

9. The practices or efforts that govern solitary confinement or assignment to solitary, including but not limited to: when a prisoner can be placed in solitary, why, how long, how often, for what purpose, and the procedures in place in IDOC facilities to assign a prisoner to solitary, have him moved out of solitary, or moved to a medical facility from solitary (including Tamms, Dixon, Pontiac, Stateville and Menard Prisons).

10. The practices or efforts that govern access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services when a prisoner is being held in solitary confinement in IDOC facilities (including but not limited to Tamms, Dixon, Pontiac, Stateville and Menard Prisons).

11. The practices, efforts, or procedures that govern the following and how prisoners receive said information: the process for a prisoner to challenge or be heard about solitary confinement; the process to receive information about the basis for any decision to continue solitary confinement; and the process to be released from solitary confinement.

Respectfully submitted,

By: _/s/ Bhavani Raveendran_

Stephen H. Weil – weil@loevy.com
Sarah Grady – sarah@loevy.com
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
Tel: (312) 243-5900

Antonio M. Romanucci
Stephan D. Blandin
Bhavani Raveendran
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 18, 2022, I served a true and correct copy of the foregoing

Noticeof Depositions by mailing copies via electronic mail upon all counsel of record as listed

below:

Joseph N. Rupcich
Rachael N. Hayes
CASSIDAY SCHADE LLP
3100 Montvale Drive
Springfield, IL 62704
jrupcich@cassiday.com rhayes@cassiday.com

Nicholas S. Staley, Phillip Rehani
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601Nicholas S. Staley, Phillip Rehani
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601
nicholas.staley@ilag.gov

Alan Remy Taborga
Assistant Attorney General
Office of the Illinois Attorney General
1776 E. Washington Street
Urbana IL 61802

Stetson F. Atwood, Laura Ieremia
Scott Kater, Monica L. Smit
Donohue Brown Mathewson & Smyth, LLC
131 South Dearborn Street, Suite 1600
Chicago, IL 60603
kater@dbmslaw.com

*/s/ Bhavani Raveendran*

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 C 1133 |
| | ) | |
| v. | ) | Hon. Harold A. Baker, Judge |
| | ) | |
| JOHN BALDWIN, et al., | ) | Hon. Eric I. Long, Mag. Judge |
| | ) | |
| Defendants. | ) | |

**NOTICE OF RULE 30(b)(6) DEPOSITION**
**TO DEFENDANT WEXFORD HEALTH SOURCES,**
**INC.**

Please take notice that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff

Anthony Gay ("Plaintiff") will take the deposition of Wexford Health Sources, Inc.

("Wexford") on a date and time to be scheduled by the parties, upon oral examination before a

Notary Public or some other officer authorized by law toadminister oaths.

The deposition will be conducted remotely, and shall continue from day to day until

completed (or upon a schedule agreed upon by the parties). The deposition will be recorded

by stenographic means and may be videotaped and displayed via real-time. The deposition is

beingtaken for the purpose of discovery, for use at trial, and/or for any other purpose

permitted underthe applicable Federal and Local Rules of Civil Procedure.

As used herein, the following terms shall have the following meanings:

1.    "Mental health staff" or "mental health personnel" means any person
employed by you to provide mental health services to an IDOC prisoner,
including but not limited to psychiatrists, psychologists, behavior health
technicians ("BHTs"), and qualifiedmental health professionals ("QMHPs").

11.    "Relevant Period" means the period from March 1996 through October of
2018.

2.     "Wexford Defendants" means and refers to Defendants WexfordHealth
       Sources, Inc., Kelly Renzi, Psy.D., William Puga, M.D., and Pierre Nunez.

3.     "IDOC Defendants" means and refers to Defendants Illinois Department of
       Corrections, Director John Baldwin, and Dr. Jeff Sim, Shane Reister, Melvin
       Hinton, Sylvia Butler, Dr. Jamie Chess, Michael Melvin, Terri Kennedy,
       Emily Ruskin, John Varga, Justin Wilks and Sonja Nicklaus.

4.     "You" or "Your" or "Wexford" means Wexford Health Sources, Inc. and any of
       Your predecessors, successors, parents, and subsidiaries, and any of Your local,
       regional, national, executive and foreign offices, affiliates, divisions or branches
       thereof, any present or former partners, officers, directors, employees or agents
       including attorneys, accountants, advisors and all other persons acting or
       purporting to act on Your behalf.

5.     The term "solitary" refers to segregation, solitary confinement, restrictive
       housing, and/or any other housing situation which results in a prisoner being
       kept isolated from other prisoners for 20hours a day.

6.     *Rasho* refers to the class action case *Rasho v. Jeffries*, 2007 cv.1298,
       pending in the Central District of Illinois.

7.     The terms "serious mental illness" or "seriously mentally ill" meana patient
       who, as a result of a mental disorder as defined in the current edition of the
       Diagnostic and Statistical Manual of Mental Disorders ("DSM") of the
       American Psychiatric Association, exhibits impaired emotional, cognitive, or
       behavioral functioning that interferes seriously with his or her ability to
       function adequately except with supportive treatment or services. These
       individuals also must either currently have, or have had within the past year, a
       diagnosed mental disorder, or must currently exhibitsignificant signs and symptoms
       of a mental disorder.

8.     The term "hospital level care" means care equivalent to careprovided at
       an in-patient mental health treatment facility.

## SUBJECTS OF DEPOSITION

Wexford is hereby directed to designate one or more officers, directors, managing agents,

orother persons, either currently or formerly employed, to testify on its behalf about the

below- listed matters known or reasonably available to Wexford.

1. The policies, procedures, and practices used for recruiting, hiring, retaining, overseeing, and training mental health personnel employed by you at Tamms, Dixon, Pontiac, Stateville and Menard Prisons during the Relevant Period, and the location in the production of documents that could reasonably be expected to reflect such policies, procedures, and practices.

2. The policies, procedures, and practices regarding staffing levels for mental health staff at Tamms, Dixon, Pontiac, Stateville and Menard Prisons during the Relevant Period, and the location in the production of documents that could reasonably be expected to reflect such policies, procedures, and practices.

3. The policies, procedures, and practices applicable to providing and/or deciding whether to provide mental health treatment to prisoners on crisis watch at Tamms, Dixon, Pontiac, Stateville and Menard Prisons during the Relevant Period, and the location in the production of documents that couldreasonably be expected to reflect whether, when, and to what extent mental health treatment was provided to a prisoner on crisis watch at Tamms, Dixon, Pontiac, Stateville and Menard Prisons during that period.

4. The policies, practice, procedures, or agreements relating to the referral of seriously mentally ill IDOC prisoners to hospital level placement or outside facilities (including but not limited to facilities operated by the Illinois Department of Health and Human Services) to receive care, treatment, or evaluation for mental illness, including the mechanism by which such a referral would take place, and the location in the production of documents that could reasonably be expected to

reflect such policies, procedures, practices, or agreements.

5.  Your consideration given to the transfer of Anthony Gay to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, and the reasons he was not so transferred.

6.   Any attempts made to provide hospital level care to Mr. Gay while he remained in IDOC custody, including attempts to transfer to outside facilities, attempts to provide hospital level care within any IDOC facility, or any other action taken to provide the recommended level of care, or if no such actions were taken, the persons involved in the decision not to provide such care and the reasons why such care was not provided.

7.  Wexford's presence in *Rasho* litigation proceedings, meetings, or communications inwhich the need for inpatient or hospital level care in IDOC took place, including but not limited to when the proceeding, meeting, or conversation took place and who was present.

8.  Communications during the relevant period regarding the need to transfer certain seriously mentally ill inmates outside of the IDOC to receive levels of mental healthcare not available within the IDOC.

9.  Wexford's consideration given to transfer of mentally ill persons who were still in the custody of the IDOC, including Mr. Gay, to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, whether any mentally ill persons were so transferred, and if not, why not.

10. The policies, practices, or procedures that govern solitary confinement or

– 10

assignment to solitary, including but not limited to: whether a prisoner suffering from severe mental health issues or illness can be placed in solitary, how long, how often, for what purpose, the procedures in place to medically assess or assess the mental health of individuals in solitary, and the procedures in place to have them moved to a medical facility from solitary.

Respectfully submitted,

By: _/s/ Bhavani Raveendran_

Stephen H. Weil –
weil@loevy.comSarah Grady –
sarah@loevy.com Loevy &
Loevy
311 N. Aberdeen Street, Third
FloorChicago, IL 60607
Tel: (312) 243-5900

Antonio M. Romanucci
Stephan D. Blandin
Bhavani Raveendran
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654

_Attorneys for Plaintiff_

## CERTIFICATE OF SERVICE

I certify that on October 18, 2022, I served a true and correct copy of the foregoing

Notice of Depositions by mailing copies via electronic mail upon all counsel of record as

listed below:

Joseph N. Rupcich
Rachael N. Hayes
CASSIDAY SCHADE LLP
3100 Montvale Drive
Springfield, IL 62704
jrupcich@cassiday.com rhayes@cassiday.com

Nicholas S. Staley, Phillip Rehani
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601Nicholas S. Staley, Phillip Rehani
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago IL 60601
nicholas.staley@ilag.gov

Alan Remy Taborga
Assistant Attorney General
Office of the Illinois Attorney General
1776 E. Washington Street
Urbana IL 61802

Stetson F. Atwood, Laura Ieremia
Scott Kater, Monica L. Smit
Donohue Brown Mathewson & Smyth, LLC
131 South Dearborn Street, Suite 1600
Chicago, IL 60603
kater@dbmslaw.com

*/s/ Bhavani Raveendran*