IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ASHOOR RASHO, #B-38970, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 07-1298 |
| | ) | |
| ROGER WALKER, et al., | ) | |
|     Defendants. | ) | |

## DEFENDANTS' INPATIENT STATUS REPORT

Pursuant to this Court's September 5, 2014 Order, the Illinois Department of Corrections ("Department" or "IDOC") provides the following report concerning ongoing efforts to secure inpatient bed space for its SMI population.

During the course of the ongoing settlement negotiations between the parties and in light of the monitor's involvement with this case, the immensity of the challenges facing the IDOC in providing constitutionally adequate mental health care have come into sharp focus. Cognizant of the fluid nature of mental illness and the simple fact that not all SMI offenders require identical levels of care, IDOC has proposed a Remedial Plan which proposes to establish a graduated treatment system involving distinct levels of mental health care ("LOC"). As required by the May 2013 Agreed Order, the IDOC's Facility and Staffing Assessment identified those specific needs for establishing applicable LOC. The Department's Remedial Plan proposes solutions to the overwhelming majority of the deficiencies it has identified. To that end, the Department proposes to create four Residential Treatment Units ("RTUs") to provide the intensive therapeutic milieu needed by those SMI offenders requiring residential level care. Three existing facilities will have portions of their physical plant repurposed to provide adequate therapeutic and bed space for over 900 SMI offenders: Dixon CC (675 males), Pontiac CC (121 males) and Logan CC (135 females). Additionally, the IDOC has committed to reopening and repurposing the former Joliet youth home as a mental health campus, providing approximately 304 additional male beds. All told, the IDOC has committed to creating 1,235 residential beds. (Notably, the current SMI census reports a total of 847 residential-level offenders in IDOC custody: 789 males and 58 females). These projects are not without costs and, accordingly, the Department has obtained $29,000,000 for the capital upgrades needed to open the four RTUs.

From a staffing standpoint, the Department has proposed the hiring of an additional 256 clinical staff for its four RTUs, at an estimated annual cost of, approximately, $26.5 million. The Department also proposes hiring an additional 62 clinical staff for its facilities with SMI

EXHIBIT 5

1

offenders requiring outpatient care and 34 additional clinical staff to be assigned to its four Reception and Classification centers, at an estimated annual cost of, approximately, $10 million. To facilitate the treatment of SMI offenders, the Department estimates a need to hire over 200 additional security staff at its four RTUs, at an estimated annual cost of $26 million. From a staffing standpoint, therefore, the IDOC has committed to spend, on an annual basis, over $62 million.

The Monitor conditionally approved IDOC's plan on July 28, 2014, provided that the IDOC and State of Illinois establish a minimum of 40 male and 10 female inpatient beds. IDOC has long recognized that the Department's lack of inpatient beds constitutes an emergency situation requiring immediate redress. As the Department currently lacks any hospital-level beds to provide adequate inpatient treatment, the hurdles to meeting this obligation are immense. Nonetheless, the Department is happy to report that it has identified a long-term solution to its inpatient needs.

**State of Illinois**

In the short term, the Department of Human Services ("DHS"), which oversees state mental health clinical services through its Department of Mental Health ("DMH"), will provide 10 beds at Chester, Mental Health Center for IDOC inpatient offenders under the stipulations of the currently signed Intergovernmental Agreement ("IGA") between IDOC and DHS. Owing to DHS staffing, the Agreement obligates the Department to hire two psychiatrists and a psychologist prior to DHS accepting inpatient offenders. Currently the Department is working with Wexford Health (its medical vendor) to fill these positions as expeditiously as possible. Steps taken to fill the positions include higher salaries and overtime offered to existing Department psychiatrists who declined the opportunity. The Department has also identified a psychologist candidate, who may be hired at Menard CC and detailed to Chester. Once the psychiatrists and psychologist have been hired DHS anticipates starting to accept inpatient offenders on a rolling basis. Acceptance of inpatient offenders will be subject to DHS approval which will provide short term stabilization for up to 6 months, depending on the severity of each specific case. IDOC mental health staff will determine which inpatient offenders are best suited for a transfer to DHS and initiate the DHS screening process so that suitable offenders can be identified and accepted. Once an offender has stabilized, and is ready to transition to a lower level of care, he will be transferred back to IDOC, at which time the IDOC will send DHS another approved inpatient offender.

In the long term, the State has taken to heart Dr. Patterson's recommendations to this Court on September 5, 2014, that the State of Illinois provide the necessary resources and staffing to treat inpatient offenders within the State. To this end, the State of Illinois, by and through the Department, DHS and any related agency, has committed to exploring the steps (i.e., legislative and/or rulemaking changes) and costs associated with providing hospital-level treatment for IDOC inpatient offenders within a state facility. Whether this requires the repurposing of a

2

vacant state facility (much like IYC Joliet) or the construction of an annex to an existing facility has yet to be determined. In either case, any such solution will provide bed space for both male and female offenders in excess of the minimum required by the Monitor. While a concrete timeline detailing the requisite steps for opening such a facility is not presently available, the DOC trusts that the magnitude of this step is not lost on the Court, the parties and the Monitor. Given the myriad of details inherent in choosing a suitable location, designing a facility and both implementing and funding the necessary construction, the DOC requests that the Court afford it 60 days to provide an update on its progress, which can be supplemented as this Court deems necessary. Necessarily, this long-term solution will involve extensive construction and staffing efforts. Until the ultimate solution is in place, IDOC inpatient offenders will have access to the treatment milieu provided by the RTUs proposed in the Remedial Plan.

While DOC is confident that it will be able to ultimately provide inpatient care for its SMI population it nonetheless continues to explore third-party and other options.

**Riveredge Hospital**

Riveredge is part of the Cook County Health System and provides behavioral health services for children, adolescents, and adults exceeding the expectation of our customers. IDOC first learned of this potential opportunity on June 11, 2014, and immediately sent a security and clinical team to assess its feasibility. Initial reports were promising and the Department was lead to believe that their needs might be met at Riveredge. Since the last court date, the hospital has voiced reticence to housing a justice impacted population within its walls due to perceived community pushback. Subsequently, its parent corporation has identified two additional facilities which could be more appropriate than Riveredge. One is in Rockford, another in Garfield Park, Chicago. As represented to the IDOC, the physical plant of each facility is more robust and secure, which could reduce build-out costs. The Rockford facility currently operates as a residential facility, Garfield Park has 88 licensed (child and adolescent) beds and both will require some licensure changes to repurpose them as an inpatient facility. The Department is scheduled to tour the Garfield Park facility during the week of October 6th, at which time it will schedule a tour of the Rockford facility.

**Thorek Hospital**

Located in Chicago, this is a not-for-profit acute care hospital. Security staff and members of the Department's clinical staff visited this hospital for the first time in July, 2014. Since the last court date, architects from both the Department and Thorek met to discuss the necessary renovations prior to admitting IDOC offenders. Preliminary plans were provided to the Department in early October, and initially propose 40 rooms, which could accommodate a total of 80 offenders (assuming double celling). The Department continues to work with Thorek to maximize the treatment and bed space it may be able to provide.

3

**Loretto Hospital**

Located in Chicago's Austin neighborhood, Loretto has a pre-existing adult inpatient program. Earlier this summer, the Department conducted a mental health and security assessment of the hospital's suitability, physical plant and capacity. Certain physical plant and staffing upgrades have been identified which will be necessary if the facility is to meet the obligations imposed by both the Agreed Order and the Department's Remedial Plan. Initial and informal IDOC estimates price the Loretto security upgrades at approximately $250,000 and consider a four month time frame for both build-out and staffing increases. These estimates still do not, yet, contain Loretto input, therefore they cannot be treated as anything more than initial estimates. The Department previously reported that 20 beds were identified at Loretto Hospital. Since the last court date Loretto has agreed to provide IDOC with 54 beds.

Ultimately, the IDOC has identified a state solution to its inpatient needs. It is also committed to exploring private solutions in an effort to provide a maximum amount of flexibility as it proceeds with the Remedial Plan. As noted above, the details concerning the DHS annex will continue to be discussed in the near future. As such, the IDOC requests the opportunity to update this court within 60 days.