# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **KELLI ANDREWS,** | |
| **Plaintiff,** | |
| v. | Case No. 18-1101 |
| **BRUCE RAUNER, et al.,** | |
| **Defendants.** | |

## ORDER

This case is before the Court on the Motion to Compel State of Illinois Rule 30(b)(6) Testimony (#150) filed by Plaintiff, Kelli Andrews. Defendants, Bruce Rauner, State of Illinois, John Baldwin, Jeff Sim, and the Illinois Department of Corrections, filed a Response (#157) in opposition. With leave of Court, Plaintiff filed a Reply (#159).

Plaintiff is the Administrator of the Estate of Tiffany Ann Rusher ("Rusher"), deceased.[1] Plaintiff's Amended Complaint (#76) alleges that Rusher's mental health deteriorated after she was placed in solitary confinement during a five-year sentence at Logan Correctional Center. Plaintiff claims that Defendants failed to provide the mental health treatment Rusher needed, instead choosing to isolate her.

Plaintiff's Motion asks the Court to compel Defendant State of Illinois ("State") to produce witnesses with sufficient knowledge to testify on Topics 1, 4, and 5 from Plaintiff's Rule 30(b)(6) Notice. Plaintiff's Motion argues that the witnesses the State provided had insufficient knowledge and were unprepared to discuss these topics.

Federal Rule of Civil Procedure 30(b)(6) covers notices of depositions directed to an organization:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency,

---

[1] Plaintiff died approximtely one year after she was released from IDOC custody.

or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Topics 1, 4, and 5 from Plaintiff's Rule 30(b)(6) Notice[2] are as follows:

1. The policies, procedures, and practices for obtaining hospital level placement for the care and treatment of serious mental illness for inmates in IDOC custody from January 1995 through the relevant time period, and the location in the production of documents that could reasonably be expected to reflect such policies, procedures, and practices. If no such treatment was available, the policies, practices, or procedures that prevented such treatment.

4. The State's consideration given to the transfer of mentally ill persons who were still in the custody of the IDOC, to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, whether any mentally ill persons were so transferred, and if not, why not.

5. The State's consideration given to the transfer of Tiffany Rusher to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, and the reasons she was not so transferred.

The deposition notice defined the relevant period for Topics 4 and 5 as March 1, 2013, through December 31, 2016. Plaintiff alleges that this covers the time spanning Ms. Rusher's mental deterioration, her extended placement in solitary confinement, and running to a few months after her discharge from the IDOC in May 2016.

---

[2] Plaintiff added Topics 4 and 5 in her amended Rule 30(b)(6) Notice to the State of Illinois.

2

### a. Topics 4 & 5

Plaintiff's Motion first addresses Topics 4 and 5 and the Court will likewise consider them first in ruling.

In responding to Plaintiff's Amended Rule 30(b)(6) Notice, the State identified two witnesses: Dr. Ashley for Topics 4 and 5, and Dr. Hinton to testify regarding the remaining topics. After Plaintiff took Dr. Ashely's deposition in August 2022, Plaintiff asked the State to provide an additional witness for Topics 4 and 5. After negotiations, the State agreed to produce Dr. Hinton for Topics 4 and 5 (in addition to his original topics).

Rule 30(b)(6) is "designed to prevent business entities from bandying, which is the practice of presenting employees for their deposition who disclaim knowledge of facts known by other individuals within the entity." *FDIC v. Giancola*, 2015 WL 5559804, at *2 (N.D. Ill. Sept. 18, 2015). Importantly, "[t]he designating party has a duty to prepare the witness to testify on matters not only known by the deponent, but also as to those that should be reasonably known by the designating party." *Bruce v. Cook County*, 2020 WL 11191835, at *1 (N.D. Ill. Oct. 28, 2020). Furthermore, "[i]f none of defendant's current employees has sufficient knowledge to provide plaintiffs with the requested information, defendant is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Id*. at * 2.

The State deposed Dr. Hinton on February 23, 2023. Plaintiff argues first that Dr. Hinton was unprepared for his deposition as Dr. Hinton testified that he spoke with his attorneys on a single occasion for "30 minutes to an hour, somewhere in there." Plaintiff argues Dr. Hinton was not adequately prepared for the deposition and that he was not able to "testify about information known or reasonably available to the organization" as required by Rule 30(b)(6).

Plaintiff notes that Dr. Hinton did not provide substantive testimony in response to Plaintiff's counsel's questions:

3

> Q. So my question is, you've testified, Dr. Hinton, that no mentally ill prisoners were transferred out of the IDOC during the relevant period, correct?
>
> A. During the time that I've been here, correct.

Hinton Deposition, #151, Exhibit 3 at 84:11-15.

> Q. So is the state of Illinois aware of any prisoner whose needs exceeded the treatment capabilities of the Department of Corrections, bringing them under this policy during the relevant period? That's the question.
>
> A. I'm not aware.

Hinton Deposition, #151, Exhibit 3 at 88:19-24.

Plaintiff's counsel then started inquiring about treatment recommendations within the IDOC for Ms. Rusher:

> Q. Okay. Let's go down to Tiffany Rusher. I'm sorry. This is the treatment summary for Tiffany Rusher and the summary states it upfront, "The severity of this inmate's mental illness demands a structured treatment in an inpatient facility that can offer consistent specialized care." Do you see that?
>
> A. I do.
>
> Q. "Logan Correctional Center is not equipped to provide the psychiatric care environment that this individual needs."
>
> A. I see that.
>
> Q. Okay. So that's an assessment by her treatment team that the IDOC facility where she's housed is not equipped to provide the psychiatric care that she needs, right?
>
> A. Well, it's certainly the opinion of this particular author. I don't know who this author is yet.
>
> . . .
>
> Q. Was anybody involved in considering whether she should be transferred to an outside mental health facility during her incarceration?

4

A. I'm not aware of that.

Q. So I'm asking you is the state of Illinois -- and this is for topic five, was who was involved in considering whether Tiffany Rusher should be transferred to an outside mental health facility during her incarceration?

A. I'm not aware of who would have been involved because I'm not aware that that occurred.

Q. Do you know whether or not there was any consideration given to transferring Tiffany Rusher to an outside mental health facility during her incarceration?

A. I'm not aware of one.

Q. Okay. And again, I just want to be clear for the record. I'm asking you, is the state of Illinois. Is the state of Illinois aware of any consideration given to transferring Tiffany Rusher to an outside mental health facility during the course of incarceration?

A. To the best of my knowledge, no, I'm not aware of.

Q. Okay. Does the state of Illinois know any persons involved in considering whether Tiffany Rusher should be involved or should be transferred to an outside mental health facility during her incarceration?

A. Well, again, she was presented for judicial commitment, so yes, there was some discussion at some point because we presented her for that.

Q. I'm speaking about during her -- I understand that she was transferred at the conclusion of her sentence. I'm talking about during her custody in the Illinois Department of Corrections. Was any consideration given to transferring Ms. Rusher to an outside mental health facility?

A. Not aware of that.

Q. Okay. So were there any communications among employees or agents of the state of Illinois about transferring Tiffany Rusher to an outside mental health facility?

A. I'm not aware of that.

5

>Q. Are you aware of any reasons why Tiffany Rusher was not transferred to an outside mental health facility during her incarceration?
>
>A. I'm not. No.
>
>Q. Okay. And you gave all those answers as the state of Illinois, correct?
>
>A. To the best of my knowledge, yes.
>
>Q. I'm sorry, Doctor, and I just trying to get a clear answer. What do you mean by that?
>
>A. Yes. That's my answer, to the best of my knowledge.
>
>Q. Okay. [sic] [T]he state of Illinois does not know whether Tiffany Rusher was ever considered for transfer out, correct?
>
>A. Correct.
>
>Q. It does not know why she was not transferred out, correct?
>
>A. She was provided care at her correctional facility.

Hinton Deposition, #151, Exhibit 3 at 95:1-99:12.

The State argues that Hinton satisfied the requirements of Rule 30(b)(6) because he answered all of Plaintiff's questions. The State argues that there were no questions that Hinton was unable to answer. According to the State, Hinton's answers were sufficient because the questions themselves did not call for extensive, substantive responses. The State notes that Plaintiff can rely on the State's written policies to obtain any information Dr. Hinton was not able to recall.

Contrary to the State's position, under Rule 30(b)(6) the designating party "has a duty to prepare the witness to testify on matters not only known by the deponent, but also as to those that should be reasonably known by the designating party." *Bruce v. Cook County*, 2020 WL 11191835, at *1 (N.D. Ill. Oct. 28, 2020). Surely, someone within the State knew whether any consideration was given to transferring Ms. Rusher to an outside mental health facility. She either was given consideration or she was not. Likewise, the

6

State had a duty to prepare its witness so that he could give "complete, knowledgeable and binding answers" on behalf of the State.

The State failed to prepare Dr. Hinton sufficiently. He was unable to answer whether any consideration was given to transferring Ms. Rusher, nor was he able to identify anyone who would have been involved in the decision to transfer Ms. Rusher. The State seems to think that Hinton's answer that he was not aware of any patient who had needs that exceeded the treatment capabilities within the IDOC means that there were no patients that exceeded the treatment capabilities. But Hinton did not testify that there were no patients whose needs exceeded IDOC's treatment capability. Hinton instead testified that he was not aware of any patients whose needs exceeded IDOC's treatment capability. Dr. Hinton's answers were based on his own personal knowledge, rather than that of the State.

Under Rule 30(b)(6), the State was obligated to produce a witness who was able to "testify about information known or reasonably available to the organization." Someone within IDOC has knowledge about whether IDOC considered transferring Ms. Rusher. Plaintiff's Notice of Deposition put the State on notice that this topic would be covered as Topic 5 identified "[t]he State's consideration given to the transfer of Tiffany Rusher to outside mental health facilities…".

The Court orders the State to investigate this question appropriately and produce a witness who is prepared to cover Topics 4 and 5 for a deposition within 30 days.

b. **Topic 1**

Topic 1 related to the policies, procedures, and practices for obtaining hospital level care for inmates in IDOC custody from January 1995 through the relevant time period. The State initially objected to producing documents from 1995-2013 on scope grounds. The parties met and conferred and agreed that Plaintiff could obtain testimony regarding the 1995-2013 period only if it was "high-level" testimony relating to the policies, procedures, and practices.

During Dr. Hinton's deposition, Plaintiff's counsel asked, "So between 1995 and the relevant period, at any point during that time, had the IDOC recognized that the lack

7

of inpatient beds constituted an emergency situation requiring immediate redress?" Hinton Deposition, #151, Exhibit 3 at 72:10-13. Defense counsel objected as outside the scope. Defense counsel noted, "if you want to go back to 1995, I can present another 30(b)(6) witness if you believe that that's necessary and relevant to this case." Hinton Deposition, #151, Exhibit 3 at 73:24-74-1. The parties agreed to resolve the relevancy issue at a later time and proceed with questioning Dr. Hinton. Hinton Deposition, #151, Exhibit 3 at 76:12-19. Plaintiff's counsel noted that he would take the question "off the record." Hinton Deposition, #151, Exhibit 3 at 76:19.

The State argues that Plaintiff only asked the one question relating to the policies, procedures, and practices dating back to 1995. But this was clearly because the parties agreed to hold the topic after Defendant objected on scope and noted that if Plaintiff wanted to discuss the earlier time period, it would provide an additional Rule 30(b)(6) witness.

When the State provides its additional witness for Topics 4 and 5, it should also be prepared to offer that witness (or a different witness) for Topic 1. While the Court will permit testimony on Topic 1, the Court reminds the parties that they agreed to limit the scope to "high level" testimony for the time period of 1995-2013, which is appropriate under the circumstances. The Court suggests the parties agree to the questions to be asked prior to the deposition, so that a witness may be appropriately prepared for the deposition.

For these reasons, Plaintiff's Motion to Compel (#150) is GRANTED. The Court orders the State to produce an additional witness, who is prepared to cover Topics 1, 4, and 5 for a deposition within 30 days.

ENTERED this 15th day of August, 2023.

                                                                        s/ERIC I. LONG
                                           UNITED STATES MAGISTRATE JUDGE