IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MAURISA GAY, as Special Representative of the Estate of ANTHONY GAY,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN BALDWIN, et al.,<br><br>        Defendants. | Case No. 19-CV-1133<br><br>Judge: Sue E. Myerscough |

### IDOC'S OPPOSITION TO MOTION TO COMPEL INSPECTION AND IDOC'S MOTION FOR PROTECTIVE ORDER

The Illinois Department of Corrections (IDOC) submits this Memorandum in Opposition to Plaintiff Maurisa Gay's Motion To Compel Site Inspection (Dkt. 314) and submits its own Motion and Incorporated Memorandum for Protective Order.

**INTRODUCTION**

Plaintiff asks this Court to order the IDOC to allow a third-party technician into Pontiac Correctional Center, a maximum security prison within the IDOC system, to take 3D imaging, video, and audio recordings of a prison cell, which would then be used to create a virtual reality rendering of that cell. This proposal, which would require that civilian technician to bring a 3D Laser Scanner, tripod, and related audiovisual equipment into an operating prison, presents significant security concerns. In addition, the conditions of any IDOC cell is not relevant to Plaintiff's remaining discrimination claims against the IDOC, which arise under the Americans with Disabilities Act and the Rehabilitation Act. Rule 26(b)(1) of the Federal Rules of Civil Procedure does not entitle Plaintiff to access to the prison to create 3D imaging because it is not relevant to Plaintiff's remaining claims against the IDOC and because any putative relevance is

outweighed by the security burdens intrinsic with this request. As such, IDOC also seeks a protective order forbidding Plaintiff from seeking this discovery.

As Plaintiff acknowledges, the IDOC has agreed—despite its relevancy concerns—to an on-site inspection, during which conventional photographs and measurements of an IDOC cell may be taken. Within this Memorandum, IDOC sets forth its proposal, which balances Plaintiff's request for allegedly discoverable information and IDOC's significant security concerns. Therefore, IDOC prays that this Court denies Plaintiff's Motion To Compel and grants IDOC's Motion for Protective Order forbidding the 3D scan of an IDOC cell.

## **BACKGROUND**

This case, as originally filed, centered around decedent Anthony Gay's time spent in segregated housing within IDOC facilities. Plaintiff originally claimed that the conditions of Mr. Gay's confinement violated the Eighth and Fourteenth Amendments. Dkt. 82, Am. Compl., ¶¶ 46-56, 79-81. Plaintiff also asserted claims under the Americans with Disabilities Act and the Rehabilitation Act, alleging that IDOC discriminated against Mr. Gay on the basis of his disability (severe mental health disorders) by not providing him with offsite intensive in-patient medical treatment and denying him access to other IDOC programs. Dkt. 82, Am. Compl., ¶¶ 57-78. But, the scope of the case has narrowed since its inception. As discussed more below, in briefing on IDOC's motion for summary judgment, Plaintiff conceded that she contests neither the dismissal of her Eighth Amendment claims against IDOC nor the dismissal of her Fourteenth Amendment claims, leaving only the ADA and RA claims pending against IDOC. Dkt, 304, Pl.'s Response to Defs.' Summary Judgment Motions, p. 150.

Like Plaintiff's claims, her discovery requests have also evolved in the years since they were first made. The parties have been negotiating the terms of an on-site inspection of an IDOC

facility, in which Mr. Gay was incarcerated, since Plaintiff propounded her supplemental discovery requests in 2022. Specifically, Plaintiff sought the following:

> 49. Permit entry, inspection, photographing, and videotaping of Menard Correctional Center and all cells therein where Anthony Gay was housed, provided mental health services, and/or received recreational time.
>
> 50. Permit entry, inspection, photographing, and videotaping of Pontiac Correctional Center and all cells therein where Anthony Gay was housed, provided mental health services, and/or received recreational time.
>
> 51. Permit entry, inspection, photographing, and videotaping of Dixon Correctional Center and all cells therein where Anthony Gay was housed, provided mental health services, and/or received recreational time.

Plaintiff's Supplemental Discovery Requests, p. 4 (dated Feb. 10, 2022). These discovery requests make no mention of 3D imaging or scanning.

The parties agreed, with this Court's permission, to postpone scheduling any on-site inspection until the end of fact discovery. In August 2024, Plaintiff first requested to perform 3D scans and imaging of an IDOC prison cell to allow Plaintiff to create and present a virtual reality experience for jurors. Because of the unprecedented nature of this request, the parties engaged in significant back and forth regarding the feasibility of such a request and what it would entail. Plaintiff previously relayed that, in addition to the 3D scanner and tripod, the third-party technician would also need to bring in audio and visual recording equipment and additional accessories. After consultations, IDOC confirmed that the security risk posed by such a request would be too high. But, IDOC did agree to a standard on-site inspection, during which conventional photographs and measurements would be taken by IDOC Internal Affairs specialists or other IDOC staff

Simultaneous to these negotiations, Defendants Wexford and IDOC submitted motions for summary judgment, currently pending before the Court. In response, Plaintiff conceded that she does not contest the dismissal of her Eighth and Fourteenth Amendment claims against IDOC,

which were related to Mr. Gay's time spent in segregated housing. Dkt, 304, Pl.'s Response to Defs.' Summary Judgment Motions, p. 150. Because Plaintiff's case shifted focus to her statutory discrimination claims under the ADA and RA, IDOC reasoned that images of the interior of a cell were irrelevant to Plaintiff's case. Despite those relevance concerns, IDOC agreed to a standard on-site visit, with conventional photography and measurements, as consistent with past practice and Plaintiff's original Rule 34 request.

## **LEGAL STANDARD**

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

When deciding whether a party is entitled to discovery, the court considers the relevance of the information sought and balances the need for that discovery against several factors, including the importance of the discovery and the burden imposed by the request. Rule 26(b)(2)(C) mandates that the Court must limit the extent of discovery if the "proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Rule 26(c)(1) allows the Court to issue a protective order for good cause to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the discovery or mandating that the disclosure or discovery be limited to certain matters. The party seeking a protective order has the burden to demonstrate good cause supporting the need for a protective order. *Jepson, Inc. v. Makita Elec. Works*, 30 F.3d 854, 858 (7th Cir. 1994).

# ARGUMENT

This Court should deny Plaintiff's Motion To Compel a site inspection that includes 3D imaging of an IDOC prison cell because the discovery request is beyond the scope of Rule 26(b)(1): It is not relevant to Plaintiff's remaining claims against IDOC and it exposes IDOC to undue security burdens and risks. Instead, this Court should grant IDOC's Motion for a Protective Order, pursuant to Rule 26(c), to protect IDOC from the undue security burden that allowing 3D imaging, video, and audio recording of an prison cell in a maximum security prison would create. The parties should conduct an on-site inspection, consistent with the parameters set forth below, which balances Plaintiff's request for this discovery material with the very real security risks that Plaintiff's virtual-reality discovery request poses.

A. <u>3D Imaging of an IDOC Cell is Not Relevant to Plaintiff's Remaining ADA and RA Claims Against IDOC.</u>

Plaintiff's discovery request to have a private, third-party conduct 3D imaging of an IDOC prison cell is not relevant to Plaintiff's remaining claims against IDOC, which are brought under the ADA and RA. In her Amended Complaint, Plaintiff alleged four claims against IDOC and the IDOC individual defendants:

- Count I, Eighth Amendment (Cruel & Unusual): Wexford, IDOC Individual Defendants, and Wexford Individual Defendants;
- Count II, ADA Claim: Baldwin (IDOC);
- Count III, RA Claim: Baldwin (IDOC);
- Count IV, Fourteenth Amendment (Due Process): IDOC individual defendants.

In her response to Defendants IDOC and Wexford's motions for summary judgment, Plaintiff conceded that she does not "contest dismissal against the individual [IDOC] defendants" and does not "contest dismissal of her Due Process Claims." Dkt, 304, Pl.'s Response to Defs.' Summary

5
40432\325148179.v1

Judgment Motions, p. 150. Therefore, the only remaining claims against IDOC are her ADA and RA claims. Because Plaintiff has consented to the dismissal of her constitutional claims against IDOC that Mr. Gay's placement in segregated housing constituted cruel and unusual punishment, the conditions of confinement claim (and related discovery) is no longer relevant.

Plaintiff's ADA and RA theory is that the IDOC discriminated against Mr. Gay due to his disability—his severe mental health disorders—by failing to provide him with outside inpatient intensive medical treatment and access to other IDOC programs. *See* Amended Complaint, Dkt. 82, ¶¶ 63–66, 76–78. Plaintiff's contention in her Motion To Compel that "[t]he heart of Plaintiff's case involves what segregation cells are and the effect of being confined in them" may have been true prior to her summary judgment filing, but she has now consented to the dismissal of her Eighth and Fourteenth Amendment claims against the IDOC related to segregated housing. Her case is no longer a conditions-of-confinement case.

Moreover, the scope of discovery under an ADA or RA claim narrowed since the U.S. Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), which held that plaintiffs cannot recover emotional distress damages under the RA. Because Title II of the ADA borrows the damages provisions of the RA, federal circuit courts that have considered the question agree that plaintiffs may not recover emotional distress damages for Title II claims post-*Cummings*. *See Doherty v. Bice*, 101 F.4th 169, 171 (2d Cir. 2024) ("[E]motional distress damages are not available under Title II of the ADA, which explicitly tracks the remedies, procedures, and rights available under the Rehabilitation Act."); *A.W. v. Coweta Cty. Sch. Dist.*, 110 F.4th 1309, 1314 (11th Cir. 2024) ("Because *Cummings* held that emotional distress damages are not recoverable under the Rehabilitation Act, it follows that emotional distress damages are not recoverable under Title II, which provides the same remedies, procedures, and rights as

6
40432\325148179.v1

the Rehabilitation Act."); *see also Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11-MAB, 2023 U.S. Dist. LEXIS 10565, *6-7 (S.D. Ill. Jan. 20, 2023) ("Because Title II of the ADA incorporates the remedies set forth in the Rehab Act (which, in turn, incorporates the remedies set forth in Title VI of the Civil Rights Act), it therefore follows that emotional distress damages are also not available in suits brought under the ADA."). Therefore, discovery related to any claim that Plaintiff may have suffered any emotional distress related to her ADA and RA claims should not be permitted.

In an attempt to work with Plaintiff, IDOC consented to a standard on-site inspection, wherein photographs and measurements are taken of a cell by IDOC personnel implementing IDOC resources such as a digital camera and measuring tape, despite IDOC's concerns that such material is no longer relevant to Plaintiff's claims. But, because of the unique security risks imposed by the novel request to permit a third-party technician access to an operating prison to 3D scan, record, and videotape the inside of a prison cell in (and then share virtual reality renderings with members of the public), IDOC did not consent to this mode of inspection request.[1]

B. <u>On-Site Inspection, with 3D Imaging and Technology, Presents Unique Burdens and Risks in the Prison Context.</u>

As IDOC shared with Plaintiff during their ongoing negotiations regarding the parameters of a site inspection, IDOC has significant, valid concerns about permitting this 3D imaging technology, and the process it requires, into an active cell environment.

---

[1] Because IDOC recognizes that discoverable material does not need to be admissible to be permitted, IDOC does not make an evidentiary or admissibility challenge in this motion. But, IDOC would challenge, among other grounds, the relevance, reliability, and probative value of allowing jurors to utilize this virtual reality technology during trial, particularly given the elimination of the condition of confinement claims against the IDOC.

7
40432\325148179.v1

First, there exists the inherent security risk posed by the equipment itself which, among others things, includes a scanner and tripod. A tripod, for example, poses a unique security risk itself because of the ease and potency in which can be used as a weapon, the entry of which is disruptive and must be managed. Plaintiff's rejoinder that cleaning supplies, like mops or brooms, may be utilized as weapons, is true—those, too, are heavily regulated. Only individuals in custody with a clean disciplinary background and no behavioral issues and who are hand-picked by numerous members of Pontiac administration are allowed to hold job assignments, wherein they are given access to cleaning supplies including brooms and mops. General individuals in custody at Pontiac do not have access to such items, thereby further supporting the significant risk a tripod, which is essentially a large, metal bat, would pose to the security of Pontiac, a maximum security prison.

Second, allowing this type of technology and equipment in the prison will require the disruption and diversion of prison staff and security to a greater degree than a standard site inspection. Because the technology requires a private third-party technician and outside audiovisual equipment and accessories, prison security will be required for screening and escort. In contrast, the standard on-site inspection, in which the IDOC provides the camera and does not require additional civilians in the facility, requires fewer resources and comes with less risk. Correctional center staff, including security staff and medical and mental health personnel, are prohibited from bringing any type of electronics into the facility, including cell phones or smart watches. Similarly, attorneys who are not directly employed by IDOC are also prohibited from bringing any electronic devices into the facility, absent special permission from the warden of the facility based upon a special circumstance.

Third, because of the manner in which this 3D technology operates, IDOC lacks the same level of control over the visual and audio images that are captured, as it would with a standard digital camera, which IDOC would operate at the direction of counsel and which IDOC could easily screen for any security concerns prior to their release. Those protocols are not arbitrary. IDOC's security-related concerns about its facilities are obvious and well-recognized. As just two examples, the 3D images Plaintiff seeks would show locations of security cameras and locking mechanisms in segregation cells in maximum security facilities. IDOC's interest in ensuring that the inner configuration and workings of the facility are not disseminated is entirely reasonable.

Last, Plaintiff's suggestion that the parties utilize a currently empty wing of the Pontiac Correctional Center does not resolve these issues because it still requires a diversion of resources for screening and escort. This approach also only adds to IDOC's relevancy concerns and objections. The presence of outside and unregulated electronics anywhere inside the facility creates the security risk. Whether the area in which the equipment will be used is currently populated is immaterial to the significant security concerns they present. The third-party technician would need to go through the gate house at the front of the facility and then walk through the facility with a large, metal object and various electronics. Moreover, merely because individuals in custody are not presently *housed* in a wing does not mean that other individuals in custody will not be *present*. For example, individual workers are often present passing out meal trays or cleaning in the cellhouse, even if a wing is currently unoccupied. Individuals in custody are often being escorted around the facility for necessary medical and mental health appointments and legal meetings and phone calls. All movement within Pontiac, which, again, is a maximum security facility, would essentially have to stop—or go on lockdown—during the entirety of the period of the facility inspection, placing a significant burden on Pontiac staff by delaying the transport of individuals to

9

and from various obligations as mentioned *supra*. This is unduly burdensome, given the well-documented staffing issues experienced by IDOC facilities.

C. The Discovery Request for 3D Imaging of an IDOC Cell Is Outside the Scope of Rule 26(b)(1).

None of the factors outlined in Rule 26(b)(1) support Plaintiff's contention that she is entitled to a 3D scan and audio and video recording of an IDOC prison cell similar to one in which Mr. Gay was housed.

The Court has wide discretion in determining the scope and manner of discovery. *Thermal Design, Inc. v. American Soc'y of Heating, Refrigerating and Air-Conditioning Engrs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014). An inspection under Rule 34 must seek relevant information, and this Court may deny the motion or limit the requested inspection if it would be unreasonably duplicative or burdensome. *See* Fed. R. Civ. Pro. 34(a); Fed. R. Civ. Pro. 26(b)(2)(C). As another district court within this Circuit explained, when deciding whether to compel an inspection, the Court balances the "degree to which the proposed inspection will aid in the search for truth . . . against the burdens and dangers created by the inspection." *Menendez v. Wal-Mart Stores E. L.P.*, No. 1:10-CV-00053, 2012 U.S. Dist. LEXIS 81726, at *2 (N.D. Ind. June 13, 2012) (citations omitted).

Most crucially, the specific conditions of any cell in which Mr. Gay was housed is not relevant to Plaintiff's remaining claims against the IDOC, which are brought under the ADA and the RA. Plaintiff's case now involves what accommodations Plaintiff alleges he should have received due to his severe mental health issues, which Plaintiff claims was intensive inpatient mental health treatment. Again, as noted, despite IDOC's view that nothing about Mr. Gay's cell configuration is relevant to Plaintiff's case as it now stands, IDOC has agreed to a standard on-site

10
40432\325148179.v1

inspection, still photography, and the taking of measurements. This Court should deny Plaintiff's Motion To Compel 3D imaging of an IDOC cell on relevance grounds, alone.

But in addition to the relevancy question, "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.. Civ. Pro. 26(b)(1). As explained above, permitting this type of unprecedented site inspection imposes unique and sensitive security concerns to the IDOC. As opposed to a standard on-site inspection, which is minimally disruptive to both prisoners and IDOC staff, this type of inspection would require the diversion of more resources and pose a greater security risk because of the requirement to bring in an outside technician and technology and essentially shut down the facility for the entirety of the inspection.

In balancing the relevance and importance of the creation of virtual imaging of an IDOC cell in a case now focused on statutory discrimination claims and not conditions of confinement, with the IDOC's pressing security concerns and offer for a standard site inspection, any minimal relevancy value is outweighed by the security burdens. Pursuant to Rule 26(b)(2)(C), this Court should deny Plaintiff's Motion To Compel 3D imaging of an IDOC cell as beyond the scope of Rule 26(b)(1).

D.     The Court Should Grant IDOC's Motion for Protective Order against 3D Imaging of the Cell.

Because IDOC has shown good cause as to why the 3D scanning, video, and audio recording of an IDOC prison cell would cause an "undue burden" due to the significant security concerns and the diversion of resources it would require, this Court should grant IDOC's Motion for a Protective Order and forbid this requested discovery. *See* Fed. R. Civ. Pro. 26(c)(1)(A). As both Plaintiff and IDOC explain in their respective motions, the parties have conferred in good faith in an attempt to resolve this dispute without court intervention.

11
40432\325148179.v1

IDOC has reasonably consented to a standard site inspection and the creation of conventional photography and measurements by IDOC personnel, which are responsive to Plaintiff's initial discovery requests that did not contemplate 3D imaging, nor the creation of a virtual reality experience based on collected imaging and audiovisuals. *See* Pl. Mot. To Compel, p. 2, n. 1; *see also* Plaintiff's Supplemental Discovery Requests, p. 4 (dated Feb. 10, 2022). Consistent with past practice:

- The IDOC would provide a digital camera and an IDOC Internal Affairs Specialist or other IDOC staff would serve as photographer.

- The Internal Affairs Specialist or other IDOC staff would take conventional photography during the on-site visit as directed by Plaintiff and Defendants' counsel present at the inspection.

- Plaintiff's counsel may review the photographs taken during the inspection and direct reasonable retakes.

- Any photographs would be limited to the inside of the designated IDOC cell(s).

- After the inspection, the IDOC will conduct a security review of the photographs and release the acceptable photographs to Plaintiff within three business days.

- If parties cannot agree whether particular photos present a security concern, they will be submitted for in-camera review.

- Any photographs taken during the site inspection will be subject to the protective order issued by this Court on March 30, 2021 (Dkt. 122).

Because the request for 3D scanning, and related audiovisual recording, is not relevant to the current posture of this case, is overly burdensome, and raises valid security concerns and because a sufficient, and responsive, alternative exists, this Court should grant IDOC's Motion for Protective Order and forbid Plaintiff's request to conduct 3D imaging of an IDOC prison cell.

## CONCLUSION

Because Plaintiff's discovery request to perform 3D scans of an IDOC prison cell is beyond the scope of discovery prescribed by Rule 26(b)(1) of the Federal Rules of Civil Procedure, this Court should deny Plaintiff's Motion To Compel 3D scans. In addition, this Court should grant IDOC's Motion for Protective Order and forbid Plaintiff's request to conduct these 3D scans because of the undue security burden and risks it imposes on the IDOC.

If this Court were to direct the parties to conduct the standard on-site visit, with the conventional photography and measurements for which the parties have previously agreed, IDOC prays it be ordered consistent with the parameters proffered by IDOC.

Dated: June 13, 2025                     Respectfully submitted,

/s/ *Robert T. Shannon*
Robert T. Shannon
*Counsel for IDOC Defendants*

Robert T. Shannon
Thomas L. O'Carroll
Ambrose V. McCall
Stephen Mehr
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
(312) 704-3000
rshannon@hinshawlaw.com
tocarroll@hinshawlaw.com
amccall@hinshawlaw.com

40432\325148179.v1

# CERTIFICATE OF RULE 26(C)(1) CONFERENCE

      I certify that the Illinois Department of Corrections (IDOC), through counsel of record, has conferred in good faith with Plaintiff, through her counsel of record, in an effort to resolve the dispute without court action.

                                       /s/ *Robert T. Shannon*