## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| **MAURISA GAY,** *Representative of the Estate of Anthony Gay,*    **Plaintiff,** <br><br> **v.** <br><br> **JOHN BALDWIN,** *et al,*    **Defendants.** | ) <br> ) <br> ) <br> ) <br> )   **Case No. 19-cv-1133-SEM** <br> ) <br> ) <br> ) |

## ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Defendants William Puga, M.D.; Kelly Ann Renzi, Psy.D.; and Wexford Health Sources, Inc. ("Wexford") move for summary judgment (Doc. 286). Plaintiff Maurisa Gay, *Representative of the Estate of Anthony Gay*,[1] has responded (Doc. 304), and Defendants have replied (Doc. 309). For the following reasons, the Court grants in part and denies in part Defendants' dispositive motion.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] Hereinafter, the Court refers to Anthony Gay as Anthony and Maurisa Gay as Plaintiff.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non[]moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non[]moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the non[]moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## II. BACKGROUND

### A. Plaintiff's Amended Pleading

On March 7, 2020, Plaintiff filed a four-count First Amended Complaint (Doc. 82), alleging constitutional and statutory violations during Anthony's incarceration at the Illinois Department of Corrections ("IDOC"). Plaintiff's allegations included an Eighth Amendment deliberate indifference to serious mental health needs claim (count I) against Defendant Puga, a physician at Pontiac Correctional Center ("Pontiac"), Defendant Renzi, the Mental Health Director at Pontiac, and Wexford, the contractor providing medical and mental health care to IDOC patients.

Plaintiff explained that Anthony suffered from severe mental illnesses that placed him at risk of serious harm and required intense treatment. Instead, Defendants held Anthony in solitary confinement for years. Deprived of any human contact, Anthony

engaged in horrific acts of self-mutilation and assaulted prison

staff with bodily fluids. (Pl. Amend. Compl., Doc 82 at 3, 19-20.)

### B. Defendants Puga and Renzi

Plaintiff's response to Defendants' dispositive motion states

that she does not contest the dismissal of her Eighth Amendment

claims against Defendants Puga and Renzi. (Doc. 304 at 150.)

Plaintiff explains that discovery has revealed that Anthony's

mistreatment was induced by policies adopted by Wexford that

were deliberately indifferent to the plight of severely mentally ill

IDOC patients, and that Anthony suffered for decades as a result.

Based on Plaintiff's concession, the Court directs the Clerk of the

Court to terminate Puga and Renzi as parties. Thus, the Court

confines its analysis to Defendant Wexford's assertion that it is

entitled to summary judgment on Plaintiff's claim, which is based

on the United States Supreme Court's holding in *Monell v. Dep't of

Soc. Servs.*, 436 U.S. 658, 691 (1978).

### III. DISCUSSION

### A. Monell Standard

"[A] municipality cannot be held liable under § 1983 on a

*respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 691 (1978). Instead, municipal liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

"[T]he *Monell* theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016); *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices."); *Iskander v. Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying § 1983 to private corporations).

"[T]o recover against a municipal or corporate defendant under section 1983, it is not enough for the plaintiff to show that an employee of the municipality or corporation violated his constitutional rights; he must show that his injury was the result of the municipality's or corporation's official policy or custom." *Rice,* 675 F.3d at 675 (7th Cir. 2012). "An official policy or custom may

be established by means of an express policy, a widespread practice
which, although unwritten, is so entrenched and well-known as to
carry the force of policy, or through the actions of an individual who
possesses the authority to make final policy decisions on behalf of
the municipality or corporation." (*Id.*)

A corporation can be held liable for its policies in cases where
an individual defendant employee is not liable. However, a plaintiff
must still present sufficient evidence of an underlying constitutional
harm that the corporation's policies caused. *See Glisson v. Ind.
Dep't of Corr.*, 849 F.3d 372, 382 (7th Cir. 2017) (holding that "a
jury could find that [the defendant-corporation's] decision not to
enact centralized treatment protocols for chronically ill inmates led
directly to [the plaintiff's] death" even where "none of the individual
providers . . . personally did anything that would qualify as
'deliberate indifference' for Eighth Amendment purposes");
*Abdelkader Rachid Belbachir v. County of McHenry*, 726 F.3d 975,
983 (7th Cir. 2013) (stating that a county can be held liable for a
failure to train even if one of its employees were not liable); *Thomas
v. Cook Cty. Sheriff's Dep't*, 588 F.3d 445, 454 (7th Cir. 2009)
(holding that a municipality can be held liable under *Monell* even

when its officers are not, but the evidence still must demonstrate that the municipality "had a widespread practice that caused the alleged constitutional harm").

A municipality, county, or private corporation may be liable for a policy that, while constitutional on its face, is being implemented in a way that causes a constitutional violation. *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (stating that a county may not adopt a policy of inaction when faced with actual or constructive knowledge that its agents will violate constitutional rights). Thus, a municipality, county, or private corporation could be liable if it is aware of actual constitutional violations yet fails to act. *Id.* (holding that the plaintiff had sufficient evidence to survive summary judgment that the county was aware that the medical contractor was violating inmates' rights).

### B. Defendant Wexford's Dispositive Motion

The parties' dispute concerns the interpretation of contractual language and Wexford's obligation under its terms as outlined below.

In May 2011, IDOC, the Illinois Department of Healthcare and Family Services, and Wexford, referred to as "vendor," entered into a

contractual agreement. (Doc. 301-18 at 1-38.) The "Description of

Supplies and Services" section of the contract described Wexford's

overarching responsibilities, as follows:

> Vendor is to provide the medical, dental,
> vision, pharmaceutical and mental health
> services for offenders at specified State
> correctional centers. Under the direction of the
> IDOC Medical Director and the IDOC Chief of
> Mental Health Services and according to the
> program definitions and specifications as
> outlined in this contract, Vendor is to arrange
> and provide for services on-site and as
> necessary off-site at local hospitals, outpatient
> facilities and consultative physician offices.
> Agency recognizes that methods of delivery of
> these services may differ from methods used to
> provide services to members of the general
> public, but the care and services Vendor
> provides should be similar. It is the intent of
> Agency for all offenders to receive adequate
> and cost effective health care services
> regardless of place of assignment or
> disciplinary status.

(*Id.* at 4:2.)

> Section 2.2.3, titled "Comprehensive Medical Program," states:

> Vendor shall provide safe, adequate and cost-
> effective medical care and treatment services
> at the correctional centers including, but not
> limited to: dental, vision, pharmaceutical,
> radiological, laboratory, optometry,
> ophthalmology, audiology, long term care
> services, planning of restricted medical diets,
> chronic and acute care for dialysis except as

specified in 2.2.3.17, medical orthotics/ prosthetics, offender health education and wellness programs, HIV/AIDS, except as specified in 2.2.3.8, Hepatitis C, except as specified in 2.2.3.8, Hypertension, endocrine disorders, [and] physical/ occupational/speech therapy. Vendor shall make arrangements with medical and mental health provider(s) to provide said services including, but not limited to, consultation with medical specialists at the correctional center whenever possible which may differ from methods used to provide services to members of the general public, and supplementary non-hospital and hospital services off-site at local hospitals, outpatient facilities and consultative physician offices, only when such services cannot be safely, adequately and cost-effectively delivered on-site at the correctional centers.

(*Id.* at 6.)

Section 2.2.4, titled "Comprehensive Mental Health Program,"

states as follows:

Vendor shall deliver effective and efficient mental health services on-site to offenders determined to be mentally or emotionally disturbed, due to a chronic mental illness or situational stress. Vendor shall ensure the services are delivered in a safe, adequate, and cost-effective manner and in compliance with all mental health and healthcare[-]related federal and state statutes, federal and state regulations, [Administrative Directives], and the IDOC Office of Mental Health Management Procedure Manual. The services the Vendor provides shall include, but not be limited to,

> mental health screening, assessment, and
> evaluation by licensed mental health
> professionals, mental health treatment in
> accordance with the mental health treatment
> plan, monitoring of the offender's mental
> health status on a regular basis as needed,
> psychotropic medication, screening for Tardive
> Dyskinesia, emergency and routine referrals,
> and ensuring that offenders identified as being
> developmentally disabled are assessed by a
> licensed mental health professional and
> provided treatment and monitoring in
> accordance with their needs. See Exhibit XV
> for medical/legal matters pertaining to the
> comprehensive mental health program.

(*Id.* at 12.)

Defendant Wexford contends that Plaintiff's *Monell* claim is based on the incorrect assumption that Wexford had a contractual duty to send IDOC inmates offsite for inpatient mental health treatment. Specifically, Wexford asserts that Plaintiff continually cites provisions contained within the Comprehensive Medical Program section as establishing Wexford's contractual duty to send inmates for inpatient mental health treatment.

The Court notes that section 2.2.2 of the contract, titled, Vendor Functions and Duties, states that "Vendor will be responsible for providing safe and cost[-]effective on-site medical and mental health services. Off-site services will be reserved for

specialty and emergency care that cannot be provided on site." (*Id.* at 5.) In that regard, section 2.2.2.1e mandates that Defendant Wexford provide "[c]omprehensive and specialized mental health services." (*Id.*) Section 2.2.2.14 also requires Wexford to "[m]aintain good working relationships with community medical and mental health providers … to provide off-site services." (*Id.*)

Moreover, Defendant Wexford acknowledges that it is "required by its contract to follow IDOC's policies and procedures." (Wexford MSJ, Doc 286 at 12:60.) Plaintiff cites IDOC Administrative Directive 04.04.100, which provides that "Offenders who are determined to be mentally or emotionally disturbed, either due to chronic mental illness or situational stress, shall have access to … a specialized mental health setting when intensive services are clinically indicated or transfer to a licensed mental health care facility when the offenders needs exceed the treatment capabilities of the Department." (*Id.*, Doc. 300-12 at 3.)

Although Defendant Wexford does not dispute the cited portion of Administrative Directive 04.04.100, Wexford claims that the plain language of the directive is immaterial to Plaintiff's *Monell* claim (Wexford Reply, Doc. 309 at 14:39.) The contract defines

"specialized mental health setting" as "a Department facility or unit within the facility that specializes in mental health care." (Doc. 300-12 at 3E.)

Defendant Wexford claims that the availability of a specialized mental health setting within IDOC was nonexistent, which presents a factual dispute that should be resolved by a jury rather than this Court on summary judgment. *See Johnson v. Advocate Health and Hospitals Corporation*, 892 F.3d 887, 893 (7th Cir. 2018) ("'On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.'") (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, Defendant Wexford's response does not address the alternative option of transferring a mental health patient to a licensed mental health care facility when the need exceeds IDOC's capabilities.

Thus, given the above record, the Court concludes that Defendant Wexford has not satisfied its threshold burden of

showing the absence of a genuine issue of material fact.

Accordingly, Wexford's Motion for Summary Judgment is denied.

## IV. STATUTE OF LIMITATIONS

In September 2019, District Judge Colin Stirling Bruce denied
Defendants' request to dismiss Plaintiff's claims that occurred
before October 28, 2016, concluding that "[a]lthough further
discovery may prove otherwise, at this stage of the proceeding, …
the continuing violation doctrine tolls Plaintiff's claims against
Defendants." (Doc. 44 at 12.)

In January 2021, Defendants filed a Partial Motion to Dismiss,
in which they argued that the continuing violation doctrine did not
apply to this case. District Judge Harold A. Baker denied
Defendants' motion, concluding that the law of the case doctrine
applied and declining to reconsider in the absence of extraordinary
circumstances. (Doc. 116 at 1-4); *see also Santamarina v. Sears,
Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006) ("The
authority of a district judge to reconsider a previous ruling in the
same litigation, whether a ruling made by him or by a district judge
previously presiding in the case, including (because the case has
been transferred) a judge of a different court, is governed by the

doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous.").

Defendant Wexford requests that the Court reconsider the application of the law of the case doctrine, asserting that the Court's decision was made "at the pleading stage and should be reconsidered in light of the full record." (Doc. 286 at 35.) However, Wexford fails to present any supporting evidence or argument that establishes extraordinary circumstances. Thus, the Court denies Wexford's request.

**IT IS THEREFORE ORDERED:**

1) **The Motion for Summary Judgment (Doc. 286) filed by Defendants William Puga, Kelly Ann Renzi, and Wexford Health Sources, Inc. is GRANTED in part and DENIED in part. For the reasons in the Court's Order, summary judgment is denied as to Wexford but granted as to Puga and Renzi.**

2) **The Clerk is DIRECTED to terminate William Puga and Kelly Ann Renzi as Defendants.**

3) **Defendant Wexford's Motion to reconsider application of the law of the case doctrine is DENIED.**

ENTERED September 4, 2025.


s/ *Sue E. Myerscough*

_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE