UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **MAURISA GAY,** *Representative of the Estate of Anthony Gay,*<br>    **Plaintiff,**<br><br>    v.<br><br>**JOHN BALDWIN,** *et al,*<br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)  Case No. 19-cv-1133-SEM<br>)<br>)<br>) |

**ORDER**

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is a Motion for Summary Judgment (Doc. 288-1) filed by Defendants John Baldwin, Sylvia Butler, Dr. Jamie Chess, Dr. Melvin Hinton, Rob Jeffreys, Terri Kennedy, Michael Melvin, Sonja Nicklaus, Shane Reister, Emily Ruskin, Jeff Sims, John Varga, and Justin Wilks. Plaintiff Maurisa Gay, representative of the estate of Anthony Gay,[1] has responded (Doc. 304), and Defendants have replied (Doc. 310). For the following reasons, the Court grants the dispositive motion.

---

[1] Hereinafter, the Court refers to Anthony Gay as Anthony and Maurisa Gay as Plaintiff.

# I. BACKGROUND

## A. Plaintiff's Amended Pleading

On March 7, 2020, Plaintiff filed a four-count First Amended Complaint (Doc. 82), alleging constitutional and statutory violations during Anthony's incarceration at the Illinois Department of Corrections ("IDOC"). Plaintiff's allegations included an Eighth Amendment deliberate indifference to serious mental health needs claim against Defendants Baldwin, Butler, Chess, Hinton, Kennedy, Melvin, Nicklaus, Reister, Ruskin, Sims, Varga, and Wilks (count I); statutory violations of the Americans with Disability Act ("ADA") (count II) and Rehabilitation Act of 1973 (count III) against former IDOC Director Rob Jeffreys in his official capacity; and a Fourteenth Amendment due process claim against Kennedy, Melvin, Nicklaus, Ruskin, Varga, and Wilks.

Plaintiff explained that Anthony suffered from severe mental illnesses that placed him at risk of serious harm and required intense treatment. Instead, Defendants held Anthony in solitary confinement for years. Deprived of any human contact, he engaged in horrific acts of self-mutilation and assaulted prison staff with bodily fluids. (Pl. Amend. Compl., Doc 82 at 3, 19-20.)

**B. Plaintiff's Concessions and the Court's Substitution**

Plaintiff's response to Defendants' dispositive motion states that she does not contest the dismissal of her Eighth Amendment claims against Defendants Baldwin, Butler, Chess, Hinton, Kennedy, Melvin, Nicklaus, Reister, Ruskin, Sims, Varga, and Wilks. (Pl. Res., Doc. 304 at 150.) Plaintiff also abandons her Fourteenth Amendment Due Process claim against Kennedy, Melvin, Nicklaus, Ruskin, Varga, and Wilks. (*Id.*) Plaintiff explains that discovery has revealed that Anthony's mistreatment was induced by policies adopted by IDOC that were deliberately indifferent to the plight of severely mentally ill IDOC patients and that Anthony suffered for decades as a result. Thus, the remaining claims are Plaintiff's statutory claims under the ADA (count II) and Rehabilitation Act (count III).

The Court directs the Clerk of the Court to substitute Latoya Hughes, in her official capacity as the IDOC director, for Rob Jeffreys. *See* Fed. R. Civ. P. 25(d) (noting when a public officer who is a party in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party).

## II. ADA and REHABILITATION ACT STANDARDS

"In 1990, Congress enacted the [Americans with Disabilities Act] to provide 'a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Lacy v. Cook County*, 897 F.3d 847, 852 (7th Cir. 2018) (quoting 42 U.S.C. § 12101(b)(1)). "To prove a prima facie case of discrimination under Title II, a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability." *Id.* at 853 (internal quotation marks omitted) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)).

A Rehabilitation Act claim is functionally identical to an ADA claim. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Both "require[] the plaintiff to allege that '(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability.'" *Id.* (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)); *see also Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013)

("[T]he Rehabilitation Act and the ADA are substantively identical" which "means that the Rehabilitation Act by itself affords plaintiffs any relief to which they may be entitled; claims under the ADA become academic.").

"[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros*, 684 F.3d at 671. "As a practical matter, then, [courts] may dispense with the ADA and the thorny question of sovereign immunity, since [a plaintiff] can have but one recovery." *Id.* at 672. "Illinois has waived its immunity from suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds." *Id.* at 672 n.5.

No personal liability exists under Title II of the ADA or the Rehabilitation Act. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) (concluding the district court was correct to dismiss the individual defendants sued in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA); *Jaros*, 684 F.3d at 670 ("[E]mployees of the Department of Corrections are not

amenable to suit under the Rehabilitation Act or the ADA." (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131)).

Thus, the Court limits its analysis to the assertion that IDOC is entitled to summary judgment on Plaintiff's Rehabilitation Act claim. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

### III. Statute of Limitations

Before considering Defendant Hughes' Motion for Summary Judgment, the Court addresses Hughes' affirmative defenses.

### A. Procedural History

In September 2019, District Judge Colin Stirling Bruce denied Defendants' request to dismiss Plaintiff's claims that occurred before October 28, 2016, concluding that "[a]lthough further discovery may prove otherwise, at this stage of the proceeding, … the continuing violation doctrine tolls Plaintiff's claims against Defendants." (Doc. 44 at 12.)

In January 2021, Defendants filed a Partial Motion to Dismiss, in which they argued that the continuing violation doctrine did not

apply to this case. District Judge Harold A. Baker denied Defendants' motion, concluding that the law of the case doctrine applied and declining to reconsider in the absence of extraordinary circumstances. (Doc. 116 at 1-4); *see also Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous ruling in the same litigation, whether a ruling made by him or by a district judge previously presiding in the case, including (because the case has been transferred) a judge of a different court, is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous.").

**B. Statute of Limitations and Continuing Violation Doctrine**

"The statute of limitations for suits under section 1983 is supplied by state law . . . ." *Heard v. Sheahan*, 253 F.3d 316, 317 (7th Cir. 2001); *see also Untermyer v. College of Lake County*, 284 F. App'x 328, 329-330 (7th Cir. 2008) (affirming dismissal of Rehabilitation Act claim under Illinois' two-year statute of limitations). "Federal law, however, governs the accrual of claims,"

*Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993), and the continuing violation doctrine is "best characterized as a doctrine governing the accrual of a claim." *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001).

To determine whether the continuing violation doctrine applies, the key inquiry is whether the constitutional deprivation "was a fresh act each day, or whether it was a discrete act that took place upon the first [instance] that merely had lingering consequences." *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006); *see also United States v. Midwest Generation, LLC*, 720 F.3d 644, 646 (7th Cir. 2013) ("The phrase 'continuing violation' is ambiguous [and] may mean any of at least three things: (1) ongoing discrete violations; (2) acts that add up to one violation only when repeated; and (3) lingering injury from a completed violation. Analysis will be easier if we call the first situation a continuing violation, the second a cumulative violation, and the third a continuing-injury situation.").

"The emphasis is not upon the effects of earlier . . . decisions; rather, it is upon whether any present violation exists." *Savory*, 469 F.3d at 673 (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258

(1980) (citations and quotations omitted)); *see also Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018) ("When a wrong is ongoing …, the period of limitations does not commence until the wrong ends. Notice that we speak of a continuing wrong, not of continuing harm; once the wrong ends, the claim accrues even if that wrong has caused a lingering injury." (emphasis in original) (citation omitted).

As noted earlier, the remaining issue is a Rehabilitation Act claim against Defendant Hughes in her official capacity, which is a claim against IDOC. As to this sole claim, Plaintiff alleges that by placing Anthony in solitary confinement, which deprived him access to services, programs, and activities, including education, programming, recreation, exercise, and mental health services, IDOC discriminated based on Anthony's mental health in violation of the Rehabilitation Act.

Defendant Hughes asserts that the continuing violation doctrine is inapplicable, relying on *Bernard v. Scott* for the proposition that cases involving a genuine continuing violation concern "'violations' that last as long as the 'defendant [has] the power' to remedy the plaintiff's condition but fails to do so." 501 F.

Supp.3d 611, 621-622 (N.D.Ill. 2020) (quoting *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517-18 (7th Cir. 2019)).

Defendant Hughes contends that "Defendants ... did not have the power to remedy [Anthony's] condition, much less did Defendants engage in an ongoing and protracted refusal to do so." (Def. MSJ., Doc. 288-1 at 25.) Although the Court infers that Defendant Hughes' stance concerns the individual Defendants, who are no longer parties, the Court notes that Hughes neither explicitly argues nor does the record support the notion that IDOC was powerless to address the allegations contained in Plaintiff's Rehabilitation Act claim, which the Court construes in the light most favorable to Plaintiff. *See Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) ("When a plaintiff alleges that inaction is leading to an ongoing harm, [s]he can 'reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit [her] to sue separately over every incident of the defendant's unlawful conduct.'") (quoting *Heard*, 253 F.3d at 319.

Furthermore, the Court concludes that Defendant Hughes has not satisfied her burden of showing that *res judicata* bars any violations that Plaintiff raises before October 3, 2012.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). "Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law … litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *Id.* at 748-49.

"Res judicata has three elements: '(1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the merits.'" *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co.*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008)).

Despite Defendant Hughes' claim that *res judicata* applies to bar Plaintiff's Rehabilitation Act claim, Hughes does not provide any facts that demonstrate Plaintiff previously litigated an ADA or Rehabilitation Act claim against IDOC.

## IV. SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non[]moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non[]moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the non[]moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. Discussion

As earlier noted, a Rehabilitation Act claim requires a plaintiff to show that he is a qualified person, with a disability and a state agency denied him access to a program or activity because of his disability. *Wagoner*, 778 F.3d at 592. The crux of the parties' dispute concerns the interpretation of Plaintiff's Rehabilitation Act claim.

Defendant Hughes asserts that Plaintiff's Rehabilitation Act claim fails because it focuses on the type of mental health care provided instead of discrimination based on the denial of access to a program or activity because of Plaintiff's disability.

In support, Hughes relies on the Illinois Southern District Court's unpublished decision in *Wallace v. Jeffreys*, which concluded:

> [Plaintiff] argues that the Defendants created his mental disability by placing him in prolonged segregation, and then they failed to accommodate his dwindling mental health by keeping him in segregation *because of* his mental health. Plaintiff was originally placed in segregation for discipline and to maintain safety and security. Plaintiff has not identified any specific evidence that shows he was kept in segregation because of his mental health, either when he was first placed or later when he was kept segregated. Thus, Plaintiff was not housed in segregation because of his disability, and he was not deprived of services or programs *based on* his disability.

2023 U.S. Dist. LEXIS 28725, *74-75, 2023 WL 2138337.

As in *Wallace*, Plaintiff's Rehabilitation Act claim is that Anthony's mental disability caused him to commit acts of misconduct, which affected his placement in segregation. As a result, Plaintiff's mental health deteriorated, which further caused him to

engage in self-mutilation and staff assaults, lengthening his time in segregation and his prison sentence.

From this basis, Plaintiff states that IDOC failed to provide Anthony "the reasonable accommodation of inpatient psychiatric treatment," which deprived him "of access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services. (Doc. 82 at 23:70.)

Plaintiff acknowledges that she does not assert that Anthony did not receive any medical care. Instead, she claimed that Anthony's "mental healthcare was ineffective because it was administered while he remained in disciplinary segregation." (Pl. Res., Doc 304 at 148.) Of note is the absence of any facts demonstrating discrimination by IDOC based on Anthony's mental health disability. Instead, Plaintiff asserts that Anthony was not given special consideration in the form of a referral to an inpatient facility. In this regard, the parties do not dispute that no medical or mental health professional recommended that Anthony be transferred to an outside mental health facility to receive medical or mental healthcare. (*Id.* at 31:74.) Regardless, the Rehabilitation Act does not create a remedy for medical malpractice

or incompetent treatment of medical or mental health conditions. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

Accordingly, given Plaintiff's concessions, the Court grants Defendant Hughes' Motion for Summary Judgment.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment (Doc. 288) is GRANTED.**

2) **The Court directs the Clerk to substitute Latoya Hughes, in her official capacity as the IDOC director, for Rob Jeffreys.**

3) **The Clerk is DIRECTED to terminate John Baldwin, Sylvia Butler, Dr. Jamie Chess, Dr. Melvin Hinton, Latoya Hughes, Terri Kennedy, Michael Melvin, Sonja Nicklaus, Shane Reister, Emily Ruskin, Jeff Sims, John Varga, and Justin Wilks as Defendants.**

ENTERED September 4, 2025.

s/ *Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE