IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Maurisa Gay,<br><br>  Plaintiff,<br><br> v.<br><br>Latoya Hughes *et al.*,<br><br>  Defendants. | Case No. 1:19-cv-01133-SEM-EIL<br><br>Judge Sue E. Myerscough<br><br>Magistrate Judge Eric I. Long |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

  Plaintiff Maurisa Gay respectfully moves the Court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for reconsideration of the order entered on September 4, 2025 granting in full the motion for summary judgment filed by Defendant State of Illinois. ECF No. 334 (the "Opinion"). Plaintiff understands that motions to reconsider are generally disfavored. But here the Court overlooked key aspects of Plaintiff's claim under the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act (the "RA") and improperly rejected Plaintiff's disability claim. Thus, this is a rare case in which reconsideration is necessary because the court has overlooked or misapprehended the theories in issue and the facts supporting them. *See generally Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

## BACKGROUND AND PROCEDURAL HISTORY

### Complaint Allegations and Discovery

Counts II and III of Plaintiff's operative complaint allege claims under the ADA and the RA, respectively. *See* ECF No. 82, at 19-24. The complaint articulates several bases for disability relief, including one—for **failure to accommodate Anthony Gay's mental health disability in IDOC's disciplinary process**—that the Court overlooked and did not address in the Opinion. Paragraph 67 of the complaint alleges:

> Based on their ongoing discriminatory policies, Defendants further failed to accommodate Anthony's disabilities *in the IDOC's disciplinary processes*, and they discriminated against him by deliberately isolating him on account of his mental illness.

ECF No. 82 ¶ 67 (emphasis added). This theory—that IDOC had failed make reasonable modifications in the disciplinary process to accommodate Mr. Gay's disabilities, which kept him in segregation—was grounded on multiple factual allegations in the complaint. The complaint alleged that, because of his disability, Mr. Gay "could not maintain good behavior . . . because he suffers from mental illnesses . . . [which] . . . caus[ed] [Mr. Gay] to act erratically and break prison rules," *id.* ¶ 31, to which "prison officials" responded by imposing "more than 150 years of 'solitary time' meted out by IDOC as a result of his disciplinary infractions," *id.* ¶¶ 37-38.[1] The complaint also charges that Mr. Gay's disability

---

[1] *See also* ECF No. 82, ¶ 5 "Anthony served years in disciplinary solitary confinement because he exhibited behaviors that were a result of the fact that the Defendants had put a disabled person in solitary confinement."

could have been accommodated by a modification of the IDOC's disciplinary procedures: "*Even short of providing Anthony with the care he needed*, the Defendants . . . could simply have had Anthony let out of his solitary confinement cell to interact with other people. *Id.* ¶ 43 (emphasis added).

The complaint thus alleges that Mr. Gay had a disability (mental illness, ECF No. 82, ¶ 31) that substantially limited a major life activity (thinking and controlling his behavior, *id.* ¶¶ 31, 63), that resulted in rule breaking and discipline (*id.* ¶¶ 5, 37-38), and that the IDOC should have accommodated Mr. Gay's disabilities in the disciplinary process (*id.* ¶ 67), including by letting him out of solitary confinement (*id.* ¶ 43). And, as the complaint specifically notes in Paragraph 43, the IDOC should have done these things *separate and apart* from providing Mr. Gay with "the [mental health] care he needed." (*id.* ¶ 43). The complaint alleges that such a modification would have been reasonable (*id.* ¶ 43).

The complaint put forward a second disability claim as well, this one based on IDOC's **discrimination against mentally ill prisoners like Mr. Gay by refusing to provide them with off-site inpatient psychiatric treatment**. The Court specifically endorsed this claim in its ruling on IDOC's motion to dismiss. *See* ECF No. 44 at 10 (holding that "plaintiff state[s] a claim under the [ADA] by alleging that State Defendants denied [him] access to outside hospitalization but allowed inmates with physical injuries or illnesses to receive private care and instead, placed [him] in solitary confinement due to [his] mental disability." (citing *Andrews v. Rauner*, No. 18-cv-1101 2018 WL 3748401, at *5 (C.D. Ill.) (Myerscough,

3

J.)). The evidence showed that IDOC routinely referred prisoners with somatic illnesses for outside hospitalization when their medical needs exceeded the care that could be provided within the IDOC's walls, but refused to do the same for mentally ill prisoners, like Mr. Gay, who required inpatient psychiatric hospitalization.

## Summary Judgment Briefing

Plaintiff pressed both of these theories in the summary judgment briefing. *First,* Plaintiff marshaled the evidence supporting her disciplinary failure-to-accommodate theory. Her summary judgment response set out facts showing a trial is warranted as to whether Mr. Gay's rule breaking was "a product of his mental illness and was not voluntary," thus identifying Mr. Gay's relevant disability. *See* ECF 304 at 127-28. She set out the facts showing that she is entitled to a trial as to whether Mr. Gay required an accommodation of this disability by modifying the IDOC's disciplinary procedures to remove him from disciplinary segregation. These facts included the expert opinion of Plaintiff's expert, Dr. Terry Kupers, that Mr. Gay's disability made him unable to engage in pro-social behavior and required removal from disciplinary segregation as an accommodation. ECF 304 at 129-30. Plaintiff also marshaled facts showing that removal from disciplinary was a reasonable disciplinary modification: in the last few months of his incarceration, the State *did* remove Mr. Gay from disciplinary segregation, and Mr. Gay did well in the prison's general population. ECF 304 at 130.

4

Plaintiff's brief then tied these facts to her legal theories under the RA and the ADA. *See* ECF 304 at 135-142. Plaintiff emphasized that the focus of her ADA claims was on the IDOC's failure to modify its *disciplinary* rules in order to accommodate Mr. Gay's disability, *i.e.* his inability to engage in the pro-social behavior required to earn his way out of disciplinary segregation. As Plaintiff put it, her theory was that "in failing to alter the application of the IDOC's *disciplinary* rules on Mr. Gay, the State failed to provide a reasonable accommodation for his disability . . . ." ECF 304 at 138 (emphasis added).

*Second,* Plaintiff's summary judgment submission also pressed her disability discrimination claim based on IDOC's failure to send Mr. Gay offsite for in-patient mental health treatment. *See* ECF No. 304 at 133-34. Plaintiff pointed to the evidence she had marshaled showing that Mr. Gay's treaters had designated him as requiring an "inpatient level of care," which under the State's written policies was a level of care that required outside hospitalization. *Id.* at 134. And, Plaintiff noted, the State conceded that in contrast to mentally ill prisoners requiring psychiatric care, the State referred prisoners with somatic ailments outside the IDOC when their needs exceeded the care that could be provided within the IDOC's walls. *Id.*

### The Summary Judgment Ruling

This Court did not address either of these theories in the summary judgment Opinion. *First,* the Court treated Plaintiff's failure to accommodate claim as limited only to a different proposition—that IDOC had failed to provide *adequate psychiatric care* as a disability accommodation. Reading the claim as limited only to

5

that theory, the Court held that Plaintiff's claim should be dismissed because it sounded in medical malpractice, rather than failure to accommodate a disability. *See* ECF No. 334 at 15-16.

*Second,* the Opinion did not mention that Plaintiff had briefed and was pressing a claim for disability discrimination based on IDOC's failure to provide Mr. Gay with offsite in-person mental health treatment. The Opinion did point to evidence that no mental healthcare provider "recommended" that Mr. Gay be transferred to an outside mental hospital. *See id.* But the opinion made no reference to the additional record evidence that, notwithstanding the lack of a "recommendation" for outside treatment, Mr. Gay's mental health treaters had repeatedly identified Mr. Gay as requiring an "inpatient level of care," a formal level-of-care designation that was reserved for patients who "require a level of treatment that exceeds the level of care that the Department is able to provide *and results in commitment to outside facilities.*" *See* ECF 304 at 83 ¶ 20. This was *the* method by which a mental health provider operating within the IDOC's rules could "recommend" an outside mental health referral. But, by policy, IDOC ignored this designation and did not refer Mr. Gay out for care. *See, e.g.*, ECF 304 at 83 ¶ 20 (IDOC's "inpatient" designation identified patients whose needs could not be met within the IDOC and who required outside referral); at 87 ¶¶ 46 (mental health caregivers in the IDOC had no other means of referring their patients to an outside psychiatric hospital, even if they needed it).

Plaintiff seeks reconsideration of these rulings.

## LEGAL STANDARD

It is true, and Plaintiff acknowledges, that motions for reconsideration are rarely granted. Nonetheless, there are occasions when a reconsideration motion pursuant to Rule 59(e) "performs a valuable function" because a court "has made an error not of reasoning, but apprehension," *Bank of Waunakee*, 906 F.2d at 1191, which happens when the court "overlooked or misunderstood something." *Hickory Farms, Inc. v. Snackmasters, Inc.*, 509 F. Supp. 2d 716, 719 (N.D. Ill. 2007). In that circumstance, a motion for reconsideration enables a court to correct its oversight, "thereby avoiding unnecessary appellate procedures." *Bhandari v. Outagamie Cnty.*, No. 23-C-986, 2025 WL 2589702, at *1 (E.D. Wis. Aug. 25, 2025) (citing *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986)).

Whether to grant reconsideration is committed to the discretion of the court, *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996), and when courts do determine that they have overlooked a fact or misapprehended an argument or theory, they are receptive to motions for reconsideration. *See, e.g.*, *Brown v. McKinney*, No. 3:23-CV-4057, 2024 WL 4449978, at *2 (S.D. Ill. Oct. 9, 2024) (granting motion for reconsideration of a dismissal order after the court concluded that it had "misconstrued or overlooked [plaintiff's] allegations about the alleged reason for some of the retaliatory conduct"); *BP Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 857 (N.D. Ill. 2007) (granting motion to reconsider dismissal of fraud claims after concluding that "in examining the fraud claim . . . , we continued to focus on the extra-

contractual misrepresentations, thereby misunderstanding Flint Hills' argument and misconstruing the issue."); *Rigsby v. Am. Fam. Mut. Ins. Co.*, No. 14-CV-23, 2014 WL 3122285, at *1 (W.D. Wis. July 8, 2014) (granting motion to reconsider dismissal of breach of fiduciary duty claim where the court concluded that it had "overlooked plaintiff's allegations that [certain] defendants . . . were plaintiff's accountants at the relevant time . . . ."); *Brand v. Comcast Corp. & Comcast Cable Commc'ns Mgmt., LLC*, No. 12 CV 1122, 2016 WL 738451, at *4 (N.D. Ill. Feb. 25, 2016) (granting motion for reconsideration of summary judgment where plaintiffs had "draw[n] attention to the court's misapprehension of the facts presented" regarding certain disputes in the case).

## ARGUMENT

Plaintiff seeks reconsideration of the Court' summary judgment ruling on two grounds. *First,* the Opinion incorrectly assumed that Plaintiff's disability claim for failure to accommodate Mr. Gay's mental illness in the IDOC's disciplinary system was nothing more than a misdirected claim for medical practice and dismissed the claim without considering the contours of the claim Plaintiff was actually pressing. *Second,* the Opinion also failed to take account of Plaintiff's disability discrimination claim based on the failure to transfer Mr. Gay for in-patient psychiatric care and compounded that failure by failing to consider the evidence that Mr. Gay had been identified by his caregivers as in need of such care.

A. **The Court should reconsider the Opinion and allow Plaintiff to proceed to trial on her claim that State failed to accommodate Mr. Gay's disability by modifying its disciplinary system to address Mr. Gay's inability to conform to the rules.**

Plaintiff claims that Mr. Gay, who was mentally ill, was held in disciplinary solitary confinement because the State failed to make reasonable modifications to accommodate his mental illness in violation of the ADA and the RA. This is not a claim based on the inadequacy of the State's mental health treatment. It is a claim based on IDOC's failure to modify disciplinary rules that Mr. Gay was unable to adhere to—*i.e.,* a failure to accommodate Mr. Gay's disability. Simply put, Mr. Gay needed to be released from solitary confinement because his disability made it impossible for him to earn his way out of solitary through good conduct.

This theory—that IDOC violated federal disability law by failing to modify prison disciplinary rules to accommodate Mr. Gay's inability to engage in the pro-social behavior required to earn his way out of disciplinary segregation—is supported by decisions from around the country. *See, e.g.*, *Latson v. Clarke*, 249 F. Supp. 3d 838, 865-66 (W.D. Va. 2017) (person who claimed "increasingly severe and punitive conditions as a result of behavior that was a manifestation of his disabilities" stated claim under the ADA); *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1232 (M.D. Ala. 2017) (finding custody staff improperly punished incarcerated people with severe mental illness "without regard to the cause of the behavior"); *Biselli v. Cty. of Ventura*, No. 09-cv-8694, ECF 119 at 24, 2012 U.S. Dist. Lexis 79326, at **44-45 (C.D. Cal June 4, 2012) (placement in administrative segregation based on conduct specifically linked to mental illness, without input from mental

9

health staff, may constitute a violation of the ADA); *Scherer v. Pennsylvania Dep't of Corr.*, No. 2004-cv-191, 2007 WL 4111412, at *44 (W.D. Pa. Nov. 16, 2007) (because the misconduct that resulted in his placement in segregation may have been "a result of his mental illness. . . . [T]he lack of modification of [prison's] disciplinary procedures to account for . . . his mental illness possibly resulted in a violation of Title II of the ADA . . . .").

The Court made no mention of this theory of ADA/RA liability in the Opinion. The Opinion likewise disregarded that Plaintiff pled this theory of liability in the operative complaint. *See* ECF No. 82, ¶ 67. And the Opinion did not address the evidence and the arguments Plaintiff marshalled in support of this theory in her response to the IDOC's motion for summary judgment. *See* ECF No. 304 at 125-32. Instead, citing to another allegation in the operative complaint, the Court incorrectly presumed that Plaintiff was pursuing only an ADA/RA claim based on IDOC's failure to provide Mr. Gay "'the reasonable accommodation of inpatient psychiatric treatment,' which deprived him 'of access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services.'" Opinion at 15 (quoting ECF No. 82, ¶ 70).

The Court correctly quoted Paragraph 70 of Plaintiff's complaint. It is also true that, early in the case, Plaintiff proffered the theory that IDOC's failure to adjust the mental health treatment to accommodate Mr. Gay was in violation of federal disability law. But by the time of the summary judgment briefing, Plaintiff

10

had abandoned that theory. Instead, Plaintiff focused in her summary judgment response on the separate theory—articulated in paragraph 67 of the operative complaint—that the failure to accommodate the *disciplinary process* was in violation of the ADA and the RA.

Plaintiff's summary judgment response marshaled the evidence supporting this failure-to-accommodate theory: she described that Mr. Gay's rule breaking was "a product of his mental illness and was not voluntary," thus identifying Mr. Gay's relevant disability. *See* ECF 304 at 127-28. She explained that Mr. Gay required the accommodation of removal from solitary, citing in particular Dr. Kupers' opinion that Mr. Gay's mental illness disabled him from engaging in pro-social behavior and required removal from disciplinary segregation as an accommodation. ECF 304 at 129-30. Plaintiff's brief argued that these facts provide the basis for an ADA/RA claim. *See generally* ECF No. 304 at 125-32.

By granting summary judgment while not deciding Plaintiff's disability rights claim as Plaintiff had framed it in the summary judgment briefing, the Court deprived Plaintiff of the opportunity for a trial on a legally sufficient and factually supported theory of ADA/RA liability. Plaintiff's brief fully addressed IDOC's contention that the claim was defeated by *Wallace v. Jeffreys,* No. 17-CV-576-DWD, 2023 WL 2138337 (S.D. Ill. Feb. 21, 2023). As Plaintiff explained, in *Wallace* "Judge Dugan rejected [the plaintiff's] accommodation claim . . . because 'Plaintiff has not identified clear evidence of what accommodations might have been appropriate.'" ECF 304 at 140 n.7. By contrast in this case, Plaintiff emphasized that she "has

11

identified an appropriate accommodation, one that the State made for Mr. Gay, just far too late," *i.e.*, release from solitary confinement notwithstanding disciplinary his tickets. *Id.* The State's *Wallace* argument was its principal counter to Plaintiff's claim for failure to adjust the disciplinary system—and that argument does not withstand scrutiny.

Reconsideration is therefore appropriate. Summary judgment should be denied as to Plaintiff's failure-to-accommodate claim and Plaintiff should be afforded a jury trial on that claim.

**B. The Court should reconsider the Opinion and allow Plaintiff to proceed to trial on her claim that State discriminated against Mr. Gay and others who were disabled by mental illness through its refusal to transfer them for outside mental health treatment.**

Plaintiff also contends that State discriminated against Mr. Gay in that it routinely referred prisoners with somatic illnesses for outside hospitalization when their medical needs exceeded the care that could be provided within the IDOC's walls, but refused do the same for mentally ill prisoners, like Mr. Gay, who required inpatient psychiatric hospitalization.

This Court endorsed that theory of liability in *Andrews v. Rauner*, which held that an IDOC prisoner stated a claim under the ADA when she alleged that the State "den[ied] her access to [mental health] hospitalization outside of the prison but allowed prisoners with physical injuries or illnesses to receive outside hospitalization." *Andrews*, 2018 WL 3748401 at *5. Plaintiff's brief cited *Andrews* and noted that the Court had already applied *Andrews* to this case, denying IDOC's Rule 12(b)(6) motion to dismiss based on that decision. *See* ECF No. 44 at 10.

12

The Court's summary judgment Opinion makes no explicit reference to this disability discrimination theory. Nor does it cite *Andrews*. The Court apparently concluded that the discrimination theory failed because "the parties do not dispute that no medical or mental health professional recommended that [Mr. Gay] be transferred to an outside mental health facility to receive medical or mental healthcare." *See* ECF 334 at 15. The Court correctly notes that Plaintiff's summary judgment response did not dispute the State's factual assertion that Mr. Gay was never "recommended" for outside hospitalization. *See* ECF No. 334 at 15 (citing ECF 304 at 31 ¶ 74, in which Plaintiff responded "Undisputed" to the State's factual assertion that "At no time did any medical or mental health treater recommend that Gay be transferred to a facility outside the IDOC . . . to receive either medical or mental health treatment.").

But Plaintiff's agreement that there was no formal "recommendation" for outside treatment only reflects the reality that IDOC's mental health caregivers *had no means to make such a recommendation within the rules created by the IDOC*. The summary judgment record also included ample evidence that Mr. Gay had been found to be *in need* of outside treatment. Plaintiff set out in her statement of facts that the IDOC used "formal level-of-care definitions that categorized the mental health needs of its patient population." ECF 304 at 83 ¶ 20. The highest designation in this system, Plaintiff explained, was "inpatient level of care," which was reserved for patients who "require a level of treatment that exceeds the level of care that the Department is able to provide *and results in commitment to outside facilities*." *Id.*

13

(emphasis added). And, Plaintiff noted, Mr. Gay's mental health treaters in the IDOC repeatedly classified him as requiring an "inpatient level of care." *See* ECF 304 at 17 ¶ 73; at 14 ¶36; 45 ¶ 85; at 56 ¶ 12; 96 ¶ 96. Finally, Plaintiff noted the evidence that mental health staff could not refer mentally ill prisoners to outside treatment even if they had very serious mental health issues. ECF 304 at 87 ¶ 46. *See also id.* at 73 ¶ 73; at 87 ¶ 44. The "inpatient" designation thus was *the means* by which a mental healthcare provider, operating within the IDOC's rules, could "recommend" that a patient be transferred out of the IDOC for mental healthcare. It was the State's policy in failing to make such transfers for Mr. Gay and other severely mentally ill prisoners even though mental health treaters had determined that the transfers were medically indicated, that Plaintiff challenged as a discriminatory policy. *See* ECF 304 at 111-19.

In the Opinion, the Court focused on the fact that Mr. Gay never obtained a formal "recommendation" for outside care. But the Court ignored the evidence that Mr. Gay had been repeatedly diagnosed by mental health staff as in need of such care. Thus, although the Court did not consider it, the record contains ample factual support for the theory that IDOC's no-mental-health-transfer policy—in the face of multiple diagnoses that Mr. Gay and other "inpatient" mentally ill prisoners required such outside referrals—discriminated against Mr. Gay on account of the very disability that he manifested.

For this additional reason, the Court should reconsider its Opinion and allow Plaintiff a jury trial on her disability rights claim against IDOC.

14

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its Opinion granting summary judgment to IDOC on Plaintiff's RA and ADA claims and allow those claims to proceed to trial.

Date: September 26, 2025                    Respectfully submitted,

/s/Locke Bowman

Jon Loevy
Locke Bowman
Gianna Gizzi
Loevy & Loevy
311 N. Aberdeen Street, Floor 3
Chicago, IL 60607
312-243-5900
locke@loevy.com
***Attorneys for Plaintiff***


Antonio Romanucci
Bhavani Raveendran
Stephen H. Weil
Sam Harton
Romanucci & Blandin, LLC
321 North Clark St., Suite 900
Chicago, IL 60654
(312) 458-1000
aromanucci@rblaw.net
b.raveendran@rblaw.net
sweil@rblaw.net
sharton@rblaw.net