44653/19344/JNR/JCS

# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| MAURISA GAY, as representative of the estate of ANTHONY GAY, deceased<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF ILLINOIS, JOHN BALDWIN, JEFF SIMS, SHANE REISTER, DR. DOE 1, MELVIN HINTON, SYLVIA BUTLER, KELLY ANN RENZI, WILLIAM PUGA, DR. CHESS, DR. NUNEZ, WEXFORD HEALTH SOURCES, INC., and DOES 2-5,<br><br>Defendants. | No. 19-cv-01133<br><br>Judge Sue E. Myerscough<br><br>Magistrate Judge Eric I. Long |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER

NOW COMES Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, CASSIDAY SCHADE LLP, and for its Motion to Reconsider the Court's Order denying Defendant Wexford's Motion for Summary Judgment, states as follows:

### INTRODUCTION

On September 4, 2025, the Court denied Defendant Wexford's Motion for Summary Judgment, finding that the Illinois Department of Corrections' Administrative Directive 04.04.100 provides that "Offenders who are determined to be mentally or emotionally disturbed *** shall have access to *** a specialized mental health setting when intensive services are clinically indicated or transfer to a licensed mental health care facility when the offenders needs exceed the treatment capabilities of the Department.'" Doc. 333 at 11, quoting 04.04.100. The Court stated Wexford claims "the availability of a specialized mental health setting within IDOC was nonexistent, which presents a factual dispute that should be resolved by a jury***." Doc. 333 at

12. The Court also says Wexford's briefing "does not address the alternative option of transferring a mental health patient to a licensed mental health care facility when the need exceeds IDOC's capabilities. *Id.*

## ARGUMENT

### A. Legal Standard

Defendant recognizes that strictly speaking a Motion to Reconsider does not exist under the Federal Rules of Civil Procedure. *Hope v. United States,* 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). However, Courts routinely consider such Motions under Rule 59(e) as Motions to Alter or Amend Judgment. *Hope,* 43 F.3d at 1142. A motion under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). Essentially, the purpose of Rule 59(e) is to allow the District Court to correct errors prior to burdening the Appellate Court. *Russell v. Delco Remy Division of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995); *see also* Fed. R. Civ. Pro. 54(b) (District Court may reconsider any interlocutory order at any time); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269 (7th Cir. 1996) (*Motions for Reconsideration, "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence").

### B. There is No Dispute IDOC Has Specialized Mental Health Settings

First, there has never been any dispute in this case about whether IDOC had "a specialized mental health setting" in IDOC within the meaning of IDOC's administrative directives at Pontiac and Dixon, as it has had residential treatment units for many years, including those that housed Gay. "Specialized mental health setting" has been defined within IDOC's directives for many years as "a Department facility *or unit* that specializes in mental health." (Emphases added). Doc.

286-44 at 18 (04.04.101, eff. 2005). This directive makes clear that a "specialized mental health setting" exists within IDOC, as it explains that patients returned to general population, unless transferred within the same facility, shall undergo certain screening requirements and reevaluation timetables. *Id.* IDOC's Standard Operating Procedure for Mental Health (SOP) also makes clear that a specialized mental health unit exists in IDOC, as it references transfers there. *See* Doc. 286-44 at 32 (explaining components of IDOC mental health services include referral for admission to an appropriate IDOC Mental Health unit or Specialized Unit for those offenders whose Mental Health needs exceed the treatment capabilities of General Population); Doc. 286-39 at 10, 13 (deposition of Melvin Hinton, pg. 37-38, 49-50 (explaining that administrative directive reference to transfer to specialized mental health setting within the Illinois Department of Corrections). The SOP includes a link to a "Special/Residential Treatment Unit Referral form," to transfer a patient to Dixon Special Treatment Unit, Pontiac Mental Health unit, or Logan Mental Health Unit. Doc. 286-44 at 40.

Second, testimony in this case confirmed the existence of IDOC special treatment units at Tamms, Dixon, and Pontiac. Dr. Jamie Chess was asked about this topic and confirmed that residential treatment unit "RTU" was synonymous with "specialized treatment unit":

> Q. Before 2015, Dixon did not have a residential treatment program?
>
> A. We always [at Dixon] had what was called a special treatment center in the X-House, which was always for mental health patients. That's always been the mission of Dixon. It wasn't formalized and called an RTU until 2015. Prior to that, it was---I think a lot of people referred to it as a specialized mental health setting."
> Doc. 300-2 at 14 (deposition of Jamie Chess, pg. 50-51).

Similarly, Dr. Renzi testified that Pontiac and Dixon served the severely mentally ill patients and "were the two facilities that had levels of care for RTU or special treatment units for residents that

had the most severe types of mental illness." Doc. 286-2 at 11 (deposition of Kelly Renzi, pg. 44, 49-50).

Gay's mental health records as far back as the year 2000 reflect the existence of specialized treatment units at Tamms and Dixon. On March 12, 2000, a psychiatrist determined Gay did not meet the criteria for transfer to Tamms Specialized Treatment Unit but that he should be transferred "to the Dixon Psychiatric Unit on a non-emergency basis for continued evaluation and subsequent treatment planning." Doc. 286-5 at 17 (report of Joseph Penn, M.D., pg. 17). This further supports the existence of these types of units as contemplated by IDOC's administrative directives.

Finally, IDOC's Chief of Mental Health testified IDOC has always had special treatment units:

> Q. Did IDOC utilize any transfers within the facilities to accommodate the needs of an inpatient level of care?
>
> A. Transfers. so the department has always had designated areas or designated facilities within areas -- within areas that an individual can ultimately be transferred to for more intensive service delivery hence special treatment. And I think in the AD -- a couple of the ADs that was referenced special treatment, slash, residential treatment units.· Dixon, Tamms, Pontiac, I think at one point in time Menard, Logan are all places that had designated special treatment centers or special, slash, residential treatment units." Doc. 286-43 at 1 (deposition of Melvin Hinton, pg. 246-47).

Indeed, the *Rasho* settlement agreement from 2016, a negotiated resolution to a statewide class action that substantially overhauled IDOC's mental health delivery system, recognized the existence of specialized mental health settings in IDOC. Specifically, section VIII of the agreement is titled "Transition of Offenders from Specialized Treatment Settings." Doc. 286-43 at 80. The agreement discusses patients going from general population or outpatient level of care from a "specialized residential treatment facility." *Id.* at 81. The agreement does not mandate the creation of specialized treatment settings, as it recognizes they already existed. Where a statewide

class action concerning mental health in IDOC that Plaintiff here has cited recognized IDOC had specialized mental health settings, no basis in this record exists for a jury to find otherwise.

Third, no dispute exists Gay was housed in the specialized mental health settings within IDOC at both Pontiac and Dixon. Dr. Renzi testified that during the time she cared for Gay at Pontiac he was designated inpatient level of care and lived on the RTU, receiving care equivalent to a hospitalized person who was to be seen minimally every seven days by both the psychiatrist and the psychologist and attend group therapy. Doc. 286-2 (deposition of Kelly Renzi, pg. 39-40, 49-50, 70-71, 86, 148-49). Plaintiff's expert Dr. Kupers, does not appear to dispute the existence of specialized treatment units in IDOC, as he comments Gay lived in one at Dixon. Doc. 286-47 at 9 (report of Terry Kupers, pg. 9). Not only did Gay live in one at Dixon, but he also spent years in one at Pontiac. Doc. 286-2 (deposition of Kelly Renzi, pg. 39-40, 49-50, 70-71, 86, 148-49); Doc. 268-5 at 44 (documenting Gay was recommended for transfer from Menard to Pontiac special/residential treatment unit on November 14, 2016. Doc. 286-5 at 44).

In its order, the Court noted "Defendant Wexford claims that the availability of a specialized mental health setting within IDOC was nonexistent." Doc. 333 at 12. Respectfully, Wexford did not intend to give the impression no specialized mental health setting existed in IDOC. Wexford pointed out that a dedicated and freestanding plant location for inpatient care did not exist in IDOC until IDOC opened one in 2018. Doc. 286 at 28, fn. 2, explaining steps IDOC took to construct a new inpatient facility. But that was not intended to suggest no specialized mental health setting existed before this construction. Instead, patients requiring elevated levels of care, including inpatient level, received them in IDOC before the dedicated inpatient unit opened in 2018. Doc. 286-28 at 41 (deposition of Scott McComick, pg. 161, explaining that in absence of a dedicated facility, the mental health team provided RTU or inpatient level of care). Patients

have been treated in specialized mental health units at Pontiac and Dixon (and Tamms before it closed) for many years. The dispute in this case is whether in the absence of a standalone inpatient facility, Wexford had a constitutional obligation to send Gay offsite for mental health treatment.

### C. Wexford's Motion Addresses its Inability to Transfer Patients to Offsite Mental Health Facilities

The Court's order indicates "Defendant Wexford's response does not address the alternative option of transferring a mental health patient to a licensed mental health care facility when the need exceeds IDOC's capabilities. Doc. 333 at 12. At page 28 of its Motion, Wexford argued "notwithstanding that IDOC clearly developed its own policies, to the extent Plaintiff alleges Wexford had contractual obligation to develop an inpatient solution in IDOC *or send IDOC patients to offsite mental health hospitals*, that is incorrect." (Emphases added). Doc. 286 at 28. In what followed, Wexford pointed out that IDOC's corporate representative in this case clearly and unequivocally testified Wexford was not expected to send patients offsite for mental health services. *Id.* at 29-30. Dr. Hinton's testimony was consistent with Wexford's 30(b)(6) representative, Dr. Gilldespie's, that Wexford staff could do no more than make a clinical recommendation as to what care they believed was appropriate for a patient, but they could not transfer the patient, as per Illinois law only IDOC could do that. *Id.* at 30-31. While Wexford staff have generated referrals in the past---though not for Gay---only one patient has been referred by IDOC to the Illinois Department of Human Services. *Id.* at 31.

This issue was further addressed in Wexford's argument that Plaintiff lacked evidence of deliberate indifference. *Id.* at 32. Wexford pointed out that in 2015 Wexford assisted IDOC in trying to find an offsite location that would take IDOC patients by contacting 87 Illinois hospitals to inquire whether they had the capability and willingness to accept IDOC inmates for inpatient mental health services. *Id.* at 33. All 87 facilities declined. While Wexford framed this as showing

the lack of deliberate indifference, it also addresses the Court's question about the option of transferring a mental health patient to a licensed mental health care facility.

### D. The Law of the Case Does Not Preclude Considering Wexford's Statute of Limitations Argument

Early in this case, Co-Defendants moved to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), as the applicable statute of limitations had run. Doc. 37. On September 16, 2019, Judge Colin Stirling Bruce denied Co-Defendants 12(b)(6) Motion to Dismiss. Doc. 44. Judge Bruce found that "[a]lthough further discovery may prove otherwise, at this stage of the proceedings, the Court is satisfied that the continuing violation doctrine tolls Plaintiff's claims against Defendants." *Id.* at 12. Judge Bruce explicitly noted that "further discovery" could bear on the issue of whether Plaintiff's claims were barred by the statute of limitations" and that his ruling was specific to "this stage of proceedings."

On March 23, 2020, Defendant Wexford filed a 12(b)(6) Motion to Dismiss based on Plaintiff's failure to bring claims against the same before the statute of limitations had run. Docs. 88, 89. Two important facts distinguish Defendants' 12(b)(6) Motion to Dismiss, from Co-Defendants' prior motion. First, Wexford was not included in Co-Defendants' prior motion to dismiss. *Cf.* Doc. 88, 89 with Doc. 44. Second, Wexford's Motion to Dismiss included additional arguments of both *facts* and *law* that were not present in Co-Defendants' motion to dismiss. Wexford's Motion provided a detailed history of Gay's history not of record in the previous briefing that demonstrated Gay understood his mental health treatment was not a continuing wrong but a series of discrete wrongs that were separately actionable. Doc. 89 at 7. Despite these distinctions, Judge Harold Baker denied Wexford's Partial Motion to Dismiss by finding the law of the case doctrine precluded the Court from disturbing Judge Bruce's September 2019, Order. Doc. 116, pg. 3.

Finally, on October 11, 2024, Defendant Wexford moved for summary judgment on events preceding October 28, 2016, as those events were outside the statute of limitations of Plaintiff's claims. Doc. 286, pg. 34-35. On September 4, 2025, the Court denied Defendant Wexford's Motion for Summary Judgment as to Wexford's statute of limitations argument, based on the law of the case doctrine. Doc. 333, pg. 13-14; citing Judge Bruce's and Judge Baker's orders, discussed *infra*. Notably, the Court found that the law of the case doctrine applied, and Wexford had not presented any "extraordinary circumstances" to justify the Court considering Defendant's arguments. Respectfully, the Court should reconsider its ruling.

The facts of this case are analogous to *Ivan v. Russell*, 2002 U.S. Dist. LEXIS 7224 (N.D. Ill., Apr. 22, 2002). There, a court denied Defendant's 12(b)(6) motion to dismiss concerning exhaustion, finding as a matter of law the plaintiff had exhausted his administrative remedies. *Id.* at *11. When Defendant moved for summary judgment on the issue of exhaustion, the plaintiff argued that the law of the case doctrine applied and prevented the Court from disturbing the prior ruling. The Northern District Court noted that was not the case:

> Ivan's second contention, essentially that the court's statements contained in an order denying a motion to dismiss, which can be invoked as law of the case, is similarly erroneous. The doctrine of law of the case provides, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *United States v. Feldman*, 825 F.2d 124, 130 (7th Cir. 1987) (citations omitted). The law of the case doctrine "'serves to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Id.* (citing 18 Wright, Miller & Cooper, Federal Practice and Procedure, § 4478, at 788 (1981 ed.)). The doctrine of law of the case has no application to the present issue of whether Ivan has exhausted prison grievance procedures.
>
> The court's statement, on which Ivan relies, stated: "even if PLRA applies to Ivan's situation, his administrative remedies are exhausted." (See Minute Order of June 30, 1999.) This statement was made in deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). At that stage of litigation, the Federal Rules of Civil Procedure serve to merely put a defendant on notice. A motion to dismiss does not test whether the plaintiff will prevail on the merits, but instead whether

the plaintiff has properly stated a claim. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); see also *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (analyzing *Leatherman v. Tarrant County*, 507 U.S. 163, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993)). In deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations liberally and view the allegations in the light most favorable to the plaintiff. *See Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir. 1994). Thus, "[a] complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations." *Moriarty v. Lewis Funeral Directors, Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) (internal quotations omitted).

The standard of decision which guides the court on a motion to dismiss is unrelated to the standard of decision which guides the court on a motion for summary judgment. The court now must review Ivan's complaint and determine whether he can come forward with the proof required to show that there exists a genuine issue of material fact that would warrant this case proceeding. See Fed. R. Civ. P. 56(c). Furthermore, the doctrine of law of the case concerns the determination of a question of law; however, in the present case the issue of whether Ivan had exhausted prison grievance procedures was not a question of law, but a question of fact. *Id.* at *11-14.

Although Defendant's argument in this case concerns statute of limitations, the situation is analogous to *Ivan*, if not more favorable to Defendant for several reasons. Here, the Court has *twice* applied the law of the case doctrine to decline to take up Wexford's argument that Plaintiff's claims against it (at least those predating October 28, 2016) are barred by the statute of limitations. First, Judge Baker relied on the law of the case doctrine in denying Wexford's 12(b)(6) Motion to Dismiss and now the Court has denied Defendant Wexford's Motion for Summary Judgment for the same reason. Defendant Wexford, however, was not part of Co-Defendants' original 12(b)(6) motion. To apply the law of the case doctrine from a ruling *that did not address* the application of the statute of limitations to Plaintiff's claims against Wexford is unfair. Wexford has never had its defense considered; it has been considered precluded from raising it due to Co-Defendants' Motion, which was substantially less detailed and void of Gay's litigation history.

Second, Judge Bruce explicitly limited his order's effect to the pleading stage and noted that "further discovery" could bear on the issue. In applying the law of the case doctrine to Judge Bruce's Order, the Court has overlooked its limited scope. Judge Bruce found that as a matter of law, under the 12(b)(6) standard favorable to Plaintiff, Plaintiff's claims were not barred by the statute of limitations. Again, however, Judge Bruce's Order does not address whether Plaintiff's claims against Wexford were or were not barred by the statute of limitations.

Finally, as noted in *Ivan*, the standard for ruling on a 12(b)(6) motion is very different from ruling on a Rule 56 Motion for Summary Judgment. Defendant is obliged to note that although the Court may have decided a matter of law when ruling on Co-Defendant's Motion to Dismiss, there has been no ruling *as a matter of fact* that Plaintiff filed these claims within the statute. The distinction is key here. Defendant Wexford, in its Motion for Summary Judgment, argued that the material, undisputed *facts* entitled it to judgment. That argument, premised on the facts identified in the "further discovery" that Judge Bruce referenced in September of 2019, has never been ruled on.

In short, the Court should reconsider its application of the law of the case doctrine to Defendant Wexford's Motion for Summary Judgment statute of limitations argument. The original ruling, upon which subsequent orders have relied, did not apply to Defendant Wexford. Even if Judge Bruce's Order did, however, he specifically allowed for consideration of additional facts and evidence based on "further discovery." Lastly, the distinct standards applicable to 12(b)(6) and 56 motions warrant independent review of Defendant's statute of limitations argument.

WHEREFORE, for the above reasons, Defendant respectfully requests this Honorable Court grant their Motion to Reconsider and grant such further relief as deemed appropriate.

Respectfully Submitted,

CASSIDAY SCHADE LLP

By:   s/ Joseph N. Rupcich
     One of the Attorneys for Defendants,
     WEXFORD HEALTH SOURCES, INC.

Joseph N. Rupcich
6283899
CASSIDAY SCHADE LLP
2040 West Iles Avenue, Suite B
Springfield, IL  62704
(217) 572-1714
(217) 572-1613 (fax)
jrupcich@cassiday.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2025, I electronically filed the foregoing Motion to Reconsider, with following receiving electronic notice through the Court's ECF.

Antonio M. Romanucci, Stephan D. Blandin
Samantha A. Harton, Stephen Weil, Paul McMahon
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
aromanucci@rblaw.net
sblandin@rblaw.net
jRodriguez@rblaw.net
sharton@rlaw.net

Jon Loevy, Arthur Loevy
Locke E. Bowman, Gianna Gizzi
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago IL 60607
arthur@loevy.com
jon@loevy.com
gizzi@loevy.com

Christopher J. Bergin
Still Law Group
1101 North Broadway, Suite 102
Oklahoma City OK 73103
cbergin@fulmersill.com

Alan Remy Taborga
Assistant Attorney General
1776 E. Washington Street
Urbana IL 61802

Phillip W. Rehani
Assistant Attorney General
100 W. Randolph, 13th floor
Chicago, IL  60601
Phillip.Rehani@ilag.gov

Robert T. Shannon
Thomas L. O'Carroll, No. 6243593
Ambrose V. McCall
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
(312) 704-3000
rshannon@hinshawlaw.com
tocarroll@hinshawlaw.com
amccall@hinshawlaw.com

Stetson F. Atwood, Laura Ieremia
Scott Kater, Monica L. Smit
Brian P. O'Kane
Donohue Brown & Smyth, LLC
131 South Dearborn Street, Suite 1600
Chicago, IL 60603
stetson.atwood@dbmslaw.com
shelly.harders@dbmslaw.com
ieremia@dbmslaw.com
becker@dmbslaw.com
okane@dbmslaw.com

                                           /s/ Joseph N. Rupcich

13468869