IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MAURISA GAY, as Special Representative of the Estate of ANTHONY GAY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-CV-1133 |
| v. | ) ) | |
| LATOYA HUGHES, et al., | ) ) | Judge: Sue E. Myerscough |
| Defendants. | ) | |

### DEFENDANT LATOYA HUGHES' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER

Over scores of pages of briefing and argument, IDOC[1] addressed the substantive legal deficiencies with Plaintiff's claims – all of them, constitutional and statutory. After a thorough review, this Court agreed with IDOC and entered a written order granting IDOC summary judgment. Now, Plaintiff argues that this Court overlooked certain aspects of her claims. Plaintiff is incorrect. She raised these same arguments in opposition to IDOC's motion for summary judgment, and IDOC explained why they fail, both as a matter of fact and of law. In its order granting IDOC summary judgment, this Court did the same: it acknowledged Plaintiff's theories and rejected them, using the same logic and reaching the same result as the United

---

[1] In her operative first amended complaint, Plaintiff alleged four counts against several IDOC officials, mostly in their individual capacities. (Doc. 82). Her Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims were alleged against one person, the official then charged with heading the Illinois Department of Corrections (IDOC), Rob Jeffreys. (Doc. 82 at 21-24). The Court's September 4, 2025 order substituted Latoya Hughes, the IDOC director, for Mr. Jeffreys, the former director; and granted summary judgment for all of the IDOC Defendants – John Baldwin, Sylvia Butler, Dr. Jamie Chess, Dr. Melvin Hinton, Latoya Hughes, Terri Kennedy, Michael Melvin, Sonja Nicklaus, Shane Reister, Emily Ruskin Jeff Sims, John Varga, and Justin Wilks. (Doc. 334 at 16). Plaintiff's motion for reconsideration only addresses the ADA and RA claims against Ms. Hughes. For ease of reference, she will be identified in this response as "IDOC." The ADA and RA claims are generally collectively identified as the ADA claims.

1

States District Court for the Southern District of Illinois in *Wallace v. Jeffreys*, 2023 U.S. Dist. LEXIS 28725 (S.D. Ill. Feb. 20, 2023). There are no manifest errors of law or fact. The motion for reconsideration should be denied.

I.    **Statement of Relevant Facts.**

Mr. Gay was incarcerated at several different IDOC facilities between January 1, 1998, and August 27, 2018. (SOF ¶1).[2] He had a long history of mental health issues, including episodes of self-harm predating his incarceration. (SOF ¶78). Mr. Gay also had a long history of disciplinary issues: between 1998 and 2018, Mr. Gay was determined guilty of 171 incidents of assault, 10 of which were categorized as violent; 320 incidents of intimidating or threatening behavior; and 46 incidents of sexual misconduct, including threats of rape. (SOF ¶¶ 45-47). Because of those institutional safety and security issues, Mr. Gay was placed in disciplinary segregation, away from the general prison population. (*See* Plaintiff's SOF ¶¶ 14, 18). That was a security-based decision: as Plaintiff acknowledged in her response in opposition to IDOC's motion for summary judgment, the "issuance of disciplinary tickets and the imposition of disciplinary segregation was a security determination, not a mental health determination[.]" (Doc. 304 at 118; *see id*. at 139 (stating that "Plaintiff does not seek to minimize Mr. Gay's misconduct")).

The imposition of disciplinary segregation did not prevent Mr. Gay from receiving mental health care. (SOF ¶¶ 38, 52, 56, 58-59, 63, 64, 65, 66, 68). On the contrary, as Plaintiff acknowledged, Mr. Gay received ongoing mental health and medical care from his Wexford care providers, including psychiatrists, psychologists, and licensed mental health providers who

---

[2] References to (SOF ¶ ___) are to the statement of facts in IDOC's motion for summary judgment.

2

developed and administered mental health treatment plans, crisis treatment plans, and behavioral treatment plans, throughout his incarceration. (SOF ¶¶ 68, 70, 72, 75-98; *see* Doc. 82 at ¶¶ 41-42). Plaintiff even acknowledged that Mr. Gay "tended to be seen by mental health staff more frequently than other prisoners[.]" (Doc. 304 at 126). At times Mr. Gay participated in the care offered (*see* SOF ¶¶ 75, 77, 87, 88, 93, 95); at others, he refused (*see* SOF at ¶¶ 89, 90, 91, 92, 94). But one crucial thing was always true: as Plaintiff admitted, none of Mr. Gay's Wexford mental health treaters recommended that he should be transferred to a facility outside of IDOC for care. (SOF ¶ 74; *see* Doc. 304 at 31). Without that recommendation, IDOC could not remove an inmate from a facility for mental health reasons. (SOF ¶ 44).

Plaintiff subsequently sued IDOC, Wexford, and many individuals affiliated with them, alleging violations of the Eighth and Fourteenth Amendments and violations of the ADA and RA. (*See* Doc. 82). Plaintiff claimed, among other things, that although Mr. Gay received mental health care, it was not adequate. (Doc. 82 at ¶ 42). Mr. Gay's Wexford treaters "were capable of providing [Mr. Gay] with the treatment he needed, or having him transferred out of IDOC facilities for inpatient mental health treatment," but did not do so. (Doc. 82 at ¶ 42(c)). In other words, she argued, they should have provided him with different care, or more aggressive care, as opposed to the care they *were* providing. (*See* Doc. 82 at ¶ 42; *see also id*. at ¶¶ 49-50, 68, 70). By not transferring Mr. Gay to an inpatient facility or providing him with effective treatment, Plaintiff alleged, both IDOC and the Wexford Defendants were deliberately indifferent to Mr. Gay's serious medical needs. (Doc. 82 at ¶¶ 50-52, 54-55).

Plaintiff's ADA and RA claims were premised on the same theory. (Doc. 82 at ¶¶ 63-72, 76-78). She alleged that Mr. Gay "required intensive inpatient psychiatric therapy" (Doc. 82 at ¶ 63), that IDOC failed to reasonably accommodate his disability by placing Mr. Gay in

3

segregation, and that because IDOC failed to "provide [Mr. Gay] with the reasonable accommodation of inpatient intensive psychiatric treatment, [Mr. Gay] was deprived of access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services." (Doc. 82 at ¶ 70). And Plaintiff alleged that Mr. Gay's placement in segregated housing violated his due process rights. (Doc. 82 at ¶¶80-81).

The IDOC Defendants moved for summary judgment on all of Plaintiff's claims. In Plaintiff's 151-page response (Doc. 304), she did not contest the dismissal of her Eighth Amendment claim against the IDOC Defendants and abandoned her Fourteenth Amendment claim. (Doc. 304 at 150; *see* Doc. 334 at 34). She challenged only IDOC's motion for summary judgment on her ADA and RA claims, maintaining that IDOC failed to reasonably accommodate Mr. Gay's mental health issues by not referring Mr. Gay for outside treatment and not altering its disciplinary rules as applied to him, only. (Doc. 304 at 132-42). This Court acknowledged, then rejected, those arguments. (Doc. 334 at 9, 13-16).

## II.     Motions for Reconsideration Are Only Appropriate to Correct Manifest Errors of Law or Fact, Neither of Which Happened Here.

Plaintiff raises her motion for reconsideration under Federal Rule of Civil Procedure 59(e), which allows a district court to alter or amend its judgment only "if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *See also Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *Vesey v. Envoy Air*, 2020 U.S. Dist. LEXIS 255275 (C.D. Ill. Mar. 12, 2020), *2. That phrase – *manifest error* – is key. *See Ace Hardware Corp. v. Marn, Inc.*, 2009 U.S. Dist. LEXIS 131173 (N.D. Ill. Jan. 28, 2009), *2. "A motion to reconsider is proper only when the Court has patently misunderstood a party, or has made a

4

decision outside the adversarial issue presented to the Court by the parties, or has made an error not of reasoning but apprehension." *Ace Hardware Corp.*, 2009 U.S. Dist. LEXIS, *2-3 (internal quotations and citations omitted). Motions under Rule 59(e) are *not* appropriate tools by which to advance arguments or theories that could previously have been argued, *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015); and they are "not appropriate vehicles to advance arguments already rejected by the Court," *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F.Supp.2d 1041, 1045 (N.D. Ill. 2005).

That is the fundamental problem with Plaintiff's motion. She seeks to advance the same arguments the parties fully addressed in the summary judgment papers. (*Compare* Doc. 304 at 132-42 *with* Doc. 336 at 8-14). She does not point to anything showing that this Court misapprehended the facts of this case, or misunderstood her arguments, or misapplied the applicable law. She merely rehashes the same points, relying on the same out-of-circuit cases and the same flawed legal arguments this Court already rejected. It is hardly unexpected that Plaintiff disagrees with this Court's conclusion, but her disagreement does not suggest manifest error. There was neither any failure to understand, nor any failure to consider. This Court concluded, after carefully evaluating Plaintiff's claims, that IDOC was entitled to summary judgment. For that and all the reasons discussed below, the motion to reconsider should be denied.

### III. This Court Correctly Found that Plaintiff's ADA and RA Claims Are Really Just Complaints About the Adequacy of His Mental Health Care.

Plaintiff's primary contention on reconsideration is that this Court failed to understand "the contours of the claim Plaintiff was actually pressing." (Doc. 336 at 8). On the contrary, this Court reviewed all of the papers filed by the parties, addressing those matters at length, then

5

accurately and succinctly summarized the Plaintiff's claims, and the legal inadequacy of those claims, in its order. This Court explained:

> Plaintiff's Rehabilitation Act claim is that Anthony's mental disability caused him to commit acts of misconduct, which affected his placement in segregation. As a result, Plaintiff's mental health deteriorated, which further caused him to engage in self-mutilation and staff assaults, lengthening his time in segregation and his prison sentence.

(Doc. 334 at 14-15). Exactly. That is the crux of Plaintiff's claims. (*See* Doc. 82 at 21-24). It is not that he was discriminated against because of his mental illness, but rather that he was not given mental health care adequate to address the behaviors that necessitated his placement in segregation. That was the crux of plaintiff's claims in *Wallace*, too:

> Defendants further argue that Plaintiff cannot make out a proper ADA or RA claim, because in essence in this claim he is just making a second attack on the adequacy of the mental healthcare he received, and an attack on the adequacy of care is not valid under the ADA or RA. Plaintiff counters that, his claim is not about the treatment he received, rather, "his claim is that by placing [him] in prolonged segregation, even after it became clear that he had become seriously mentally ill and that segregation was causing and aggravating his serious mental health issues, the IDOC Defendants failed to provide a reasonable accommodation for him that would not cause him to suffer further."

*Wallace*, 2023 U.S. Dist. LEXIS 28725, *72-73. After this Court carefully reviewed the operative allegations in Plaintiff's first amended complaint it correctly noted, like *Wallace* before it, that these are really just circular arguments rooted in a claim about the adequacy of the mental health care the inmate received. (Doc. 334 at 14). At core, Plaintiff's argument is that Mr. Gay's mental health care was not effective because it was administered to him in segregation. (Doc. 334 at 15; *see* Doc. 304 at 148). The only way in which IDOC could properly address Mr. Gay's mental health, Plaintiff theorizes, was by giving him a special accommodation: removing him from segregation. (*See* Doc. 82 at 22-23). And the only allegedly reasonable way that could

6

happen, according to the first amended complaint, was via "the reasonable accommodation of inpatient intensive psychiatric treatment[.]" (Doc. 82 at 23).

Plaintiff now maintains there was another option: simply releasing Mr. Gay into the general prison population. (Doc. 336 at 9-12). But as the Seventh Circuit has explained, the ADA is not implicated by a failure to give a special accommodation in this situation. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Mr. Gay has not alleged, and offered no evidence in support of any theory, that he was affirmatively discriminated against because he had a mental illness. Rather, he is complaining about *inadequate* or *incompetent* treatment of his mental illness, leading him to remain in segregation, which negatively impacted his mental health. As the *Bryant* court noted, the ADA does not create a remedy for inadequate or incompetent treatment; rather, that is a matter of medical malpractice. 84 F.3d at 249. And as *Wallace* reasoned: "Plaintiff has not identified any specific evidence that shows he was kept in segregation because of his mental health, either when he was first placed or later when he was kept segregated. Thus, Plaintiff was not housed in segregation because of his disability, and he was not deprived of services or programs *based on* his disability." 2023 U.S. Dist. LEXIS 28725, *74-75 (emphasis in original).

This Court correctly relied on the same logic. This is not a case in which Mr. Gay was denied access to care because of his disability. Rather, Plaintiff is complaining about a failure to give a special accommodation. Yet, there is no evidence that the failure to give that specific special accommodation – a transfer out of segregation – was based on Mr. Gay's mental health disability. Mr. Gay was removed from the general prison population as a matter of institutional safety and security, "crucial considerations in the management of a prison[.]" *Isby v. Brown*, 856 F.3d 508, 526 (7th Cir. 2017). He was not transferred to an inpatient facility because Mr. Gay's

7

mental health treaters never made that recommendation. (SOF ¶¶44, 74; *see* SOF ¶¶ 69, 70, 71, 73). That is why this Court correctly found Plaintiff's ADA and RA claims failed, and IDOC was entitled to summary judgment: because these claims were, at core, really just complaints about the adequacy of his care – medical malpractice claims.

### III. Plaintiff Failed to Show that IDOC Failed to Reasonably Accommodate Mr. Gay's Disability.

That fundamental problem defeats both of Plaintiff's arguments on reconsideration. Even if this Court were to look beyond that problem, though, Plaintiff's arguments still fail. Plaintiff has now forfeited her claims that Mr. Gay required the "reasonable accommodation" of a transfer to an inpatient care facility. And as discussed in IDOC's reply in support of its motion for summary judgment, nothing about Mr. Gay's placement in segregation resulted from discrimination based on his mental health issues or a failure to reasonably accommodate his disability.

#### A. Plaintiff Forfeited Her Second Motion to Reconsider Argument: She Abandoned Her Claim Alleging Failure to Transfer Mr. Gay for Inpatient Treatment.

According to Plaintiff, this Court "did not mention that Plaintiff had briefed and was pressing a claim for disability discrimination based on IDOC's failure to provide Mr. Gay with offsite in-person mental health treatment." (Doc. 336 at 6). Plaintiff is incorrect. This Court specifically discussed Plaintiff's *argument* that Mr. Gay was entitled to the reasonable accommodation of inpatient psychiatric care. (Doc. 334 at 14-15). This Court also specifically discussed in its summary judgment order (Doc. 334 at 15) the reasonable accommodation Plaintiff *alleged* Mr. Gay was entitled to in the first amended complaint: "inpatient intensive psychiatric treatment" (Doc. 82 at ¶70). However, as this Court observed, that recommendation was to be made by Mr. Gay's treaters, not IDOC. (Doc. 334 at 15). That those treaters never

8

referred Mr. Gay for inpatient treatment might create a medical malpractice question, but that could not be remedied via an ADA or RA claim against IDOC. (Doc. 334 at 15).

In her motion to reconsider, Plaintiff maintains this Court should reconsider its ruling. (Doc. 336 at 13-14). She argues that Mr. Gay's Wexford treaters "*had no means by which to make such a recommendation within the rules created by IDOC*." (Doc. 336 at 13, emphasis in original). Her argument, though, makes little sense, because Plaintiff also *expressly abandoned* her allegation that IDOC violated the ADA and RA by not referring Mr. Gay for inpatient care:

> The Court correctly quoted *Paragraph 70* of Plaintiff's complaint. It is also true that, early in the case, Plaintiff proffered the theory that IDOC's failure to adjust the mental health treatment to accommodate Mr. Gay was in violation of federal disability law. *But by the time of the summary judgment briefing, Plaintiff had abandoned that theory*. Instead, Plaintiff focused in her summary judgment response on the separate theory – articulated in paragraph 67 of the operative complaint – that the failure to accommodate the disciplinary process was in violation of the ADA and RA.

(Doc. 336 at 10-11) (emphasis added, original emphasis omitted). Plaintiff subsequently argues in the same, instant motion to reconsider that this Court *should* find that the failure to transfer Mr. Gay for inpatient care *was* a violation of the ADA and RA. (Doc. 336 at 12-14). But this Court cannot reconsider an otherwise expressly abandoned argument. Her argument fails on that basis, alone.

Setting aside both that this Court correctly rejected this theory in its summary judgment order, and that Plaintiff expressly forfeited this argument in her motion to reconsider, it is worth briefly addressing Plaintiff's additional arguments because they are not supported by the record. Plaintiff maintains that Mr. Gay was designated as requiring an "inpatient level of care, a formal designation that was reserved for patients who 'require a level of treatment that exceeds the level of care that the Department is able to provide *and results in commitment to outside facilities*.'" (Doc. 336 at 6, emphasis in original, citing Doc. 304 at 83, ¶ 20). That, she contends, means

9

IDOC was *required* to transfer Mr. Gay out for care, something it failed to do. (Doc. 336 at 6). Not so. The document on which Plaintiff relies for that statement is an April 17, 2014 IDOC proposal for long-term staffing, bed, and treatment space allocations as part of ongoing litigation. (*See* Doc. 301-13 at 2-26). It does not discuss *Mr. Gay's* treatment classification, does not mandate that *Mr. Gay* be referred to an inpatient facility for further care, and does not suggest that *Mr. Gay's* treaters were unable to provide him with adequate care in IDOC's facilities. Moreover, as Plaintiff conceded (*see* Doc. 304 at ¶ 66), at all times relevant to this litigation, IDOC had implemented interim policies specifying that "[u]ntil such time as the Department identifies a Psychiatric Hospital, an Enhanced Treatment Protocol shall be implemented for all Inpatient Level of Care offenders[,]" (Doc. 301-1 at 29), including much of the care Mr. Gay's mental health treaters provided him with in this case. Plaintiff conceded in her first amended complaint: no such facilities existed at the time of Mr. Gay's incarceration. (Doc. 82 at ¶ 42). Mr. Gay's Wexford treaters could have sought Mr. Gay's referral to an inpatient facility if they determined it necessary, she maintained, but none did. (Doc. 82 at ¶ 42).

Plaintiff also argues that, although she conceded that no mental health professional referred Mr. Gay for care at an inpatient facility, in fact Mr. Gay's treaters had no ability to make that referral. (Doc. 336 at 13). That claim, though, is at odds both with the facts established on summary judgment and Plaintiff's own claims. As Plaintiff alleged in the first amended complaint, "Wexford was capable of providing [Mr. Gay] with the treatment he needed, or having him transferred out of IDOC facilities for inpatient mental health treatment." (Doc. 82 at ¶ 42(c)). As Plaintiff admitted in her opposition to IDOC's motion for summary judgment, Mr. Gay's mental health treaters never referred him, or any other mentally ill inmate, for inpatient

10

care. (Doc. 304 at 124-26). She has theories about why IDOC should be blamed for that lack of referral, but the fact remains: no referral was ever made.

Fundamentally, Plaintiff maintains, her claim is that IDOC "discriminated against Mr. Gay in that it routinely referred prisoners with somatic illnesses for outside hospitalization when their medical needs exceeded the care that could be provided within the IDOC's walls, but refused to do the same for mentally ill prisoners, like Mr. Gay, who required inpatient psychiatric hospitalization." (Doc. 336 at 12). That statement neatly summarizes the problem with her claims against IDOC. IDOC does not treat somatic illnesses. IDOC does not treat mental illness. IDOC does not refer individuals with somatic illness for outside hospitalization. IDOC does not refer mentally ill inmates for inpatient care. Rather, IDOC contracts with healthcare providers to provide inmates with physical and mental health care and relies on those healthcare providers to make treatment recommendations. Even if this Court had misapprehended something about this issue, and even if Plaintiff had not forfeited this argument, there is no manifest error in the Court's analysis of this question.

**B.     Plaintiff Failed to Identify an ADA or RA Violation for Failure to Modify Disciplinary Rules.**

Finally, Plaintiff is not entitled to reconsideration of her theory that IDOC failed to reasonably accommodate Mr. Gay's disability by releasing him into the general prison population. (*See* Doc. 336 at 9-12). Plaintiff contends this Court must have overlooked this argument – an argument articulated for the first time in Plaintiff's response in opposition to IDOC's motion for summary judgment (Doc. 304 at 135-41), but rebutted at length in IDOC's reply (Doc. 310 at 43-51). She does not explain her claim in the context of the analytical framework used to evaluate ADA and RA claims but, instead, argues generally that Mr. Gay's

11

mental illness precluded him from following the rules and, therefore, entitled him to removal from segregation. (Doc. 336 at 9, 11-12).

The required analysis is not so simple. As this Court noted in its summary judgment order, to establish an ADA or RA claim, a plaintiff must show he is a qualified person, with a disability, and that he was denied access to a program or activity because of his disability. (Doc. 334 at 13, citing *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)). As *Wallace* observed, a plaintiff can also proceed on a theory that the prison failed to accommodate a need and the failure to accommodate deprived him of services or programs offered by the prison. 2023 U.S. Dist. LEXIS 28725, *73. IDOC explained in its reply that Mr. Gay is not a qualified person under the ADA and failed to show any lack of reasonable accommodation or denial of access to any programs or activities because of his condition. (Doc. 310 a 45-51). IDOC also incorporates that argument into this response – this Court's order granting summary judgment for IDOC was correctly made for all of the reasons discussed in IDOC's reply in support of its summary judgment motion.

A few of those arguments, though, bear repeating in this response. The most straightforward is premised on *Wallace*. The district court explained that plaintiff was initially placed in segregation for appropriate reasons: because of Mr. Gay's (many) disciplinary infractions and to maintain safety and security at the facility. *Wallace*, 2023 U.S. Dist. LEXIS 28725, *74. There, as here, plaintiff offered no evidence that he *remained* in segregation because of his mental health issues. *Wallace*, 2023 U.S. Dist. LEXIS 28725, *75. "Thus, Plaintiff was not housed in segregation because of his disability, and he was not deprived of services or programs *based on* his disability." *Wallace*, 2023 U.S. Dist. LEXIS 28725, *75 (emphasis in original). This Court quoted the same language from *Wallace* in its summary

judgment order. (Doc. 334 at 14). That is understandable. The same logic used in *Wallace* applies to Plaintiff's claims.

This Court also specifically noted the lack of any facts "demonstrating discrimination by IDOC based on Anthony's mental health disability." (Doc. 334 at 15). It is undisputed that Mr. Gay was placed in segregation, not because of his mental health issues, but because of his extensive disciplinary history. He was not treated worse because of his disability. He was not excluded from prison services, programs, or activities because of his disability. He was placed in segregation for the same reasons any other inmate would have been placed in segregation: because of concerns about institutional safety and security. As the Seventh Circuit has noted, "to the extent that an inmate continues to pose a threat to himself or others, ongoing segregation may well be justified." *Isby,* 856 F.3d at 526 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (noting that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry")).

Plaintiff ignores that problem, maintaining that Mr. Gay's misconduct was caused by his mental illness and, therefore, *any* discipline was necessarily based on his disability. Setting aside that the discrimination component cannot be so easily overcome, Plaintiff still has not identified a program or service to which Mr. Gay was denied access because of his disability. Her complaint is that he was kept in segregation, rather than in the general prison population. But as the Seventh Circuit reasoned in *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012), "incarceration is not a program or activity[.]" Some components of incarceration – things like meals and showers, or mental health care or hygiene – are. *See id*. But Plaintiff has cited no authority for the proposition that access to the general prison population *is* a program or service *a la* mental health care, or hygiene, or meals.

13

And even if Plaintiff could overcome that hurdle, she still runs afoul of another problem identified in *Wallace*. She failed to identify "clear evidence of what accommodations might have been appropriate." *Wallace*, 2023 U.S. Dist. LEXIS 28725, *75. In her motion to reconsider, Plaintiff addresses this problem for the first time, maintaining that an appropriate accommodation would be "release from solitary confinement notwithstanding [Mr. Gay's] disciplinary tickets[.]" (Doc. 336 at 12). But that, again, speaks to the circular nature of Plaintiff's claims. IDOC officials were reasonably concerned about institutional safety and security, so Mr. Gay was placed in segregation. Plaintiff maintains that caused Mr. Gay's mental health to deteriorate. But while in segregation, Mr. Gay was still given access to mental health care and services (care and services he sometimes refused). Had Mr. Gay's mental health providers determined that his disability required release from segregation, they could have referred him for inpatient care. They did not, so he remained in segregation.

And that, ultimately, leads back to the Court's summary judgment ruling. Mr. Gay remained in segregation for non-discriminatory reasons: because of institutional safety concerns, and because his mental health treaters did not refer him for other treatment. That does not speak to an ADA or RA violation. Plaintiff has not shown that IDOC denied Mr. Gay access to services or activities because of Mr. Gay's disability. At best, Plaintiff's claims may suggest an issue with the adequacy of Mr. Gay's treatment. But as this Court ruled, the ADA and RA do not "create a remedy for medical malpractice or incompetent treatment of medical or mental health conditions." (Doc. 334 at 16).

This Court's thoroughly considered and correctly decided summary judgment order should stand as initially issued. The motion to reconsider should be denied.

14

## CONCLUSION

WHEREFORE, the IDOC Defendants ask that this Court deny Plaintiff's motion to reconsider, and for any additional relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED,

/s/ *Stephen D. Mehr*
Stephen D. Mehr
*Counsel for IDOC Defendants*

Dated: November 10, 2025.

Robert T. Shannon
Thomas L. O'Carroll
Ambrose V. McCall
Stephen D. Mehr
Christian J. Michalik
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
(312) 704-3000
rshannon@hinshawlaw.com
tocarroll@hinshawlaw.com
amccall@hinshawlaw.com
smehr@hinshawlaw.com
cmichalik@hinshawlaw.com

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on November 10, 2025, the foregoing document was filed with the Clerk of Court for the United States District Court for the Central District of Illinois via CM/ECF. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                                   */s/ Stephen D. Mehr*