IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Maurisa Gay,<br><br>        Plaintiff,<br><br>   v.<br><br>John Baldwin *et al.*,<br><br>        Defendants. | Case No. 1:19-cv-01133-SEM-EIL<br><br>Judge Sue E. Myerscough |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR RECONSIDERATION**

Plaintiff's motion for reconsideration explained that the Court failed to apprehend the nature of her claims for failure to accommodate Anthony Gay's disability and for discrimination against Mr. Gay on account of his disability, brought pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). IDOC's response dances around this point, eliding the simple reality that the Court granted summary judgment under a misapprehension.

### A.  Plaintiff's failure to accommodate claim should proceed to trial.

Plaintiff is entitled to a jury trial based on IDOC's failure to accommodate Mr. Gay's disability, because she has proffered evidence supporting each element of that claim:

*Disability.* Mr. Gay had a disability (mental illness) that substantially limited a major life activity (thinking and controlling his behavior), which resulted in routine rule-breaking, which resulted in discipline (including continuous disciplinary segregation). ECF 304 at 137.

*Access to services, programs, activities.* Mr. Gay's inability to control his behavior left him confined in disciplinary segregation where he was unable to take part in the programs, services, and activities IDOC offers prisoners in general population. These included vocational and educational programs. They included human contact in a milieu with others. And they included access to effective mental healthcare. *Id.* at 140-41.

*Reasonable accommodation.* IDOC could have provided Mr. Gay with access to these services, programs, and activities by modifying its disciplinary regime for Mr. Gay and releasing him from segregation, permitting him to return to general population. *Id.* at 138.

As Plaintiff has explained, these are the basic elements of an ADA claim. *Id* at 133-36 (citing *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)). Plaintiff articulated these propositions in her complaint. At summary judgment she supported

1

each component with evidence and caselaw. But, as Plaintiff explained in her motion for reconsideration, the Court's summary judgment decision failed to apprehend this claim.

IDOC repeats its disproven contention that Plaintiff's ADA/RA accommodation claim really asserts medical malpractice. *See* ECF 345 at 6-7 ("At core, Plaintiff's argument is that Mr. Gay's mental healthcare was not effective because it was administered to him in segregation," which required "'the reasonable accommodation of inpatient intensive psychiatric treatment.'").

This pretends Plaintiff claims Mr. Gay was entitled to health care as an *accommodation*. But Plaintiff pressed at summary judgment that IDOC deprived Mr. Gay of access to effective health care as a *service*. The courts do indeed hold health care is not an *accommodation* under the ADA/RA. *See Bryant v. Madigan,* 84 F.3d 246 (7th Cir. 1996). But they are equally clear that under the ADA/RA health care is a *service*, from which disabled prisoners may not be excluded. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with . . . medical 'services'" among other programs and activities, "any of which disabled prisoners could [unlawfully] be excluded from participation in[.]").[1]

In this case, the *accommodation* that Mr. Gay required was a reasonable modification of IDOC's *disciplinary rules* that would permit his removal from segregation. The *services* of which Mr. Gay was deprived by the failure to make that modification were the various benefits afforded to prisoners in general population. Those included effective mental healthcare, to be sure, as well as vocational and recreational programming and, most fundamentally, basic human contact. *See* ECF 304 at 140-41 & n.8. Under the ADA/RA, it is axiomatic that prisoners with

---

[1] Under *Yeskey*, such ADA/RA cases are common. *See, e.g.*, *Bradley v. Baldwin*, No. 19-cv-0205-NJR, 2019 WL 1953962, at *3 (S.D. Ill. May 2, 2019) ("Plaintiff alleges that prison officials failed to allow him adequate opportunities to ambulate about the health care ward . . . with his walker. . . . Taking these allegations as true, the Court finds that Plaintiff was deprived of 'programs' protected by the ADA . . . ."); *Montanez v. Price*, 154 F.4th 127, 147 (3d Cir. 2025) (same; prisoner unable to access clinic due to paralysis).

2

disabilities are entitled to access such services when reasonable accommodation will enable it. *Yeskey*, 524 U.S. at 210. IDOC's attempt to muddy the waters on this issue, by harping that the ADA/RA does not entitle prisoners to effective health care as a disability *accommodation*, is a misdirection that ignores the settled interpretation of the ADA/RA.

*Wallace v. Jeffreys,* 2023 WL 2138337 (S.D. Ill. Feb. 21, 2023), which IDOC highlights, says no different. *Wallace* rejected an ADA claim because the plaintiff there failed to identify an accommodation other than provision of adequate mental health care, such that the plaintiff had not "show[n] he was kept in segregation because of his mental health." *Id.* at *24. In contrast, Plaintiff here has offered evidence that (1) Mr. Gay's disability made it impossible for him to control his behavior, which (2) caused him to break the prison's disciplinary rules, forcing him to remain him in segregation, while (3) a reasonable modification of the prison's disciplinary rules would have allowed Mr. Gay to be removed from segregation, (4) where he could access the programs and services available to prisoners in the general population. ECF 304 at 125-31. That element—identification of a reasonable, cognizable accommodation that the prison failed to provide—was missing in *Wallace* but is present in this case. In other words, Mr. Gay was kept in segregation "because of his mental health" in that IDOC failed to make reasonable accommodations in its disciplinary regime so as to enable Mr. Gay to have access the programs, services, and activities that IDOC provides to prisoners in its general population.

IDOC also points to Mr. Gay's discipline problems and insists he had to remain in solitary. ECF 345 at 13-14. But Plaintiff has offered evidence that a disciplinary accommodation *was* reasonable, ECF 304 at 129-30, including that IDOC made the accommodation when it released Mr. Gay from solitary in 2018—just far too late. *Id.* at 130-31. There is thus evidence on both sides, making the reasonableness of disciplinary accommodation a question for a jury.

In sum, the Court misapprehended the nature of Plaintiff's failure-to-accommodate claim and erroneously granted summary judgment.

### B. Plaintiff's disability discrimination claim should proceed to trial.

The Court also misapprehended Plaintiff's discrimination claim. Plaintiff claims Mr. Gay was discriminated against on account of his disability in that IDOC sent patients off-site for care of somatic ailments, but not mental illnesses. ECF 304 at 133-34. As Plaintiff's motion for reconsideration pointed out (and IDOC ignores), this Court endorsed that very claim when it denied IDOC's motion to dismiss in *Andrews v. Rauner,* No. 18-cv-1101, 2018 WL 3748401 at *5 (S.D. Ill. Aug. 6, 2018). After Plaintiff filed her reconsideration motion, this Court also denied IDOC's summary judgment motion in *Andrews*. *See Andrews v. Rauner*, No. 18-cv-1101, ECF 231 at 39-40 (Sept. 30, 2025).[2] Plaintiff's discrimination claim is viable. The Court's summary judgment opinion simply overlooked it. Plaintiff is entitled to a jury trial on this claim.

IDOC has no valid response. *First* it argues Plaintiff abandoned the claim Mr. Gay was entitled to the same opportunity for offsite treatment as prisoners with somatic ailments. ECF 345 at 9. But that refers to Plaintiff's agreement that her ADA/RA *accommodation* claim, *supra*, could not rest on the inadequacy of the mental health treatment itself. That has nothing to do Plaintiff's claim of *discrimination* in providing health care, which Plaintiff *did* press at summary judgment: namely, again, that IDOC transferred prisoners who required off-site somatic care while not transferring prisoners off-site for psychiatric care. ECF 304 at 133-34. That is why

---

[2] IDOC would presumably argue that the difference between the two cases is that the prisoner in the *Andrews* case received a formal transfer "recommendation," whereas Mr. Gay did not. In *Andrews*, however, the transfer "recommendation" came about because IDOC administrators were negotiating with the IDHS and asked psychiatry staff at Logan CC to develop several transfer "recommendations" to *assist them in those negotiations*. *See Andrews* ECF 181-13 (N. Ashely Dep.) at 59:3-60:10; 65:14-18. IDOC administrators thus effectively asked caregivers to "recommend" transfers for patients whom *they already believed required transfer*. The difference between *Andrews* and this case is not that the patient there was sicker, it was that IDOC brass happened to ask staff at Logan CC to generate "recommendations" for purposes of a bureaucratic negotiation. That fact should not be an outcome-determinative distinction.

Plaintiff cited *Andrews* itself in her summary judgment response. *Id*. She pressed this claim in opposition to summary judgment, she has a right to a trial on that claim.

*Second,* IDOC asserts that for patients designated as requiring an inpatient level of care, it implemented, as a matter of policy, an "enhanced" level of care that would be provided within its walls "until such time" as it identified an outside psychiatric hospital to make mental health referrals. ECF 345 at 10. That is not a defense. It is a confession. IDOC says, in effect, that when care givers identified a mentally ill patient as requiring outside care, IDOC's policy mandated that no outside referral occur. In the face of IDOC's policy to provide off-site transfers for prisoners with somatic ailments, IDOC all but admits that its policies were discriminatory.

*Third*, IDOC argues that the responsibility for outside health care transfers, somatic or psychiatric, lay with its contractor, Wexford. ECF 345 at 10. That is not a defense. "[The ADA] covers all governmental activities of public entities[,] even if they are carried out by contractors," and "liability for a contractor's conduct in such a case remains with the public entity." *Bradley v. Hain*, No. 23-cv-5020, 2024 WL 4753688, at *6 (N.D. Ill. Nov. 8, 2024) (quotations omitted).

\*   \*   \*

For the foregoing reasons the Court should grant Plaintiff's motion for reconsideration.

Date: November 17, 2025

Respectfully submitted,

/s/ *Paul McMahon*

Locke Bowman
Loevy & Loevy
311 N. Aberdeen Street, Floor 3
Chicago, IL 60607
312-243-5900
locke@loevy.com

Paul McMahon
Stephen Weil
Romanucci & Blandin, LLC
321 North Clark St., Suite 900
Chicago, IL 60654
(312) 458-1000
sweil@rblaw.net

*Attorneys for Plaintiff*

5