UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| MAURISA GAY, as personal representative of THE ESTATE OF ANTHONY GAY, deceased, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF ILLINOIS, JOHN BALDWIN, JEFF SIMS, SHANE REISTER, DR. DOE 1, MELVIN HINTON, SYLVIA BUTLER, KELLY ANN RENZI, WILLIAM PUGA, DR. CHESS, DR. NUNEZ, WEXFORD HEALTH SOURCES, INC., and DOES 2-5, <br><br> Defendants. | No. 19-cv-01133 <br><br> Judge Sue E. Myerscough <br><br> Magistrate Judge Eric I. Long |

## MOTION IN LIMINE CONCERNING *RASHO* LITIGATION

NOW COME the Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, CASSIDAY SCHADE LLP, and hereby submits its Motion in Limine Concerning *Rasho* Litigation, stating as follows:

### INTRODUCTION

In her exhibit list for trial, Plaintiff includes a long list of from *Rasho v. Baldwin,* CDIL No. 07-1298, a statewide Rule 23(b)(2) class action concerning mental health treatment in IDOC that has been pending for over 15 years. Specifically, Plaintiff lists PL Trial Ex. 10[1] (Second Amended Class Action Complaint in *Rasho v. Walker* dated April 2011); PL Trial Ex. 11 (*Rasho v. Walker* – Cohen Final Report from 2012); PL Trial Ex. 12 (Agreed Order dated May 2013); PL Trial Ex. 13 (Settlement Agreement dated May 2016); PL Trial Ex. 14 (Anthony Gay's testimony from 2018 *Rasho* Hearing), PL Trial Ex. 60 (April 17, 2014 IDOC Proposed Remedial

---

[1] Plaintiff's Exhibit List includes many duplicate versions of these same documents. Herein, Defendant references the first time the document is listed as an exhibit. The same analysis would apply to the duplicative exhibits at numbers 65, 73, 74, 107, 129, 133, 140, 147, 148, 170, 172, 180, 196, 197, 224, 225, 240, 255, 256, 298, 299, 318, 319, 375, 388, 389, and 390.

Plan); PL Trial Ex. 62 (First Annual Monitoring Report of Pablo Stewart dated May 22, 2017); PL Trial Ex. 63 (Mid-Year Monitoring Report of Pablo Stewart dated November 22, 2017); PL Trial Ex. 64 (Second Annual Report of Monitor Pablo Stewart dated May 27, 2018); PL Trial Ex. 66 (Baldwin August 27, 2018 Testimony in *Rasho*), PL Trial Ex. 139 (IDOC's Inpatient Status Report in *Rasho* dated October 6, 2014), and PL Trial Ex. 387 (Annual Report of Patterson dated August 21, 2014).

In addition, Plaintiff lists Pablo Stewart, a monitor assigned by the Court in *Rasho* as a witness. The admission of documents and testimony from an unrelated lawsuit to which Defendant was not a party is irrelevant and unfairly prejudicial. In a situation where the Court is considering documents from unrelated litigation for notice, the Seventh Circuit has cautioned such evidence "pose serious dangers" and that the Court should carefully balance their probative value against "the dangers of unfair prejudice." *Dean v. Wexford,* 18 F.4th 214, 234 (7th Cir. 2021).

## BACKGROUND

An understanding of *Rasho* is necessary to contextualize Plaintiff's proposed exhibits, which are cited throughout the "Background" section. In 2007, Ashoor Rasho, an IDOC inmate, filed a pro se §1983 case against several IDOC officials claiming that IDOC's treatment of his mental illness violated the Eighth Amendment. *Rasho v. Jeffreys*, 22 F.4th 703, 706 (7th Cir. 2022). After appointment of counsel, Rasho brought a class action complaint seeking declaratory and injunctive relief compelling IDOC to overhaul its mental-healthcare system. *Id.* While Wexford was originally a party to *Rasho,* claims against it were severed and it did not remain a named party beyond 2011. *Rasho v. Walker*, 2015 U.S. Dist. LEXIS 197353, *8 (CDIL September 18, 2015). On May 6, 2011, the court certified a class for settlement purposes. *Id.* at

8. Following settlement discussions between the plaintiffs and IDOC, the court entered an order on May 8, 2013 (Agreed Order). PL Trial Ex. 12. The stated purpose of the Agreed Order was "to facilitate a consent decree" in *Rasho*. To facilitate that consent decree, the Agreed Order required certain actions by IDOC and selection of a court monitor to monitor the obligations in the Agreed Order *Id.* Section III of the Agreed Order said that IDOC would assess its current mental health bed and treatment space at each prison, addressing the following issues:

  i.   The residential space required for crisis beds and MHUs;
  ii.  The provision of inpatient care;
  iii. The use of an entity already licensed, accredited and experienced in providing such inpatient care;
  iv.  The space required for confidential consultations with MHPs, individual and group activities, dayrooms, programs related to mental health staff treatment, and the required office space and equipment needed for staff;
  v.   A detailed plan on where such space identified in subparagraph (iv) is or may be located and whether such space may be available by renovation, construction, modular units, or in any other fashion; and
  vi.  A detailed plan which addresses target dates for the implementation of all bed/treatment space identified in the assessment. PL Trial Ex. 12 at 4.

Pursuant the Agreed Order, the court appointed Dr. Raymond Patterson as the independent monitor. *Id.* The Agreed Order said that once the assessment was complete the parties were to negotiate terms to be included in the consent decree related to bed and treatment space. *Id.*

On August 21, 2014, Dr. Patterson submitted his report (Patterson Report), to the district court. PL Trial Ex. 387. The Patterson Report's purpose is stated at page 1 as being pursuant to a May 8, 2013, agreed order "to facilitate a Consent Decree" in *Rasho*. PL Trial Ex. 387 at 1; *Rasho v. Walker*, 2015 U.S. Dist. LEXIS 197353, *12 CDIL September 18, 2015 (detailing extensive negotiations between *Rasho* plaintiffs and IDOC). In his report, Patterson says he toured Pontiac between November 18 and November 21, 2014, where Anthony Gay would have been housed at that time, although the report says nothing specific about observations or opinions concerning Pontiac. PL Trial Ex. 387 at 5. The Patterson Report bootstraps onto and

3

recounts the findings of an earlier report "the Cohen Report" done in 2012 that identified modifications/improvements the report's authors recommended IDOC make specified changes to its mental health system, including review of SMI inmates in segregation, revision of directives, development of a mental health services model and staffing plan, bed space, and treatment space needs and access to inpatient care. *Id.* at 3-4. In his Report, Patterson concluded that the Cohen Report's observations the IDOC system was inadequate was consistent with his assessment. Patterson stated that inmates "should be placed in crisis cells in infirmaries and possibly general population under observation for short periods of time, *i.e.,* ten days or less, for triage and treatment with transfer as appropriate to a licensed inpatient psychiatric facility." *Id.* at 6. Dr. Patterson said that the Cohen report in 2012 criticized the fact that inmates had no access to inpatient hospital beds, a situation that had not been remedied by August 2014. *Id.* He acknowledged that IDOC reported discussions with various entities, including private hospitals, Illinois Department of Mental Health, and Cook County concerning inpatient hospital beds. *Id.* at 7.

Patterson then discussed his criticisms of IDOC, primarily placement of SMI patients in segregation and inadequate staffing. *Id.* at 7-9. Patterson then did a detailed critique of IDOC's proposed remedial plan it had submitted in September 2013. *Id.* at 9. This critique addressed IDOC's remedial plan's goals to determine the current and future appropriate staffing levels for mental health care to SMI offenders and the current mental health bed and treatment space allocations necessary for SMI offenders. *Id.* Patterson then addressed IDOC's proposals to develop a youth center in Joliet "and possibly Logan Correctional Center" to use as inpatient facilities. *Id.* at 10. Patterson said this would not meet the Court's requirements in the Agreed

4

Order for a "licensed, accredited, experienced hospital and that a hospital environment component requires more than simply renaming a unit a 'hospital.'" *Id.*

On September 5, 2014, the district court directed IDOC to submit a report on the status of negotiations concerning inpatient bed space and specific target dates for providing inpatient bed space. On October 6, 2014, IDOC through the Office of the Attorney General, submitted an "Inpatient Status Report." PL Trial Ex. 139. The inpatient status report detailed IDOC's interagency agreement with DHS for 10 inpatient beds and ongoing discussions with public and private hospitals for bedspace. PL Trial Ex. 139 at 2-4.

Thereafter, *Rasho* plaintiffs and IDOC engaged in further rounds of settlement discussions in November 2014 and March 2015. *Rasho*, 2015 U.S. Dist. LEXIS 197353, *at 14-16. At a July 7, 2015, hearing, the court observed that settlement negotiations had broken down and that the case would proceed in a litigation posture. *Rasho v. Walker*, 2015 U.S. Dist. LEXIS 197353, at *16-17. The plaintiffs sought to certify a litigation class and decertify the settlement class. *Rasho v. Baldwin,* CDIL No. 07-1298, Docs. 216-217. The plaintiffs then sought to enforce the May 8, 2013, Agreed Order. *Rasho*, 2015 U.S. Dist. LEXIS 197353, at *16. IDOC opposed the plaintiff's motion to enforce the orders, arguing the order, including the Agreed Order, were mooted by the termination of settlement discussions. *Rasho v. Baldwin,* CDIL No. 07-1298, Docs. 245. The district court agreed with IDOC, observing the terms of the Agreed Order (under which Dr. Patterson was appointed) were entered into to facilitate settlement, and that because the parties had bilaterally abandoned settlement, it would not be appropriate to enforce the Agreed Order. *Rasho*, 2015 U.S. Dist. LEXIS 197353, at *17-18, 26-27.

Eventually, the parties' years of negotiations resulted in a May 2016 comprehensive settlement that obligated IDOC to make dozens of changes to its mental health-care system that

5

included implementation of a revised screening system for new inmates, providing individualized mental health treatment plans, and increasing mental health staff. *Rasho*, 22 F.4th at 706.

Allegations IDOC had not complied with the settlement agreement generated years more litigation. On January 12, 2022, the Seventh Circuit vacated a permanent injunction entered against IDOC concerning IDOC's compliance with the *Rasho* settlement agreement. *Rasho*, 22 F.4th 703. The Court found that contrary to the district court's finding of deliberate indifference by IDOC, the evidence established that, although its efforts to comply with the settlement agreement fell short, IDOC made reasonable efforts to cure the deficiencies in the five areas the plaintiffs had identified, demonstrating "a commitment to addressing the problem---the antithesis of the callous disregard required to make out an Eighth Amendment claim." *Id.* at 710, citing *Rosario v. Brawn,* 670 F.3d 816, 821 (7th Cir. 2012).

The *Rasho* plaintiffs have continued their attempts to revive a claim in *Rasho*, with a request to proceed with a Fifth Amended Complaint filed late last year. *Rasho v. Baldwin,* CDIL No. 07-1298, Docs. 3791. Just last month, the Judge Hawley dismissed the case in full, with prejudice and, in doing so, noted IDOC expended nearly $300 million in expenses in the first two years implementing the Settlement Agreement. *Rasho v. Baldwin,* CDIL No. 07-1298, Docs. 3794.

## ARGUMENT

Without question, the documents Plaintiff intends to introduce from the *Rasho* litigation are hearsay to the extent they are offered for the truth of what is contained within them. It is true the Seventh Circuit has recognized hearsay evidence can provide notice of constitutional deficiencies where the plaintiff produces substantive evidence the noticed deficiencies actually

6

existed. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 238 (7th Cir. 2021); *J.K.J. v. Polk Cty.*, 960 F.3d 367, 382 (7th Cir. 2020); *Daniel v. Cook Cnty.*, 833 F.3d 728, 735-36 (7th Cir. 2016). However, when a Court is considering documents from unrelated litigation for notice, the Seventh Circuit has cautioned such evidence "pose serious dangers" and that the Court "should carefully balance their probative value against" the dangers of unfair prejudice. *Dean,* 18 F.4th at 234 (reversing case based on error admitting expert report against Wexford from case against IDOC for notice due to unfair prejudice to Wexford).

Pertaining to admission of court monitor reports, *Dean* is instructive. *Dean,* 18 F.4th at 234-35, the district court admitted an expert report from an unrelated class action against IDOC---*Lippert.* The issue in *Dean* was whether Wexford's collegial review process unconstitutionally delayed the plaintiff's care and whether Wexford was deliberately indifferent to the risk. *Id.* at 237-38. Although dicta, the Seventh Circuit expressed significant skepticism that the 2014 *Lippert* report could be admitted consistent with Rule 403. *Id.* at 233. The Seventh Circuit recognized "the 2014 report poses significant dangers of 'confusing the issues' and 'misleading the jury' in this case." *Id.* It was clear on the undue prejudice of admitting the *Lippert* report:

> The 2014 report reflects the opinion of an independent court-appointed expert that collegial review causes systemic delays in medical care for Illinois inmates. In a case alleging systemic delays in medical care resulting from collegial review, telling jurors to ignore the truth of the report is somewhat "like telling jurors to ignore the pink rhinoceros that just sauntered into the courtroom." *Id.*, quoting *United States v. Jones*, 455 F.3d 800, 811 (7th Cir. 2006) (Easterbrook, J., concurring).

Here, like in *Dean,* any marginal probative value of the *Rasho* monitor reports is substantially outweighed by the danger of confusing the issues and misleading the jury. First, the benchmarks in the Agreed Order and 2016 settlement agreement on which the monitors monitored were not constitutional minimums. When this issue came before the Seventh Circuit

7

in *Rasho,* it said the 2014 Remedial Plan (PL Trial Ex. 60) could not be enforced against IDOC because "there is no evidence that the terms of the settlement and IDOC's staffing plan matched the constitutional floor." *Rasho,* 22 F. 4th 712-13. It stated the district court's order, enjoining IDOC to follow its agreement violated the Prison Litigation Reform Act:

> There is no evidence in the record establishing that these specific numbers correspond to the constitutional floor, yet the PLRA demands that injunctive relief "extend no further" than necessary to remedy the constitutional violation. By exceeding that limitation, the judge's order impermissibly strips IDOC officials of the flexibility necessary to adopt and implement policies that balance prison resources, safety concerns, and inmate health. *Id.*

The Seventh Circuit similarly found other aspects of IDOC's agreement with *Rasho* Plaintiffs were not enforceable:

> The judge's error goes beyond staffing too. The injunction requires, for example, that class members in segregation for 16 days or more be examined by mental-health staff at least every 7 days. That may be a valuable way of preventing the deterioration of a segregated inmate's mental health, but the Eighth Amendment does not require the most effective solution. *Rosario*, 670 F.3d at 822; *see also Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015) (holding that an injunction requiring air conditioning to decrease prison cell temperature violated the PLRA because the "plaintiffs are not entitled to the most effective available remedy; they are entitled to a remedy that eliminates the constitutional injury" [Citation omitted]. As in *Westefer*, the judge "mistakenly conflated what is constitutionally *adequate* ... with what is constitutionally *required*" and in doing so overstepped the bounds of the PLRA. [Citation omitted]. (Emphases in original). *Rasho,* 22 F. 4th 713.

Here, Plaintiff has claimed for nearly a decade Wexford violated Anthony Gay's rights by failing to provide inpatient-level mental health treatment within IDOC and by failing to transfer Mr. Gay offsite to receive inpatient psychiatric care. Doc. 82 at 7; Doc. 333 at 12. The Court will further instruct the jury Plaintiff must prove Wexford maintained policies that resulted in these violations.

Like in *Dean,* providing the jury with the back and forth between the *Rasho* plaintiffs and IDOC, along with the court monitor's opinions and asking the jury to consider these documents

8

only for "notice" ignores a substantial likelihood the jury will consider these documents for the truth of their contents. The jury is likely to consider the *Rasho* monitor's opinions substantively, despite the fact they were never subject to cross examination. Moreover, to the extent Plaintiff claims the settlement monitor pointed out in 2014 and IDOC did not dispute that IDOC had no offsite mental health hospitalization capacity, that is not a key issue of dispute in *Gay*. Wexford's defense at trial will not be that it did not know there were patients appropriate for hospital level care. Its defense is that it had no contractual obligation or ability to transfer patients, including Gay, offsite for hospital level mental health treatment. This issue was addressed extensively in summary judgment briefing. *See* Doc. 286, Defendants' Motion for Summary Judgment, UMF 77-78 (Wexford assisted IDOC in contacting outside hospitals to try and find one that would take IDOC inmates for inpatient mental health services); Doc. 286-43, Defendants' Motion for Summary Judgment, Exhibit k, deposition of Melvin Hinton, pg. 235, explaining that IDOC did not expect Wexford to transfer inmates offsite for mental health treatment); Doc. 286-31, Defendants' Motion for Summary Judgment, Exhibit H, deposition of Christian Gillespie, pg. 29-37 (explaining that Wexford did not have the ability to transfer patients offsite for mental health care as that was IDOC's decision). Therefore, the admission of *Rasho* materials, with its confusing procedural history, will not add anything to this trial.

Seventh Circuit cases admitting reports as "notice" to a defendant were straightforward situations such as government investigations of the entity against whom the report was admitted. In *Daniel v. Cook Cnty.*, 833 F.3d 728, 730-31 (7th Cir. 2016), a detainee claimed the medical care at the Cook County Jail failed to meet constitutional standards as a matter of official policy, custom, or practice. To support his claim, the detainee offered as evidence a 2008 Department of Justice Report detailing systemic health care problems at the Jail and concluding the medical

9

care at the Jail was constitutionally inadequate in many respects, including in the areas of acute and chronic care, record keeping, and access to care. *Id.* at 732-33, 738-39. The plaintiff also offered an Agreed Order from the lawsuit that arose from the federal investigation and a report from a court monitor who reviewed the Jail's progress in meeting the terms of the agreed order. The district court considered the DOJ report and associated documents inadmissible hearsay and granted summary judgment to the Jail. *Id.* at 733.

The Seventh Circuit reversed the district court, finding the DOJ report constituted factual findings from a legally authorized investigation under Federal Rule of Evidence 803(8), noting DOJ conducted the investigation in accordance with its authority under the Civil Rights of Institutionalized Persons Act. *Id.* at 740. The Seventh Circuit observed DOJ prepared its reports based on extensive visits to the Jail in collaboration with consultants in use of force, corrections, correctional medical and mental health care, fire safety, and environmental health and after interviewing numerous staff and inmates. *Id.* Ultimately, DOJ officials and experts combined the statements and extensive inspections and review of documents, taking into account all available evidence. *Id.* Notably, the Seventh Circuit recognized that same DOJ reports had been found admissible in a number of other cases in the Northern District. It stated:

> There is a close fit between the factual and legal issues in a *Monell* claim based on a jail or prison's health care failings and this Report. As noted above, a plaintiff cannot ultimately prove a *Monell* claim at trial based on only his own case or even a handful of others. He must show systemic failings that reflect official deliberate indifference to the serious health needs of inmates. That is intended to be a demanding standard, and it is difficult, time-consuming, and expensive for most private plaintiffs to meet. Yet such systemic failings are exactly what the Department of Justice experts were looking for and found in Cook County. Compared to other forms of evidence of the overall quality of the jail's health care system, the Department of Justice Report seems likely to deserve considerable weight.
>
> The Report is not conclusive, of course. The defendants are entitled to a full opportunity to rebut it. But in litigating the constitutional adequacy of the Jail's

10

health care, this Report would seem to provide a thorough and reasonably trustworthy starting point. It would be difficult to replicate through ordinary processes of litigating individual private cases. There may be individual circumstances that might justify exclusion of the Report, perhaps because it is no longer sufficiently timely or does not fit sufficiently well the issues in a particular case. But the general presumption of admissibility in the text of Rule 803(8) has considerable force. *Id.* at 742; *see also Dixon v. County of Cook,* 819 F.3d 343, 346-49 (7th Cir. 2016) (finding same DOJ report admissible)

Since the *Rasho* documents are not official government investigations, they do not qualify under Rule 803(8). They are more similar to the *Lippert* reports in Dean, and while the Seventh Circuit has approved consideration of the DOJ investigations, virtually every Court in this circuit has refused to admit the *Lippert* Reports. *See Boyce v. Wexford Health Sources, Inc.*, 2017 U.S. Dist. LEXIS 61655, at *13-15 (N.D. Ill. Apr. 24, 2017); *Mathis v. Carter*, 2017 U.S. Dist. LEXIS 1156, at *13-16 (N.D. Ill. Jan. 5, 2017); *Diaz v. Chandler*, 2016 U.S. Dist. LEXIS 35450, at *38-41 (N.D. Ill. Mar. 18, 2016); *Perez v. Wexford Health Sources, Inc.*, 2019 U.S. Dist. LEXIS 192347, *22-24 (N.D. Ill. Nov. 6, 2019); *Bradford v. Wexford Health Sources, Inc.*, 2020 U.S. Dist. LEXIS 20133, *36-39 (N.D. Ill. Feb. 6, 2020); *Dean*, 18 F.4th at 214; *Ryburn v. Obaisi*, 2022 U.S. Dist. LEXIS 82380, *15-16 (N.D. Ill. May 6, 2022) ; *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617-618 (7th Cir. 2022) (declining to consider similar expert reports); *Williams v. Wexford Health Sources, Inc.*, 2022 U.S. Dist. LEXIS 163835, *27-28 (N.D. Ill. Sept. 12, 2022); *Taylor v. Wexford Health Sources, Inc.*, 2022 U.S. Dist. LEXIS 1 68500, *64-67 (N.D. Ill. Sept. 19, 2022); *Wells v. Dominguez*, 2022 U.S. Dist. LEXIS 225910 *24-25 (N.D. Ill. Dec. 15, 2022); *but see Gevas v. Obaisi*, 2022 U.S. Dist. LEXIS 209473, *20-22 (N.D. Ill. Nov. 18, 2022) (recognizing *Lippert* Expert Reports inadmissible hearsay if offered for truth of matter asserted but considering them for notice at summary judgment).

Second, IDOC steadfastly maintained it did not provide constitutionally inadequate mental health care in *Rasho*. The final settlement agreement in 2016 reflects as much, stating

11

that while the plaintiffs challenge the adequacy of the delivery of mental health services in IDOC, "Defendants expressly deny that they have violated any such constitutional or statutory rights." Exhibit A, settlement agreement, par. I(b). The settlement agreement continues that "[w]ithout conceding any infirmity in their claims or defenses, after extensive discovery, the parties have engaged in arms-length settlement negotiations to resolve the claims…" *Id.* at I(f).

As stated above, the Seventh Circuit has declined to find a constitutional violation in *Rasho*. In reversing the district court and vacating the injunction, the Seventh Circuit held as a matter of law, IDOC was not deliberately indifferent in its attempts to meet its obligations under the *Rasho* settlement agreement. *Id.* at 711. The Seventh Circuit found IDOC made reasonable, even if unsuccessful, efforts to improve mental health services in the five areas at issue and cure the staffing shortages. The Seventh Circuit noted that among other things IDOC increased the number of psychiatric providers, authorized unlimited overtime, paid travel stipends and supercompetitive salaries, and increased the use of telepsychiatry. *Id.* at 710. The Seventh Circuit observed that "[t]hese actions by IDOC administrators demonstrate a commitment to addressing the problem—the antithesis of the callous disregard required to make out an Eighth Amendment claim. *Id.* at 710-11 (citing *Rosario v. Brawn*, 670 F.3d 816, 822 (7th Cir. 2012) (affirming a grant of summary judgment to officers where their actions were "not perfect" but demonstrated an "overall picture" of "protection and compassion").

Finally, the *Rasho* settlement agreement unambiguously states "this Settlement Agreement may not be used as evidence of liability of lack of liability in any other legal proceeding." Exhibit A, settlement agreement, par. I(h). This reflects the *Rasho* parties' clear and unequivocal intent that their resolution of the case not be used in the precise manner Plaintiff herein intends. Plaintiff's apparent intention to call Dr. Stewart, who monitored the settlement

12

agreement, flies in the face of the *Rasho* parties' express agreement, and sets a precedent that, notwithstanding parties' explicit intent, their agreement and their monitor can be co-opted by any and all future litigants. In addition to this being profoundly unfair to Wexford, which was not at the table in *Rasho,* it will have a chilling effect on IDOC's ability to settle class claims.

Introduction of *Rasho* documents or the testimony of the *Rasho* monitor will result in a mini trial on the criticisms of the *Rasho* settlement monitor, with Defendant calling IDOC witnesses to rebut the opinions. This is the exact type of prejudice Rule 403 prohibits. *Blackmon v. City of Chicago*, 2025 U.S. Dist. LEXIS 199804, *9 (N.D. Ill. August 4, 2025) (prohibiting evidence of a witness' prior attempt to bribe a witness in another case a collateral issue that would devolve into a mini trial). Introduction of this trial-within-a-trial will confuse the issues and likely result in an incomprehensible morass for the jury.

## CONCLUSION

The Seventh Circuit has expressed significant reservations about the admission of expert monitor reports against third parties where those reports do not qualify as official reports under 803(8). District Courts have followed suit, nearly uniformly declining to admit the *Lippert* reports*,* which are the most obvious and analogous expert reports to the *Rasho* materials Defendants seek to exclude. *Rasho* never resulted in a finding of liability against IDOC, let alone Wexford. The prejudice of admitting these materials that would result from admitting these materials is manifest, including juror confusion, creating a mini-trial, and the ineffectiveness of any limiting instruction in controlling the harm. This case should be tried on the facts developed in discovery by the parties to this case, not by the documents created by entities who will not face the jury in this case. Plaintiff should be barred from introduction of

13

documents or testimony from *Rasho* and from calling the *Rasho* monitor Pablo Stewart as a witness at trial.

WHEREFORE, for the above reasons, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests this Honorable Court grant Defendants' Motion to Bar Admission of *Rasho* materials and for such further relief deemed appropriate.

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By:  /s/ Joseph N. Rupcich
            One of the Attorneys for Defendant
            WEXFORD HEALTH SOURCES, INC.

Joseph N. Rupcich
ARDC No. 6283899
CASSIDAY SCHADE LLP
2040 West Iles Avenue, Suite B
Springfield, IL 62704
(217) 572-1714
(217) 572-1613 (Fax)
jrupcich@cassiday.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 17, 2026, I electronically filed the foregoing Motion in Limine Concerning *Rasho* Litigation with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Antonio M. Romanucci, Stephan D. Blandin
Samantha A. Harton, Stephen Weil, Paul McMahon
Romanucci & Blandin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
aromanucci@rblaw.net
sblandin@rblaw.net
jRodriguez@rblaw.net
sharton@rlaw.net

Jon Loevy, Arthur Loevy
Locke E. Bowman, Gianna Gizzi
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago IL 60607
arthur@loevy.com
jon@loevy.com
gizzi@loevy.com

Christopher J. Bergin
Still Law Group
1101 North Broadway, Suite 102
Oklahoma City OK 73103
cbergin@fulmersill.com

Alan Remy Taborga
Assistant Attorney General
1776 E. Washington Street
Urbana IL 61802

Phillip W. Rehani
Assistant Attorney General
100 W. Randolph, 13th floor
Chicago, IL  60601
Phillip.Rehani@ilag.gov

16

Robert T. Shannon
Thomas L. O'Carroll, No. 6243593
Ambrose V. McCall
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
(312) 704-3000
rshannon@hinshawlaw.com
tocarroll@hinshawlaw.com
amccall@hinshawlaw.com

Stetson F. Atwood, Laura Ieremia
Scott Kater, Monica L. Smit
Brian P. O'Kane
Donohue Brown & Smyth, LLC
131 South Dearborn Street, Suite 1600
Chicago, IL 60603
stetson.atwood@dbmslaw.com
shelly.harders@dbmslaw.com
ieremia@dbmslaw.com
becker@dmbslaw.com
okane@dbmslaw.com

/s/ Joseph N. Rupcich

13664667