E-FILED
Tuesday, 17 February, 2026  07:31:25 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| MAURISA GAY, as personal representative of THE ESTATE OF ANTHONY GAY, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-CV-01133 |
| | ) | Judge Sue E. Myerscough |
| v. | ) ) | Magistrate Judge Eric I. Long |
| JOHN BALDWIN, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

I.      PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO BAR EVIDENCE OF OR REFERENCE TO MR. GAY'S ARRESTS AND CONVICTIONS ..........................................................1

II.     PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO BAR REFERENCE TO THIRD-PARTY WITNESS'S PAST CONVICTIONS, AND THE NAME AND NATURE OF THOSE CONVICTIONS..........................................................................................4

III.    PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO PROHIBIT USE OF UNDISCLOSED CRIMINAL CONVICTIONS AS IMPEACHMENT ..........................................................5

IV.     PLAINTIFF'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE MR. GAY'S JUVENILE RECORDS ........................................................................................................5

V.      PLAINTIFF'S MOTION *IN LIMINE* NO. 5 TO BAR EVIDENCE OF OR REFERENCE TO MR. GAY'S EXPERIENCES IN OTHER CARCERAL SETTINGS ........................6

VI.     PLAINTIFF'S MOTION *IN LIMINE* NO. 6 TO ADMIT MR. GAY'S TESTIMONY FROM THE *RASHO* LITIGATION ....................................................................8

VII.    PLAINTIFF'S MOTION *IN LIMINE* NO. 7 TO EXCLUDE UNSUBSTANTIATED, UNDULY PREJUDICIAL EVIDENCE OF AND REFERENCE TO MR. GAY'S DISCIPLINARY HISTORY ...............................................................................13

VIII.   PLAINTIFF'S MOTION *IN LIMINE* NO. 8 TO BAR EVIDENCE OF OR REFERENCE TO MR. GAY'S PRIOR GANG AFFILIATION...........................................................16

IX.     PLAINTIFF'S MOTION *IN LIMINE* NO. 9 TO BAR REFERENCE OR EVIDENCE OF ROMANTIC ATTACHMENTS MR. GAY FORMED TO FEMALE MENTAL HEALTH WORKERS IN PRISON..................................................................................17

X.      PLAINTIFF'S MOTION *IN LIMINE* NO. 10 TO MOTION TO BAR EVIDENCE OF OR REFERENCE TO MASTURBATION .......................................................................18

XI.     PLAINTIFF'S MOTION *IN LIMINE* NO. 11 TO MOTION TO BAR EVIDENCE OF OR REFERENCE TO "SEXUAL SADISM" ................................................................18

XII.    PLAINTIFF'S MOTION *IN LIMINE* NO. 12 TO EXCLUDE EXPERT OPINIONS FROM TREATERS FORMED OUTSIDE THE COURSE OF TREATING ANTHONY GAY ................................................................................................................19

XIII.   PLAINTIFF'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE ANY EVIDENCE THAT MR. GAY WAS HOMOPHOBIC, USED HOMOPHOBIC LANGUAGE, OR THOUGHT DEFENDANT NUNEZ WAS GAY ........................................................20

XIV.    PLAINTIFF'S MOTION *IN LIMINE* NO. 14 TO TREAT WEXFORD AND IDOC WITNESSES AS ADVERSE ................................................................21

XV.    PLAINTIFF'S MOTION *IN LIMINE* NO. 15 TO RESTRICT IMPROPER ARGUMENT REGARDING LIABILITY OF MULTIPLE PARTIES ....................................................22

XVI.    PLAINTIFF'S MOTION *IN LIMINE* NO. 16 TO BAR REFERENCE TO MISSING BOXES OF DOCUMENTS ...................................................................23

XVII.    PLAINTIFF'S MOTION *IN LIMINE* NO. 17 TO BAR IMPROPER ARGUMENT THAT PRISONERS ARE LITIGIOUS AND REFERENCE TO MR. GAY'S PRIOR *PRO SE* SUITS ......................................................................23

XVIII.    PLAINTIFF'S MOTION *IN LIMINE* NO. 18 TO BAR REFERENCE TO MR. GAY AND FORMER PRISONER WITNESSES AS CONVICT, CRIMINAL, OFFENDER, FELON, OR INMATE .....................................................................25

XIX.    PLAINTIFF'S MOTION *IN LIMINE* NO. 19 TO BAR IDOC WITNESSES FROM WEARING UNIFORMS OR OTHER CORRECTIONAL ATTIRE DURING TRIAL..26

XX.    PLAINTIFF'S MOTION *IN LIMINE* NO. 20 TO BAR IMPROPER ARGUMENT THAT MR. GAY WAS CONTRIBUTORILY NEGLIGENT ........................................26

XXI.    PLAINTIFF'S MOTION *IN LIMINE* NO. 21 TO BAR EVIDENCE OF EFFORTS TO SETTLE ...........................................................................27

XXII.    PLAINTIFF'S MOTION *IN LIMINE* NO. 22 TO BAR REFERENCE TO PLAINTIFF'S COUNSEL BEING FROM OUT OF TOWN ..............................................27

XXIII.    PLAINTIFF'S MOTION *IN LIMINE* NO. 23 TO BAR REFERENCE TO JURORS' PECUNIARY INTERESTS............................................................27

XXIV.    PLAINTIFF'S MOTION *IN LIMINE* NO. 24 TO EXCLUDE NON-PARTY WITNESSES FROM THE COURTROOM...................................................28

Plaintiff Maurisa Gay, through her attorneys, respectfully moves in limine for the following pretrial orders. In support thereof, Plaintiff states as follows:

## LEGAL STANDARD

Motions *in limine* are "an important tool" allowing for "expeditious and evenhanded management" of trials. *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Such motions "permit[ ] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.* The purpose is to "sharpen[ ] the focus of later trial proceedings and permit[ ] the parties to focus their preparation on those matters that will be considered by the jury." *Id.* The court has "broad discretion" when ruling on evidentiary issues presented in motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

## I.    MIL NO. 1: TO BAR EVIDENCE OF OR REFERENCE TO MR. GAY'S ARRESTS AND CONVICTIONS

Defendant Wexford Health Sources ("Defendant") has the burden to show that any arrest or criminal conviction it seeks to introduce is admissible under the Federal Rules of Evidence. *See United States v. Gomez*, 763 F.3d 845, 854 (7th Cir. 2014) (en banc) (proponent of evidence of prior bad acts must show evidence sufficient for jury to find prior bad act occurred); *Gomez v. County of Los Angeles*, No. 09-CV-02457, 2011 WL 13269747, at *2 (C.D. Cal. July 21, 2011) (proponent of evidence of prior conviction has burden to show prior conviction is admissible under Rule 609 and collecting cases).

Federal Rule of Evidence 609 creates an exception to Rule 404(b)'s prohibition on bad character or propensity evidence and allows for the introduction of certain past convictions to attack a witness's character for truthfulness. *See* Fed. R. Evid. 609(a). Felonies that are more

1

than ten years old are not admissible, unless the probative value substantially outweighs the prejudicial effect, and the proponent gives reasonable written notice of the intent to use it. Fed. R. Evid. 609(b). Admission of convictions that do not involve dishonesty or false statements are subject to the constraints of Rule 403, which in relevant part excludes evidence where its probative value is substantially outweighed by a danger of unfair prejudice, delay, and misleading the jury. Fed. R. Evid. 403, 609(a)(1)(A).

The Seventh Circuit has repeatedly expressed concern regarding unfair prejudice that might result from evidence of past convictions in civil rights cases. *See, e.g.*, *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990). Where there is a danger that evidence of the nature of a past conviction will cause unfair prejudice, the Seventh Circuit has approved of "sanitization" of prior convictions—i.e., permitting evidence that the witness was convicted of a felony but concealing the name of the crime. *See, e.g., Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009); *Pierce v. Ruiz*, No. 13-CV-6824, 2016 WL 5912890, at *3 (N.D. Ill. Oct. 11, 2016); *Matthews v. Debus*, No. 14-CV-6003, 2020 WL 891035, at *3 (N.D. Ill. Feb. 22, 2020) ("[F]or purposes of impeaching [plaintiff's] credibility, defendants may offer only the dates of the convictions and the fact that each of them is for a felony; they may not offer the sentences or the titles of the crimes.").

Mr. Gay has died, and so will be unavailable to testify at trial. Thus, there is not any usefulness in admitting evidence of his past convictions to attack his character for truthfulness as a witness. *See Grant v. City of Chicago*, No. 04-CV-2612, 2006 WL 8460591, at *10 (N.D. Ill. Aug. 4, 2006) (finding decedent's prior arrests and convictions were not relevant to his credibility, as decedent would not be testifying). The substantial risk that Mr. Gay's criminal convictions will prejudice the jury far outweighs the need to impeach him *in absentia*. Further, it will be obvious to the jury that Mr. Gay was incarcerated, as his claims concern his treatment in prison.

2

Evidence of Mr. Gay's crimes outside of those for which he was serving a sentence during the relevant period is cumulative in its prejudicial effect, and it has no purpose but to prejudice the jury; such evidence should be excluded in its entirety. Plaintiff will acknowledge that Mr. Gay was convicted of a felony and sentenced to serve a maximum of seven years in 1994. Plaintiff will also acknowledge that Mr. Gay accrued multiple felony convictions during his incarceration that lengthened his sentence. Evidence of the titles of the crimes from the period during which Mr. Gay was incarcerated, and details about those crimes, should be excluded because it is prejudicial and serves no proper purpose.

The risk of unfair prejudice from the felony convictions Mr. Gay received in custody is particularly acute. Between 2000 and 2004, Mr. Gay accrued 21 felony convictions in Livingston County, Illinois, during a time when the Livingston County prosecutor had a special willingness to prosecute prisoners for their conduct in custody. (Ex. A, Livingston County Cases Printout; Ex. B, Reveal Story, Feb. 18, 2023.) Livingston County repeatedly prosecuted Mr. Gay for aggravated battery on a peace officer, based on allegations of spitting and throwing fluids at officers—conduct that was directly related to Mr. Gay's mental health and isolated confinement. (*See e.g.*, Ex. C, Aggravated Battery charge from 10/29/2000 in Livingston County; Ex. D, Disciplinary Report for 10/29/2000 throwing bodily fluids, Bates Nos. 11861-11870). Plaintiff should not be required to explain to the jury why each of these convictions was tied to Mr. Gay's mental health, nor why the conduct alleged was not so grave as the title of the crime suggests. Instead, the Court should exclude evidence of these convictions from trial.

The Court should also exclude evidence of Mr. Gay's federal weapons possession conviction entirely, which occurred after his release from IDOC custody. As discussed, Mr. Gay will not be testifying at trial due to his death, and the jury already will know Mr. Gay was convicted

of multiple felonies. This conviction has no relevance to the issues at trial; indeed, it post-dates them significantly. Moreover, jurors hearing details of this conviction may have the misimpression that Mr. Gay participated in gun violence, when the conviction was for possession only. *See Barlow v. Riley*, No. 12-CV-2058, 2013 WL 2295447, at \*2 (C.D. Ill. May 24, 2013) (finding that evidence of past violent crimes posed particular risk of prejudice, and that jury would learn only that plaintiff was convicted of multiple felonies). The likelihood that evidence of this post-release conviction will prejudice the jury against Mr. Gay far outweighs any proper purpose it could serve at trial.

## II.     MIL NO. 2: MOTION TO BAR REFERENCE TO THIRD-PARTY WITNESS'S PAST CONVICTIONS, AND THE NAME AND NATURE OF THOSE CONVICTIONS

Plaintiff expects one or more former prisoners to testify about their experiences in isolated confinement in IDOC, and their observations and interactions with Mr. Gay in custody. Evidence of their criminal convictions should be excluded under Federal Rule of Evidence 609 and 403.

It will be obvious to the jury that the former prisoner witnesses were incarcerated for a criminal conviction. Any evidence about the name, nature, or circumstances of their convictions will have no further probative value as to their truthfulness. *See* MIL No. 1, *supra*. At the same time, introducing the nature of their convictions risks significant prejudice, especially for former prisoner witnesses convicted of serious and/or violent crimes. Moreover, admitting evidence of the nature of each witness's criminal convictions would waste time and distract the jury from the issue at hand: Wexford's deliberate indifference to Mr. Gay's serious medical needs. *See* Fed. R. Evid. 403.

4

### III.    MIL NO. 3: MOTION TO PROHIBIT USE OF UNDISCLOSED CRIMINAL CONVICTIONS AS IMPEACHMENT

Plaintiff seeks a ruling requiring Wexford to disclose any criminal convictions it intends to use as impeachment in advance of trial. Federal Rule of Evidence 609(b)(2) requires that a proponent provides an adverse party reasonable written notice of its intent to use a conviction as impeachment where the conviction is more than ten years old. Fed. R. Evid. 609(b)(2). Plaintiff also issued an interrogatory to Wexford seeking this information, and Wexford has not identified any witnesses with criminal convictions in response to the interrogatory. (Ex. E, Wexford's Suppl. Answers to Interrogatories, May 19, 2020, No. 5.)  To ensure Plaintiff has an adequate opportunity to contest the use of any convictions as impeachment, and to streamline the trial proceedings and avoid unnecessary delay, the Court should bar Wexford from using undisclosed convictions as impeachment.

### IV.    MIL NO. 4: MOTION TO EXCLUDE MR. GAY'S JUVENILE RECORDS

Wexford should be precluded from offering evidence of Mr. Gay's juvenile adjudications and juvenile detention. Federal Rule of Evidence 609(d) does not permit evidence of a juvenile adjudication for impeachment in civil cases. *Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 363 (N.D. Ind. 2009).

Moreover, Mr. Gay's juvenile detention records are not relevant to any material issue at trial. Plaintiff expects that Wexford may try to introduce evidence of Mr. Gay's disciplinary history in juvenile custody. As this evidence has no relevance other than the improper use of Mr. Gay's supposed propensity for rule-breaking and violence, it should be excluded under Federal Rules of Evidence 403 and 404(b)(1). *See id.* (excluding evidence of school suspensions and discipline pursuant to Rule 403, because it may confuse the jury and to avoid "trial[s] within a

5

trial"); *VanGilder v. Baker*, No. 03-CV-55, 2008 WL 2225647, at *5 (N.D. Ind. May 27, 2008) (excluding evidence of juvenile arrest as improper propensity evidence).

Plaintiff expects that Wexford will also try to introduce evidence that Mr. Gay self-harmed on a few occasions as a teenager in the Illinois Department of Juvenile Justice. However, this evidence is irrelevant as to Wexford's liability for Mr. Gay's self-harm two decades later and should be excluded under Rules 401 and 402.

On those occasions when Mr. Gay hurt himself in juvenile detention, he was also in isolated confinement. (Ex. F, Excerpts of Mr. Gay's Deposition, at 93:9-16, 99:18-100:4.) Those incidents were also much less severe than Mr. Gay's self-harm as a Wexford patient, and none involved cutting. (*Id.* at 95:2-96:15.) If anything, Mr. Gay's history of self-harm emphasizes that Wexford should have taken urgent action to keep Mr. Gay from such harmful conditions, because people with a propensity for self-harm are particularly vulnerable to isolated confinement. The evidence does not justify imposing unfair prejudice on Plaintiff by alerting the jury that Mr. Gay was incarcerated as a minor. Any marginal relevance associated with Mr. Gay's behavior in juvenile detention is outweighed by a substantial risk of unfair prejudice, and the evidence should therefore be excluded under Rule 403, as well.

Accordingly, the Court should exclude from this trial any reference to Mr. Gay's juvenile record, including his detention in youth detention facilities.

## V.    MIL NO. 5: BAR EVIDENCE OF OR REFERENCE TO MR. GAY'S EXPERIENCES IN OTHER CARCERAL SETTINGS

Following his release from IDOC, Mr. Gay was charged with a federal weapons offense, convicted, and served time at the Butner Federal Correctional Facility in Butner, North Carolina. Mr. Gay's prison sentence was imposed after a lengthy sentencing hearing that included testimony about Mr. Gay's experience in solitary confinement in the Illinois prisons. During

discovery in this case, voluminous records were produced regarding Mr. Gay's imprisonment at Butner and his adverse reactions to his confinement. Mr. Gay also spent time in pretrial custody prior to Butner at the Livingston County Jail and the Peoria County Jail. Before he was sent to IDOC in 1994, Mr. Gay was confined at the Rock Island County Jail. Mr. Gay was questioned at his deposition about his confinement at Rock Island in 1994 as well as about the time spent at Butner and the Livingston and Peoria County Jails in 2022 and thereafter.

Plaintiff believes that Wexford will seek to introduce evidence about the conditions at Butner and the County Jails and about Mr. Gay's reaction to incarceration at those facilities as evidence about Mr. Gay's ability to adapt to solitary confinement and/or his behavior in solitary and in other settings.

This is a case about Mr. Gay's confinement at the IDOC in various isolated settings. Evidence as to Mr. Gay's experiences in carceral settings outside of IDOC is irrelevant and should be excluded under Rules 401 and 402. For at least part of the time that Mr. Gay experienced isolation in these other facilities, he was in COVID quarantine, a circumstance not comparable to what he endured in IDOC.

Even if evidence as to these other institutions had some marginal relevance, it should still be excluded under Rule 403. There is ample evidence in the IDOC records for the jury to decide the issues, and "Rule 403 requires that there be no mini-trials." *Blackmon v. City of Chicago*, No. 19-CV-767, 2025 WL 2848411, at *3 (N.D. Ill. Aug. 4, 2025) (excluding defendants from probing about a collateral, temporally remote event because it would devolve into a mini-trial). Asking the jury to gauge Mr. Gay's difficulties in IDOC with reference to how he behaved while confined in another institution would force a distracting mini-trial at which issues including the physical environment at the other prison or jail, the level of restriction at that other facility, and

7

the exact nature of Mr. Gay's responses to that other environment would have to be explored. Moreover, in discovery, neither side adequately developed evidence and fact witnesses as to the environments in which Mr. Gay was housed in Butner and the County Jails.

The jury could not help but be confused as to how to evaluate testimony about those other institutions and how to compare Mr. Gay's experiences elsewhere with what he endured at IDOC. Presenting this evidence would waste time and delay the trial. The confusion could well unduly prejudice Plaintiff.

Additionally, evidence of Mr. Gay's subsequent incarceration will alert the jury that Mr. Gay was arrested and prosecuted for new criminal charges after his release from IDOC. As addressed in MIL No. 1, that information is likely to prejudice the jury against Mr. Gay by leading the jury to believe he had a bad character and propensity for law-breaking.

For all these reasons, evidence as to Mr. Gay's confinement at Butner Correctional Facility and at the Livingston, Peoria and Rock Island County Jails should be excluded under Rule 403 as well as under Rules 401 and 402.

## VI.    MIL NO. 6: MOTION TO ADMIT MR. GAY'S TESTIMONY FROM THE *RASHO* LITIGATION

Plaintiff seeks to introduce portions of Anthony Gay's sworn testimony from a September 5, 2018, hearing in *Rasho v. Baldwin*, No. 07-cv-01298 (C.D. Ill.). Defense counsel has informed Plaintiff that they object to Plaintiff's use of this sworn testimony on the grounds of hearsay. The Court should overrule that objection and allow the reading of this testimony. A copy of the transcript of Mr. Gay's testimony, with Plaintiff's proposed designations, is attached as Ex. G.

### A.    Mr. Gay's *Rasho* Hearing Testimony Qualifies for Admission Pursuant to the Exception for Prior Testimony in Rule 804(b)(1)

Although Mr. Gay's prior, sworn testimony is hearsay, it should be allowed pursuant to the exception in Fed. R. Evid. 804(b)(1). The *Rasho* hearing testimony satisfies all of the criteria for admission under this exception.

*First,* Mr. Gay undisputedly passed away in August 2024. Thus, he is unavailable to provide testimony at the upcoming trial. *See* Fed. R. Evid. 804(a)(4).

*Second,* the *Rasho* testimony was given by Mr. Gay as a witness at a "hearing." Admission of the testimony is not precluded merely because *Rasho* was a different proceeding than this one. Fed. R. Evid. 804(b)(1)(A).

*Third,* offering Mr. Gay's *Rasho* hearing testimony against Wexford in this case is permitted because the Illinois Department of Corrections—a predecessor in interest to Wexford—had "an opportunity and similar motive" to develop Mr. Gay's testimony by cross-examination. *See* Fed. R. Evid. 804(b)(1)(B).  Wexford's objection centers on this final criterion.

The *Rasho* hearing at which Mr. Gay testified was convened pursuant to a motion filed by the *Rasho* class of mentally ill prisoners seeking injunctive relief against IDOC relating to their treatment in the areas of segregation and crisis watch, among others. *See Rasho v. Baldwin,* Pl's Mot. for Perm. Inj. (ECF No. 2112), attached hereto as Ex. H. Mr. Gay's testimony covered his experiences in segregation and on crisis watch.

Following his direct examination, Mr. Gay was cross-examined extensively by counsel for IDOC. Contrary to the position Wexford can be expected to take, IDOC's counsel was a "predecessor in interest" to Wexford with "an opportunity and similar motive" to develop Mr. Gay's testimony. Courts have held that the two elements are redundant: both ask whether the party in the prior proceeding had a similar motive and opportunity to examine the witness whose testimony is at issue. *See Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 283 (4th Cir.

9

1993); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1995); *see also Clay v Johns-Manville Sales Corp.*, 722 F.2d 1289, 1294-95 (6th Cir. 1983) ("predecessor in interest" should be construed broadly); *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 987 (N.D. Ill. 2015) ("every federal Court of Appeals to address the issue head-on has determined that the term 'predecessor in interest' does not invoke the common law concept of privity but rather sets out a more forgiving standard").

Rule 804 provides that the predecessor's "motive" need only be "similar," not identical to that of the party against whom the testimony will be offered. Fed. R. Evid. 804.  To defeat admissibility, the party against whom the testimony is offered must point to "distinctions in [their] case not evident in the earlier litigation that would preclude similar motives of witness examination." *Marlinton*, 71 F.3d at 128. Wexford cannot do that with respect to Mr. Gay's testimony in the *Rasho* hearing.

The issue that was explored through Mr. Gay's testimony at the *Rasho* hearing was whether Mr. Gay could and did receive adequate mental health care in solitary confinement. That issue is bound up with the claim to be tried in this case: whether Mr. Gay's experience in isolation was so horrific that Wexford's failure to take steps within its power to remove him from that setting violated Mr. Gay's Eighth Amendment rights. IDOC's counsel was fully motivated to establish that the mental health care delivered to Mr. Gay in segregation and on crisis watch was reasonable and appropriate and that Mr. Gay did not suffer unduly in solitary. Counsel pressed the point that Mr. Gay received periodic treatment plans, medications, group and individual therapy, and so forth—the same points that Wexford made in its motion for summary judgment (ECF No. 286, at pp. 19-20) and the same points that Wexford can be expected to press at the trial.

10

The *Rasho* hearing was also hotly contested. The stakes were high—whether a permanent injunction would be entered against IDOC. No limits were placed upon counsel's cross-examinations of any witnesses, including Mr. Gay. IDOC's counsel was motivated, well-prepared and effective. Moreover, although Wexford was not a party to *Rasho,* the transcript of the hearing reflects that counsel for Wexford was in attendance on the day of Mr. Gay's testimony. It is not unreasonable to infer that Wexford's counsel consulted directly with the IDOC lawyer regarding Mr. Gay's cross-examination.

In short, Mr. Gay's *Rasho* hearing testimony satisfies all the criteria for admission under Rule 804(b)(1) and should be admitted.

**B. Even if the Court Concludes that Rule 804(b)(1) is not Satisfied, Mr. Gay's *Rasho* Hearing Testimony Should be Admitted under the Residual Hearsay Exception in Rule 807**

Rule 807 of the Federal Rules of Evidence provides that hearsay statements that are not otherwise admissible may be received in evidence if "the statement is supported by sufficient guarantees of trustworthiness" and "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Both criteria are satisfied with respect to Mr. Gay's *Rasho* testimony. The testimony should be allowed pursuant to Rule 807 if the Court concludes that it does not meet all three criteria under Rule 804(b)(1).

*First,* for all the reasons discussed above, Mr. Gay's *Rasho* testimony has indicia of reliability. The testimony was given under oath. All participants in the *Rasho* hearing treated the hearing with the gravity it demanded. The issues at stake in *Rasho* were the same as those for which Mr. Gay's testimony would be presented in this case. In that context, Mr. Gay was subjected to rigorous cross-examination. Mr. Gay had no personal stake in the *Rasho* proceedings because he was out of custody at the time and not a class member. These indicia of

11

reliability are sufficient. *See Harris v. City of Chicago*, 327 F.R.D. 199, 203 (N.D. Ill. 2018) (finding that voluntary, sworn statements made under penalty of perjury and subject to questioning, in addition to other factors suggesting declarant had no motive to lie, supported admission of statements under Rule 807).

*Second,* there is no other way that Plaintiff could present the evidence that Mr. Gay provides in his *Rasho* testimony. At the time of Mr. Gay's deposition in March 2023, no one suspected that Mr. Gay, a relatively young man, would pass away. Plaintiff's counsel expected Mr. Gay to be available for trial and therefore made no effort to conduct the kind of organized direct examination that would be presented at trial. Mr. Gay's deposition transcript does not include Mr. Gay's uninterrupted recounting of his experiences in solitary confinement. Plaintiff's counsel did not learn that Mr. Gay was diagnosed with cancer until just a few weeks before his death. In the weeks before Mr. Gay's death, counsel attempted to make arrangements to preserve his testimony for the trial. Unfortunately, Mr. Gay was in federal custody at the time of his diagnosis. Arrangements for a second deposition could not be coordinated before Mr. Gay become too ill to proceed. The previously submitted affidavit of paralegal Dana Kondos recounts these events in detail. *See* Ex. I, Affidavit of Dana Kondos, Nov. 9, 2024.

Mr. Gay's account of his time in segregation is obviously central to Plaintiff's case, and Plaintiff has been severely disadvantaged because of Mr. Gay's death. Thus, not only is the second criterion from Rule 807 satisfied—Mr. Gay's *Rasho* testimony "is more probative on the point for which it is offered than any other evidence [Plaintiff] can obtain through reasonable efforts"—but considerations of equity and fairness support allowing the testimony to be read to the jury.  Fed. Rule of Evid. 807(a)(2); *see United States v. Moore*, 824 F.3d 620, 623 (7th Cir. 2016) (holding hearsay testimony was admissible under Rule 807 where declarant was not

12

available to testify due to death, and not because of any impropriety by the offering party, in addition to other circumstances suggesting truthfulness of the statements).

The Court should rule in limine that designated portions of Mr. Gay's September 5, 2018, testimony in the *Rasho* case may be read to the jury.

## VII.  MIL NO. 7: MOTION TO EXCLUDE UNSUBSTANTIATED, UNDULY PREJUDICIAL EVIDENCE OF AND REFERENCE TO MR. GAY'S DISCIPLINARY HISTORY

Mr. Gay received over 1500 disciplinary tickets during his more than twenty years of incarceration in IDOC. (Ex. J, Mr. Gay's C-Card.)  Plaintiff understands that some of this disciplinary history will be a part of the evidence at trial. However, Plaintiff seeks reasonable limits, in accordance with the Federal Rules of Evidence.

As a preliminary matter, the IDOC disciplinary records are not credible records of Mr. Gay's actual behavior. *See Cleavinger v. Saxner*, 474 U.S. 193, 203–04 (1985) (to say that members of a prison disciplinary committee are "independent" is "to ignore reality": hearing officers "are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee."). There is reason to believe that Mr. Gay's IDOC disciplinary proceedings did not satisfy due process and Illinois law. (Ex. K, Final Report on *Rasho v. Walker* Investigation, March 6, 2012, at 129 ("Disciplinary proceedings are conducted in assembly line fashion with the line moving at breakneck speed.")); *see Davis v. Baldwin*, No. 16-CV-600, 2021 WL 2414640, at *9 (S.D. Ill. June 14, 2021) (certifying class of IDOC prisoners on claim that IDOC held sham disciplinary hearings and finding that "prisoners across the facilities consistently complained that the IDOC's disciplinary hearings are 'bogus,' 'a joke,' and 'not fair.'"); *Davis v. Hughes*, No. 16-CV-600, 2025 WL 948443, at *18 (S.D. Ill. Mar. 28, 2025) (denying summary judgment for IDOC on claim that IDOC puts prisoners in disciplinary

segregation without due process); Ill. Admin. Code tit. 20, § 504.80 (b), (f) (requiring written notice of facts and charges 24 hours before disciplinary hearing and providing prisoners with the right to appear at disciplinary hearings). Disciplinary officers relied on staff reports of Mr. Gay's behavior, and they did not consistently provide Mr. Gay notice of disciplinary charges and an opportunity to be heard. (Ex. F, Excerpts of Mr. Gay's Deposition, at 185:16-23; 355:14-357:19; 358:13-359:7.)  In light of the lack of proper procedures followed, it is unsurprising that out of Mr. Gay's 1500 disciplinary tickets, only a few were resolved with a "Not Guilty" finding.

The jury should thus be instructed that disciplinary conclusions reflect the fact that IDOC disciplined and sanctioned Mr. Gay for violating prison rules, but the jury does not have to accept that Mr. Gay committed the rule violation as alleged by IDOC.

Further, Plaintiff objects to introduction of Mr. Gay's IDOC disciplinary history as impermissible under Rule 404(b). Plaintiff specifically objects to introduction of Mr. Gay's complete disciplinary "C-Card."  The C-Card, which spans the entirety of his incarceration at IDOC, documents each disciplinary infraction Mr. Gay received and the disciplinary punishment imposed. (Ex. J, C-Card.)  Plaintiff anticipates that Wexford will rely on this evidence to depict Mr. Gay as a violent and disruptive prisoner who committed every offense listed. The only purpose of parading this disciplinary history before a jury would be to claim that Mr. Gay has a propensity for rule-breaking and violence, but that is not a proper purpose under the rules of evidence. *See* Fed. R. Evid. 404(b)(1).

In addition, admission of Mr. Gay's prior disciplinary history would require Plaintiff to explain to the jury why each of these disciplinary incidents was a result of his mental health and isolated confinement, and to demonstrate that the underlying behavior was not so dangerous as the title of the offense indicates. Doing so would take an extraordinary amount of time and would

14

likely devolve into multiple mini trials on collateral issues. *See* Fed. R. Evid. 403 (allowing exclusion even of relevant evidence to avoid undue delay or wasting time).

Moreover, many of the underlying disciplinary reports were never produced in the case, making it impossible for Plaintiff to identify the underlying misconduct and verify the records. The lack of support for these findings poses a risk of unfair prejudice, providing yet another reason to exclude them under Rule 403. The disciplinary C-Card also includes charges that were "deleted," indicating that there was never a finding that Mr. Gay committed the prison rule violation. (E.g., Ex. J, C-Card at 139, 5/27/2018 "Dangerous Communications"). Like an arrest that does not lead to a conviction, these dismissed charges should not be before the jury. *See Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 363 (N.D. Ind. 2009) (excluding evidence of plaintiff's arrests under Rule 403).

Lastly, the disciplinary "C-Card" includes comments allegedly made by Mr. Gay out-of-court, without context, and in a manner that is highly prejudicial and unnecessary. As one example, the C-Card includes a charge of "Intimidation Or Threats," and the comment "I've got something for her bitch ass." (*Id.* at 139, 5/20/2018.) This charge was "deleted," but it still appears on the C-Card with the associated comment, and the comment would personally offend many potential jurors. As another example, the C-Card includes a charge of "Sexual Misconduct," with the comment "stated he wanted to masturbate to RN." (*Id.* at 138, 4/15/2018.) Again, the charge was "deleted," so it should not be before the jury. Moreover, the comment associated with the deleted charge is unfairly prejudicial, particularly as Mr. Gay will be unavailable at trial to dispute or explain these alleged comments. The C-Card also recites alleged comments by Mr. Gay that are homophobic and likely to inflame the jury. (*See id.* at 138, 3/15/2018.)

15

Mr. Gay's disciplinary history is not relevant, or is marginally relevant, to the question of whether Wexford provided him constitutional treatment.  Under Rule 403, as weighed against the likelihood of significant prejudice, Mr. Gay's disciplinary history should be excluded. *See* Fed. R. Evid. 403.

## VIII.  MIL NO. 8: MOTION TO BAR EVIDENCE OF OR REFERENCE TO MR. GAY'S PRIOR GANG AFFILIATION

IDOC records indicate that Mr. Gay may have had a previous gang affiliation. The subject of street gangs has zero probative value to any issue at trial, which concerns whether Wexford violated Mr. Gay's constitutional rights by acting with deliberate indifference to his health and safety. Accordingly, any reference to street gangs or evidence relating to street gangs should be excluded at trial.

Referring to "gangs" and "street gangs" is inherently prejudicial and inflammatory. The use of these terms could inflame the jury's prejudices and invite speculation that Mr. Gay or other witnesses had connections to street gangs. Such references may also invite the inaccurate conclusion that Mr. Gay was in solitary confinement for gang involvement. "Our Court of Appeals has repeatedly recognized 'the insidious quality' of evidence of gang membership as well as 'the damage it can do.'" *Finley v. Lindsay*, No. 97-CV-7634, 1999 WL 608706, at *1 (N.D. Ill. Aug. 5, 1999) (quoting *United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996)). Because there is a "substantial risk of unfair prejudice attached to gang affiliation evidence," courts must closely scrutinize its admissibility. *Finley*, 1999 WL 608706, at *1 (citing *United States v. Irvin*, 87 F.3d 860, 864-66 (7th Cir. 1996) (recognizing a substantial "danger of unfair prejudice" in that "[g]angs generally arouse negative connotations" and concluding that there is "always the possibility that a jury will attach a propensity for committing crimes to [individuals]

16

who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict.")).

Based on this case law, courts in the Seventh Circuit frequently bar references to gangs in § 1983 cases. *See Lopez v. City of Chicago*, No. 01-CV-1823, 2005 WL 563212, at *5 (N.D. Ill. March 8, 2005) (granting motion in limine to bar any references to plaintiff's gang membership); *United States v. Davis*, No. 99-CV-928, 2001 WL 1195729, at *2 (N.D. Ill. Oct. 9, 2001) (excluding gang references as "enormously and unfairly prejudicial" under FRE 403); *Finley,* 1999 WL 608706, at *1-2 (same); *Charles v. Cotter*, 867 F. Supp. 648, 657-58 (N.D. Ill. 1994) (identifying plaintiff as a gang member is "unfairly prejudicial insofar as it encourages the inference that [plaintiff] is an evil and menacing person."). This Court should do the same.

## IX.    MIL NO. 9: MOTION TO BAR REFERENCE OR EVIDENCE OF ROMANTIC ATTACHMENTS MR. GAY FORMED TO FEMALE MENTAL HEALTH WORKERS IN PRISON

Plaintiff anticipates Wexford may reference or introduce evidence of Mr. Gay's sexuality and romantic attachments to female mental health workers while in prison. There is reference in Mr. Gay's IDOC file to his supposed preference for female medical providers and an apparent infatuation or "obsession" with Dr. Kelly Rhodes. But Wexford has never argued, nor could they, that Mr. Gay's romantic attachments interfered with Wexford's ability to remove Mr. Gay from isolation, nor argued that Wexford would have provided adequate care if not for Mr. Gay's infatuation or romantic preferences. This case is about Wexford's deliberate indifference to Mr. Gay's serious medical needs in violation of his constitutional rights. Defendant has not disclosed testimony causally relating Mr. Gay's romantic attachments to any issue in the case. Any evidence of Mr. Gay's romantic attachments is irrelevant, has no probative value, is likely hearsay, and would be unfairly prejudicial. Fed. R. Evid. 401-403.

17

X. **MIL NO. 10: MOTION TO BAR EVIDENCE OF OR REFERENCE TO MASTURBATION**

Plaintiff expects that Wexford will seek to introduce unnecessary and gratuitous evidence that Mr. Gay was observed masturbating in front of female staff on more than occasion. This evidence is inflammatory and would likely inflame at least some members of the jury against Mr. Gay. This evidence has no legitimate probative value.

The Court should not allow Wexford to smear Mr. Gay as a sexual predator *in absentia*. *See Fox v. Hayes*, 600 F.3d 819, 838-39 (7th Cir. 2010) (affirming district court's exclusion of evidence of plaintiff's masturbation from trial). As a prisoner in isolated confinement and often on crisis watch, Mr. Gay had no privacy. Indeed, the evidence will show that at times Mr. Gay had no clothing whatsoever. Plaintiff seeks to avoid a sideshow in which she must offer evidence as to whether Mr. Gay's masturbation was intended to be private and victimless.

Wexford will have ample evidence of Mr. Gay's disciplinary history, which includes evidence of throwing bodily fluids on staff. Evidence of Mr. Gay's masturbation in custody should be excluded as cumulative and unduly prejudicial. Fed. R. Evid. 403.

XI. **MIL NO. 11: MOTION TO BAR EVIDENCE OF OR REFERENCE TO "SEXUAL SADISM"**

Mr. Gay has carried multiple psychiatric diagnoses during his IDOC incarceration. There are a few records from 2005 and 2006 reflecting that Mr. Gay was given an Axis I misdiagnosis of "sexual sadism," apparently based on Mr. Gay's repeated self-harm to his penis and groin area. The Court should exclude evidence or reference to "sexual sadism" pursuant to Federal Rule of Evidence 403.

For starters, the diagnosis of "sexual sadism" does not fit. "Sexual sadism" refers to intense feelings of sexual arousal when fantasizing about or witnessing *another individual*

18

undergoing physical or psychological pain. *Sexual Sadism Disorder*, Merck Manual,

https://www.merckmanuals.com/professional/psychiatric-disorders/paraphilias-and-paraphilic-

disorders/sexual-sadism-disorder (last accessed Feb. 9, 2026).  There is no evidence that Mr. Gay

ever had or relayed such feelings to a treater.

Regardless of whether Mr. Gay was ever properly diagnosed with "sexual sadism,"

Wexford has not disclosed any expert opinion relying on such a diagnosis, and it has no

relevance at trial. There is no dispute that Mr. Gay had a mental illness. However, the diagnosis

for Mr. Gay that more consistently appears in the Wexford medical records is Borderline

Personality Disorder. Wexford's expert, Dr. Joseph Penn, opines that Mr. Gay's dominant

diagnosis was a personality disorder, and he does not rely on the sexual sadism diagnosis in

reaching his conclusions. Furthermore, any reference to sexual sadism is highly likely to inflame

the passions and prejudices of the jury. The diagnosis should be excluded from trial.

## XII.    MIL NO. 12: TO EXCLUDE EXPERT OPINIONS FROM TREATERS FORMED OUTSIDE THE COURSE OF TREATING ANTHONY GAY

Wexford's disclosures suggest it plans to elicit opinion testimony from mental health

professionals who treated Anthony Gay while he was an IDOC prisoner. Wexford Rule

26(a)(2) Discls., attached hereto as Ex. L. Wexford initially disclosed the following treaters,

among other non-retained experts: Dr. Kelly Renzi, Dr. William Puga, Dr. Sheila Stone; Dr.

Kelly Bushur; Dr. Andrea Moss; and Courtney Myer, LCSW. (Ex. L at 1-10.)  Each of those

treaters is also listed on Wexford's trial witness disclosure.

Treaters like these may not offer opinions other than those formed during treatment

unless such opinions are disclosed in an expert report. *In re Zimmer NexGen Knee Implant

Prods. Liab. Litig.*, MDL No. 2272, 2015 WL 3799534, at *4-8 (N.D. Ill. Jun. 17, 2015)

("*Meyers* dictates that any of [the treating physician's] opinions not formed in the course of

19

treatment . . . are inadmissible if not disclosed in a complete expert report pursuant to Rule 26(a)(2)(B)") (citing *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010)).  Here, none of the mental health professionals who treated Mr. Gay prepared expert reports. So, any opinions they formed outside the course of treating Mr. Gay must be excluded from trial. *Id*.; Fed. R. Civ. P. 37(c)(1).

But Wexford's disclosures suggest it intends to elicit opinions the witnesses did not form while treating Mr. Gay. For example, the disclosures say that each non-retained expert will offer various opinions "based on . . . [their] review of Plaintiff's records."  (Ex. L at 3, 4, 7, 8, 10.)  To the extent any treater plans to opine about information contained in a medical record she did not have access to during her treatment of Mr. Gay, she could not have formed the resulting opinions based on those records while treating Mr. Gay. Similarly, Wexford appears poised to elicit wide-ranging opinions from the treaters that are not directly tied to their encounters with Mr. Gay. For example, Wexford's disclosure of Dr. Puga's expected testimony states: "His understanding of the medical literature on the use of long-term restrictive housing is that prison itself and not necessarily restrictive housing exacerbates mental health symptoms in some individuals." (*Id*. at 4.)  The Court should enter an order excluding from trial any opinion the non-retained experts did not form during their treatment of Mr. Gay. *Zimmer*, 2015 WL 3799534, at *4–8.

### XIII.   MIL NO. 13: MOTION TO EXCLUDE ANY EVIDENCE THAT MR. GAY WAS HOMOPHOBIC, USED HOMOPHOBIC LANGUAGE, OR THOUGHT DEFENDANT NUNEZ WAS GAY

Defendants questioned Mr. Gay in his deposition about whether he referred to Defendant Nunez as a homosexual. This topic is irrelevant to the issues the jury must decide to determine whether Defendants were deliberately indifferent to Mr. Gay's serious medical needs. Any

implication or evidence that Mr. Gay was homophobic, used homophobic language, or thought

Defendant Nunez was gay should be barred as unfairly prejudicial, irrelevant, and likely based on

hearsay. Fed. R. Evid. 401–403; *see G&G Closed-Circuit Events, LLC v. Castillo*, No. 14-CV-

02073, 2018 WL 11265763, at \*2 (N.D. Ill. Dec. 16, 2018) (excluding allegations of racial bias

because they "create the significant risk that the jury will decide the case based on general character

rather than facts").

Whatever probative value Defendants may claim for these comments (there is none), it is

"overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury." *Cf.*

*Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) (barring evidence of § 1983 plaintiff's

criminal history based on the "substantial risk that the jury will render a defense verdict based not

on the evidence but on emotions or other improper motives").

## XIV.    MIL NO. 14: MOTION TO TREAT WEXFORD AND IDOC WITNESSES AS ADVERSE

The Court should enter an order allowing Plaintiff's counsel to use leading questions

when examining non-defendant Wexford and Illinois Department of Corrections employees

because they are identified with adverse parties.

Plaintiff anticipates that several current and former Wexford employees will testify

during her case, including Al Randy Doyle, Cortney Myer, Andrea Moss, Kelly Renzi, Cheryl

Laurent, Scott McCormick, Christian Gillespie, and William Puga. Each of those witnesses was

involved in some way with Mr. Gay's mental health care while he was an IDOC prisoner.

Plaintiff likewise anticipates calling IDOC employee Justin Hammers, who testified at a

deposition as the State's representative under Federal Rule of Civil Procedure 30(b)(6).

"Ordinarily, the court should allow leading questions . . . when a party calls a hostile

witness . . . or a witness identified with an adverse party."  Fed. R. Evid. 611(c)(2). "The normal

21

sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party." *Ratliff v. City of Chicago*, No. 10-CV-739, 2013 WL 3388745, at *6 (N.D. Ill. July 8, 2013) (quoting *Washington v. Ill. Dept. of Revenue*, 2006 WL 2873437, at *1 (C.D. Ill. Oct. 5, 2006)). The current and former Wexford employees are "identified with an adverse party" because Wexford is the defendant. *See Ellis v. City of Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981) (holding that district court should have permitted leading questions during plaintiff's direct exams of non-defendant City of Chicago police officers in trial against City and another officer).

Leading questions are also appropriate for Hammers because he is employed by the State of Illinois. As the State was a former defendant in this case, Hammers, like the Wexford employees, is identified with an adverse party. *See Ellis*, 667 F.2d at 613; *Ratliff*, 2012 WL 7993412, at *1 (same).

## XV.    MIL NO. 15: MOTION TO RESTRICT IMPROPER ARGUMENT REGARDING LIABILITY OF MULTIPLE PARTIES

Plaintiff anticipates that Wexford will attempt to shift blame for Mr. Gay's mistreatment to IDOC. However, multiple parties can be liable to Plaintiff, and the fact that Plaintiff is proceeding to trial against one party does not mean that other parties do not also share liability. *See, e.g.*, *Harper v. Albert*, 400 F.3d 1052, 1062 (7th Cir. 2005) (explaining that multiple defendants can be liable for a constitutional violation, so long as each participated in the violation alleged); *see also Mann v. Anderson*, 447 F.2d 533, 536 (7th Cir. 1971) ("Defendant argues that the jury should have heard evidence of the mother's negligence because that negligence was the proximate cause of the accident. Again, the evidence was irrelevant, because defendant could be held liable even if her negligence was not the sole proximate cause."). To avoid confusing and misleading the jury, Plaintiff seeks a ruling barring Wexford from any

22

argument that contradicts this principle.

IDOC's continued isolation of Mr. Gay absent the intervention of Wexford treaters was entirely foreseeable, and so there can be no argument that IDOC's own mistreatment of Mr. Gay was an intervening, superseding cause. *Whitlock v. Brueggemann*, 682 F.3d 567, 584 (7th Cir. 2012) (citing *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002) ("A superseding cause . . . is some action of a third party that makes the plaintiff's injury an unforeseeable consequence of the defendant's negligence.")).

In evaluating Plaintiff's evidence against Wexford, the jury will be instructed properly that it must find Mr. Gay was harmed "as a result of" Wexford's actions or inaction in order to find Wexford liable. *Seventh Circuit Pattern Jury Instructions - Civil*, § 7.17.  Wexford should not be able to argue that even if the jury finds that Wexford caused the harm to Mr. Gay, it cannot be liable because IDOC also bears responsibility.

## XVI.  MIL NO. 16: MOTION TO BAR REFERENCE TO MISSING BOXES OF DOCUMENTS

In August 2022, Defendants filed a motion for sanctions related to missing documents that Plaintiff had been storing with a discovery vendor. (ECF 189.)  The Court has already adjudicated this issue and Wexford should not be allowed to reference it at trial. Specifically, the Court denied Defendants' motion and found no bad faith on the part of Plaintiff's counsel. (ECF 250 at 16–17.) Moreover, and in any event, Wexford has not identified any specific, missing record that caused it prejudice.

## XVII.  MIL NO. 17: MOTION TO BAR IMPROPER ARGUMENT THAT PRISONERS ARE LITIGIOUS AND REFERENCE TO MR. GAY'S PRIOR *PRO SE* SUITS

Plaintiff anticipates that Wexford may seek to portray Mr. Gay as litigious by introducing evidence of Mr. Gay's other civil suits.  Any evidence or argument suggesting that Mr. Gay was litigious, or that prisoners in general are litigious, is highly prejudicial and inflammatory. The

23

Court should bar the introduction of such evidence or argument pursuant to Federal Rule of Evidence 403. *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495-96 (7th Cir. 1998) (evidence of past lawsuits are not admissible if offered only to show tendency to sue).

Generally, whatever "slight probative value" a plaintiff's litigiousness may have "is outweighed by the substantial danger of jury bias against the chronic litigant." *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776 (7th Cir. 2001) (citing *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). It is the "rare exception" that evidence of past lawsuits "is admitted for reasons other than to show the plaintiff's litigious character and it is sufficiently probative to survive Rule 403 balancing." *Nelson v. City of Chicago*, 810 F.3d 1061, 1071 (7th Cir. 2016); *see also Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380-81 (8th Cir. 2008) (finding that probative value of evidence that plaintiff had filed prior discrimination suit was substantially outweighed by its unfair prejudice in Title VII action, and district court thus abused its discretion in admitting evidence of prior suit); *Seals v. Mitchell*, No. 04-CV-3764, 2011 WL 1399245, at *5-6 (N.D. Cal. Apr. 13, 2011) (excluding any reference to plaintiff's previous lawsuits or grievances at trial).

The danger of unfair prejudice is compounded by the fact that Mr. Gay was a prisoner, and the widespread popular belief that prisoners engage in frivolous litigation. In reality, "incarcerated people are not particularly litigious. Instead, they often face harsh, discriminatory, and unlawful conditions of confinement — and when mistreated, they have little recourse outside the courts." A. Fenster and M. Schlanger, *Slamming the Courthouse Door: 25 years of evidence for repealing the Prison Litigation Reform Act* (Apr. 26, 2021). Evidence of Mr. Gay's other lawsuits invites the jury to assume that this case lacks merit. The Court should bar such suggestion from the trial.

24

## XVIII. MIL NO. 18: MOTION TO BAR REFERENCE TO MR. GAY AND FORMER PRISONER WITNESSES AS CONVICT, CRIMINAL, OFFENDER, FELON, OR INMATE

Mr. Gay and other formerly imprisoned witnesses in this case should be accorded the same respect as anyone else in the courtroom. That is, they should be referred to before the jury with their surnames and the honorific "Mr."  To do otherwise is unnecessarily demeaning and derogatory. Calling Mr. Gay or a formerly imprisoned witness "Offender" or "Inmate"—even when that term precedes the surname, as in "Offender Gay" or "Inmate Gay"—accomplishes nothing other than to lessen the humanity of the individual. Wexford can claim no legitimate need to refer to Mr. Gay or any other person in this manner.

Other federal courts have ruled that imprisoned individuals must not be referred to as "inmate," "offender," or the like. *See, e.g., Clark v. Shah*, No. 20-CV-1221, 2024 WL 1345642, at *2 (S.D. Ill. Mar. 29, 2024) (ruling that counsel shall not refer to the plaintiff as "an inmate," "prisoner," or "offender" during opening statements or closing arguments; and neither counsel nor the defendant shall refer to the plaintiff as a "convict" or a "felon" or a "criminal" at any time during the trial); *Moore v. Parker*, No. 13-CV-00081, 2016 WL 6871264, at *3 (W.D. Ky. Nov. 21, 2016) (finding that referring to the plaintiff as "death row inmate" is unfairly prejudicial and granting plaintiff's motion in limine to preclude said label); *Robinson v. Delgado*, No. 2-CV-1538, 2010 WL 1838866, at *7 (N.D. Cal. May 3, 2010).

Using the moniker "inmate" or "prisoner" adds nothing of substance or value for the jury. Instead, like making a plaintiff or witness appear in prison attire, it only demeans and dehumanizes the person and serves as a "constant reminder" that the person is "in a different class" and "suggests he is entitled to less respect." *See Kartman v. Markle*, No. 10-CV-106, 2015 WL 3952639, at *9 (N.D.W. Va. June 29, 2015) (quoting *Ramirez v. Delong*, No. 09-CV-314,

25

2010 WL 3118527, at *1 (W.D. Wisc. Jul. 30, 2010) (quoting *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976))).  The Court should find that Rule 403 prohibits this practice.

Accordingly, the Court should bar Defendants, their counsel, and their witnesses from referring to people as "inmate," "felon," "offender," "convict," "criminal," or any similar such label, instead of by their names.

## XIX.   MIL NO. 19: MOTION TO BAR IDOC WITNESSES FROM WEARING UNIFORMS OR OTHER CORRECTIONAL ATTIRE DURING TRIAL

Because the jury must not decide the case based on factors unrelated to the issues properly before it, the Court should not permit Wexford's IDOC witnesses to wear uniforms or other correctional attire during trial.

Although all parties are equal before the law, if Wexford's IDOC witnesses appear in correctional uniforms or attire, the jury may be subtly influenced to credit them over Plaintiff's witnesses. The Court should avoid any unnecessary risk of prejudice that uniforms or other correctional attire might cause. *Bemben v. Hunt*, No. 93-CV-509, 1995 WL 27223, at *4 (N.D. Ill. Jan. 23, 1995) (acknowledging that the influence of uniforms is unknown and requiring police officers to appear in plain clothes to avoid undue influence over the jury).

## XX.   MIL NO. 20: MOTON TO BAR IMPROPER ARGUMENT THAT MR. GAY WAS CONTRIBUTORILY NEGLIGENT

It is well settled that contributory negligence is not a defense to an Eighth Amendment deliberate indifference claim. *See, e.g.*, *Huspon v. Corizon Med. Serv.*, No. 17-CV-00062, 2019 WL 110947, at *6 (S.D. Ind. Jan. 4, 2019) (collecting cases). The Eighth Amendment requires that Wexford provide care for serious medical needs regardless of a prisoner's behavior or poor self-care. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (holding that prison officials must treat prisoners' medical needs); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there

26

against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").

The Court should ban any argument that Mr. Gay was contributorily negligent, as well as any evidence introduced to shift blame to Mr. Gay for his injuries.

## XXI.  MIL NO. 21: MOTION TO BAR EVIDENCE OF EFFORTS TO SETTLE

Plaintiff requests that, pursuant to Federal Rule of Evidence 408(a), Wexford be excluded from making any mention of any party's efforts to settle. *See VanGilder v. Baker*, No. 403-CV-55, 2008 WL 2225647, at *4 (N.D. Ind. May 27, 2008) (excluding evidence of settlement offers and counteroffers, because they occurred as part of settlement negotiations). Such evidence is inadmissible under the Federal Rules, and it is likely to confuse and mislead the jury.

## XXII.  MIL NO. 22: MOTION TO BAR REFERENCE TO PLAINTIFF'S COUNSEL BEING FROM OUT OF TOWN

Plaintiff's counsel reside and practice outside of Springfield, Illinois, where this trial will take place. Where Plaintiff's attorneys are from has no bearing on any issue that the jury must resolve. Thus, Wexford should not be permitted to mention or suggest to the jury that Plaintiff's attorneys should be viewed as outsiders.

## XXIII. MIL NO. 23: MOTION TO BAR REFERENCE TO JURORS' PECUNIARY INTERESTS

The Seventh Circuit has long held that arguments that play on jurors' pecuniary or taxpayer interests are unacceptable. Because pecuniary interests would necessarily disqualify a prospective juror from service, it is "patently improper to make an appeal to that interest" at trial. *United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir. 1973); *see also Moore ex rel. Estate of Grady v. Tuleja*, 546 F.3d 423, 429 (7th Cir. 2008) (recognizing that an appeal to the financial interests of jurors as taxpayers is "of course" generally improper); *Dyson v. Szarzynski*, No. 13-CV-3248, 2014 WL

27

7205591, at *4 (N.D. Ill. Dec. 18, 2014) (similar). The Court should bar any reference to the pecuniary interests of the jury.

## XXIV. MIL NO. 24: MOTION TO EXCLUDE NON-PARTY WITNESSES FROM THE COURTROOM

Federal Rule of Evidence 615 requires, upon request of a party, the exclusion of witnesses from the courtroom during testimony so that they cannot hear other witnesses' testimony. Fed. R. Evid. 615(a); *United States v. Sheffler*, No. 19-CV-30067, 2021 WL 2742742 at *1 (C.D. Ill. July 1, 2021); *see also Pryor v. Corrigan*, No. 17-CV-1968, 2023 WL 1100436, at *22 (N.D. Ill. Jan. 30, 2023), *aff'd,* 124 F.4th 475 (7th Cir. 2024) ("Trial testimony is not a team event. Non-party fact witnesses must testify based on their best recollection, without knowing what other people said on the stand.").

Moreover, courts have recognized that a witness who has concluded his or her testimony and remains to observe some other part of the trial should be prohibited from testifying in rebuttal. *United States v. Tedder*, 403 F.3d 836, 840 (7th Cir. 2005) ("If [the defendant] wanted this witness available for rebuttal, he should have kept him out of the courtroom."). An order in this case covering both these circumstances would properly prevent the contamination of witnesses.

Respectfully submitted,
/s/ *Maggie Filler*
One of Plaintiff's Attorneys

Jon Loevy
Locke Bowman
Alison Leff
Maggie Filler
Gianna Gizzi
LOEVY & LOEVY
311 North Aberdeen Street,

28

Chicago, IL 60607
p. (312) 243-5900
e. maggie@loevy.com

Paul McMahon
Stephen Weil
ROMANUCCI & BLANDIN, LLC
321 North Clark St., Suite 900
Chicago, IL 60654
p. (312) 458-1000
e. sweil@rblaw.net

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Maggie Filler, an attorney, hereby certify that I filed the foregoing document via the

Court's CM/ECF system, and thereby served a copy on all counsel of record.

/s/ *Maggie Filler*
*One of Plaintiff's Attorneys*